Bible-shaped cakes, with the Biblical verses, *sans* the groomsmen figurines and "Ghostbusters X," could be made.

The Respondent avers that, as with all customers, the Charging Party was asked to elaborate as to the purpose of the cakes, how he wished to present it, and how he would use it. The Charging Party would not provide an explanation to the Respondent. The Respondent alleges that it was the Charging Party's refusal to elaborate that left it with the impression that it would not be able to produce the cakes as requested by the Charging Party. The Respondent avers that it consistently requests that customers provide an image for them to replicate when it is something the Respondent does not "stock." For example, the Respondent avers that a customer requesting a cake with the image of a popular cartoon character can easily be created; however, when a customer requests a specific image without a photo reference or elaboration of the image, the Respondent will decline the request. Karmona then referred the Charging Party to another bakery with the belief that that bakery would be better suited to create the cakes as envisioned by the Charging Party.

The Respondent does not have a specific policy regarding the declination of a customer request, but states that the employee who receives the order also decorates the cake. It is the Respondent's position that, based on its individual employees' pastry knowledge, experience, and qualifications, they are best able to determine whether they have the ability to create the cake that a customer requests. Therefore, in the case of the Charging Party's request, Karmona determined that she would be unable to create the cakes as the Charging Party described.

The Respondent states that it has previously denied customer requests based on technical requirements, including inability to create the requested image, and requests for buttercream iced cakes where the Respondent maintained a fondant decorated cake would be preferable. Additionally, the Respondent states that it has denied customer requests for cakes that included crude language such as "eat me" or "ya old bitch" or "naughty images," on the basis that the imagery and messages were not what the Respondent wished to represent in its products. The Respondent's other reasons for declining customers' request include: availability of the product, insufficient time to create the cake requested, and scheduling conflicts.

The Charging Party avers that he did not ask the Respondent, or any of its employees, to agree with or endorse the message of his envisioned cakes.

Comparative data indicates that the Respondent employs six persons, of whom two are non-Catholic Christian, two are Agnostic, one is Catholic, and one is Atheist. The record reflects that the Respondent regularly creates Christian themed cakes and pastries, including items for several Catholic and non-Catholic Christian church events. Additionally, the evidence demonstrates that they have produced a number of cakes with Christian imagery and symbolism during the relevant time period.

The Respondent states that the Charging Party is welcome to return to the bakery.

<u>Unequal Treatment</u>

3

To prevail on a claim of discriminatory denial of equal treatment, the evidence must show that: (1) the Charging Party is a member of a protected class; (2) the Charging Party sought the goods and services of the Respondent; (3) the Charging Party is otherwise a qualified recipient of the goods and services of the Respondent; and (4) the Charging Party was treated differently by the Respondent than other individuals not of his/her protected class.

The Charging Party is a member of a protected class based on his creed, Christianity. The Charging Party was a qualified recipient of the goods and services of the Respondent. The Charging Party visited the Respondent and sought two cakes bearing Biblical verses and imagery indicating that same-sex marriage is, in his words "un-Biblical and inappropriate." The Charging Party alleges that the Respondent treated him differently than persons outside of his protected class by "demeaning his beliefs." The evidence demonstrates that the Respondent attempted to engage the Charging Party in a dialogue regarding the cakes in more detail, which the Charging Party declined. There is insufficient evidence to demonstrate that the Respondent treated the Charging Party differently based on his creed. The evidence demonstrates that the Respondent would not create cakes with wording and images it deemed derogatory. The Respondent has denied other customers request for derogatory language without regard to the customer's creed.

### Denial of Service

To prevail on a claim of discriminatory denial of goods, services, benefits, or privileges, the evidence must show that: (1) the Charging Party is a member of a protected class (2) the Charging Party sought services or goods from the Respondent; (3) the Charging arty is otherwise a qualified recipient of the goods and services of the Respondent; (4) the Charging Party was denied services or goods by the Respondent; (5) under circumstances that give rise to an inference of unlawful discrimination based on a protected class.

The Charging Party is a member of a protected class based on his creed, Christianity. The Charging Party was a qualified recipient of the goods and services of the Respondent. The Charging Party visited the Respondent and sought two cakes bearing Biblical verses and imagery indicating that same-sex marriage is, in his words "un-Biblical and inappropriate." The Respondent denied the Charging Party's request to make cakes that included the Biblical verses and an image of groomsmen with a red "X" over them. The circumstances do not give rise to an inference that the Respondent denied the Charging Party goods or services based on his creed. Instead, the evidence suggests that based on the Respondent's understanding of the Charging Party's request, it would be unable to create the cake that he envisioned. The record reflects that the Respondent has denied customer requests for similar reasons. Additionally, the evidence demonstrates that the Respondent regularly produces cakes and other baked goods with Christian symbolism and messages, and continues to welcome the Charging Party in its bakery.

Based on the evidence contained above, I determine that the Respondent has not violated C.R.S. 24-34-601(2), as re-enacted.

In accordance with C.R.S. 24-34-306(2)(b)(I)(A) and Rule 10.6(A)(1) of the Commission's Rules of Practice and Procedure, the Charging Party may appeal the dismissal of this case to the Commission within ten (10) days, as set forth in the enclosed form.

4

If the Charging Party wishes to file a civil action in a district court in this state, which action is based on the alleged discriminatory or unfair practice that was the subject of the charge filed with the Commission, such must be done:

    a.    Within ninety days of the mailing of this notice if no appeal is filed with the Colorado Civil Rights Commission or

    b.    Within ninety days of the mailing of the final notice of the Commission dismissing the appeal.

If Charging Party does not file an action within the time limits specified above, such action will be barred and no State District Court shall have jurisdiction to hear such action [CRS 24-34-306(I)].

On Behalf of the Colorado Civil Rights Division

_Jennifer McPherson_      3/24/2015
Jennifer McPherson, Interim Director      Date
Or Authorized Designee

5

**APP. 026**



**COLORADO**
Department of
Regulatory Agencies

Colorado Civil Rights Division

1560 Broadway Street, Suite 1050
Denver, CO 80202

Charge No. P20140070X

William Jack
4987 E. Barrington Ave.
Castle Rock, CO 80104                    Charging Party

Le Bakery Sensual, Inc.
300 E. 6th Ave.
Denver, CO 80203                         Respondent

## DETERMINATION

Under the authority vested in me by C.R.S. 24-34-306 (2), I conclude from our investigation that there is insufficient evidence to support the Charging Party's claims of unequal treatment and denial of goods or service based on creed. As such, a **No Probable Cause** determination hereby is issued.

The Division finds that the Respondent did not discriminate based on the Charging Party's creed, but instead refused to create cakes for anyone, regardless of creed, where a customer requests derogatory language or imagery.

The Respondent is a place of public accommodation within the meaning of C.R.S. 24-34-601 (1), as re-enacted, and the timeliness and all other jurisdictional requirements pursuant to Title 24, Article 34, Parts 3 and 6 have been met.

The Charging Party alleges that on or about March 13, 2014, he was denied equal treatment and access to goods or services in a place of public accommodation based on his creed, Christianity. The Respondent denies the allegations of discrimination and avers that the cake requested by the Charging Party was denied solely on the basis that the writing and imagery were "hateful."

The legal framework under which civil rights matters are examined is as follows: The initial burden of proof rests on the Charging Party to prove his/her case. Each key or essential element ("prima facie") of the particular claim must be proven, through a majority ("preponderance") of the evidence. If the Charging Party meets this initial burden of proof, then the Respondent has the next burden of explaining, with sufficient clarity, a business justification for the action taken. This is in response to the specific alleged action named in



**APP. 027**

the charge. In addition, the Respondent has the burden of production of sufficient documents and other information requested by the administrative agency during the civil rights investigation. If the Respondent offers a legitimate business reason, then the burden once again shifts back to the Charging Party to prove that this proffered legitimate business reason is a pretext for discrimination. At this stage, the Charging Party must prove, again through sufficient evidence, that the true and primary motive for the Respondent's actions is unlawful discrimination.

"Unlawful discrimination" means that which is primarily based on the Charging Party's asserted protected group or status. The Respondent's stated reasons for its actions are presumed to be true, unless and until the Charging Party, again through competent evidence found in this investigation, adequately shows that the Respondent's reason is pretext; is not to be believed; and that the Charging Party's protected status was the main reason for the adverse action taken by the Respondent. The Charging Party does not need to submit additional evidence, in response to the Respondent's position, but the available evidence must be legally sufficient so that a reasonable person would find that the Respondent intended to discriminate against the Charging Party because of his/her protected civil rights status. Colorado Civil Rights Commission v. Big O Tires, Inc., 940 P.2d 397 (Colo. 1997), and Ahmad Bodaghi and State Board of Personnel, State of Colorado v. Department of Natural Resources, 995 P.2d 288 (Colo. 2000).

The Respondent is a bakery operating within the State of Colorado.

The Charging Party visited the Respondent's store on or about March 13, 2014, and was met by Owner John Spotz ("Spotz") (no religious affiliation). The Charging Party asked Spotz for a price quote on two cakes. The Charging Party requested that two sheet cakes be made to resemble open Bibles. Spotz informed the Charging Party that he "had done open Bibles and books many times and that they look amazing." The Charging Party then elaborated that on one cake, he wanted an image of two groomsmen, appearing before a cross, with a red "X" over the image. The Charging Party described the image as "a Ghostbusters symbol over the illustration to indicate that same-sex unions are un-Biblical and inappropriate." The Charging Party wanted Biblical verses on both cakes. The Charging Party showed Spotz the verses, which he had written down on a sheet of paper, and read them aloud. The verses were: "God hates sin. Psalm 45:7" "Homosexuality is a detestable sin. Leviticus 18:2" and on the cake with the image of groomsmen before a cross with a red "X", the verses: "God loves sinners" and "While we were yet sinners Christ died for us. Romans 5:8."

After the Charging Party made the request for the image of the groomsmen with the "X" over them, Spotz asked if the Charging Party was "kidding him." The Charging Party responded that his request was serious. Spotz then informed the Charging Party that he would have to decline the order as envisioned by the Charging Party because he deemed the requested cake "hateful." The Charging Party did not state to Spotz or the Division whether the cakes were intended for a specific purpose or event. The Charging Party then left the bakery, after Spotz declined to create the cakes as the Charging Party had requested.

The Charging Party maintains that he did not ask the Respondent, or its employees, to agree with or endorse the message of his envisioned cakes.

2

The Respondent avers that everyone, including the Charging Party, is welcome at its bakery, regardless of creed, race, sex, sexual orientation or disability. The Respondent states that its refusal to create the specific cake requested by the Charging Party was based on its policy "not [to] make a cake that is purposefully hateful and is intended to discriminate against any person's creed, race, sex, sexual orientation, disability, etc." The Respondent avers that the Charging Party's request was intended to "denigrate individuals of a specific sexual orientation."

The record reflects that the Respondent specializes in making unique and intricate cakes for various occasions. The Respondent's website provides "[it] can design cakes that look like people, cars, motorcycles, houses, magazines, and just about anything you can imagine." The Respondent's website also includes images of cakes it has created for customers in the past, including cakes made to look like books and magazines. The Respondent also makes wedding cakes for both opposite sex and same sex couples, as well cakes for the Christian holidays of Christmas and Easter.

The Respondent denies that it has ever denied services or goods to customers based on their creed and/or religion.

It is the Respondent's position that production of the cake requested by the Charging Party would run afoul of C.R.S. § 24-34-701, which provides that a place of public accommodation may not "publish . . . or display in any way manner, or shape by any means or method . . . any communication . . . of any kind, nature or description that is intended or calculated to discriminate or actually discriminates against any . . . sexual orientation . . . ."

Spotz states that the only time he recalls denying a cake request was when he received a phone call in which the caller asked if he could decorate a cake with "a sexy little school girl."

Comparative data reflects that the Respondent employs four persons, of whom one is Catholic, one is Jewish, and two have no religious affiliation. The record reflects that the Respondent creates at least one Christian themed cake per month, increasing to three or four Christian themed cakes in the month of December.

<u>Unequal Treatment</u>

To prevail on a claim of discriminatory denial of equal treatment, the evidence must show that: (1) the Charging Party is a member of a protected class; (2) the Charging Party sought the goods and services of the Respondent; (3) the Charging Party is otherwise a qualified recipient of the goods and services of the Respondent; and (4) the Charging Party was treated differently by the Respondent than other individuals not of his/her protected class.

The Charging Party is a member of a protected class based on his creed, Christianity. The Charging Party was qualified recipient of the goods and services of the Respondent. The Charging Party sought to order two cakes from the Respondent bearing Biblical verses and imagery indicating that same-sex marriage is, in his words "un-Biblical and inappropriate." The Charging Party alleges that the Respondent treated him differently than persons of non-Christian creed by "demeaning his beliefs." There is insufficient evidence to demonstrate the Respondent treated the Charging Party differently than other customers because of his creed.

3

The Charging Party's request was denied because he requested the cakes include language and images the Respondent deemed hateful.

## Denial of Service

To prevail on a claim of discriminatory denial of goods, services, benefits, or privileges, the evidence must show that: (1) the Charging Party is a member of a protected class (2) the Charging Party sought services or goods from the Respondent; (3) the Charging Party is otherwise a qualified recipient of the goods and services of the Respondent; (4) the Charging Party was denied services or goods by the Respondent; (5) under circumstances that give rise to an inference of unlawful discrimination based on a protected class.

The Charging Party is a member of a protected class based on his creed, Christianity. The Charging Party was a qualified recipient of the goods and services of the Respondent. The Charging Party sought to order two cakes from the Respondent bearing Biblical verses and imagery indicating that same-sex marriage is "un-Biblical and inappropriate." The Respondent denied the Charging Party's request to make cakes that included the requested Biblical verses and an image of groomsmen with a red "X" over them. The circumstances do not give rise to an inference that the Respondent denied the Charging Party goods or services based on his creed. Instead, the evidence demonstrates that the Respondent was prepared to create the cakes as described by the Charging Party, until he requested the specific imagery of the two groomsmen with a red "x" placed over image and the "hateful" Biblical verses. Additionally, the record reflects that the Respondent has produced cakes featuring Christian symbolism in the past, which were presumably ordered by Christian customers.

Based on the evidence contained above, I determine that the Respondent has not violated C.R.S. 24-34-601 (2), as re-enacted.

In accordance with C.R.S. 24-34-306(2)(b)(I)(A) and Rule 10.6(A)(1) of the Commission's Rules of Practice and Procedure, the Charging Party may appeal the dismissal of this case to the Commission within ten (10) days, as set forth in the enclosed form.

If the Charging Party wishes to file a civil action in a district court in this state, which action is based on the alleged discriminatory or unfair practice that was the subject of the charge filed with the Commission, such must be done:

    a.    Within ninety days of the mailing of this notice if no appeal is filed with the Colorado Civil Rights Commission or

    b.    Within ninety days of the mailing of the final notice of the Commission dismissing the appeal.

If Charging Party does not file an action within the time limits specified above, such action will be barred and no State District Court shall have jurisdiction to hear such action [CRS 24-34-306(I)].

On Behalf of the Colorado Civil Rights Division

_Jennifer McPherson_     3/24/2015
Jennifer McPherson, Interim Director     Date
Or Authorized Designee

5

**APP. 031**



**COLORADO**
Department of
Regulatory Agencies

Colorado Civil Rights Division

1560 Broadway Street, Suite 1050
Denver, CO 80202

June 30, 2015

William Jack
4987 E. Barrington Ave.
Castle Rock, CO 80104

Charge Number: P20140069X; William Jack vs. Azucar Sweet Shop and Bakery.

Dear Mr. Jack:

This letter is to inform you that the Colorado Civil Rights Commission has reviewed your appeal. The Commission has determined that there is insufficient basis to warrant further action and has affirmed the director's decision of no probable cause.

If you wish to file a civil action in a district court in this state, which action is based on the alleged discriminatory or unfair practice that was the subject of the charge filed with the Commission, you need to file within 90 days of the date of this mailing pursuant to CRS 24-34-306(2)(b)(I)(B & C).

Pursuant to CRS 24-34-306 (2) (b) (I) if you as the Charging Party do not file such an action within the time limits specified above, such action will be barred and no State District Court shall have jurisdiction to hear such action.

On behalf of the Commission

Rufina Hernández,
Director

cc: Azucar Sweet Shop and Bakery
    David Goldberg