

**COLORADO**
Department of
Regulatory Agencies
Colorado Civil Rights Division

1560 Broadway Street, Suite 1050
Denver, CO 80202

June 30, 2015

William Jack
4987 E. Barrington Ave.
Castle Rock, CO 80104

Charge Number: P20140071X; William Jack vs. Gateaux, Ltd.

Dear Mr. Jack:

This letter is to inform you that the Colorado Civil Rights Commission has reviewed your appeal. The Commission has determined that there is insufficient basis to warrant further action and has affirmed the director's decision of no probable cause.

If you wish to file a civil action in a district court in this state, which action is based on the alleged discriminatory or unfair practice that was the subject of the charge filed with the Commission, you need to file within 90 days of the date of this mailing pursuant to CRS 24-34-306(2)(b)(I)(B & C).

Pursuant to CRS 24-34-306 (2) (b) (I) if you as the Charging Party do not file such an action within the time limits specified above, such action will be barred and no State District Court shall have jurisdiction to hear such action.

On behalf of the Commission

Rufina Hernández,
Director

cc: Gateaux, Ltd.
    Kathleen Davia

1560 Broadway Street, Suite 1050, Denver, CO 80202   P 303.894.2997   F 303.894.7830 www.dora.colorado.gov/crd

**APP. 033**

 **COLORADO**
Department of
**Regulatory Agencies**
Colorado Civil Rights Division

1560 Broadway Street, Suite 1050
Denver, CO 80202

June 30, 2015

William Jack
4987 E. Barrington Ave.
Castle Rock, CO 80104

Charge Number: P20140070X; William Jack vs. Le Bakery Sensual, Inc.

Dear Mr. Jack:

This letter is to inform you that the Colorado Civil Rights Commission has reviewed your appeal. The Commission has determined that there is insufficient basis to warrant further action and has affirmed the director's decision of no probable cause.

If you wish to file a civil action in a district court in this state, which action is based on the alleged discriminatory or unfair practice that was the subject of the charge filed with the Commission, you need to file within 90 days of the date of this mailing pursuant to CRS 24-34-306(2)(b)(I)(B & C).

Pursuant to CRS 24-34-306 (2) (b) (I) if you as the Charging Party do not file such an action within the time limits specified above, such action will be barred and no State District Court shall have jurisdiction to hear such action.

On behalf of the Commission

Rufina Hernández,
Director

cc: Le Bakery Sensual, Inc.
    Jack Robinson

**APP. 034**

8/1/2016                                    Denver Art Museum Wedding - Brian Kraft Photography

**BRIAN KRAFT PHOTOGRAPHY**       +++ The Blog +++

## Denver Art Museum Wedding

Denver Art Museum Wedding. What a fun wedding this was. Brian and Adam live in Los Angeles, but planned their wedding for Denver at the C. Duncan Pavilion at the DAM (Denver Art Museum). Adam and Brian both work in the entertainment industry and wanted their wedding to feel a bit like one of the movie premier parties they attend in Hollywood.  That, in combination with the couple having such a sense of humor and having family and friends that really know how to have fun, it was a sure recipe for a great day to celebrate their love. There were so many great moments all day and night, but one of my favorites was over at the Hotel Monaco, where the two grooms got ready in a suite together. They got to spend time together beforehand, but when it came time to get dressed, they did so in separate rooms within the suite and revealed their wedding day outfits once dressed. It was a really special moment. So, now I'm going to get out of the way with less words and get on with the photos, but I just want to mention one more thing. It's a shame that I even feel the need to mention it– as it should be a non-issue, but as you enjoy these wedding photos of this wonderful same sex couple, please note how "right" everything is between these two and everyone that surrounds them, yet in the State of Colorado it is still not "right" (by law) to consider their union a "marriage," with the benefits that come with that. Fortunately, Adam and Brian live in California, where they are finally offered the rights they so deserve. Hopefully all states will follow suit as soon as possible. Ok, now on to the photos! Congratulations, guys!



APP. 035

SARAH ROSHAN WEDDING PHOTOGRAPHER

HOME • ABOUT • CONTACT

BLOG • INFO • GALLERIES

# WE BELIEVE

The mountains are the best place to get married. Followed by a beach on the ocean.

A bride is not complete without her groom. (or her bride or a groom without his groom) It is a day not just about one person, it is about the whole that you are about to make. The day is about connection. To each other, to the people you choose to celebrate this union with.

There doesn't always have to be one bride and one groom. We fully support and love our LGBT couples. We are so happy that the US government is finally recognizing you for the beautiful people you are.

In always loving graciously.

There are no rules for your wedding. Traditional to non traditional a wedding is what you make it because of what YOU believe in and how you envision it. There is no right or wrong way to do a wedding.

There are no accidents. The universe has a way of working it self out.

Dogs are often more loyal than a person. The uncomplicated love they have for you is the best thing ever. They are always welcome wherever you go, especially to your wedding or engagement session.

Romantic is more how you see the world than how you see your partner. They just happen to coincide.

Marriage is the most epic adventure. One that doesn't end until the day you die and one that is constantly challenging you and changing you into the person you were meant to be.

In carefree living and letting the life roll off your back.

APP. 036

HOME • ABOUT • CONTACT

BLOG • INFO • GALLERIES

SARAH ROSHAN WEDDING PHOTOGRAPHER

# MEET SARAH

I was born for the theatre, and the magic of getting lost in someone else's story.

I could live on Jelly Bellys... and perfectly salted margaritas.

I believe My cabin is the best place on earth. It is filled with family stories, memories of my Grandpa, fishing, hiking, and the best stargazing in the world.

I believe one voice is enough to change the world.

I believe hot chocolate and puppy snuggles could solve most the world's problems.

I thrive on afternoon naps. (Outside in a hammock, of course). And I love rain. period (Especially on a tin roof, thanks Nora.)

If I could Stitch Fix everything in my life, I would. I hate shopping but love clothes and pretty things for my home.

I believe that all true beauty lives in imperfection.

The feeling of the water over your waders and the cast of a fly rod is the epitome of relaxation to me. No distractions - just me, the water, and the fish.

I've been known to disappear into the mountain roads for entire afternoons. Just me, my Jeep and the most beautiful state on earth.

I could live in Chacos or hiking boots. Going barefoot always works too.

I believe all people deserve to be loved graciously.

I believe being wrapped in hand-crafted blankets and being hypnotized by a fire that is too-large is heaven on earth.

I believe love is best as an adventure, because surprises should always be shared.

I believe in falling in love, over and over. Every. Single. Day.

XO,
Sarah



HOME • ABOUT • CONTACT

SARAH BOSHAN WEDDING PHOTOGRAPHER

BLOG • INFO • FEATURED

## PHILLIP + GARY | CHAUTAUQUA ELOPEMENT | SAME-SEX WEDDING PHOTOGRAPHER

FEBRUARY 10, 2015

ELOPEMENTS, SAME-SEX WEDDINGS

After Colorado ruled that a ban on gay marriage was unconstitutional I had a wave of peace and just started to cry. This topic always is rooted so deep in what I believe nor only about gay marriage but the world. I grew up doing theatre and so, as the stereotype would have it about half of my male friends were gay and a decent amount of my female friends as well. It truly believe that our differences and hate are taught. I was never taught that same-sex couples love any different than a heterosexual couple and therefor my views on this subject have always been love is love. I stand for love period. I am so happy that our country is moving in a direction of less and less judgement and more and more equality and love for each other. We are all different. That is what makes us beautiful. How we love is all the same.

When I got a phone call for Phillip and Gary's elopement back in October, I was so excited! This was to be my first same-sex wedding since the law took effect. They are from Texas and were visiting friends and decided that since they were in Colorado they would make it official. I found myself tearing up behind my lens. This means so much to so many people. Something that I took for granted they were finally able to do. Reading the piece of paper that said marriage. All of it was magical and such sweet sweet people.

My favorite part may be the incorporation of Gary's birth son and all the super heroes. It was beautiful to see all their relationships and how their family was made and will continue to be made.

Colorado is not yet 6 months into allowing gay marriage so I am looking forward to many more weddings, and someday I hope that people won't even give it a second thought. Love is love after all.

**APP. 038**

8/1/2016                                     News | Castle Rock Colorado | Castlerocknewspress.net



0        NEWS (/NEWS/)              ENTERTAINMENT (/ENTERTAINMENT/)              VOICES (/VOICES/)

## Wedding photographer celebrates court ruling
'Huge step forward' seen in same-sex decision



(/uploads/original/1435431623_7797.jpg)

Anginet Page has been photographing same-sex wedding ceremonies for years. Courtesy photo

Posted Saturday, June 27, 2015 2:02 am

**Ashley Reimers (mailto:areimers@coloradocommunitymedia.com)**

As long as she can remember, Anginet Page said, she supported same-sex marriage rights. Her passion for marriage equality even led her to leave the Mormon church.

"I was raised LDS, and one of the main reasons I left the church was because they didn't support the right for people to love freely," she said. "And so my whole life has been geared towards having same-sex marriage be legalized. The fact that it has is incredible."

Page is a photojournalist and has been shooting weddings for over a decade, many of them same-sex ceremonies. She lives in Brighton, but works in the Denver metro area, along the Front Range and even internationally.

Upon hearing the news of the U.S. Supreme Court's ruling that legalized same-sex marriages across the United States, Page was overwhelmed with emotion. She said she never thought the day would come that all of her friends, regardless of their beliefs and regardless of how they love, could get married legally in all 50 states.

"It's a huge blessing to be part of the excitement and to be able to see this happen," said Page, holding back tears. "It's been a long time coming. It's one more step towards everybody truly understanding that love is pure and nonjudgmental."

Page, owner of Anginet Photography, is a member of EnGAYged Weddings, an LGBT wedding planning directory and forum for lesbian, gay, bisexual, transgender and straight couples. She said the organization has done an incredible job to rally around and support all couples.

Following the Supreme Court ruling, Page said she expects her business to get busier, which she welcomes with open arms.

"Just thinking about my friends who don't have to live in fear any longer is very exciting," Page said. "So many same-sex couples try to convince themselves that the paperwork doesn't matter, but it does. It's just a huge step forward."

### Keywords

gay marriage (/search_mode/keyword/browse.html?search_filter=gay marriage), Supreme Court (/search_mode/keyword/browse.html?search_filter= Supreme Court), Colorado (/search_mode/keyword/browse.html?search_filter= Colorado), Anginet Photography (/search_mode/keyword/browse.html?search_filter= Anginet Photography) (/search_mode/keyword/browse.html?search_filter=)

Tweet      Share 1          Share

### Comments

NO COMMENTS ON THIS STORY.   |   PLEASE LOG IN TO COMMENT BY CLICKING HERE (/LOGIN.HTML)



(http://rcm.ads.communityng.com/www/delivery/ck.php?
oaparams=2__bannerid=1272__zoneid=35__cb=db913cbf_oadest=http%3A%2F%2FLincolnMeadowsSeniorLiving.com)

THE LATEST

### News (/news/)



(/stories/Early-returns-show-Castle-Rock-mayor-likely-wont-be-recalled,231498)

**Recall fails, Castle Rock mayor remains in office (/stories/Early-returns-show-Castle-Rock-mayor-likely-wont-be-recalled,231498)**
TUESDAY, JULY 26

**Behavior changes may signal dementia onset (/stories/Behavior-changes-may-signal-dementia-onset,232744)**
YESTERDAY AT 12:16 PM

**Ranch resident launches nonprofit to combat human trafficking (/stories/Ranch-resident-launches-nonprofit-to-combat-human-trafficking,231449)**
MONDAY, JULY 25

**'I caught a Pikachu in her kitchen' (/stories/I-caught-a-Pikachu-in-her-kitchen,231044)**
MONDAY, JULY 25

### Sports (/sports/)

(/stories/Drivers-share-their-Bandimere-memories,231031)

**Drivers share their Bandimere memories (/stories/Drivers-share-their-Bandimere-memories,231031)**
MONDAY, JULY 25

**The Force is with the father (/stories/The-Force-is-with-the-father,231022)**
MONDAY, JULY 25

**APP. 039**



HOME | PORTFOLIO | CONTACT | MORE INFO. | BLOG CATEGORIES | BLOG ARCHIVES | fb | [          ] Search

## JEREMIE & JONATHAN'S WEDDING IN NEW ORLEANS – PICTURE PREVIEW

Posted in: Weddings



wedding reception at House of Blues in New Orleans

Jeremie & Jonathan recently celebrated their love with a beautiful ceremony at the Metropolitan Community Church followed by a reception at the House of Blues in the French Quarter.

We started with pictures of the wedding party in front of the church on Carrollton St., and we got even got lucky enough to have a streetcar stop for us to take some pictures in front of it. I loved their pastor's English accent & how he focused his sermon on how normal a gay union is, perhaps not popular, but certainly just as normal as any two people sharing their love & lives together. Throughout history gays have always been a part of reality, and always will be, its just unfortunate government & religion has not always recognized it. It was great to see that Jeremie & Jonathan's wedding was certainly full of lots of family & friends celebrating their love & bond.

After the wedding everyone jumped on a bus to the House of Blues downtown. Everyone danced & partied into the night with the awesome band, The Bucktown All Stars. Their cake & custom designed Mardi Gras beads were a perfect match to the antique New Orleans decor of the House of Blues. And the HOB's motto, "unity in diversity" couldn't have fit better. Thanks Jeremie & Jonathan for allowing me to be a part of your special event! Check out just a few of the shots from the wedding day below, much more to come!

HOME | PORTFOLIO | CONTACT | MORE INFO. | BLOG CATEGORIES | BLOG ARCHIVES | fb | [ Search ]

# DENVER PRIDEFEST WITH CO GAY WEDDINGS

Posted in: Special Events/ Documentary



2012 Denver Pridefest Pictures in Civic Center Park

## PRIDEFEST – COLORS, CULTURE, FASHION, LOVE

I am a strong believer that ALL should have the right to marry whomever he or she wants.

Other than for the art and the challenge, one of the reasons I became a wedding photographer is because I'm a lover...a sentimental romantic that has always "awed" when I see *any* two people in love. I have no enemies, I love everyone. Sure some have called me a naive idealistic hippie, but I *really* do believe love can change the world. And if someone wants to express their love to another person through a wedding, well they should have the right do get married, and get divorced, just like everyone else!

Not only am I a big supporter of gay rights...but also of brightly colored costumes, parades, and just having fun! So, on Sunday June 17th I was proud to be walking in support of CO gay weddings in the annual Denver Pridefest Parade. Wedding planner extraordinaire Mark of Events Unwrapped started CO Gay Weddings to help the gay and transgender community find LGBT friendly wedding professionals that don't discriminate on sexual orientation. The parade started early Sunday morning at Cheeseman Park, headed downtown



through Capitol Hill, and ended at Civic Center Park in the heart of the city. Pridefest went all weekend long, filling Civic Center Park with live music, community booths, and lots of colorful people and entertainment.

Play the slideshow below to see some of my pictures of the parade, the party, and lots of unique interesting people! And if you are looking for a photographer for your commitment ceremony or gay wedding, please contact me. Even though it may not be yet technically legal in Colorado, I would love to document your special celebration. Check out this gay wedding in New Orleans I photographed a couple years ago for some inspiration.

# CO WEDDING PHOTOGRAPHER: DENVER BOTANICAL GARDENS & TIVOLI

Posted in: Weddings

## ASHLEY & PAIGE'S FUN MODERN WEDDING AT DENVER BOTANIC GARDENS



sunset pictures in front of the Tivoli in downtown Denver

I knew after photographing Ashley & Paige's engagement session that these two would be laid back and a lot of fun to work with. You can check out their engagement pictures around downtown Denver here. And their wedding day was certainly just that. These two ladies got married at Denver Botanical Gardens last summer. We set up a first sight with the brides in the Tropical Conservatory, which was such a beautiful romantic moment it almost brought me to tears. The first sight allowed us to get a lot of their family and wedding party pictures out of the way, which is always a nice bonus on the wedding day. Then when it was time to walk down the aisle, they each walked up to the ceremony site with their fathers, coming from different sides of the garden. They pronounced their love in front of their family and closest friends in the "All American Selections Garden" and then afterwards we walked around the botanical gardens for more pictures.

We then all headed to the historic Tivoli building on the Auraria Campus in downtown Denver. We did more pictures with the wedding party around this historic landmark which was originally home to the Tivoli Brewing Company. And then it was time for the party to begin! Ashley & Paige rented out the Turnhalle in the Tivoli, a unique urban venue with brick walls, a wrap-around balcony, and great views of the Denver city skyline. They decorated the venue with their wedding colors of navy blue, mint green, and grey, and added modern DIY touches such as painted vases and table cards named after different parts of Denver. After they did their first dance they each danced with their father and then they swapped and danced with each other's dads, which was a great personal touch. The brides and all their guests certainly enjoyed a fun-filled party. Their friends and family got down on the dance floor, enjoyed the fun photo booth, playing corn hole, and choosing treats from the all green candy bar. And for their bouquet toss Ashley & Paige each tossed their bouquet of flowers to male and female single guests. It was fun non-traditional twist to the bouquet toss and gave people two chances to catch the bouquet. When it was time for the party to end the guests gathered outside for a fun sparkler send-off and the brides were whisked away in a bike buggy.

It was an honor to witness and be able to document the strong endearing love Ashley & Paige share. And I'm so proud of not only our state of Colorado, but the nation, for finally legalizing gay and lesbian marriages. All men and women should share the same rights that a legal marriage allows, from getting to file taxes together to being allowed to visit your spouse in severe hospital situations. Hopefully the rest of the world will soon follow. Love conquers all.

**APP. 042**



Department of Regulatory Agencies

John W. Hickenlooper
Governor

Barbara J. Kelley
Executive
Director

Division of Civil Rights
Steven Chavez
Director of Division of Civil Rights

1560 Broadway, Suite 1050
Denver, CO 80202
(303) 894-2997
(303) 894-7830 (fax)
(800) 262-4845 (toll free)

200 West "B" Street, Suite 234
Pueblo, CO 81003
(719) 542-1298
(303) 869-0498 (fax)

222 S. 6th Street, Suite 101
Grand Junction, CO 81505
(970) 248-7303
(970) 248-7304
(970) 242-1262 (fax)

http://www.dora.state.co.us/civil-rights

Charge No. P20130008X

Charlie Craig
1401 E. Girard Pl , #9-135
Englewood, CO 80113                     Charging Party

Masterpiece Cakeshop
3355 S. Wadsworth Blvd.
Lakewood, CO 80227                      Respondent

## DETERMINATION

Under the authority vested in me by C.R.S. 24-34-306 (2), I conclude from our investigation that there is sufficient evidence to support the Charging Party's claim of denial of full and equal enjoyment of a place of public accommodation based on his sexual orientation. As such, a Probable Cause determination hereby is issued.

The Respondent is a place of public accommodation within the meaning of C.R.S. 24-34-601 (1), as re-enacted, and the timeliness and all other jurisdictional requirements pursuant to Title 24, Article 34, Parts 3 and 6 have been met.

The Charging Party alleges that on or about July 19, 2012, the Respondent, a place of public accommodation, denied him the full and equal enjoyment of a place of accommodation on the basis of his sexual orientation (gay). The Respondent avers that its standard business practice is to deny service to same-sex couples based on religious beliefs.

The legal framework under which civil rights matters are examined is as follows: The initial burden of proof rests on the Charging Party to prove his/her case. Each key or essential element ("prima facie") of the particular claim must be proven, through a majority ("preponderance") of the evidence. If the Charging Party meets this initial burden of proof, then the Respondent has the next burden of explaining, with sufficient clarity, a business justification for the action taken. This is in response to the specific alleged action named in the charge. In addition, the Respondent has the burden of production of sufficient documents and other information requested by the administrative agency during the civil rights investigation. If the Respondent offers a legitimate business reason, then the burden once again shifts back to the Charging Party to prove that this proffered legitimate business reason is a pretext for discrimination. At this stage, the Charging Party must prove, again through sufficient evidence, that the true and primary motive for the Respondent's actions is unlawful discrimination.

**APP. 043**

"Unlawful discrimination" means that which is primarily based on the Charging Party's asserted protected group or status. The Respondent's stated reasons for its actions are presumed to be true, unless and until the Charging Party, again through competent evidence found in this investigation, adequately shows that the Respondent's reason is pretext; is not to be believed; and that the Charging Party's protected status was the main reason for the adverse action taken by the Respondent. The Charging Party does not need to submit additional evidence, in response to the Respondent's position, but the available evidence must be legally sufficient so that a reasonable person would find that the Respondent intended to discriminate against the Charging Party because of his/her protected civil rights status. Colorado Civil Rights Commission v. Big O Tires, Inc., 940 P.2d 397 (Colo. 1997), and Ahmad Bodaghi and State Board of Personnel, State of Colorado v. Department of Natural Resources, 995 P.2d 288 (Colo. 2000).

The Respondent is a bakery that provides cakes and baked goods to the public, and operates within the state of Colorado.

The Charging Party states that on or about July 19, 2012, he visited the Respondent's place of business for the purpose of ordering a wedding cake with his significant other, David Mullins ("Mullins"), and his mother Deborah Munn ("Munn"). The Charging Party and his partner planned to travel to Massachusetts to marry and intended to have a wedding reception in Denver upon their return. The Charging Party and his significant other were attended to by the Respondent's Owner, Jack Phillips ("Phillips") The Charging Party asserts that while viewing photos of the available wedding cakes, he informed the owner that the cake was for him and his significant other. The Charging Party states that in response, Phillips replied that his standard business practice is to deny service to same-sex couples based on his religious beliefs. The Charging Party states that based on Phillips response and refusal to provide service, the group left the Respondent's place of business.

The Charging Party states that on July 20, 2012, in an effort to obtain more information as to why her son was refused service, Munn telephoned Phillips. During this telephone conversation, Phillips stated that "because he is a Christian, he was opposed to making cakes for same-sex weddings for any same-sex couples."

The record reflects that Phillips subsequently commented to various news organizations, that he had turned approximately six same-sex couples away for this same reason. The Respondent has not argued that it is a business that is principally used for religious purposes.

Respondent Owner Jack Phillips ("Phillips") states that on July 19, 2012, the Charging Party, Mullins, and Munn visited his bakery and stated that they wished to purchase a wedding cake. Phillips asserts that he informed the Charging Party that he does not create wedding cakes for same-sex weddings. According to Phillips, this interaction lasted no more than 20 seconds. Phillips states that the Charging Party, Mullins, and Munn subsequently exited the Respondent's place of business. The Respondents avers that on July 20, 2012, during a conversation with Munn, he informed her that he refused to create a wedding cake for her son based on his religious beliefs and because Colorado does not recognize same-sex marriages.

The Respondent states that the aforementioned situation has occurred on approximately five or six past occasions. The Respondent contends that in those situations, he advised potential customers that he could not create a cake for a same-sex wedding ceremony or reception based on his religious beliefs. Respondent owner Phillips adds that he told the Charging Party and his

2

partner that he could create birthday cakes, shower cakes, or any other cakes for them. The Respondent asserts that this decision rested in part based on the fact that the state of Colorado does not recognize same sex marriages.

In an affidavit provided by the Charging Party during the Division's investigation, Stephanie Schmalz ("S. Schmalz") states that on January 16, 2012, she and her partner Jeanine Schmalz ("J. Schmalz") visited the Respondent's place of business to purchase cupcakes for their family commitment ceremony. S. Schmalz states that when she confirmed that the cupcakes were to be part of a celebration for her and her partner, the Respondent's female representative stated that she would not be able to place the order because "the Respondent had a policy of not selling baked goods to same-sex couples for this type of event." Following her departure from the Respondent's place of business, S. Schmalz telephoned the Respondent to clarify its policies. During this telephone conversation, S. Schmalz learned that the female representative was an owner of the business and that it was the Respondent's stated policy not to provide cakes or other baked goods to same-sex couples for wedding-type celebrations.

S. Schmalz subsequently posted a review on the website Yelp describing her experiences with the Respondent. An individual identifying himself as "Jack P. of Masterpiece Cakeshop" posted a reply to Schmalz's review, in which he stated that "...a wedding for [gays and lesbians] is something that, so far, not even the State of Colorado will allow" and did not dispute that he refuses to serve gay and lesbian couples planning weddings or commitment celebrations.

S. Schmalz states that after learning of the Respondent's policy, she later contacted the Respondent's place of business and spoke to Phillips. During this conversation, S. Schmalz claimed to be a dog breeder and stated that she planned to host a "dog wedding" between one of her dogs and a neighbor's dog. Phillips did not object to preparing a cake for S. Schmalz's "dog wedding."

In an affidavit provided by the Charging Party during the Division's investigation, Samantha Saggio ("Saggio") states that on May 19, 2012, she visited the Respondent's place of business with her partner, Shana Chavez ("Chavez") to look at cakes for their planned commitment ceremony. Saggio states that upon learning that the cake would be for the two women, the Respondent's female representative stated that the Respondent would be unable to provide a cake because "according to the company, Saggio and Chavez were doing something 'illegal.'"

In an affidavit provided by the Charging Party during the Division's investigation, Katie Allen ("Allen") and Alison Sandlin ("Sandlin") state that on August 6, 2005, they visited the Respondent's place of business to taste cakes for their planned commitment ceremony. Allen states that upon learning of the women's intent to wed one another, the Respondent's female representative stated, "We can't do it then" and explained that the Respondent had established a policy of not taking cake orders for same-sex weddings, "because the owners believed in the word of Jesus."

Allen and Sandlin state that they later spoke directly with Phillips. During this conversation, Phillips stated that "he is not willing to make a cake for a same-sex commitment ceremony, just as he would not be willing to make a pedophile cake."

3

**Discriminatory Denial of Full and Equal Enjoyment of Services – Sexual Orientation (gay)**

To prevail on a claim of discriminatory denial of full and equal enjoyment of services, the evidence must show that: (1) the Charging Party is a member of a protected class; (2) the Charging Party sought goods, services, benefits or privileges from the Respondent; (3) the Charging Party is otherwise a qualified recipient of the goods and services of the Respondent; (4) the Charging Party was denied a type of service usually offered by the Respondent; (5) under circumstances that give rise to an inference of unlawful discrimination based on a protected class.

The Charging Party is a member of a protected class based on his sexual orientation.  The Charging Party visited the Respondent's place of business for the purpose of ordering a wedding cake for his wedding reception.  The evidence indicates that the Charging Party and his partner were otherwise qualified to receive services or goods from the Respondent's bakery.  During this visit, the Respondent informed the Charging Party that his standard business practice is to deny baking wedding cakes to same-sex couples based on his religious beliefs.  The evidence shows that on multiple occasions, the Respondent turned away potential customers on the basis of their sexual orientation, stating that he could not create a cake for a same-sex wedding ceremony or reception based on his religious beliefs.  The Respondent's representatives stated that it would be unable to provide a cake because "according to the company, [the potential same-sex customers] were doing something 'illegal,'" and "because the owners believed in the word of Jesus."  The Respondent indicates it will bake other goods for same sex couples such as birthday cakes, shower cakes or any other type of cake, but not a wedding cake.   As such, the evidence shows that the Respondent refused to allow the Charging Party and his partner to patronize its business in order to purchase a wedding cake under circumstances that give rise to an inference of unlawful discrimination based on the Charging Party's sexual orientation.

Based on the evidence contained above, I determine that the Respondent has violated C.R.S. 24-34-402, as re-enacted.

In accordance with C.R.S. 24-34-306(2)(b)(II), as re-enacted, the Parties hereby are ordered by the Director to proceed to attempt amicable resolution of these charges by compulsory mediation.  The Parties will be contacted by the agency to schedule this process.

On Behalf of the Colorado Civil Rights Division

_Jennifer McManan_                 3/5/2013

Steven Chavez, Director            Date
or Authorized Designee

**APP. 046**

## CERTIFICATE OF MAILING

This is to certify that on  March 7, 2013  a true and exact copy of the Closing
Action of the above-referenced charge was deposited in the United States mail,
postage prepaid, addressed to the parties listed below.

CCRD #
P20130008X

Charlie Craig
1401 E. Girard Pl, #9-135
ENGLEWOOD, CO 80113

Sara Rich
ACLU Foundation of Colorado
303 E. 17th Ave., Ste. 350
DENVER, CO 80203

Masterpiece Cakeshop
3355 S. Wadsworth Boulevard
LAKEWOOD, CO 80227

Nicolle Martin
7175 W. Jefferson Ave., Ste 4000
Lakewood, CO 80235

Lauren Wilkins
**Colorado Department of
Regulatory Agencies**
Division of Civil Rights
1560 Broadway, Suite 1050
Denver, CO 80202
P 303.894.2997
www.dora.state.co.us

**APP. 047**



**Department of Regulatory Agencies**

Division of Civil Rights
Steven Chavez
Director of Division of Civil Rights

1560 Broadway, Suite 1050
Denver, CO 80202
(303) 894-2997
(303) 894-7830 (fax)
(800) 262-4845 (toll free)
200 West "B" Street, Suite 214
Pueblo CO 81003
(719) 542 1298
(303) 869 0498 (fax)
222 S. 6th Street, Suite 301
Grand Junction, CO 81505
(970) 248-7303
(970) 248-7304
(970) 242 1262 (fax)
http://www.dora.state.co.us/civil-rights/

John W. Hickenlooper
Governor

Barbara J Kelley
Executive
Director

Charge No. P20130007X

David Mullins
1401 E. Girard Pl., #9-135
Englewood, CO 80113                     Charging Party

Masterpiece Cakeshop
3355 S. Wadsworth Blvd.
Lakewood, CO 80227                      Respondent

<u>DETERMINATION</u>

Under the authority vested in me by C R S. 24-34-306 (2), I conclude from our investigation that there is sufficient evidence to support the Charging Party's claim of denial of full and equal enjoyment of a place of public accommodation based on his sexual orientation   As such, a **Probable Cause** determination hereby is issued.

The Respondent is a place of public accommodation within the meaning of C.R.S. 24-34-601 (1), as re-enacted, and the timeliness and all other jurisdictional requirements pursuant to Title 24, Article 34, Parts 3 and 6 have been met.

The Charging Party alleges that on or about July 19, 2012, the Respondent, a place of public accommodation, denied him the full and equal enjoyment of a place of accommodation on the basis of his sexual orientation (gay).  The Respondent avers that its standard business practice is to deny service to same-sex couples based on religious beliefs.

The legal framework under which civil rights matters are examined is as follows:  The initial burden of proof rests on the Charging Party to prove his/her case.  Each key or essential element ("prima facie") of the particular claim must be proven, through a majority ("preponderance") of the evidence.  If the Charging Party meets this initial burden of proof, then the Respondent has the next burden of explaining, with sufficient clarity, a business justification for the action taken.  This is in response to the specific alleged action named in the charge.  In addition, the Respondent has the burden of production of sufficient documents and other information requested by the administrative agency during the civil rights investigation.  If the Respondent offers a legitimate business reason, then the burden once again shifts back to the Charging Party to prove that this proffered legitimate business reason is a pretext for discrimination.  At this stage, the Charging Party must prove, again through sufficient evidence, that the true and primary motive for the Respondent's actions is unlawful discrimination.

**APP. 048**

"Unlawful discrimination" means that which is primarily based on the Charging Party's asserted protected group or status  The Respondent's stated reasons for its actions are presumed to be true, unless and until the Charging Party, again through competent evidence found in this investigation, adequately shows that the Respondent's reason is pretext; is not to be believed; and that the Charging Party's protected status was the main reason for the adverse action taken by the Respondent.  The Charging Party does not need to submit additional evidence, in response to the Respondent's position, but the available evidence must be legally sufficient so that a reasonable person would find that the Respondent intended to discriminate against the Charging Party because of his/her protected civil rights status.  Colorado Civil Rights Commission v. Big O Tires, Inc., 940 P.2d 397 (Colo. 1997), and Ahmad Bodaghi and State Board of Personnel, State of Colorado v. Department of Natural Resources, 995 P.2d 288 (Colo. 2000).

The Respondent is a bakery that provides cakes and baked goods to the public, and operates within the state of Colorado.

The Charging Party states that on or about July 19, 2012, he visited the Respondent's place of business for the purpose of ordering a wedding cake with his significant other, Charlie Craig ("Craig"), and his mother Deborah Munn ("Munn").  The Charging Party and his partner planned to travel to Massachusetts to marry and intended to have a wedding reception in Denver upon their return.  The Charging Party and his significant other were attended to by the Respondent's Owner, Jack Phillips ("Phillips").  The Charging Party asserts that while viewing photos of the available wedding cakes, he informed the owner that the cake was for him and his significant other.  The Charging Party states that in response, Phillips replied that his standard business practice is to deny service to same-sex couples based on his religious beliefs.  The Charging Party states that based on Phillips response and refusal to provide service, the group left the Respondent's place of business.

The Charging Party states that on July 20, 2012, in an effort to obtain more information as to why her son was refused service, Munn telephoned Phillips.  During this telephone conversation, Phillips stated that "because he is a Christian, he was opposed to making cakes for same-sex weddings for any same-sex couples."

The record reflects that Phillips subsequently commented to various news organizations, that he had turned approximately six same-sex couples away for this same reason.  The Respondent has not argued that it is a business that is principally used for religious purposes.

Respondent Owner Jack Phillips ("Phillips") states that on July 19, 2012, the Charging Party, Craig, and Munn visited his bakery and stated that they wished to purchase a wedding cake. Phillips asserts that he informed the Charging Party that he does not create wedding cakes for same-sex weddings.  According to Phillips, this interaction lasted no more than 20 seconds. Phillips states that the Charging Party, Craig, and Munn subsequently exited the Respondent's place of business.  The Respondents avers that on July 20, 2012, during a conversation with Munn, he informed her that he refused to create a wedding cake for her son based on his religious beliefs and because Colorado does not recognize same-sex marriages.

The Respondent states that the aforementioned situation has occurred on approximately five or six past occasions.  The Respondent contends that in those situations, he advised potential customers that he could not create a cake for a same-sex wedding ceremony or reception based on his religious beliefs.  He adds that he told the Charging Party and his partner that he "could

2

create birthday cakes, shower cakes, or any other cakes." The Respondent asserts that this decision rested in part based on the fact that the state of Colorado does not recognize same sex marriages.

In an affidavit provided by the Charging Party during the Division's investigation, Stephanie Schmalz ("S. Schmalz") states that on January 16, 2012, she and her partner Jeanine Schmalz ("J. Schmalz") visited the Respondent's place of business to purchase cupcakes for their family commitment ceremony. S. Schmalz states that when she confirmed that the cupcakes were to be part of a celebration for her and her partner, the Respondent's female representative stated that she would not be able to place the order because "the Respondent had a policy of not selling baked goods to same-sex couples for this type of event." Following her departure from the Respondent's place of business, S. Schmalz telephoned the Respondent to clarify its policies. During this telephone conversation, S. Schmalz learned that the female representative was an owner of the business and that it was the Respondent's stated policy not to provide cakes or other baked goods to same-sex couples for wedding-type celebrations.

S. Schmalz subsequently posted a review on the website Yelp describing her experiences with the Respondent. An individual identifying himself as "Jack P. of Masterpiece Cakeshop" posted a reply to Schmalz's review, in which he stated that ".. a wedding for [gays and lesbians] is something that, so far, not even the State of Colorado will allow" and did not dispute that he refuses to serve gay and lesbian couples planning weddings or commitment celebrations.

S. Schmalz states that after learning of the Respondent's policy, she later contacted the Respondent's place of business and spoke to Phillips. During this conversation, S. Schmalz claimed to be a dog breeder and stated that she planned to host a "dog wedding" between one of her dogs and a neighbor's dog. Phillips did not object to preparing a cake for S. Schmalz's "dog wedding."

In an affidavit provided by the Charging Party during the Division's investigation, Samantha Saggio ("Saggio") states that on May 19, 2012, she visited the Respondent's place of business with her partner, Shana Chavez ("Chavez") to look at cakes for their planned ceremony. Saggio states that upon learning that the cake would be for the two women, the Respondent's female representative stated that the Respondent would be unable to provide a cake because "according to the company, Saggio and Chavez were doing something 'illegal.'"

In an affidavit provided by the Charging Party during the Division's investigation, Katie Allen ("Allen") and Alison Sandlin ("Sandlin") state that on August 6, 2005, they visited the Respondent's place of business to taste cakes for their planned commitment ceremony. Allen states that upon learning of the women's intent to wed one another, the Respondent's female representative stated, "We can't do it then" and explained that the Respondent had established a policy of not taking cake orders for same-sex weddings, "because the owners believed in the word of Jesus."

Allen and Sandlin state that they later spoke directly with Phillips. During this conversation, Phillips stated that "he is not willing to make a cake for a same-sex commitment ceremony, just as he would not be willing to make a pedophile cake."

3

**APP. 050**

**Discriminatory Denial of Full and Equal Enjoyment of Services – Sexual Orientation (gay)**

To prevail on a claim of discriminatory denial of full and equal enjoyment of services, the evidence must show that: (1) the Charging Party is a member of a protected class; (2) the Charging Party sought goods, services, benefits or privileges from the Respondent; (3) the Charging Party is otherwise a qualified recipient of the goods and services of the Respondent; (4) the Charging Party was denied a type of service usually offered by the Respondent; (5) under circumstances that give rise to an inference of unlawful discrimination based on a protected class.

The Charging Party is a member of a protected class based on his sexual orientation. The Charging Party visited the Respondent's place of business for the purpose of ordering a wedding cake for his wedding reception. The evidence indicates that the Charging Party and his partner were otherwise qualified to receive services or goods from the Respondent's bakery. During this visit, the Respondent informed the Charging Party that his standard business practice is to deny baking wedding cakes to same-sex couples based on his religious beliefs. The evidence shows that on multiple occasions, the Respondent turned away potential customers on the basis of their sexual orientation, stating that he could not create a cake for a same-sex wedding ceremony or reception based on his religious beliefs. The Respondent's representatives stated that it would be unable to provide a cake because "according to the company, [the potential same-sex customers] were doing something 'illegal,'" and "because the owners believed in the word of Jesus." The Respondent indicates it will bake other goods for same sex couples such as birthday cakes, shower cakes or any other type of cake, but not a wedding cake. As such, the evidence shows that the Respondent refused to allow the Charging Party and his partner to patronize its business in order to purchase a wedding cake under circumstances that give rise to an inference of unlawful discrimination based on the Charging Party's sexual orientation.

Based on the evidence contained above, I determine that the Respondent has violated C.R.S. 24-34-402, as re-enacted

In accordance with C.R.S. 24-34-306(2)(b)(II), as re-enacted, the Parties hereby are ordered by the Director to proceed to attempt amicable resolution of these charges by compulsory mediation. The Parties will be contacted by the agency to schedule this process

On Behalf of the Colorado Civil Rights Division

_Jnnifis Mfurn_                    3/5/2013

Steven Chavez, Director                 Date
of Authorized Designee

4

**APP. 051**

# CERTIFICATE OF MAILING

This is to certify that on __March 7, 2013__ a true and exact copy of the Closing Action of the above-referenced charge was deposited in the United States mail, postage prepaid, addressed to the parties listed below.

CCRD #
P20130007X

David Mullins
1401 E. Girard Pl, #9-135
ENGLEWOOD, CO 80113

Sara Rich
ACLU Foundation of Colorado
303 E. 17th Ave., Ste. 350
DENVER, CO 80203

Masterpiece Cakeshop
3355 S. Wadsworth Boulevard
LAKEWOOD, CO 80227

Nicolle Martin
7175 W. Jefferson Ave., Ste 4000
Lakewood, CO 80235

Lauren Wilkins
**Colorado Department of
Regulatory Agencies**
Division of Civil Rights
1560 Broadway, Suite 1050
Denver, CO 80202
P 303.894.2997
www.dora.state.co.us

**APP. 052**