IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02372-MSK-CBS

303 CREATIVE LLC, a limited liability company; and
LORIE SMITH,

      Plaintiffs,

v.

AUBREY ELENIS, Director of the Colorado Civil Rights
Division, in her official capacity;
ANTHONY ARAGON, ULYSSES J. CHANEY,
MIGUEL "MICHAEL" RENE ELIAS, CAROL FABRIZIO,
HEIDI HESS, RITA LEWIS, and
JESSICA POCOCK, as members of the Colorado Civil Rights
Commission, in their official capacities, and
CYNTHIA H. COFFMAN, Colorado Attorney General, in her official capacity;

      Defendants.

---

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [DOC. NO. 6]

---

Defendants Aubrey Elenis, Anthony Aragon, Ulysses J. Chaney, Miguel Rene Elias, Carol Fabrizio, Heidi Hess, Rita Lewis, Jessica Pocock, and Cynthia H. Coffman (collectively "Defendants"), by and through their undersigned counsel, submit their Response to Plaintiffs' Motion For Preliminary Injunction [Doc. No. 6]. In support thereof, Defendants state as follows:

## I.   INTRODUCTION

The right to marry is a fundamental right, guaranteed to same-sex couples under the Due Process and Equal Protection Clauses of the Fourteenth Amendment. *See Obergefell v. Hodges*, 135 S. Ct. 2584, 2604 (2015).

Plaintiffs, however, seek the Court's permission to discriminate against same-sex couples in services provided to all other members of the general public, in violation of Colorado's Anti-discrimination Act (CADA).

For reasons discussed below, Defendants request that this Honorable Court deny Plaintiffs' request for preliminary injunction in its entirety.

## II.   BACKGROUND

### A.  Colorado's Public Accommodation Law.

Section 24-34-601(2)(a), of CADA, reads in pertinent part,

> It is a discriminatory practice and unlawful for a person, directly or indirectly, to refuse, withhold from, or deny to an individual or a group, because of . . . sexual orientation . . . the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation . . . .

See § 24-34-601(2)(a), C.R.S. (2016) (CADA also prohibits discrimination on the basis of disability, race, creed, color, sex, marital status, national origin, and ancestry).

"Sexual orientation" was added to the public accommodation law in May 2008. See Senate Bill 08-200, signed by the Governor on May 29, 2008.  CADA defines "sexual orientation" as "an individual's orientation toward heterosexuality, homosexuality, bisexuality, or transgender status or another individual's perception thereof." § 24-34-301(7), C.R.S. (2016).

Further, a place of public accommodation means in relevant part, "any place of business engaged in any sales to the public and any place offering services, facilities, privileges, advantages, or accommodations to the public including but not

limited to a business offering wholesale or retail sales to the public . . . ." § 24-34-601(1), C.R.S. (2016).

B. The *Masterpiece Cakeshop* Case.

*Masterpiece Cakeshop* involves a baker, Jack Phillips ("Phillips"), who refused to bake a wedding cake for a same-sex couple based on his Christian beliefs. *Craig v. Masterpiece Cakeshop, Inc.*, 370 P.3d 272, 277 (Colo. App. 2015); [Doc. No. 1 ¶¶64-65]. The couple filed a charge of discrimination with the Colorado Civil Rights Division ("CCRD") alleging discrimination based on sexual orientation under CADA. *Id.* at 278. The CCRD conducted an investigation and issued a notice finding probable cause to credit the discrimination allegation. *Id.* A complaint was filed and an Administrative Law Judge issued a decision finding that Mr. Phillips's refusal of service was a violation of CADA. *Id.* On review the Colorado Civil Rights Commission ("CCRC") affirmed the order, and on appeal, the Colorado Court of Appeals affirmed the CCRC's order. *Id.* at 277-78.

The Colorado Supreme Court denied Phillips' writ of certiorari on April 25, 2016. *Masterpiece Cakeshop, Inc. v. Colorado Civil Rights Comm'n,* No. 15SC738 (Colo. Apr. 25, 2016). On July 22, 2016, Phillips filed a petition for writ of certiorari with the United States Supreme Court. Phillips and Masterpiece Cakeshop are represented by Alliance Defending Freedom ("ADF"), the same firm representing Plaintiffs in the instant matter. The question presented in the Petition is as follows:

> Whether applying Colorado's public accommodations law to compel Phillips to create expression that violates his sincerely held religious beliefs about marriage violates the Free Speech or Free Exercise Clauses of the First Amendment.

### C. 303 Creative LLC And Lorie Smith.

Plaintiff 303 Creative LLC and its sole member-owner, Plaintiff Lorie Smith, have been operating a business in Colorado that provides services to the public since February 2012. [Doc. No. 1 ¶104].[1] Plaintiffs would like to expand the business to design wedding websites; however, that service is not yet available to the public. [Doc. No. 1 ¶¶ 155-57]. Plaintiffs want to refuse this service to same-sex couples. [Doc. No. 1, ¶¶ 144, 172-75, 219].

Plaintiffs claim that CADA prevents them from expressing their personal religious belief that marriage is only between one man and one woman because it compels them to offer same-sex couples the same services it offers opposite sex couples. [Doc. No. 1, ¶¶ 9-12]. Plaintiffs also claim that Colorado's public accommodation law violates their freedom of expressive association because it forces them to associate with same sex-couples. [Doc. No. 1, ¶¶ 246-47].

---

[1] Plaintiff 303 Creative LLC was formed in 2012. *See* Colorado Secretary of State's business database; *see also* Fed. R. Evid. 201(b); *Llewellyn v. Allstate Home Loans, Inc.,* No. 08-cv-00179-WJM-KLM, 2011 U.S. Dist. LEXIS 68931, 2011 WL 2533572, at *1 & n.2 (D. Colo. June 27, 2011) (taking judicial notice of records found on the Colorado Secretary of State's website).

### III.   PLAINTIFFS FAIL TO DEMONSTRATE THE ELEMENTS REQUIRED FOR ENTRY OF A PRELIMINARY INJUNCTION

#### A.   Federal Rule of Civil Procedure 65 And Legal Standards.

The purpose of a preliminary injunction is to preserve the status quo pending a final decision on the merits. *Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992). Because a preliminary injunction is an extraordinary remedy, Plaintiffs' right to relief must be clear and unequivocal. *Pinson v. Pacheco*, 2010 U.S. App. LEXIS 20813, at *5 (10th Cir. Oct. 7, 2010) (citing *SCFCIL, Inc. v. Visa USA, Inc.*, 936 F. 2d 1096, 1098 (10th Cir. 1991)).

To obtain a preliminary injunction pursuant to Fed. R. Civ. P. 65, Plaintiffs must establish: (1) a likelihood of success on the merits; (2) a likelihood that Plaintiffs will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in Plaintiffs' favor; and (4) that the injunction is in the public interest.  *See Roda Drilling v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citation omitted).  "It is the movant's burden to establish that each of these factors tips in his or her favor." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1188-89 (10th Cir. 2003).

Preliminary injunctions that alter the status quo, mandatory preliminary injunctions, or preliminary injunctions that give a movant all the relief it would be entitled to after prevailing at trial are disfavored. *See O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc), *aff'd and remanded*, 546 U.S. 418 (2006). As such, a movant seeking such an injunction must make a heightened showing of the four factors. *Roda Drilling,* 552

F.3d at 1209.

Plaintiffs fail to satisfy their heavy burden of demonstrating to this Court that Defendants should be enjoined.

### B.  Plaintiffs Are Unlikely To Succeed On The Merits.

#### 1.  Plaintiffs' Claims Are Not Justiciable.

Defendants moved to dismiss Plaintiffs' Verified Complaint for Declaratory and Injunctive Relief ("Complaint") [Doc. No. 1] under F.R.C.P. 12(b)(1) for lack of standing.  [Doc. No. 37, at pp. 5-7].  Defendants also moved to dismiss on abstention grounds in light of the *Masterpiece Cakeshop* case and Colorado's compelling interest in eliminating discrimination.  [*Id.* at pp. 8-13].  Defendants also moved to dismiss Plaintiffs' Complaint for failure to state a claim under F.R.C.P. 12(b)(6) and improper pleading under F.R.C.P. 8(a).  [*Id.* at pp. 13-21].  Defendants, therefore, incorporate by reference their motion to dismiss.

#### 2.  Courts Have Unanimously Rejected Near Identical Claims Raised By Similar Plaintiffs.

Plaintiff Smith is not the first vendor to assert her religious beliefs as a reason to discriminate against same-sex couples.  The past couple of years, several plaintiffs have filed near identical lawsuits around the country, in an effort to create an issue where none exists.  In each instance, they have failed.[2]

- In *Elane Photography, LLC v. Willock*, 309 P.3d 53 (N.M. 2013), a photographer refused to provide wedding photography services for a same-sex couple's wedding.  ADF argued in that case that New Mexico's antidiscrimination law violated the plaintiff's First Amendment right to freedom of speech and religion.  *Id.* at 60.  The New Mexico

---

[2] ADF represented or represents plaintiffs in each of these lawsuits.

Supreme Court rejected ADF's challenge to the state's antidiscrimination law. *Id.* at 59. The United States Supreme Court unanimously rejected ADF's petition for writ of certiorari on April 7, 2014. *See Elane Photography, LLC v. Willock*, 134 S. Ct. 1787 (2014).

- In *Gifford v. McCarthy*, 137 A.D. 3d 30 (N.Y. App. Div. 2016), a venue owner refused to rent a venue for a same-sex couple's wedding. ADF argued in that case that New York's human rights law violated the plaintiff's First Amendment right to freedom of speech and religion. *Id.* at 38-42. The New York appeals court rejected ADF's challenges to its antidiscrimination law. *Id.*

- In *Washington v. Arlene's Flowers, Inc.*, 2015 WL 720213 (Wash. Sup. Ct. Feb. 18, 2015), a florist refused to provide flower arrangements for a same-sex couple's wedding. ADF argued in that case that Washington State's antidiscrimination law relating to trade and commerce violated the First Amendment right to freedom of speech, association, and religion. The Washington court rejected ADF's challenges to the state's antidiscrimination law. *Id.* ADF has appealed to Washington State's Supreme Court.

- As discussed above, in *Craig v. Masterpiece Cakeshop, Inc.*, 370 P.3d 272 (Colo. App. 2015), a baker refused to sell a wedding cake to a same-sex couple for their wedding. ADF argued in that case that Colorado's antidiscrimination law violated the plaintiff's First Amendment freedom of speech and religion. *Id.* at 285-94. The Colorado Court of Appeals rejected ADF's challenges. ADF filed a petition for writ of certiorari with the United States Supreme Court, *Masterpiece Cakeshop, Inc. v. Colorado Civil Rights Commission, et al.*, No. 16-111 on July 22, 2016, which is pending. [Doc. No. 5].

- Most recently, in *Brush & Nib Studio, LC v. City of Phoenix*, CV 2016-052251, (Superior Court of Arizona, Maricopa County, Sept. 16, 2016), a paper-goods vendor that makes items like thank-you cards, prints, and wedding invitations wanted to refuse these services to same-sex couples who were getting married. ADF argued that the City of Phoenix should be enjoined from enforcing its antidiscrimination law on the grounds that the law violated the First Amendment right to freedom of speech and religion. *Id.* The court

rejected ADF's challenges to the City's antidiscrimination law. *Id.*   ADF has appealed to Arizona state's appellate court.[3]

### 3. Plaintiffs' First Amendment Claims Fail Because CADA Does Not Compel A Particular Type of Speech Or Association.

Plaintiffs allege that CADA violates their First Amendment freedoms of speech, press, and expressive association.  [Doc. No. 7, at p. 10].  In each instance, however, Plaintiffs cannot succeed on the merits.

#### a. CADA Does Not Compel Or Restrict Plaintiffs Speech.

Plaintiffs allege that CADA forces them to create wedding websites for same-sex couples in opposition to Plaintiffs' personal religious beliefs, which is that marriage can only be between one man and one woman; or otherwise restricts them from being critical of same-sex marriage by punishing them for refusing to create such websites for same-sex couples.  [Doc. No. 7, at pp. 16-22].  For the reasons discussed below, Plaintiffs cannot succeed on the merits.

---

[3] Plaintiffs rely on one unpublished trial court decision from Kentucky to argue, in essence, that discrimination against same-sex couples on the basis of religion is permissible. *See Hands on Originals, Inc. v. Human Rights Comm'n*, No. 14-CI 04474 (Fayette Cir. Ct. Apr. 27, 2015).  However, ADF's reliance on this case is misplaced, and it is easily distinguishable, as noted in *Masterpiece*.  In that case, a T-shirt printing company was found to not violate the local antidiscrimination law when it refused to print T-shirts celebrating premarital romantic and sexual relationships among gays and lesbians because evidence established that it refused to provide heterosexual couples T-shirts promoting premarital romantic or sexual relationships. *Masterpiece*, 370 P.3d at 282, n. 8.  *Masterpiece* held that "[o]pposition to premarital romantic and sexual relationships, unlike opposition to same-sex marriage, is not tantamount to discrimination on the basis of sexual orientation," particularly when same-sex and opposite sex couples are being treated the same. *Id.*  Here, however, Plaintiffs are asking the Court to allow them to discriminate against same-sex couples because of their sexual orientation, by refusing to provide same-sex couples services that Plaintiffs will otherwise provide opposite sex couples because Plaintiffs do not believe in same-sex marriage.

### i. The Supreme Court Recognizes Two Types Of Compelled Speech.

The compelled speech doctrine first articulated in *West Virginia Board of Education v. Barnette,* 319 U.S. 624 (1943), applies in two scenarios.  First, government is generally prohibited from requiring an individual "to speak the government's message."  *See Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 63 (2006).  Second, the government may not generally require an individual to "host or accommodate another speaker's message."  *Id.* Neither scenario applies in this matter.[4]

### ii. CADA Does Not Compel Plaintiffs To Speak The Government's Message.

Section 24-34-601(2)(a), of CADA, does not impact Plaintiffs' First Amendment rights because it does not compel them to speak in favor of or against same-sex weddings.

To the contrary, as held in *Masterpiece*, CADA merely requires that Plaintiffs not discriminate against customers as it concerns the "full and equal enjoyment of the goods, services, facilities, privileges . . . of a place of public accommodation."  *See* § 24-34-601(2)(a), C.R.S., (2016); *Masterpiece*, 370 P.3d at 283 and 291 ("We conclude that the Commission's order merely requires that Masterpiece not discriminate against potential customers in violation of CADA . . . .'" and "[w]e reiterate that CADA does not compel Masterpiece to support or

---

[4] Plaintiffs' Motion, case citations, and arguments contained therein appear to focus on the second line of cases.  However, Defendants will briefly address the first scenario to the extent Plaintiffs are, indeed, raising a substantive issue with the first line of cases.

endorse any particular religious views.  The law merely prohibits Masterpiece from discriminating against potential customers on account of their sexual orientation.").

Contrary to the Supreme Court's decisions in *Barnette*, 319 U.S. at 642, and *Wooley v. Maynard*, 430 U.S. 705, 715-17 (1977), and as recognized in *Masterpiece,* Section 24-34-601(2)(a) of CADA does not compel a vendor to convey a particular message for or against same-sex weddings; only, that it treat same-sex couples the same as opposite sex couples with the "full and equal enjoyment of the goods, services, facilities, privileges . . . of a place of public accommodation."  *See* § 24-34-601(2)(a), C.R.S., (2016); *Masterpiece,* 370 P.3d. at 286; *see also e.g., Elane Photography*, 309 P.3d at 64 (New Mexico's anti-discrimination law "only mandates that if Elane Photography operates a business as a public accommodation, it cannot discriminate against potential clients based on their sexual orientation."); *Brush & Nib Studio*, CV 2016-052251, (Superior Court of Arizona, Maricopa County, Sept. 16, 2016) (holding that the City of Phoenix's anti-discrimination law did not require plaintiffs to speak any message, nor did it prohibit plaintiffs from stating their religious views concerning same-sex marriage).

### iii. CADA Does Not Compel Plaintiffs To Host Or Accommodate Another Speaker's Message.

Plaintiffs largely rely on *Hurley v. Irish-American Gay, Lesbian & Bisexual Group*, 515 U.S. 557 (1995), to support their position that Plaintiffs, like the parade organizers in *Hurley*, are entitled to choose the content of their own message and cannot be compelled to express an unwanted message by CADA.  [Doc. No. 7, at p.

16].  Plaintiffs' reliance on *Hurley* is misplaced.

In *Hurley*, a private, non-profit organization that organizes the Boston St. Patrick's Day parade denied the Gay, Lesbian and Bisexual Group of Boston's (GLIB) application to march in the parade.  *Id.* at 561.  The Massachusetts courts concluded that the parade sponsors violated the state's law prohibiting discrimination in places of public accommodation.  *Id.* at 561, 563-64.  The Supreme Court first noted that public accommodation laws generally do not violate the First and Fourteenth Amendments, because the focal point of their prohibition is "on the act of discriminating against individuals," not to target speech.  *Id.* at 572.  It held, however, that because the parade sponsors were required to include GLIB, the state courts were effectively requiring them "to alter the expressive content of their parade," in violation of the First Amendment.  *Id.* at 572-73.  In other words, the Supreme Court found that the government improperly attempted to apply public accommodation law to "speech itself."  *Id.* at 573.

Here, however, Section 24-34-601(2)(a), of CADA applies to Plaintiffs' business operation, and their decision to not offer services to same-sex couples as opposed to targeting speech itself.  *See e.g., Elane Photography*, 309 P.3d at 68 (distinguishing *Hurley*, and stating, "Defendants cite no reported decision extending the holding of *Hurley* to commercial enterprise carrying on a commercial activity."); *Masterpiece*, 370 P.3d at 287 (distinguishing *Hurley*).  Furthermore, a for-profit company like Plaintiff 303 Creative can hardly be likened to a non-profit organization and parade, and any message that may be attributed to the same.

Similarly, *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241 (1974), and

*Pacific Gas & Electric Co. v. Public Utilities Comm'n of California*, 475 U.S. 1 (1986), do not support Plaintiffs' position.  [Doc. No. 7, at pp. 18-19].  In both cases, the government required a speaker to disseminate a third-party message along with its own protected speech.  *Tornillo*, 418 U.S. at 257-58 (rejecting law that compelled newspapers to print responses from political candidates who had been criticized in editorials); *Pacific Gas & Electric*, 475 U.S. at 9-14 (rejecting law that compelled utility company to include copies of a specific environmentalist publication with bills sent to customers).  Both cases are inapplicable to the purported facts presented in Plaintiffs' Complaint.

Here, Section 24-34-601(2)(a), of CADA does not mandate that Plaintiffs host a message in support of same-sex marriage, let alone any message.  In *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47 (2006), the Supreme Court rejected arguments by law schools that a statue requiring them to provide access to military recruiters equal to other recruiters violated their freedom of speech by forcing them to accommodate or host another speaker's message.  *Id.* at 52-60.  Instead, the Court found that the statute regulated "what law schools must *do* . . . not what they may or may not say."  *Id.* at 60 (emphasis in original); *see also e.g., R. A. V. v. St. Paul*, 505 U.S. 377, 389 (1992) ("[W]ords can in some circumstances violate laws directed not against speech but against conduct.").

In *Elane Photography,* the New Mexico Supreme Court stated that the "United States Supreme Court has never found a compelled-speech violation arising from the application of anti-discrimination laws to a for-profit public

accommodation.  In fact, it has suggested that public accommodation laws are generally constitutional." 309 P.3d at 65-66.  The court held that its public accommodations law did not compel the photographer to convey any particularized message, but rather "only mandates that if Elane Photography operates a business as a public accommodation, it cannot discriminate against potential clients based on their sexual orientation." *See* 309 P.3d at 64.  The United States Supreme Court unanimously rejected ADF's petition for writ of certiorari on April 7, 2014. *See Elane Photography, LLC v. Willock*, 134 S. Ct. 1787 (2014).

In, *Masterpiece*, the Colorado Court of Appeals held that Section 24-34-601(2)(a), of CADA, did not force a wedding cake baker to host or accommodate any particular view on marriage; only that it offer the same services to its customers regardless of their sexual orientation. *Masterpiece*, 370 P.3d at 63 ("Masterpiece does not convey a message supporting same-sex marriages merely by abiding by the law and serving its customers equally."); *Rumsfield,* 547 U.S. at 64-65 (rejecting law school argument that forcing them to treat military and nonmilitary recruiters the same compels them to send "the message that they see nothing wrong with the military's policies [against gays in the military], when they do," because students "can appreciate the difference between speech a school sponsors and speech the school permits because it is legally required to do so.").

### iv. Any Message Conveyed Would Be Attributed To The Party Being Married, Not Plaintiffs.

Furthermore, to the extent any message is conveyed at all, reasonable observers would attribute that message to the individuals being married, not

Plaintiffs.  *Masterpiece*, 370 P.3d at 286 ("[T]o the extent that the public infers from a Masterpiece wedding cake a message celebrating same-sex marriage, that message is more likely to be attributed to the customer than to Masterpiece."); *Rumsfield,* 547 U.S. at 64-65; *Elane Photography*, 309 P.3d at 69-70 ("It is well known to the public that wedding photographers are hired by paying customers and that a photographer may not share the happy couple's views on issues ranging from the minor (the color scheme, the hors d'oeuvres) to the decidedly major (the religious service, the choice of bride or groom.").

Here, Plaintiffs cannot argue that any message being conveyed is anything other than the customers.  For example, couples may choose to not put biblical verses on their website; they may choose to put secular photos on the website in lieu of photos of religious symbols; and they may choose the style or size of font, types of graphics, and color scheme.  [Doc. No. 1, ¶¶ 128-29] (Plaintiffs recognize that customers have ideas of what they desire to be on their website and Plaintiffs work in close contact with customers to get their ideas to collaborate on the finished product).  Indeed, *Masterpiece* recognized that because vendors like Plaintiffs charge for their services, it reduces "the likelihood that a reasonable observer will believe that [Plaintiffs] support the message expressed in [their] finished product."  *Masterpiece*, 370 P.3d at 287.

To this end, Plaintiffs' website design service is also not constitutionally protected speech.  *See United States v. O'Brien*, 391 U.S. 367, 376 (1968) ("We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends to thereby

express an idea.").  Under Plaintiffs' logic, any number of business owners such as architectural firms, restaurants, or hair salons could refuse service to same-sex couples on the basis of their religious belief under the auspices that their services are artistic and creative.  This simply is not the case, and has been rejected by a number of courts, including the United States Supreme Court, because antidiscrimination laws target conduct, not speech.  *See* Defendants' Response at Section III.B.3.a.ii and iii; *see also e.g., Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978) ("[T]he State does not lose its power to regulate commercial activity deemed harmful to the public whenever speech is a component of that activity.").

### b. CADA Does Not Affect Plaintiffs' Rights Under The Free Press Clause.

Moreover, Plaintiffs' speech is not chilled, as they allege [Doc. No. 7, at p. 22], and they are not required to espouse a particular viewpoint on same-sex marriage merely because they are required to serve same-sex and opposite sex couples equally.  *Masterpiece* held that Section 24-34-601(2)(a), of CADA does not prohibit a for-profit vendor from expressing its views on same-sex marriage; it does not prohibit a vendor from expressing its religious opposition to it; and a vendor remains free to disassociate itself from its customers' viewpoints.  *Masterpiece,* 370 P.3d at 288.

As exemplified, Plaintiffs remain free to post disclaimers "in the store or on the Internet indicating that the provision of its services does not constitute an endorsement or approval of conduct protected by CADA."  *Id.*; *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 87 (1980) ("[S]igns, for example, could disclaim any

sponsorship of the message and could explain that the persons are communicating their own messages by virtue of state law."); *Elane Photography*, 309 P.3d at 47 ("Elane Photography is free to disavow, implicitly or explicitly, any message that it believes the photographs convey" and it is unlikely that reasonable observers will interpret Elane Photography as sending a message that it supports same-sex marriage by merely treating same-sex and opposite-sex customers alike). As such, there is no violation of the free press clause.

### c. CADA Does Not Affect Plaintiffs' Rights Of Expressive Association.

Plaintiffs also allege that CADA forces them to violate their freedom of expressive association because it requires Plaintiff Smith to agree with a viewpoint contrary to her religious belief or to stop collaborating with individuals who share her view that marriage can only be between a man and a woman. [Doc. No. 7, at p. 21].

There is nothing in CADA that prohibits, limits, or otherwise impinges Plaintiff Smith's right to associate with anyone who does or does not share her religious views. Indeed, Plaintiff Smith can attend any church, practice any form of religion, or belong to any group that wishes to espouse views against same-sex marriage, as she desires.

Furthermore, even if there was the slightest infringement on Plaintiffs' expressive association, which there is not, Plaintiffs' rights are justifiably curtailed because CADA serves the compelling interest of prohibiting discrimination, entirely unrelated to the suppression of ideas. *See Hurley,* 515 U.S. at 572 (public

accommodation laws "are well within the State's usual power to enact when a legislature has reason to believe that a given group is the target of discrimination...."); *see also Bd. of Dirs. of Rotary Int'l v. Rotary Club*, 481 U.S. 537, 549 (1987) (government had a compelling interest in eliminating discrimination against women in places of public accommodation); *Roberts v. United States Jaycees*, 468 U.S. 609, 628 (1984) ("acts of invidious discrimination in the distribution of publicly available goods, services, and other advantages cause unique evils that government has a compelling interest to prevent"); *Bob Jones Univ. v. United States*, 461 U.S. 574, 604 (1983) (government had a compelling interest in eliminating racial discrimination in private education).

### d.  CADA Does Not Violate The Equal Protection Clause.

Plaintiffs' Complaint references three charges of discrimination in which a person filed complaints based on creed against bakeries that declined to produce cakes with religious messages. [Doc. No. 1 ¶¶ 73-84].  Plaintiffs' allege that Defendants have treated these bakeries dissimilar to *Masterpiece*, and they claim that Plaintiffs are "in the exact same position." [Doc. No. 7, at p. 24].  Plaintiffs also allege that CADA is content based discrimination. [Doc. No. 7, at p. 10].  The Complaint seeks relief based on a belief that decisions made in these matters harmed Plaintiffs. [Doc. No. 1 ¶¶ 241-242; 256-259; 313-314; 335; 340].  However, these matters resulted in no-probable cause determinations by the Director and no further action was taken. [Doc. No. 1 ¶80].

The Director's findings of probable cause or no probable cause are not quasi-judicial rulings and only non-binding administrative determinations reached

without the benefit of a hearing.  *AT&T Technologies Inc. v. Royston*, 772 P.2d 1182, 1186 (Colo. App. 1989).  Since these decisions have no binding precedent or effect, Plaintiffs fail to state a claim meriting relief as to these decisions.

Furthermore, the Colorado Court of Appeals distinguished the three bakeries from Masterpiece in its decision when ADF made the same arguments. *Masterpiece*, 370 P.3d at 282, n. 8.  Notably, Masterpiece refused to make a wedding cake for a same-sex couple *because of their sexual orientation* based on the owner's religious belief; while the three bakeries refused to make a cake for a patron that would say "Homosexuality is a detestable sin. Leviticus 18:2" because of the derogatory, offensive message, not because of the patron's creed.  *Id.*  Here, Plaintiffs are "in the exact same position" as *Masterpiece*, because they intend to refuse service to a same-sex couples *only because of their sexual orientation*.  [Doc. No. 7, at pp. 8, 24].  Plaintiffs' reliance on the three other bakery cases has already been addressed by *Masterpiece*, and is simply inapposite, and CADA does not engage in content based discrimination.

Last, Plaintiffs' argument concerning other bakeries and declining to produce a derogatory, offensive message is already raised in the pending petition for writ of certiorari in *Masterpiece Cakeshop, Inc. v. Colorado Civil Rights Commission, et al.*, No. 16-111.  [Doc. No. 5].  As such, this Court should abstain from addressing this issue as stated in Defendants' motion to dismiss.  [Doc. No. 37].

Plaintiffs claim that CADA does not survive strict scrutiny.  [Doc. No. 7, at pp.25-26].  However, CADA is a neutral law of general applicability, which is not

subject to strict scrutiny. "A law that is both neutral and generally applicable need only be rationally related to a legitimate governmental interest to survive a constitutional challenge." *Grace v. United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 649 (10th Cir. 2006). Here, Colorado has not only a legitimate interest, but a compelling one in erasing discrimination against its citizens. *Masterpiece*, 370 P.3d at 293 (concluding that CADA is rationally related to Colorado's interest in eliminating discrimination in places of public accommodation). Indeed, the most recent Supreme Court decision in *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2783 (2014) concretely establishes this point as follows:

> [t]he principal dissent raises the possibility that discrimination in hiring, for example on the basis of race, might be cloaked as religious practice to escape legal sanction. . . Our decision today provides no such shield. *The Government has a compelling interest in providing an equal opportunity to participate in the workforce without regard to race, and prohibitions on racial discrimination are precisely tailored to achieve that critical goal.*

*Id* (italics added); *see also e.g., Reynolds v. United States*, 98 U.S. 145, 166-67 (1878) (noting that religious motivation should not excuse compliance with laws). This decision is the latest in a long line of cases that find that eradicating discrimination through state's laws serves a compelling interest. *See e.g.*, Defendants' Response at Section III.B.3.c., and cases cited therein.

Even assuming, *arguendo*, that strict scrutiny applies to CADA, which it does not, CADA would survive strict scrutiny because it furthers a compelling interest and is narrowly tailored to that interest. As discussed above, CADA serves

a compelling state interest in eradicating discrimination in places of public accommodation.  Moreover, CADA is narrowly tailored to achieve this purpose for the reasons discussed herein.

### C.  Plaintiffs Will Not Suffer Irreparable Harm If The Injunction Is Denied.

"To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Heideman*, 348 F.3d at 1189 (citation omitted).  Irreparable harm is not harm that is "merely serious or substantial." *See Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001).  "Establishing irreparable harm is "not an easy burden to fulfill." *Greater Yellowstone Coal v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003).

"[A] party seeking preliminary injunctive relief must show that the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *See Faircloth v. Colo. Dep't of Corr.*, No. 16-cv-00908-GPG, 2016 U.S. Dist. LEXIS 58077, at *4 (D. Colo. May 2, 2016) (citation omitted).  A preliminary injunction should not be granted "against something merely feared as liable to occur at some indefinite time in the future." *See e.g., Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931).

Plaintiffs' injury is speculative, vague, and does not satisfy the heightened legal standard.  The Supreme Court recently restated its reluctance "to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment" because a "theory of standing, which relies on a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending." *Clapper v. Amnesty Int'l USA*,

133 S. Ct. 1138, 1148 and 1150 (2013).

Here, Plaintiffs fail to allege an injury that is certain, great, or actual by Defendants, and only speculates as to what may happen if numerous, theoretical facts occur.  Specifically, those facts would have to be as follows: (1) Plaintiffs make their custom design website service available to the public; (2) a person attempts to obtain the service; (3) Plaintiffs deny the service based on the person's protected class; (4) the person denied service files a charge of discrimination with the Division; (5) the Division investigates the charge and the Division director or designee finds that there is probable cause to credit the charge; (6) mandatory conciliation is attempted and fails; (7) the Commission decides to notice the case for hearing; (8) an ALJ holds a hearing and rules against Plaintiffs; and (9) the Commission affirms the decision and orders Plaintiffs to cease and desist the discriminatory practice. None of these facts have yet occurred; and the failure of one of these steps to occur would result in no injury to Plaintiffs.

### D.  The Balance Of Equities And The Public Interest Are Against Issuing An Injunction.

 Courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. *Port-a-Pour, Inc. v. Peak Innovations, Inc.*, 49 F. Supp. 3d 841, 873 (D. Colo. 2014) (citations omitted).  Under the heightened standard of review, Plaintiffs must make a strong showing that their threatened injury outweighs the injury to the public under the preliminary injunction.  *See Heideman*, 348 F.3d at 1190.

Here, Plaintiffs argue, in essence, that Defendants should be enjoined

because their religious belief, speech concerning same-sex marriage, and their desire to refuse services to same-sex couples outweigh any interest the State of Colorado has in eliminating discrimination in places of public accommodation.

Plaintiffs' argument is unavailing, and counter to a lengthy civil rights history.  As previously mentioned above, the United States Supreme Court has recognized, time and time again, that states have a compelling interest in eliminating discrimination, and statutes, like CADA, further that interest. *See e.g.,* Defendants' Response at Section III.B.3.c., and cases cited therein.

Furthermore, the Supreme Court has also held, time and time again that using religion to perpetuate discrimination against individuals, and violate a state's laws, is inappropriate.  *Reynolds*, 98 U.S. at 166-67 (noting that religious motivation should not excuse compliance with laws); *United States v. Lee*, 455 U.S. 252, 261 (1982) (rejecting religious exercise challenge to law requiring employers to pay social security tax for employees stating, "When followers of a particular sect enter into commercial activity as a matter of choice, the limits they accept on their own conduct as a matter of conscience and faith are not to be superimposed on the statutory schemes which are binding on others in that activity."); *Newman v. Piggie Park Enters., Inc.*, 256 F. Supp. 941, 945 (D.S.C. 1966), *aff'd in relevant part and rev'd in part on other grounds*, 377 F.2d 433 (4th Cir. 1967), *aff'd and modified on other grounds*, 390 U.S. 400 (1968) (finding that while defendant had a constitutional right to espouse the religious views of his choosing, he did not have "a constitutional right to refuse to serve members of the Negro race in his business establishments upon the ground that to do so would violate his sacred religious

beliefs."); *see also e.g., Hishon v. King & Spalding*, 467 U.S. 69, 78 (1984) ("Invidious private discrimination may be characterized as a form of exercising freedom of association protected by the First Amendment, but it has never been accorded affirmative constitutional relief.") (citation omitted).

### E.  Plaintiffs Cannot Meet The Heavy Burden Required For A Disfavored Injunction.

Plaintiffs requested injunction would alter the status quo and is, as such, disfavored and subject to a heightened standard.  "[T]he limited purpose of a preliminary injunction 'is merely to preserve the relative positions of the parties until a trial on the merits can be held.'"  *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quoting *O Centro Espirita*, 389 F.3d at 977.). Plaintiffs ask this Court to bar Defendants from enforcing Colorado's public accommodation law so that they can discriminate against same-sex couples on the basis of their religious beliefs.

When a movant asks for a disfavored injunction, it "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* (quoting *O Centro Espirita*, 389 F.3d at 975).  In such cases, Plaintiffs "[h]ave a heightened burden of showing that the traditional four factors weigh heavily and compellingly in its favor before obtaining a preliminary injunction." *See Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne*, 698 F.3d 1295, 1301 (10th Cir. 2012) (internal quotations and citations omitted); *see also Awad v. Ziriax*, 670 F.3d 1111, 1126 (10th Cir. 2012) (noting that a movant must make a "strong showing" with

regard to likelihood of success on the merits and with regard to the balance of harms).

Here, for the reasons discussed above, Plaintiffs cannot meet this burden, and their request to enjoin Defendants should be denied.

## VI.    CONCLUSION

Plaintiffs cannot demonstrate the heightened standards that they (1) are likely to succeed on the merits of this case; (2) that they suffered irreparable harm; (3) that the balance of public interests or equities tips in their favor; or (4) that they can meet the heavy burden for their disfavored injunction.  Defendants respectfully request this Court deny Plaintiffs' request to enjoin their enforcement of Colorado's public accommodation law for the reasons discussed above.

Respectfully submitted this 19th day of October, 2016.

*s/ Jack D. Patten, III*

VINCENT EDWARD MORSCHER*
JACK D. PATTEN, III*
Deputy Attorney General
Assistant Attorney General

Civil Litigation and Employment Law Section
Attorneys for Defendants Elenis and Coffman

ERIC MAXFIELD*
LEANNE B. DE VOS*
First Assistant Attorney General
Senior Assistant Attorney General

Business and Licensing Section
Attorneys for Defendants Aragon, Chaney,
Elias, Fabrizio, Hess Lewis and Pocock

1300 Broadway, 10th floor
Denver, CO 80203
Telephone: (720) 508-6588
Fax: (720) 508-6032
E-Mail: vincent.morscher@coag.gov
        jack.patten@coag.gov
        eric.maxfield@coag.gov
        leanne.devos@coag.gov

*Counsel of Record

## CERTIFICATE OF SERVICE

I certify that I served the foregoing DEFENDANTS' RESPONSE TO

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [DOC. NO. 6] upon all

parties herein by e-filing with the CM/ECF system maintained by the court or by

depositing copies of same in the United States mail, first-class postage prepaid, at

Denver, Colorado, this 19th day of October, 2016, addressed as follows:

**Jeremy David Tedesco**
**Jonathan Andrew Scruggs**
**Samuel David Green**
**Katherine Leone Anderson**
Alliance Defending Freedom-Scottsdale
15100 North 90th St., Suite 165
Scottsdale, AZ 85260
(480) 444-0020
Fax: (480)444-0028
Email:jtedesco@ADFlegal.org
jscruggs@ADFlegal.org
sgreen@ADFlegal.org
kanderson@ADFlegal.org

**Michael L. Francisco**
MRD Law
3301 West Clyde Place
Denver, CO 80211
(303) 325-7843
Fax: (303) 723-8679
Email: MLF@mrdlaw.com

**Rory Thomas Gray**
**David Andrew Cortman**
Alliance Defending Freedom- Lawrenceville
1000 Hurricane Shoals Rd., NE Suite D-1100
Lawrenceville, GA 30043
(770) 339-0774
Fax: (770) 339-6744
Email: rgray@adflegal.org
dcortman@alliancedefendingfreedom.org

*s/ Jack D. Patten, III*