**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.  1:16-cv-02372-MSK-CBS

303 CREATIVE LLC, a limited liability company; and
LORIE SMITH,

      *Plaintiffs*,

vs.

AUBREY ELENIS, Director of the Colorado Civil Rights
Division, in her official capacity;
ANTHONY ARAGON,
ULYSSES J. CHANEY,
MIGUEL "MICHAEL" RENE ELIAS,
CAROL FABRIZIO,
HEIDI HESS,
RITA LEWIS, and
JESSICA POCOCK, as members of the Colorado Civil Rights
Commission, in their official capacities, and
CYNTHIA H. COFFMAN, Colorado Attorney General,
in her official capacity,

      *Defendants*.

---

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

---

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION ................................................................................................................... 1

STATEMENT OF FACTS ...................................................................................................... 2

      A.     Lorie Smith and 303 Creative. ............................................................................. 2

      B.     Defendants' enforcement of CADA. ..................................................................... 3

ARGUMENT ......................................................................................................................... 4

I.     Plaintiffs have standing and this Court has jurisdiction to hear Plaintiffs' claims. ............ 4

      A.     Burden of Proof: ................................................................................................. 4

      B.     Elements: ............................................................................................................ 5

      C.     Elements met: ..................................................................................................... 9

            1.     Element (i) – injury: ................................................................................ 9

                  a.     First *Ward* test. ............................................................................ 9

                  b.     Second *Ward* test. ....................................................................... 11

                  c.     Defendants' speculation arguments are misplaced. ...................... 12

            2.     Element (ii) – harm is fairly traceable to Defendants: .............................. 13

            3.     Element (iii) – redressability: ................................................................... 14

II.     Abstention is not proper under *Younger*, *Rooker-Feldman*, or *Colorado River* because there is no pending state court proceeding. ....................................................................... 15

      A.     Burden of Proof: ............................................................................................... 15

      B.     *Younger* elements: ........................................................................................... 16

      C.     *Younger* elements not met: ............................................................................... 16

      D.     *Rooker-Feldman* elements: ............................................................................... 18

      E.     *Rooker-Feldman* elements not met: ................................................................... 19

i

F.     *Colorado River* elements: ............................................................................ 19

G.     Colorado River elements not met: ........................................................... 20

III.    Plaintiffs have stated a claim upon which relief can be granted. ...................................... 21

A.     Burden of Proof: ................................................................................. 21

B.     Elements: ............................................................................................ 22

C.     Elements met: ..................................................................................... 22

IV.    Plaintiffs' complaint complies with Fed. R. Civ. P. 8. .................................................. 24

A.     Burden of Proof: ................................................................................. 24

B.     Elements: ............................................................................................ 25

C.     Elements Met: .................................................................................... 25

V.     Plaintiffs' case should not be stayed. ................................................................ 27

CONCLUSION ................................................................................................ 29

# TABLE OF AUTHORITIES

**Cases**

*Abbott Laboratories. v. Gardner*,
    387 U.S. 136 (1967)..................................................................................28

*Alvarado v. KOB-TV, LLC,*
    493 F.3d 1210 (10th Cir. 2007) ...............................................................22

*American Civil Liberties Union v. Alvarez*,
    679 F.3d 583 (7th Cir. 2012) ...................................................................13

*American Civil Liberties Union v. Johnson*,
    194 F.3d 1149 (10th Cir. 1999) ...........................................................6, 13

*Arizona Christian School Tuition Organization v. Winn*,
    563 U.S. 125 (2011)...................................................................................5

*Arizona Right to Life PAC v. Bayless*,
    320 F.3d 1002 (9th Cir. 2003) ...................................................................7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................22

*Awad v. Ziriax*,
    670 F.3d 1111 (10th Cir. 2012) .................................................................5

*Beckley Mining Corp. v. International Union, UMWA*,
    946 F.2d 1073 (4th Cir. 1991) .................................................................19

*Brandt v. Vilage. of Winnetka*,
    612 F.3d 647 (7th Cir. 2010) ...................................................................13

*Clapper v. Amnesty International USA*,
    133 S. Ct. 1138 (2013)...............................................................................8

*Colorado River Water Conservation District v United States*,
    96 S. Ct. 1236 (1976)........................................................... 19, 28-29

*Consumer Data Industries Association v. King*,
    678 F.3d 898 (10th Cir. 2012) .................................................................14

*Cooksey v. Futrell*,
    721 F.3d 226 (4th Cir. 2013) .....................................................................7

*Cressman v. Thompson (Cressman I)*,
    719 F.3d 1139 (10th Cir. 2013) ................................................................... 5, 13-14, 22

*Cressman v. Thompson (Cressman II)*,
    798 F.3d 938 (10th Cir. 2015) ...........................................................................9

*Dana's Railroad Supply v. Attorney General, Florida*,
    807 F.3d 1235 (11th Cir. 2015) .........................................................................7

*Diamond v. Vickery*,
    No. 1:12-cv-01891-MSK, 2 (D. Colo. filed Feb. 14, 2013) .............................28

*Doe v. Bolton*,
    410 U.S. 179 (1973)................................................................................. 6, 12-13

*Ellis v. State*,
    No. 91C8391, 1992 WL 332293, *2 (N.D. Ill. Nov. 6, 1992).........................27

*Elrod v. Burns*,
    427 U.S. 347 (1976).........................................................................................29

*Ex parte Young*,
    209 U.S. 123 (1908).........................................................................................21

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*,
    544 U.S. 280 (2005)................................................................................ 15, 18-19

*Fox v. Maulding*,
    16 F.3d 1079 (10th Cir. 1994) ................................................................ 15, 19-20

*Gardner v. First American Title Insurance Co.*,
    294 F.3d 991 (8th Cir. 2002) ..........................................................................25

*Guttman v. Khalsa*,
    446 F.3d 1027 (10th Cir. 2006) .......................................................................18

*Harrell v. The Florida Bar*,
    608 F.3d 1241 (11th Cir. 2010) .........................................................................7

*Hearns v. San Bernardino Police Department*,
    530 F.3d 1124 (9th Cir. 2008) ........................................................................25

*Holt v. U.S.*,
    46 F.3d 1000 (10th Cir. 1995) ................................................................. 4-5, 15

*Idar v. Cooper Tire & Rubber Co.*,
No. C-10-217, 2010 WL 3702579, at *2 (S.D. Tex. Sept. 15, 2010) ...............................25

*In re Kozeny*,
236 F.3d 615 (10th Cir. 2000) ...........................................................................................28

*Ingram v. Faruque*,
728 F.3d 1239 (10th Cir. 2013) ..................................................................................... 4-5

*Initiative & Referendum Institute v. Walker*,
450 F.3d 1082 (10th Cir. 2006) ..................................................................................... 5-7

*Johnson v. Rodrigues*,
226 F.3d 1103 (10th Cir. 2000) ................................................................................. 18-19

*Kadamovas v. Stevens*,
706 F.3d 843 (7th Cir. 2013). .................................................................................... 25-26

*Landis v. North American Co.*,
299 U.S. 248 (1936)................................................................................................... 27-28

*Larson v. Valente*,
456 U.S. 228 (1982)........................................................................................................14

*Lewis v. Bay Industries, Inc.*,
No. 12-C-1204, 2013 WL 817845, *1 (E.D. Wis. Mar. 5, 2013) ....................................26

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992).....................................................................................................5, 15

*Mangual v. Rotger-Sabat*,
317 F.3d 45 (1st Cir. 2003)` ...........................................................................................11

*Massachusetts v. EPA*,
549 U.S. 497 (2007)........................................................................................................14

*Merrill Lynch Business Financial Services v. Nudell*,
363 F.3d 1072 (10th Cir. 2004) .....................................................................................18

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*,
460 U.S. 1 (1983)....................................................................................................... 19-20

*Muscogee (Creek) Nation v. Pruitt*,
669 F.3d 1159 (10th Cir. 2012) ......................................................................................21

*Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe County Justice Center*,
    492 F.3d 1158 (10th Cir. 2007) ................................................................ 24-25

*New Orleans Public Service, Inc. v. Council of the City of New Orleans*,
    491 U.S. 350 (1989)................................................................................. 16

*Petrella v. Brownback*,
    697 F.3d 1285 (10th Cir. 2012) ............................................................... 5

*Phelps v. Hamilton (Phelps I)*,
    59 F.3d 1058 (1995)........................................................................... 16-17

*Phelps v. Hamilton (Phelps II)*,
    122 F.3d 1309 (10th Cir. 1997) ............................................................... 7

*Prairie Band Potawatomi Nation v. Wagnon*,
    476 F.3d 818 (10th Cir. 2007) ............................................................... 24

*Robinson v. Stovall*,
    646 F.2d 1087 (5th Cir. 1981) ............................................................... 17

*Secretary of State of Maryland v. Joseph H. Munson Co.*,
    467 U.S. 947 (1984)............................................................................ 6-7

*Seehausen v. Gonzalez*,
    No. 2:11-cv-10786-GW-RZ, 3 (C.D. Cal. filed May 8, 2012) ........................ 27

*Sprint Communications, Inc. v. Jacobs*,
    34 S. Ct. 584 (2013)..................................................................... 15-17, 29

*Stanard v. Nygren*,
    658 F.3d 792 (7th Cir. 2011) ................................................................. 26

*Steffel v. Thompson*,
    415 U.S. 452 (1974)..................................................................... 6, 11, 16

*Summum v. City of Ogden*,
    297 F.3d 995 (10th Cir. 2002) ............................................................... 22

*Susan B. Anthony List v. Driehaus*,
    134 S. Ct. 2334 (2014)................................................................... 9, 11-12

*Virginia v. American Booksellers Association, Inc.*,
    484 U.S. 383 (1988)..................................................................... 6, 11, 13

*Ventura v. David's Bridal*,
    248 F.3d 1139, *1 (5th Cir. 2001) ....................................................................28

*Verlo v. Martinez*,
    820 F.3d 1113 (10th Cir. 2016) ...................................................................29

*Ward v. Utah*,
    321 F.3d 1263 (10th Cir. 2003) ............................................................ *passim*

*Wilson v. Stocker*,
    19 F.2d 943 (10th Cir. 1987) ...............................................................7, 21, 23


**Statutory Provisions**

42 U.S.C § 1983..............................................................................................22
50 U.S.C. § 1881(a) ..........................................................................................8


**State Statutes**

Colo. Rev. Stat. 24-4-105 ...............................................................................24
Colo. Rev. Stat. 24-34-302 .............................................................................24
Colo. Rev. Stat. 24-34-306(1)(b) ....................................................................23
Colo. Rev. Stat. 24-34-306(2)..........................................................................24
Colo. Rev. Stat. 24-34-306(4)-(9)....................................................................24


**Other Authorities**

Supreme Court of the United States. *Frequently Asked Questions* (October 22, 2016),
    https://www.supremecourt.gov/faq.aspx ..........................................................29

## <u>INTRODUCTION</u>

Lorie Smith[1] seeks only to speak freely — to publicly express her religious beliefs about marriage and refrain from speaking messages about marriage that violate those beliefs — without fear of government punishment. Those rights are guaranteed by the First Amendment but ignored by the Defendants who interpret and enforce the Colorado Anti-Discrimination Act (CADA) to compel speech affirming same-sex marriage and punish speech opposing it. If this were not alarming enough, Defendants now ask this Court to dismiss Lorie's case – granting them carte blanche to violate Lorie's First Amendment rights.

Rather than asserting a legitimate reason to dismiss, Defendants claim every single one applies, with most having no basis in law or fact, such as all of their abstention arguments. Defendants' standing, failure to state a claim, Rule 8, and stay arguments are similarly flawed, relying on misstatements of the law or misrepresentations of the facts. Defendants' motion is nothing more than an attempt to throw every possible excuse against the wall with the hope that one will stick.

In the end, their motion boils down to three deeply flawed arguments.  One, that to have standing to challenge the Defendants' infringement of her First Amendment rights, Lorie must first violate the law she challenges, CADA, and then incur punishment after exhausting all possible appeals. Two, that once Defendants enforce CADA against someone else, the federal courts must abstain from Lorie's federal case. Three, that Lorie should be forced to stand aside and relinquish her constitutional freedoms while Defendants wait for a possible grant of certiorari

---

[1] For simplicity's sake, this motion refers to both Plaintiffs collectively as "Lorie Smith" or "Lorie" whenever possible.

from the Supreme Court in a separate case they brought under CADA against an unrelated third party.

These arguments reflect neither good law nor good policy. Binding precedent rejects all three. And if taken to their logical conclusions, the Defendants' arguments could bar all civil rights plaintiffs from federal court, strip the federal courts of jurisdiction to review all state statutes, and limit any judicial review of pressing constitutional matters to one court at a time. Defendants do not have such power to insulate their violation of Lorie's fundamental rights from judicial review.

Lorie's complaint is well-pled. It complies with the federal rules. It states claims upon which Lorie can seek relief and for which she has standing. This Court has jurisdiction. For all of these reasons, Defendants' Motion to Dismiss and to Stay should be denied.

## STATEMENT OF FACTS

### A.    Lorie Smith and 303 Creative.

Lorie is a graphic, website, and marketing designer. Compl. for Decl. and Inj. Relief ¶¶ 101-104, ECF No. 1. She owns and operates 303 Creative LLC, a business through which she currently designs custom graphics, websites, and marketing material for web and print publication. *Id.* at ¶¶ 103-104. As with every creative professional whose business is her speech, Lorie asserts a First Amendment right to use her mind and artistic talents to design and create messages that align with her beliefs. Compl. ¶¶ 103-117. She similarly reserves the constitutional right not to be forced to design and create messages that violate her religious beliefs. *Id.* Defendants' application of the Colorado Anti-Discrimination Act ("CADA") threatens both. Compl. ¶¶ 165-180, 199.

Lorie's current business is to design and create custom websites for organizations and individuals. Compl. ¶ 104, 120-137. She would like to expand her business to design and create custom websites for engaged couples to celebrate their upcoming marriage. Compl. ¶¶ 138-148. Because of her religious convictions about marriage, Lorie cannot design websites celebrating any conception of marriage except those between one man and one woman, including same-sex marriage. Compl. ¶¶ 114, 162-163, 173-175. To notify the public about these beliefs, Lorie plans to post a statement on 303 Creative's website explaining those religious beliefs and their influence on her business and the messages she can design and create. Compl. ¶¶ 161-163. Lorie has not posted this statement yet or entered the wedding industry because she fears the Defendants' interpretation and enforcement of CADA — that CADA's ban on sexual orientation discrimination would subject her to complaints, investigations, and punishments if she declines to speak a message that promotes same-sex marriage. Compl. ¶¶ 177-180.

B.      Defendants' enforcement of CADA.

The Defendants have done and said nothing to dispel Lorie's fears. Notably missing from their Motion to Dismiss is any statement disclaiming an intent to enforce CADA against Lorie. Defendants never say that CADA does not apply to 303 Creative or that the Defendants would not investigate and punish Lorie if she posts her desired statement or declines to create websites with messages celebrating same-sex marriage.

Instead, the Defendants twice detail each Defendants' enforcement power, confirming the corollary allegations in Lorie's Complaint. Mot. to Dismiss 3-4, 16-20, ECF No. 37; Compl. ¶¶ 25-28, 39-53. As the Defendants admit,  "[t]he Commission, a Commissioner, or the Colorado Attorney General" can file a complaint under CADA, Mot. to Dismiss 3; investigation of every

complaint is mandatory; the Defendant Director conducts these mandatory investigations and has the power to dismiss or find probable cause for every filed complaint; the Defendant Director conducts mandatory mediation for all probable cause findings; the Defendant Civil Rights Commission (hereafter "Commission") has the power to require a hearing before itself or an Administrative Law Judge ("ALJ") and can issue punishments including "cease and desist orders" and other "such action as it may order in accordance with the provisions of CADA." *Id.*

The Defendants then confirm the Commission's prior enforcement of CADA in ways that favor speakers with certain views on marriage over others. They admit that the Commission investigated and aggressively prosecuted Jack Phillips and Masterpiece Cakeshop all the way to a pending petition for certiorari to the U.S. Supreme Court because Mr. Phillips, a cake artist, declined to create a cake celebrating a same-sex wedding. Mot. to Dismiss 4-5; Compl. ¶¶ 63-85. At the same time, the Defendants do not deny that the Commission simultaneously affirmed findings of no probable cause against three bakeries that refused to create cakes because they contained messages critical of same-sex marriage. Compl. ¶¶ 73-84. These admissions and omissions reveal that Defendants selectively interpret and enforce CADA and confirm the credible threat of enforcement Lorie faces.

## ARGUMENT

I. **Plaintiffs have standing and this Court has jurisdiction to hear Plaintiffs' claims.**

A. Burden of Proof:

Defendants' misstate the burden of proof. They raise a facial Federal Rule of Civil Procedure 12(b)(1) (hereafter "12(b)(1)") challenge to Plaintiffs' complaint but cite the burden—preponderance of the evidence—for a factual 12(b)(1) challenge. *Holt v. U.S.*, 46 F.3d 1000, 1002

(10th Cir. 1995) (distinguishing facial and factual challenges); *Ingram v. Faruque*, 728 F.3d 1239, 1242 (10th Cir. 2013) (same). While it is the Plaintiff's burden to establish jurisdiction, "the manner and degree of evidence required" is based on the "successive stage[] of the litigation." *Ward v. Utah*, 321 F.3d 1263 (10th Cir. 2003) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "When evaluating a plaintiffs' standing at [the motion to dismiss] stage, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Cressman v. Thompson (Cressman I)*, 719 F.3d 1139, 1144 (10th Cir. 2013) (citing *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006) (en banc)). The plaintiff's "burden in establishing standing is lightened considerably" at the pleading stage. *Cressman I*, 719 F.3d at 1144 (citing *Petrella v. Brownback*, 697 F.3d 1285, 1292 (10th Cir. 2012)). A plaintiff who pleads "general factual allegations of injury resulting from the defendant's conduct" establishes jurisdiction. *Lujan*, 504 U.S. at 561. Lorie has met this burden.

B.   Elements:

Defendants correctly state the test for Article III standing under *Lujan* — "[t]o establish Article III standing, a plaintiff must establish (1) that he or she has 'suffered an injury in fact'; (2) that the injury is 'fairly traceable to the challenged action of the defendant'; and, (3) that it is 'likely' that 'the injury will be redressed by a favorable decision.' *Awad v. Ziriax*, 670 F.3d 1111, 1120 (10th Cir. 2012) (quoting *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 134 (2011)); *see* Mot. to Dismiss 6. Merely citing this standard, however, ignores how the courts have applied it when evaluating pre-enforcement challenges to state laws alleging the unconstitutional

chilling of protected speech, like the case presented here. That precedent sets forth three binding principles that apply to Lorie's case.

One, a First Amendment plaintiff does not have to violate the law before challenging it. *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("[I]t is not necessary that petitioner first expose [her]self to actual arrest or prosecution to be entitled to challenge a statute that [s]he claims deters the exercise of [her] constitutional rights."); *Doe v. Bolton*, 410 U.S. 179, 188 (1973) (Plaintiffs "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief."); *Ward*, 321 F.3d at 1267 ("Plaintiffs may have standing even if they have never been prosecuted or actively threatened with prosecution."); *Initiative and Referendum Inst.*, 450 F.3d at 1089 ("A plaintiff who alleges a chilling effect asserts that the very existence of some statute discourages, or even prevents, the exercise of his First Amendment rights. Such a plaintiff by definition does not—indeed, should not—have a present intention to engage in that speech…."). This principle is supported by a long line of pre-enforcement cases, including many cases hearing challenges to laws before they even took effect. *See, e.g., id.*; *Va. v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392 (1988) (affirming booksellers' standing to bring a pre-enforcement lawsuit challenging the constitutionality of a state statute prohibiting the display of sexually explicit materials accessible to juveniles.); *Am. Civil Liberties Union v. Johnson*, 194 F.3d 1149, 1153 (10th Cir. 1999) (affirming the ACLU's standing to challenge the constitutionality of a state statute before the statute's effective date.).

Two, courts apply standing requirements most leniently in the First Amendment context. *Ward*, 321 F.3d at 1266 (quoting *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984)) ("Because of the significance of First Amendment rights, the Supreme Court 'has

enunciated other concerns that justify a lessening of prudential limitations on standing.'"); *Ariz. Right to Life PAC v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) ("[W]hen the threatened enforcement effort implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing."); *Dana's R.R. Supply v. Attorney Gen., Fla.*, 807 F.3d 1235, 1241 (11th Cir. 2015) (quoting *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1253-57 (11th Cir. 2010) ("When First Amendment protections are implicated, we apply 'most loosely' the injury-in-fact requirement 'lest free speech be chilled.'")); *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013) ("The leniency of the First Amendment standing manifests itself most commonly in the doctrine's first element: injury in fact.").

Three, in *Ward* — a case involving a prospective challenge by an animal rights activist who alleged the chilling of his constitutionally protected speech because he feared being prosecuted under a state statute — the Tenth Circuit set out two distinct tests for establishing "injury-in-fact" in First Amendment pre-enforcement cases like Lorie's. *Ward*, 321 F.3d at 1266-69. Under the first test, "a plaintiff generally has standing if she alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder.'" *Id.* at 1267 (quoting *Phelps v. Hamilton (Phelps II)*, 122 F.3d 1309, 1326 (10th Cir. 1997)). Under the second test, a plaintiff suffers "ongoing" injury-in-fact if she "'faces a credible threat' of future prosecution…resulting from the statute's chilling effect on [her] desire to exercise [her] First Amendment rights." *Wilson v. Stocker*, 819 F.2d 943, 946 (10th Cir. 1987); *see also Initiative Referendum Inst.*, 450 F.3d at 1088 ("This Court has recognized that a chilling effect on the exercise of a plaintiff's First Amendment rights may amount to a judicially cognizable injury in fact.").

These tests provide separate paths to Article III standing for cases like Lorie's. They also recognize that First Amendment plaintiffs like Lorie suffer two distinct injuries when they are forced to self-censor lawful speech to avoid government punishment. Such a plaintiff suffers concrete injury both because of the threat of future enforcement and because of the "ongoing injury" from the "*chilling effect*" on her speech. *Ward*, 321 F.3d at 1267. Lorie suffers both injuries in this case.

Rather than address the above tests, the Defendants cite an inapplicable case, *Clapper*, to argue that Lorie's injuries are speculative. Mot. to Dismiss 7 (citing *Clapper v. Amnesty Intern. USA*, 133 S. Ct. 1138 (2013)). They are not speculative. *Clapper* has little application outside its unique facts. *Clapper* confronted a statute that allowed government officials to ask the Foreign Intelligence Surveillance Court for permission to surveil people if certain conditions were met. *Id.* at 1144-45. This intelligence gathering and foreign affairs statute was completely discretionary. *See* 50 U.S.C. § 1881(a); *Clapper*, 133 S. Ct. at 1144 ("[T]he Attorney General and the Director of National Intelligence may authorize jointly…"). It also triggered an "especially rigorous" "standing inquiry" specific to the type of statute challenged. *Clapper*, 133 S. Ct. at 1143, 1147. In addition to this high standard, which has no application to Lorie's case, the statute in *Clapper* exempted the plaintiffs and those plaintiffs did not facially violate the statute. *Id.* at 1148. Even if they had, the statute mandated a five-step process before the alleged injury (surveillance) could occur. *Id.* For all of these reasons, the Court rejected the claim. *Id.* at 1155. As alleged in the Complaint and explained directly below, Lorie's desired speech violates Defendants' interpretation of CADA and the constitutional harm triggered by that violation is immediate, and

not reliant on a five-step process. Compl. ¶¶ 165-185. Therefore, the holdings of *Clapper* do not dictate Lorie's case.

Six months after *Clapper*, the Court issued *Susan B. Anthony List* reaffirming the less stringent test for injury in fact for pre-enforcement First Amendment challenges like Lorie's. *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2432-33 (2014) (affirming the test and applying it to find injury in fact where speech was chilled.). This is the standard that applies to Lorie's case and she easily satisfies it.

      C.      <u>Elements met:</u>

            1.      **Element (i) – injury:**

                  a.      **First *Ward* test.**

Lorie's complaint alleges sufficient facts to meet all elements of the first *Ward* test for injury in fact.

*Element 1: Intent to engage in conduct arguably affected by a constitutional interest.* Lorie pled her intention to engage in two different activities affected by a constitutional interest. First, she desires to publish a website that explains her religious motivation for designing, creating, and publishing custom wedding websites promoting marriages between one man and one woman and explaining her religious beliefs, which prevent her from promoting any other conception of marriage. Compl. ¶¶ 138-164. Second, she desires to immediately start creating wedding websites promoting marriage between one man and one woman while declining requests to create websites promoting a same-sex marriage. *Id.* Defendants' motion completely ignores the former activity. Mot. to Dismiss 6-7. Lorie has taken clear steps toward publishing her website and entering the custom wedding website marketplace. Compl. ¶¶ 154-164. She has prepared a sample website,

written the statement about marriage that she wishes to post, and prepared promotional materials to announce her entry into the custom wedding website field. *Id.* These activities, and her desire to avoid promoting unwanted messages about marriage, are pure speech entitled to full First Amendment protection. *See* Pls.' Mot. for Prelim. Inj. 11 fn 4, ECF No. 7; *see also Cressman v. Thompson (Cressman II)*, 798 F.3d 938, 952 (10th Cir. 2015) (explaining that "[t]he concept of pure speech is fairly capacious" and citing examples). They are also proscribed by the Defendants' interpretation of CADA. Compl. ¶¶ 165-180.

Element 2: Constitutional conduct is proscribed by statute. As Lorie pled, Defendants interpret CADA to bar her from both publishing her desired statement and entering the wedding website design business unless she is willing to create websites celebrating same-sex marriage. Compl. ¶¶ 165-180. Defendants do not contest this fact. Mot. to Dismiss; Resp. to Pls.' Mot. for Prelim. Inj., ECF No. 38. Indeed Defendants' aggressive enforcement against Masterpiece Cakeshop leaves little doubt about their application of CADA to compel expressive business owners to create speech celebrating same-sex marriages. Mot. to Dismiss 4-5; Compl. ¶¶ 63-72, 85. Like the owner of Masterpiece Cakeshop, Lorie is willing to serve all people, but she cannot create all messages. Compl. ¶¶ 70, 111-112. She intends to create custom wedding websites promoting marriages between one man and one woman, but will decline to create wedding websites promoting same-sex marriages. Compl. ¶¶ 175-176. As evidenced by the Defendants' briefing and prior enforcement actions, they interpret CADA to bar Lorie from speaking and not speaking in the manner she desires.

Element 3: Credible threat of prosecution. When a plaintiff desires to engage in conduct prescribed by a statute, courts "assume a credible threat of prosecution in the absence of

10

compelling contrary evidence." *Ward*, 321 F.3d at 1269; *see also Am. Booksellers Ass'n*, 484 U.S. at 393 ("The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise."); *Mangual v. Rotger-Sabat*, 317 F.3d 45, 57 (1st Cir. 2003) ("[W]hether a First Amendment plaintiff faces a credible threat of prosecution, the evidentiary bar that must be met is extremely low."). Here, Defendants have asserted no evidence to the contrary. They have made no statements suggesting they will not enforce CADA against Lorie if she posts her statement or begins creating wedding websites and declines to create websites promoting same-sex marriages. Mot. to Dismiss, Resp. to Prelim. Inj. Mot. Instead, they twice emphasized their enforcement power under CADA making it all the more clear they can and will enforce CADA to restrict and compel Lorie's speech if she begins creating wedding websites. Mot. to Dismiss 3-4, 16-20. Their history of enforcement in Masterpiece Cakeshop makes this danger concrete. Compl. ¶¶ 63-72, 85. It is not speculative to believe they will do so again. Indeed, "past enforcement against the same conduct is good evidence that the threat of enforcement is not "'chimerical.'" *Susan B. Anthony List*, 134 S. Ct. at 2345 (citing *Steffel*, 415 U.S. at 459).

### b.   Second *Ward* test.

Lorie's Complaint alleges sufficient facts to meet all elements of the second *Ward* test.

*Elements 1 and 2: Credible threat of prosecution and chilling effect on desired speech.* As explained above, Lorie's complaint establishes a credible threat of prosecution. Her complaint also alleges a chilling effect on her desired speech.  Compl. ¶¶ 177-180.  Because of her fear of prosecution, and only because of it, Lorie is chilling her speech. *Id.* She is chilling both the publication of her statement about marriage on her website and she is chilling her entry into the custom wedding website marketplace. *Id.* By chilling her First Amendment rights in this way,

Lorie incurs two separate "chilling effect" injuries. These injuries are current, ongoing, and irreparable under the law. *Ward*, 321 F.3d at 1267. Lorie has undoubtedly sustained "injury-in-fact."

### c.      Defendants' speculation arguments are misplaced.

Defendants do not address either *Ward* test. Instead they argue that Lorie lacks standing because her injuries are speculative or require further action by a third party. Mot. to Dismiss 6-8. Neither is accurate.

Lorie alone controls whether she posts her desired statement, and if she does post, she immediately violates CADA and opens herself to CADA's harmful administrative process. *See Susan B. Anthony List*, 134 S. Ct. at 2345 ("We take the threatened Commission proceedings into account because administrative action, like arrest or prosecution, may give rise to harm sufficient to justify pre-enforcement review."). It is this harmful administrative process, starting when the complaint is filed triggering a mandatory investigation, which has caused Lorie to self-censor. Compl. ¶¶ 39-53, 177-180. That is not speculative and it is not dependent on Defendants' ten item list.

The second injury occurs as soon as Lorie declines to create a website for a same-sex wedding and Defendants begin enforcement action against her with a complaint and mandatory investigation. It also does not rely upon Defendants' ten factors. Mot. to Compel 6-8.  To be sure, this injury may not occur until a third party asks Lorie to create a website celebrating same-sex marriage. Yet, that third-party request is not a sufficient basis under the case law to reject standing. Courts have long affirmed pre-enforcement standing even if violation of the law depends on a likely third party action. *See Doe*, 410 U.S. at 188 (affirming physicians' pre-enforcement

standing to challenge an abortion law even though the physicians could not violate the law until they received a third party request to perform an abortion.); *Johnson*, 194 F.3d at 1153 (confirming pre-enforcement standing before statute even took effect); *see also Am. Civil Liberties Union v. Alvarez*, 679 F.3d 583, 594 (7th Cir. 2012) (recognizing that "[p]reenforcement suits always involve a degree of uncertainty about future events."); *Brandt v. Vill. of Winnetka*, 612 F.3d 647, 649 (7th Cir. 2010) ("Any pre-enforcement suit entails some element of chance."). It is enough that Lorie wants to operate in the wedding industry, a fact that makes receiving a request to celebrate a same-sex marriage exceedingly likely.

### 2.     Element (ii) – harm is fairly traceable to Defendants:

Defendants say they have caused Lorie no harm, presumably because they have not yet prosecuted Lorie in all available state and administrative courts as they have the owner of Masterpiece Cakeshop. Mot. to Dismiss 7; Compl. ¶¶ 63-72, 85. But this again misrepresents the harm and their role in it. The danger Plaintiffs allege is "one of self-censorship; a harm that can be realized even without an actual prosecution." *Am. Booksellers Ass'n*, 484 U.S. at 393. Defendants need not prosecute Lorie to injure her.

However, Defendants have interpreted and enforced CADA to proscribe Lorie's protected expression. Compl. ¶¶ 63-72, 85. Moreover, they have admitted that each of them have enforcement power — whether to initiate a complaint, or participate in an investigation, or enforce CADA in some other way. Mot. to Dismiss 3-4, 16-20. These admissions, coupled with the complaint's allegations affirming the same, Compl. ¶¶ 39-53, is enough to prove causation in the pre-enforcement context. *See Cressman I*, 719 F.3d at 1145 ("It is well-established that when a plaintiff brings a pre-enforcement challenge to the constitutionality of a particular statutory

provision, the causation element of standing requires the named defendants to possess authority to enforce the complained of provision."); *Consumer Data Indus. Ass'n v. King*, 678 F.3d 898, 905 (10th Cir. 2012) ("Federal courts have consistently found a case or controversy in suits between state officials charged with enforcing a law and private parties potentially subject to enforcement."). This is especially true given the procedural posture of the case, for on a motion to dismiss the facts alleged in Lorie's complaint must be accepted as true and construed in her favor.

Lorie's complaint alleges that the Defendants have enforcement authority in relationship to CADA. Compl. ¶¶ 25-28, 39-53. Defendants' admissions in their motion to dismiss have confirmed this for each Defendant. Mot. to Dismiss 3-4, 16-20. She has thus fairly traced her injury to the Defendants.

### 3.   Element (iii) – redressability:

In the third element of standing, Defendants argue that Lorie's injuries are not redressable because an injunction would only stop the Defendants from violating her rights; private citizens could still file suit against Lorie and her business. Mot. to Dismiss 7-8. But the law does not demand that success in a lawsuit preclude all possible harm. *King*, 678 F.3d at 902. Redressability is satisfied if "the risk of harm 'would be reduced *to some extent* if petitioners received the relief they seek.'" *Id.* (quoting *Massachusetts v. EPA*, 549 U.S. 497, 526 (2007)). "A plaintiff need only show that a favorable decision would redress '*an* injury,' not '*every* injury'" to obtain standing. *Id.* (quoting *Larson v. Valente*, 456 U.S. 228, 243 (1982)) (emphasis in original); *see also Cressman I,* 719 F.3d 1139, 1146-47 (10th Cir. 2013).

A favorable decision in this Court would redress Lorie's injury to a great extent. Compl. ¶ 180. Defendants would be barred from enforcing CADA to ban or compel Lorie's speech. And a favorable outcome would significantly reduce if not eliminate the chances that a private plaintiff would file a lawsuit to try to compel her to create speech she does not want to create. Lorie has pled redressability.

Accordingly, Lorie meets all three elements of standing under *Lujan*. The Court should therefore deny Defendants' 12(b)(1) motion to dismiss.

## II.   Abstention is not proper under *Younger*, *Rooker-Feldman*, or *Colorado River* because there is no pending state court proceeding.

### A.   Burden of Proof:

Defendants' statement of the burden of proof again relates to factual challenges, not facial challenges, but more problematically suggests that Lorie must prove by a preponderance of the evidence that abstention does not apply. The Courts do not treat abstention that way. Rather, the Courts restrict abstention under all three doctrines, *Younger*, *Rooker-Feldman*, and *Colorado River*, to exceptional circumstances. *Sprint Commc'n, Inc. v. Jacobs*, 134 S. Ct. 584, 591-94 (2013); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994). All of these exceptional circumstances require the *same parties* to be litigating in a parallel proceeding in state court. Lorie is not a party to *any* state court proceeding. That fact alone is fatal to Defendants' three abstention arguments.

Lorie has established jurisdiction by pleading "general factual allegations of injury resulting from the defendant's conduct," *Lujan*, 504 U.S. at 561. The Court "must accept the allegations in the complaint as true." *Holt*, 46 F.3d at 1002. *See* Section I.A. Taking the complaint allegations as true, abstention is not warranted.

B.       *Younger* elements:

In 2013, the Supreme Court clarified *Younger*'s scope. *Sprint Commc'n, Inc.*, 134 S. Ct. at 591-94. The Court explained that *Younger* only applies in "three 'exceptional circumstances'"—(1) when federal jurisdiction would "intrud[e] into ongoing state criminal prosecutions," (2) or on a "civil enforcement" that is "akin to a criminal prosecution," or (3) when "'civil proceedings involv[e] certain orders…uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 591 (quoting *New Orleans Public Service, Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 386 (1989)). All three require the same parties be litigating in the ongoing state case. *Id.* at 587; *see also Phelps v. Hamilton (Phelps I)*, 59 F.3d 1058, 1069 (1995) (stating that "it would be unfair to hold [a plaintiff's] constitutional rights hostage to the outcome and timing" of another person's state court proceeding.); *Steffel*, 415 U.S. at 462 ("[A] refusal on the part of the federal courts to intervene when no state proceeding is pending may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding.").  Notably, the Court distinguished the three part test the Defendants cite as not dispositive but rather as "*additional* factors" to consider if one of the "exceptional circumstances" applies. *Id.* at 593.

C.       *Younger* elements not met:

Defendants argue that Lorie must be forced out of federal court because of a pending petition for certiorari to the U.S. Supreme Court in *Masterpiece Cakeshop*. Mot. to Dismiss 8-10. This is inapposite. Defendants apparently misapprehend Lorie's reliance on the Masterpiece enforcement action as an attempt by her to interfere with that action. Mot. to Dismiss 9; Compl.

16

¶¶ 61-90. That is not the case.  Rather, she cites the Masterpiece enforcement action as evidence of how Defendants interpret CADA and of the credible threat of enforcement she faces. She brings her own separate challenge to the constitutionality of CADA as it applies to her speech and her expressive business, 303 Creative. Compl. ¶¶ 165-180, 205-399. As the Court said in *Sprint Communications*, "[a]bstention is not in order simply because a pending state-court proceeding involves the same subject matter." *Sprint Commc'n*, 134 S. Ct. at 588. Yet this is precisely the course of action Defendants propose here.

The Tenth Circuit has declined to apply *Younger* abstention under circumstances where there was a far closer connection between the litigants in state and federal cases. In *Phelps I*, the court considered abstention as to two plaintiffs. *Phelps I*, 59 F.3d at 1069. Phelps was a party to both a state court proceeding and a federal court proceeding. *Id.* His federal co-plaintiff, however, was a party only to the federal proceeding. *Id.* While the court abstained as to Phelps, it did not abstain as to his co-plaintiff, Engels, even while noting that the plaintiffs "share[d] the same political agenda." *Phelps I*, 59 F.3d at 1069; *see also Robinson v. Stovall*, 646 F.2d 1087, 1092 (5th Cir. 1981) ("Neither a common interest in the outcome of federal litigation nor a common effort in pressing it requires abstention as to all plaintiffs."). In doing so, the Tenth Circuit stated that "it would be unfair to hold [a plaintiff's] constitutional rights hostage to the outcome and timing" of another plaintiff's proceeding. *Phelps I*, 59 F.3d at 1069.

Unlike in *Phelps I*, there is no relationship whatsoever between Lorie Smith and 303 Creative and Jack Phillips and Masterpiece Cakeshop. They certainly are not co-plaintiffs in either federal or state court. Lorie has filed a separate, federal civil rights lawsuit to vindicate her First Amendment rights. She is not a party to the *Masterpiece Cakeshop* case or any other relevant

17

state court proceeding. *Younger* does not apply and her First Amendment case should proceed in federal court.

D.     *Rooker-Feldman* elements:

The Supreme Court also recently, in 2005, narrowed *Rooker-Feldman* abstention. *Exxon Mobil Corp.*, 544 U.S. at 284. Defendants cite the standard only from a prior 2004 case. Mot. to Dismiss 11 (citing *Merrill Lynch Bus. Fin. Servs. v. Nudell*, 363 F.3d 1072, 1076 (10th Cir. 2004)).

In 2005, in *Exxon Mobil Corporation*, the Court stated that *Rooker-Feldman* may only be applied "to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284 (further explaining that some circuits, although not specifying the Tenth Circuit, had applied the doctrine in a wider, and inappropriate fashion); *see also Guttman v. Khalsa*, 446 F.3d 1027, 1031-32 (10th Cir. 2006) (adopting the *Exxon Mobil* limitations to the *Rooker-Feldman* doctrine.). Accordingly, *Rooker-Feldman* in its proper form is akin to res judicata, employed only to prevent the losing state court litigant from a second bite at the apple in federal court. The doctrine applies only where the parties in the state and federal cases are the same and when the state court proceeding is final. *Johnson v. Rodrigues*, 226 F.3d 1103, 1108 (10th Cir. 2000) (refusing to abstain pursuant to *Rooker-Feldman*, because the plaintiff "was not a party to the state court…proceeding, a fact which makes the [*Rooker-Feldman*] doctrine inapplicable."); *Guttman*, 446 F.3d at 1032. ("Under *Exxon Mobil*, *Rooker-Feldman* applies only to suits filed after state proceedings are final.")

E.      *Rooker-Feldman* elements not met:

As with the *Younger* doctrine, the fact that Lorie is not a party to any state court proceeding is fatal to *Rooker-Feldman* abstention. *Johnson*, 226 F.3d at 1108. In their analysis, Defendants again assert that Lorie claims "harm as a result of the decision" in *Masterpiece Cakeshop*, Mot. to Dismiss 11, but that is not true. Nowhere in Lorie's complaint does she claim to be injured by that decision. She also does not seek to enjoin *Masterpiece Cakeshop*. And just as problematic for Defendants, *Masterpiece Cakeshop* is not final. It is pending on a petition for certiorari before the U.S. Supreme Court. Mot. to Dismiss 5. This is yet another fatal flaw precluding application of *Rooker-Feldman*. *Exxon Mobil Corp.*, 544 U.S. at 284.

The Defendants' motion to abstain pursuant to *Rooker-Feldman* should be denied.

F.      *Colorado River* elements:

*Colorado River* is at least as limited as *Younger* and *Rooker-Feldman*. *Colorado River Water Conservation Dist. v United States*, 96 S. Ct. 1236 (1976). Like *Younger*, it is confined to "exceptional circumstances" impacting "parallel" "state and federal proceedings." *Fox*, 16 F.3d at 1081. In considering the doctrine, the Court must determine whether the state and federal proceedings are parallel, meaning "substantially the same parties litigate substantially the same issues in different forums." *Id.* at 1081 (quoting *New Beckley Mining Corp. v. Int'l Union, UMWA*, 946 F.2d 1073 (4th Cir. 1991)). It is "a serious abuse of discretion" to apply *Colorado River* abstention if the "parallel state-court litigation" is not "an adequate vehicle for the complete and prompt resolution of the issue between the parties." *Fox*, 16 F.3d at 1081 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983)).

G.     Colorado River elements not met:

In support of their bid for abstention under *Colorado River*, Defendants provide a single sentence resting on the faulty premise that *Masterpiece Cakeshop* is a parallel state court proceeding. Mot. to Dismiss 13. It is not. Lorie is not a party to *Masterpiece Cakeshop*. It does not provide her any vehicle to resolve the issue she raises in the present case—the unconstitutional application of CADA to her speech and to her expressive business. Compl. ¶¶ 165-180, 205-399.

In addition to the fact that *Masterpiece Cakeshop* is not a parallel proceeding, the Tenth Circuit also considers several factors to determine whether "exceptional circumstances exist to warrant deference to parallel state court proceedings." *Fox*, 16 F.3d at 1082. These include the circumstances Defendants reference but fail to analyze as to the present case —"(1) whether either court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the courts obtained jurisdiction" – as well as others. *Id.*; Mot. to Dismiss 12. "No single factor is dispositive" and "[r]ather than…a 'mechanical checklist', a court should engage in a 'careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.'" *Id.* at 1082 (quoting *Moses H. Cone*, 460 U.S. at 15-16). None of these factors exist in this case. There is no property at stake, the federal forum is convenient, federal jurisdiction does not cause piecemeal litigation, and the federal case was filed when *Masterpiece Cakeshop* was on petition for writ of certiorari to the Supreme Court.

Indeed no exceptional circumstances can exist to force Lorie to relinquish her First Amendment rights, suffering ongoing harm, while the Defendants wait to see if the Supreme Court will grant certiorari in *Masterpiece Cakeshop*.

The Court should deny Defendants' motion to abstain under *Colorado River*.

**III.    Plaintiffs have stated a claim upon which relief can be granted.**

A.    Burden of Proof:

Defendants' statement of the burden of proof under Federal Rule of Civil Procedure 12(b)(6) (hereafter "12(b)(6)") and their analysis focuses entirely on the pleading standards applicable when a plaintiff sues a government official in their individual capacity. Mot. to Dismiss 13-20. Indeed, they discuss what must be pled to impose "[i]ndividual liability under § 1983" and note that "[b]ecause vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 14-15.

But these standards have nothing to do with Lorie's case because she has sued the Defendants *solely* in their official capacities. *See* Compl. ¶¶ 25-27.  To avoid Colorado's invocation of Eleventh Amendment Sovereign Immunity, Lorie took the well-trodden path under *Ex parte Young*, 209 U.S. 123 (1908), of seeking prospective relief against state officials in their official capacities. *See Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (recognizing as an exception to Eleventh Amendment immunity a suit where "a plaintiff … bring[s] suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief."). For example, in *Wilson v. Stoker* a plaintiff sued the Oklahoma Attorney General to challenge a statute criminalizing his distribution of campaign literature. *Wilson*, 819 F.2d at 945-46. Like the Defendants in this case, the Attorney General argued that the suit did not present "a case or controversy as to him" because his office had not arrested Wilson, did not intend to arrest him,

and did not directly threaten him. *Id.* at 946. The Tenth Circuit rejected that argument, finding

that "the official represents the state whose statute is being challenged as the source of injury," so

by suing the state official in his official capacity, the plaintiff was effectively suing the state. *Id.*

at 947. Accordingly, this court should assess Lorie's statement of her claims under the standards

applicable to official, not individual, capacity suits.

"At the motion-to-dismiss stage," the court "must accept all the well-pleaded allegations

of the complaint as true and must construe them in the light most favorable to the plaintiff."

*Cressman I*, 719 F.3d at 1152 (quoting *Alvarado v. KOB-TV, LLC,* 493 F.3d 1210, 1215 (10th

Cir. 2007). The "complaint must contain sufficient factual matter, accepted as true, to state a claim

to relief that is plausible on its face," where "plausibility…is not akin to a probability requirement,

but it asks for more than a sheer possibility that a defendants has acted unlawfully." *Cressman I*,

719 F.3d at 1152 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

B.     Elements:

A plaintiff establishes a claim under 42 U.S.C. 1983 by alleging "(1) a violation of rights

protected by the federal Constitution or created by federal statute or regulation, (2) proximately

caused (3) by the conduct of a 'person' (4) who acted under color of any statute, ordinance,

regulation, custom or usage, of any State or Territory of the District of Columbia." *Summum v.

City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002). Lorie has done this.

C.     Elements met:

Lorie has pled a claim under 42 U.S.C. § 1983 and the Defendants admit the facts – each

Defendant's enforcement power – that prove the sufficiency of her claim against them.

Lorie pled a violation of her rights – the chilling of her speech about marriage and entry into custom wedding website marketplace, and prospectively that if she begins creating custom wedding websites she will be forced to create them for same-sex ceremonies, compelling her to speak a message promoting same-sex marriage in violation of her beliefs. Compl. ¶¶ 56-60, 165-180. Lorie pled that her right to speak and refrain from speaking is protected by the First Amendment such that it violates the Constitution for the government to compel her speech or to chill it. Compl. ¶¶ 205-291. Lorie pled that she has self-censored by not posting her views about marriage on 303 Creative's website and by not starting to create custom wedding websites, because of the Defendants' interpretation of CADA, which each of the Defendants have the power to enforce under color of state law. Compl. ¶¶ 31-60, 177.

Defendants do not challenge Lorie's pleading of the violation of her First Amendment rights. Defendants only accuse Lorie of "inaccurately describ[ing] Defendants' actual authority and power." Mot. to Dismiss 16. Defendants' complaint is that Lorie alleged that "Defendants" have the power to file a charge of discrimination, investigate charges, and take the other enforcement actions she pled, rather than pleading the enforcement power of each Defendant separately. Compl. ¶¶ 25-27, 39-53. Yet, Lorie affirmatively pled that each of the Defendants have "authority to enforce the law" with reference to the specific statutes conferring that power. Compl. ¶¶ 25-27. Defendants also admit that each of the Defendants have at least some of the enforcement powers Lorie pled.  For example, they admit that: (1) the Commission, a Commissioner, or the Attorney General has the authority to file complaints under CADA, triggering a mandatory investigation, Mot. to Dismiss 3; *see also* Colo. Rev. Stat. 24-34-306(1)(b); (2) the Director is the party with the enforcement authority to "process charges,

investigate, make a finding, and, if she finds cause, attempt conciliation," Mot. to Dismiss 19; *see also* Colo. Rev. Stat. 24-34-302; Colo. Rev. Stat. 24-34-306(2); and (3) the Commission has authority as a "quasi-judicial body that reviews evidence, considers arguments, and renders a decision under the administrative procedures act." Mot. to Dismiss 19; *see also* Colo. Rev. Stat. 24-4-105 & 24-34-306(4)-(9).

Defendants are elevating form over substance. It is well-settled that when a plaintiff sues state officers for prospective relief under *Ex Parte Young*, she must merely allege that the official has "'some connection'" to the enforcement of the allegedly defective act." *See Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 827-28 (10th Cir. 2007) (citation omitted). Here, Lorie pled that the Defendants have enforcement power under CADA. That is enough, especially under the deferential standards that apply at the motion to dismiss stage. Yet, in their motion to dismiss, the Defendants also admitted that each Defendant has "some connection" to the enforcement of CADA. Mot. to Dismiss 3-4, 19-20. By doing so, they effectively conceded the causation elements of pleading a claim under 42 U.S.C § 1983.

## IV. Plaintiffs' complaint complies with Fed. R. Civ. P. 8.

### A. Burden of Proof:

Lorie's complaint complies with all of the federal rules, including Federal Rule of Civil Procedure 8 ("Rule 8"). The Courts permit a broad range of pleadings and they do not dismiss pursuant to Rule 8 lightly. For example, the court in the case Defendants cite gave the plaintiff multiple chances to submit a compliant pleading, and dismissed only after receiving multiple unintelligible documents. *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe County Justice*

*Center*, 492 F.3d 1158, 1160 (10th Cir. 2007). The Tenth Circuit confirmed that even after dismissal, plaintiff could refile his claim. *Id.*

B.    Elements:

Rule 8 calls for "short and plain statement[s]" of jurisdiction, of Plaintiffs' claims, and of the relief sought. Fed. R. Civ. P. 8(a)(1). Yet, as the Tenth Circuit has recognized, this is "more aspirational than descriptive of pleading practice." *Nasious*, 492 F.3d at 1160, 1163. As long as the complaint gives Defendants fair notice of the claims against them, it satisfies Rule 8. *Gardner v. First Am. Title Ins. Co.*, 294 F.3d 991, 994 (8th Cir. 2002) ("As defendants concede that the lengthy complaint gave them fair notice of plaintiffs' RESPA claims, the complaint satisfied Rule 8(a) and should not have been dismissed"); *see also Idar v. Cooper Tire & Rubber Co.*, No. C-10-217, 2010 WL 3702579, at *2 (S.D. Tex. Sept. 15, 2010) ("Defendant does not argue that the Complaint is confusing or fails to put the Defendant on notice of the claims against it. Such a showing is required for a pleading to be struck under Rule 8(a).") (citation omitted).

C.    Elements Met:

Defendants make no claim that they lack fair notice or that the complaint is confusing or unintelligible. Instead, they argue for dismissal because the Complaint is too long or perhaps because it is redundant. Mot. to Dismiss 20-21. The case law forecloses such a dismissal.

Short "is a relative term" and "must be calibrated to the number of claims and their character, since some require more explanation than others…" *Kadamovas v. Stevens*, 706 F.3d 843, 844 (7th Cir. 2013). "Length is not by itself a basis for dismissing a complaint based on Rule 8(a)," *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131 (9th Cir. 2008), and must be distinguished from "unintelligibility" for this reason. *Kadamovas*, 706 F.3d at 844; *see also*

*Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011) ("[U]ndue length alone ordinarily does not justify the dismissal of an otherwise valid complaint."). It is not unusual for "[o]ne-hundred page complaints [to] survive a motion to dismiss." *Kadamovas*, 706 F.3d at 845.

Yet, despite the complex issues raised in this case, it is not a "one-hundred page complaint." It is a sixty-page complaint alleging, on a pre-enforcement basis, five distinct constitutional challenges to a state public accommodation law. Compl. ¶¶ 200-399. It is not an ordinary case. Fair notice cannot be disposed of in a few pages. Rather, each paragraph was crafted to give Defendants fair notice of the claims against them. And it succeeded, as Defendants do not challenge fair notice.

Similarly, Defendants make a bare assertion that the Complaint should be dismissed because it is redundant. Mot. to Dismiss 20-21. It is not, which is highlighted by Defendants' failure to specify any redundant paragraphs. But courts typically tolerate some redundancy. *Lewis v. Bay Indus., Inc.*, No. 12-C-1204, 2013 WL 817845, *1 (E.D. Wis. Mar. 5, 2013) (Rule 8 "is not a license for the court or opposing parties to act as editors…"). Even if some allegations were redundant, the proper solution is a motion to strike the redundant allegations, not to dismiss the complaint.

Lastly, Defendants complain that fifteen paragraphs in the Complaint contain citations to Bible passages. Mot. to Dismiss 20-21. Defendants state that they "should not be required to admit what an unidentified version of the Bible does or does not contain" and they "should not be required to either admit or deny the truth of what is said in the Bible." *Id.* at 21. The Complaint requires neither of these things. Four paragraphs in the Complaint contain statements of Lorie's beliefs with a citation to the Bible as the basis for her belief, *e.g.*, Compl. ¶¶ 95-97, 99. All

Defendants are asked to admit is whether Lorie believes those statements. There is no reason for an admission or denial of the truth of the Bible.

The cases Defendants cite on this point are inapplicable. They concern pro se litigants who filed hundreds upon hundreds of incomprehensible pages, some of which contained lengthy recitations from the Bible with no reference to a legal claim. *Seehausen v. Gonzalez*, 2:11-cv-10786-GW-RZ, 3 (C.D. Cal. filed May 8, 2012) (Pro se plaintiff filed a "rambling, ponderous and at times [an] incomprehensible pile of document" which included a 70-page complaint, 40 pages "in support of a motion 'for an order to show cause…'", an 11-page "Petition for Immediate Injunction" and over 500 pages of exhibits, "festooned" with "disquisitions from the Bible and ornate Latin..."); *Ellis v. State*, No. 91C8391, 1992 WL 332293, *2 (N.D. Ill. Nov. 6, 1992) (Pro se plaintiff filed a 16-page, single-spaced complaint that the Court described as "convoluted and nebulous…interspersed with religious pleas to defendants" and "general statements to the effect that defendants have violated federal law."). These examples are a far cry from Lorie's well-pled complaint.

## V.     Plaintiffs' case should not be stayed.

Dismissal of this case based on Defendants' abstention theories would work a patent injustice and leave Lorie to suffer irreparable harm with no recourse. A stay would do the same.

In the alternative of their Motion to Dismiss, Defendants urge this Court to take extraordinary action to stay Plaintiffs' case because Defendants want to wait and see if the Supreme Court grants a petition for certiorari in a separate case they brought against another litigant. Mot. to Dismiss 21-23. Yet, as the Supreme Court has stated, "only in rare circumstances

will a litigant in one cause be compelled to stand aside while a litigant in another [case] settles the rule of law that will define the rights of both." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).

Ignoring that, Defendants urge a stay citing *Abbott Laboratories* and other cases that are distinguishable. *Abbott Laboratories* was an APA case that only mentioned the courts authority to stay cases as a possible solution to a prospective concern that the decision in the case might trigger a multiplicity of similar suits in various jurisdictions. *Abbott Labs. v. Gardner*, 387 U.S. 136, 154-55 (1967). That is not the scenario Lorie's case presents. Lorie brings a claim that is distinct and unrelated to *Masterpiece Cakeshop*. Compl. ¶¶ 165-180. The two cases do not represent a flood of similar cases like the flood of cases contemplated in *Abbott Laboratories. Id.* Similarly, Defendants other cited cases, *Vickery*, *In re Kozeny*, *Ventura*, and *Colorado River*, all dealt with stays in unique circumstances that were necessary to avoid an injustice. *Diamond v. Vickery*, No. 1:12-cv-01891-MSK, 2 (D. Colo. filed Feb. 14, 2013) (staying one of two appeals because they presented overlapping issues, "based on the same facts, and aris[ing] from a single Judgment" entered by a US Bankruptcy Court); *In re Kozeny*, 236 F.3d 615, 618 (10th Cir. 2000) (concerning federal and international cases between the same parties raising the same claims); *Ventura v. David's Bridal*, 248 F.3d 1139, *1 (5th Cir. 2001) (court briefly stayed the case because of a pending disbarment proceeding against the plaintiff's attorney); *Colorado River*, 424 U.S. 800 (addressing abstention not stay).

None of Defendants' cases address a motion for stay when the two proceedings are unrelated and involve unrelated litigants. Defendants' cases also, critically, do not address a motion to stay where fundamental First Amendment rights are at stake.

Every day Lorie waits for a decision on this case, she suffers ongoing and irreparable harm. *Verlo v. Martinez*, 820 F.3d 1113, 1127 (10th Cir. 2016) (stating "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). She self-censors, chilling her speech about marriage on her website, and chilling her creation of custom wedding websites to avoid complaints, investigations, enforcement actions, and compliance orders from the Defendants. Compl. ¶¶ 31-60, 77. Now Defendants ask this Court to perpetuate those injuries while they wait to see if the Supreme Court will grant certiorari in an unrelated case.

Each term, the Supreme Court receives 7,000-8,000 petitions for certiorari and it grants review of around 80 cases. Supreme Court of the United States. *Frequently Asked Questions* (October 22, 2016), https://www.supremecourt.gov/faq.aspx. This means the statistical chances of the Supreme Court taking *Masterpiece Cakeshop* up on review are around 0.1% versus the 100% certainty that Lorie will sustain continuing irreparable harm if this Court stays her case. That is not the type of "rare circumstance" that warrants a stay.

When "[j]urisdiction exist[s]," as it does here, the federal courts have a "virtually unflagging" obligation to hear the case. *Sprint Commc'n*, 134 S. Ct. at 591; *Colorado River*, 424 U.S. at 817 (same). The Court should deny Defendants' Motion to Stay and proceed to consider Plaintiffs' Motion for Preliminary Injunction to end this harm.

## **CONCLUSION**

Plaintiffs ask this Court to dismiss Defendants Motion to Dismiss.

Respectfully submitted this 9th day of November, 2016.

*s/ Jeremy D. Tedesco*

Jeremy D. Tedesco (Arizona Bar No. 023497)
Jonathan A. Scruggs (Arizona Bar No. 030505)
Samuel D. Green (Arizona Bar No. 032586)
Katherine L. Anderson (Arizona Bar No. 033104)
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 (facsimile)
jtedesco@ADFlegal.org
jscruggs@ADFlegal.org
sgreen@ADFlegal.org
kanderson@ADFlegal.org

David A. Cortman (Georgia Bar No. 188810)
Rory T. Gray (Georgia Bar No. 880715)
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Road, NE, Suite D-1100
Lawrenceville, GA 30043
(770) 339-0774
(770) 339-6744 (facsimile)
dcortman@ADFlegal.org
rgray@ADFlegal.org
Attorneys for Plaintiffs

Michael L. Francisco (Colorado Bar No. 39111)
MRD Law
3301 West Clyde Place
Denver, CO 80211
(303) 325-7843
(303) 723-8679 (facsimile)
MLF@mrdlaw.com

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2016, the foregoing was filed with the Clerk of Court

using the CM/ECF system which will send notification of such filing to the following:

Jack D. Patten, III
Assistant Attorney General
Civil Litigation and Employment
Law Section
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: (720) 508-6592
Fax: (720) 508-6032
jack.patten@coag.gov

Vincent E. Morscher
Deputy Attorney General
Civil Litigation and Employment Law Section
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: (720) 508-6588
Fax: (720) 508-6032
vincent.morscher@coag.gov

Attorneys for Defendants

Eric Maxfield
First Assistant Attorney General
Colorado Department of Law
Office of the Colorado Attorney General
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 8th Floor
Business & Licensing Section
Denver, Colorado 80203
720-508-6404 Direct
720-508-6000 Main
eric.maxfield@coag.gov

Leanne B. De Vos
Senior Assistant Attorney General
Office of the Colorado Attorney General
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 8th Floor
Business & Licensing Section
Denver, Colorado 80203
720-508-6411 Direct
720-508-6000 Main
Fax: (720) 508-6037
Leanne.DeVos@coag.gov

*s/ Jeremy D. Tedesco*

Jeremy D. Tedesco (Arizona Bar No. 023497)
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 (facsimile)
jtedesco@ADFlegal.org

31