1

```
 1             IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLORADO
 2
    Civil Action No. 16-cv-2372-MSK-CBS
 3
    303 CREATIVE LLC, a limited liability company;
 4  LORIE SMITH,

 5  Plaintiffs,

 6  vs.

 7  AUBREY ELENIS, Director of the Colorado Civil Rights
    Division in her official capacity;
 8  ANTHONY ARAGON, Member of the Colorado Civil Rights
    Commission in his official capacity;
 9  ULYSSES J. CHANEY, Member of the Colorado Civil Rights
    Commission in his official capacity;
10  MIGUEL RENE ELIAS, "MICHAEL," Member of the Colorado Civil
    Rights Commission in his official capacity;
11  CAROL FABRIZIO, Member of the Colorado Civil Rights
    Commission in her official capacity;
12  HEIDI HESS, Member of the Colorado Civil Rights Commission
    in her official capacity;
13  RITA LEWIS, Member of the Colorado Civil Rights Commission
    in her official capacity;
14  JESSICA POCOCK, Member of the Colorado Civil Rights
    Commission in her official capacity;
15  CYNTHIA H. COFFMAN, Colorado Attorney General, in her
    official capacity,
16
    Defendants.
17
    ----------------------------------------------------------
18
                       REPORTER'S TRANSCRIPT
19                    (Law and Motion Hearing)

20  ----------------------------------------------------------

21       Proceedings before the HONORABLE MARCIA S. KRIEGER,

22  Judge, United States District Court for the District of

23  Colorado, commencing at 9:30 a.m., on the 11th day of

24  January, 2017, in Courtroom A901, United States Courthouse,

25  Denver, Colorado.
```

1           APPEARANCES

2      KATHERINE L. ANDERSON and JEREMY D. TEDESCO, Alliance
   Defending Freedom - Scottsdale, 15100 North 90th Street,
3  Suite 165, Scottsdale, Arizona 85260, AND
      MICHAEL L. FRANCISCO, MRDLaw, 3301 West Clyde Place,
4  Denver, Colorado 80211, appearing for the plaintiffs.

5      VINCENT E. MORSCHER, Colorado Attorney General's
   Office, Ralph L. Carr Colorado Judicial Center, 1300
6  Broadway, Denver, Colorado 80203, appearing for the
   defendants.
7
              MARY J. GEORGE, FCRR, CRR, RMR
8          901 19th Street, Denver, Colorado 80294
           Proceedings Reported by Mechanical Stenography
9             Transcription Produced via Computer

10

11              P R O C E E D I N G S

12      (Call to order of the court at 9:30 a.m.)

13      THE COURT: Court is convened today in case No. 16

14  cv 2372. This is encaptioned 303 Creative LLC and Lorie

15  Smith versus a number of defendants: Aubrey Elenis,

16  Anthony Aragon, Ulysses Chaney, Miguel Elias, Carol

17  Fabrizio, Heidi Hess, Rita Lewis, Jessica Pocock and

18  Cynthia Coffman.

19      And the matter's set down for a law and motion

20  hearing because there's been a motion for a preliminary

21  injunction filed here, and there also has a pending motion

22  to dismiss.

23      Could I have entries of appearance, please.

24      MS. ANDERSON: Yes. Kate Anderson here on behalf

25  of plaintiffs. I'm joined by cocounsel Jeremy Tedesco and

```
 1      Michael Francisco.
 2              THE COURT:  Thank you.  And, counsel, you need to
 3      speak into the microphone.  You have a soft voice and it
 4      kind of dissipates in the courtroom, so either pull that
 5      microphone toward you or go to the lectern, please.
 6              MS. ANDERSON:  All right.
 7              THE COURT:  Good morning and welcome to all of
 8      you.
 9              MR. MORSCHER:  Good morning, Your Honor.  Vincent
10      Morscher, Deputy Attorney General, representing all
11      defendants in this matter.
12              THE COURT:  Good morning and welcome to you as
13      well.
14              MR. MORSCHER:  Thank you.
15              THE COURT:  Before setting this hearing down, I
16      asked you to be prepared to -- or I said -- when I set it
17      down, I asked you to be prepared to address a number of
18      issues.  And I've had an opportunity to review what you've
19      filed.  I think some of those issues may have clarified in
20      the subsequent filings.
21              The purpose of our hearing here is to streamline
22      what's going on and get a path forward.  First of all, let
23      me ask the plaintiffs why you named all of the defendants,
24      Aragon through Pocock, as defendants when essentially all
25      you're suing is the Colorado Civil Rights Division.
```

1           MS. ANDERSON:  Your Honor, this is a case of
2   pre-enforcement challenge, challenging the
3   constitutionality of state statute.
4           THE COURT:  I know that.
5           MS. ANDERSON:  And the reason we named each of
6   those defendants is following the history of ex parte *Young*
7   and *Muskogee* in the Tenth Circuit and *Wilson v. Stocker*
8   saying that the way to avoid sovereign immunity when you're
9   challenging the constitutionality of a state statute is to
10  sue the people with enforcement power.  And what's required
11  is some enforcement power.  So each of those defendants has
12  some enforcement power and that is why we named them.
13          THE COURT:  They have enforcement power if they
14  act as a unit and they direct the director, correct?
15          MS. ANDERSON:  Their enforcement power, as we
16  understand it, is to file complaints, to investigate, to
17  order hearings, and on down the line.
18          THE COURT:  Individually?
19          MS. ANDERSON:  The -- the A.G. and the
20  commissioners and the commission can all file complaints,
21  which is part of the enforcement power.
22          THE COURT:  All right.  So the members of the
23  commission can file complaints; that's -- that's their
24  enforcement power that you're concerned about?
25          MS. ANDERSON:  Yes.

1           THE COURT: All right. Then let me ask the
2    defendant -- or counsel for the defendants: What I
3    understand is that simply the posting of this website,
4    notwithstanding the content, would not cause any
5    prosecution; is that correct?
6           MR. MORSCHER: That's correct, Your Honor. Just
7    by having this service out there, it still takes a number
8    of steps by independent actors to actually get it before,
9    initially, the division and then eventually the commission,
10   assuming, you know, various things happen.
11          So, you know, only if someone approaches a
12   website, seeks out the service, is denied the service based
13   on, you know, presumably their sexual orientation, and then
14   they file a charge, then it would be an issue. However, as
15   we mentioned, the independent party can still go to state
16   court on their own and completely bypass the filing with
17   the division and they could seek relief in state court
18   automatically.
19          THE COURT: All right. But we're not concerned
20   about that. We're concerned about enforcement. And what I
21   just heard you say comports with what I read, which is that
22   the plaintiffs -- or plaintiffs here will not suffer any
23   injury unless service is denied; is that correct? Because
24   there will be no enforcement unless service is denied.
25          MR. MORSCHER: Well, that's correct. I mean,

```
 1    they -- yes, they cannot take any action until facts
 2    happen, and service would have to be denied before they
 3    could take action and face --
 4            THE COURT:  All right.  So what I understand
 5    you're saying is that the plaintiffs composed the website,
 6    there would be no enforcement taken simply because the
 7    website is posted.
 8            MR. MORSCHER:  I mean, that's correct.  The --
 9    that's correct.
10            THE COURT:  Okay.  And that the only enforcement
11    that would occur, if any, would be after someone has
12    requested service and the plaintiffs have denied service;
13    is that correct?
14            MR. MORSCHER:  Well, I guess when you are talking
15    enforcement, you know, what does that mean?  Because they
16    still -- there still needs to be an investigation, there
17    still needs to be all these other steps before it's
18    actually noticed for a hearing --
19            THE COURT:  Well, we're not talking about that.
20    We're talking about what is the triggering event?  Is the
21    triggering event the posting of the website or is the
22    triggering of the -- triggering event the denial of
23    service?
24            MR. MORSCHER:  The -- as far as defendants are
25    concerned, Your Honor?
```

1             THE COURT:  Uhm-hum.
2             MR. MORSCHER:  As far as defendants are concerned,
3    the triggering event is when a charge is filed and probable
4    cause is found.
5             THE COURT:  Well, let me -- let me run down some
6    concepts, then, here.  Let's hypothetically say that the
7    plaintiffs post the website and somebody complains about
8    the language on the website.  Would that constitute a
9    complaint?
10            MR. MORSCHER:  If they filed a charge alleging
11   that?
12            THE COURT:  Uhm-hum.
13            MR. MORSCHER:  I -- that would be a complaint,
14   correct.
15            THE COURT:  And would the defendants take any
16   action to investigate that?
17            MR. MORSCHER:  If it was determined that they had
18   jurisdiction, for instance, it was filed timely, and it
19   fell under the statute, then the Civil Rights Division
20   would initiate an investigation.
21            THE COURT:  Okay.  Do you understand what I'm
22   really asking you?  Because if it is, as you have listed in
23   your pleadings, a requirement that service be denied, then
24   the plaintiffs have no standing with regard to any claim
25   based on free speech.  But if you are saying that

1     enforcement could occur based on someone complaining about
2     the language on the website, not the denial of service,
3     then they may have standing.
4              MR. MORSCHER:  Well, if they -- if you're going
5     towards the issue of posting the information under that
6     part of the statute that talks about a public accommodation
7     and not putting that out there, then, yes, certainly I
8     think someone would have an argument that they are not
9     being denied service but someone is committing an illegal
10    act by posting this discriminatory language on a website.
11             THE COURT:  Well, there the injury that is alleged
12    would be an injury based on a denial of free speech, a
13    chilling effect.  And if I understand the Government here,
14    the State of Colorado, to say we're not going to prosecute
15    simply because people put statements on their websites
16    about what services they do and do not intend to render,
17    we're going to wait until some service is denied before we
18    begin prosecution, then there's very little chilling effect
19    as to the speech; it is, indeed, conduct that is being
20    prosecuted.  So what is the State's position?
21             MR. MORSCHER:  Well, the State's position is that
22    a matter needs to be initiated before any prosecution is
23    made.  And that really depends on the independent actor
24    looking at what is posted and filing a charge with the
25    division.  Or it could be that they're denied service.  It

1    could be either one.
2            THE COURT: Okay. Sounds like the State exercises
3    no discretion as to the complaints it pursues.
4            MR. MORSCHER: The only discretion it exercises is
5    jurisdictional and -- yes, I mean, that's correct. It has
6    no discretion whether it could accept a complaint as long
7    as it is filed.
8            THE COURT: Okay. All right. Then let's turn to
9    the motion for preliminary injunction. Have you discussed
10   what facts are in dispute and whether or not you need an
11   evidentiary hearing?
12           MR. MORSCHER: We did have a discussion, Your
13   Honor. You know, we don't believe that any facts are in
14   dispute in this matter. Certainly the facts that we think
15   are material to this are defendants' business and their
16   operations and their intent and their personal beliefs.
17   Seeing as nothing has been filed or done here, we don't
18   dispute that.
19           We certainly dispute their statement of what the
20   law is and who has the authority and jurisdiction to take
21   action. They -- they put all the defendants in one group,
22   and all defendants have independent authority, so we
23   don't -- you know, certainly we dispute that. But
24   otherwise, there's no disputed facts here.
25           THE COURT: So you're prepared to resolve this on

```
 1    briefs?
 2            MR. MORSCHER:  That's correct, Your Honor.
 3            THE COURT:  All right.  Let me hear from the
 4    plaintiffs.
 5            MS. ANDERSON:  Your Honor, we agree that there's
 6    no need for an evidentiary hearing, there's no facts in
 7    dispute, and this could be decided on the briefs.
 8            THE COURT:  All right.  Sounds to me like the
 9    relief that you're requesting in the motion for preliminary
10    injunction is exactly the same relief that you're
11    requesting on the merits, correct?
12            MS. ANDERSON:  No, Your Honor.  We are -- on the
13    merits we also have a facial challenge asking for facial
14    relief.  On the motion for preliminary injunction we're
15    only asking for as-applied relief, that she be able to
16    speak freely on her website and that she be able to enter
17    the industry and begin creating custom wedding websites --
18            THE COURT:  What's the difference with regard to
19    the evidence that would be considered?
20            MS. ANDERSON:  There could -- probably none, Your
21    Honor.  There could be --
22            THE COURT:  That's right.
23            MS. ANDERSON:  Yeah.
24            THE COURT:  All right.  Then why shouldn't I just
25    combine the determination of the motion for preliminary
```

```
 1     injunction with the determination on the merits under Rule
 2     42(b)?
 3             MS. ANDERSON:  I think you could, Your Honor, as
 4     long as you decided promptly the issues.  There's
 5     irreparable harm going on right now with her chilling of
 6     her speech, so we would urge the Court to make a decision
 7     quickly.
 8             THE COURT:  Well, I'm not inclined to make two
 9     rulings.
10             MS. ANDERSON:  So what would Your Honor -- what is
11     Your Honor thinking?
12             THE COURT:  When are you going to be prepared to
13     address your issues?
14             MS. ANDERSON:  I'm sorry?
15             THE COURT:  When are you going to be prepared to
16     address your issues?
17             MS. ANDERSON:  Could I take just a brief moment?
18             THE COURT:  Sure.
19             MS. ANDERSON:  Thank you.
20             Your Honor, we would propose, then, that we
21     file -- on an expedited briefing schedule, that within
22     about three weeks we file summary judgment.
23             THE COURT:  How long will it take the State to
24     respond?
25             MR. MORSCHER:  Your Honor, we're fine with
```

| | |
|---|---|
| 1 | whatever the Court decides.  We can respond within 20 days |
| 2 | of that. |
| 3 | THE COURT:  All right.  Then I'll set a deadline |
| 4 | for filing of motion for summary judgment.  There will need |
| 5 | to be stipulated facts.  Please understand if you do not |
| 6 | stipulate to all the facts, I'll deny the motion |
| 7 | outright -- |
| 8 | MS. ANDERSON:  Yes, Your Honor. |
| 9 | THE COURT:  -- because that means we need to have |
| 10 | a hearing.  So you'll need to have stipulated facts. |
| 11 | Please do not put those stipulated facts in your brief. |
| 12 | Please list the stipulated facts that you agree to. |
| 13 | Motion for summary judgment will be filed three |
| 14 | weeks from today.  Ms. Glover, can you give us a deadline. |
| 15 | COURTROOM DEPUTY:  Yes, I can.  Three weeks from |
| 16 | today is February 1st. |
| 17 | THE COURT:  All right.  The response will be filed |
| 18 | three weeks from that date. |
| 19 | COURTROOM DEPUTY:  Which would be February 22d. |
| 20 | THE COURT:  All right.  And the reply, if any, |
| 21 | will be filed 14 days thereafter. |
| 22 | COURTROOM DEPUTY:  March 8th. |
| 23 | THE COURT:  Okay.  Court withdraws the reference |
| 24 | of the motion to dismiss docket No. 37 to Magistrate Judge |
| 25 | Shaffer and will rule on the motion for preliminary |

```
 1     injunction, motion for summary judgment, and motion to
 2     dismiss simultaneously.
 3              Any need for clarification, further explanation,
 4     anything else we need to do?
 5              MR. TEDESCO:  I have one point of clarification.
 6              THE COURT:  Would you speak into a microphone,
 7     please.
 8              MR. TEDESCO:  Thank you, Your Honor.  I just
 9     wondered if the State was going to be filing a cross-motion
10     for summary judgment.  Right now --
11              THE COURT:  Why would the State file a motion for
12     cross -- a cross-motion for summary judgment?
13              MR. TEDESCO:  I don't know if they intend to or
14     not.  And since we were figuring out the schedule --
15              THE COURT:  Let me be real honest about motions
16     for summary judgment.  Cross-motions for summary judgment
17     are not helpful.  The only issue on a motion for summary
18     judgment is whether or not we need a trial.  If we do not
19     need a trial, meaning there's no genuine dispute as to a
20     material fact, then the Court can enter judgment to the
21     party entitled as a matter of law.  It does not matter who
22     files the motion.
23              MR. TEDESCO:  Thank you, Your Honor.
24              THE COURT:  All right.  Anything else we need to
25     do today?
```

```
 1              MS. ANDERSON:  No, Your Honor.
 2              MR. MORSCHER:  Nothing from defendants, Your
 3    Honor.
 4              THE COURT:  All right.  I have one last question
 5    for the plaintiffs, and that is whose website would this
 6    be?  You have two plaintiffs here.
 7              MS. ANDERSON:  It's her business website, 303
 8    Creative.
 9              THE COURT:  Okay.  So who owns -- would own the
10    website and whose speech would be involved?
11              MS. ANDERSON:  It would be both.  She's the sole
12    owner of the company --
13              THE COURT:  Well, it doesn't work that way.  Under
14    *Hobby Lobby*, we know that entities can't have speech.  So
15    are you saying this is the speech of 303 Creative LLC, or
16    are you saying that essentially this is Lorie Smith, not an
17    LLC?
18              MS. ANDERSON:  We are saying it is her speech
19    through her company.  So it's her company speech.
20              THE COURT:  Okay.  Then you may want to think
21    about dismissing Lorie Smith from the caption of the
22    action.
23              MS. ANDERSON:  We will consider it, Your Honor.
24              THE COURT:  Okay.  Great.  Thank you all very
25    much.  I look forward to receiving your briefs, and we will
```

```
 1      take it from there.
 2                MS. ANDERSON:  Thank you, Your Honor.
 3                MR. MORSCHER:  Thank you, Your Honor.
 4                THE COURT:  We will stand in recess.
 5           (Proceedings concluded at 9:49 a.m.)
 6
 7                  *     *     *     *     *
 8                       REPORTER'S CERTIFICATE
 9
10        I certify that the foregoing is a correct transcript
11   from the record of proceedings in the above-entitled
12   matter.
13        Dated at Denver, Colorado, this 18th day of January,
14   2017.
15
16
17
18   _                                                      _
19                       MARY J. GEORGE, FCRR, CRR, RMR
20
21
22
23
24
25
```