**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-02372-MSK-CBS

303 CREATIVE LLC, a limited liability company; and
LORIE SMITH,

    *Plaintiffs*,

vs.

AUBREY ELENIS, Director of the Colorado Civil Rights
Division, in her official capacity;
ANTHONY ARAGON,
ULYSSES J. CHANEY,
MIGUEL "MICHAEL" RENE ELIAS,
CAROL FABRIZIO,
HEIDI HESS,
RITA LEWIS, and
JESSICA POCOCK, as members of the Colorado Civil Rights
Commission, in their official capacities, and
CYNTHIA H. COFFMAN, Colorado Attorney General,
in her official capacity;

    *Defendants*.

---

**JOINT STATEMENT OF STIPULATED FACTS**

---

The parties jointly submit the following stipulated facts:

1.   Colorado's Anti-Discrimination Act ("CADA"), found at Colo. Rev. Stat. §§ 24-34-301, *et seq.* provides that "[i]t is a discriminatory practice and unlawful for a person, directly or indirectly, to refuse, withhold from, or deny to an individual or a group, because of disability, race, creed, color, sex, sexual orientation, marital status, national origin, or ancestry, the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation . . . ." Colo. Rev. Stat. § 24-34-601(2)(a).

1

2.      CADA defines a "place of public accommodation" to include "any place of business engaged in any sales to the public and any place offering services, facilities, privileges, advantages, or accommodations to the public, including but not limited to any business offering wholesale or retail sales to the public . . . ." Colo. Rev. Stat. § 24-34-601(1).

3.      CADA also provides that it is unlawful for a person "directly or indirectly, to publish, circulate, issue, display, post, or mail any written, electronic, or printed communication, notice, or advertisement that indicates that the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation will be refused, withheld from, or denied an individual or that an individual's patronage or presence at a place of public accommodation is unwelcome, objectionable, unacceptable, or undesirable because of disability, race, creed, color, sex, sexual orientation, marital status, national origin, or ancestry." Colo. Rev. Stat. § 24-34-601(2)(a).

4.      If a person believes that an individual or business has violated CADA, that person can seek redress by either filing a civil action in state court or by filing a charge alleging discrimination or unfair practice with the Colorado Civil Rights Division ("Division"). Colo. Rev. Stat. §§ 24-34-306(1)(a), 24-34-602-603.

5.      If a person files a civil action and the state court finds a violation of CADA, the court shall fine the individual or business between $50.00 and $500.00 for each violation. Colo. Rev. Stat. § 24-34-602(1)(a).

6.      If a person files a charge alleging discrimination or unfair practice with the Division, the Director of the Division ("Director"), with the assistance of the Division's staff, shall make a prompt investigation of the charge. Colo. Rev. Stat. § 24-34-306(2)(a).

7.  The Colorado Civil Rights Commission ("Commission"), individual Commissioners, or the Colorado Attorney General also have independent authority to file charges alleging discrimination or unfair practice when they determine that the alleged discriminatory or unfair practice imposes a significant societal or community impact. Colo. Rev. Stat. § 24-34-306(1)(b).

8.  If the Commission, individual Commissioners or the Colorado Attorney General file a charge alleging discrimination or unfair practice, the Director, with the assistance of the Division's staff under the Director's supervision, shall make a prompt investigation of the charge. Colo. Rev. Stat. §§ 24-34-306(1)(b) and (2)(a).

9.  The Director, with the assistance of the Division's staff, investigates all charges of discrimination or unfair practice received by the Division. Colo. Rev. Stat. § 24-34-306(2)(a).

10. The Director can issue subpoenas to witnesses and compel the testimony of witnesses. Colo. Rev. Stat. § 24-34-306(2)(a).

11. The Director, or the Director's designee, who shall be an employee of the Division, determines whether probable cause exists for crediting charges of discrimination or unfair practice. Colo. Rev. Stat. § 24-34-306 (2)(b).

12. If the Director or the Director's designee determines that probable cause does not exist, he or she shall dismiss the charge and provide notice to the charging party of their right to file an appeal of the dismissal to the Commission. Colo. Rev. Stat. § 24-34-306(2)(b)(I).

13. If the Director of the Division determines that probable cause does exist, the Director provides the parties a written notice of the finding and commences compulsory mediation. Colo. Rev. Stat. § 24-34-306(2)(b)(II).

14.     The Commission hears appeals from the Director's findings. Colo. Rev. Stat. § 24-34-306(2)(b)(I).

15.     The Commission can issue notices and complaints to set hearings either before the Commission, a Commissioner, or before an Administrative Law Judge. Colo. Rev. Stat. § 24-34-306(4).

16.     After presentation of all the evidence at hearing, the Commission, Commissioner or Administrative Law Judge makes findings determining whether the individual or business engaged in any discriminatory or unfair practice as defined by CADA. Colo. Rev. Stat. § 24-34-306(9).

17.     If either the Commission, a Commissioner or an Administrative Law Judge makes a finding that the individual or business under investigation violated CADA, the Commission has the power and authority under CADA to issue cease-and-desist orders to prevent violations of CADA and to issue orders requiring the charged party to "take such action" as the Commission, a Commissioner or an Administrative Law Judge may order. Colo. Rev. Stat. § 24-34-306(9).

18.     Aubrey Elenis is the Director of the Division and is named as a Defendant in her official capacity only.

19.     Ms. Elenis's authority in relation to CADA is specified in Colo. Rev. Stat. §§ 24-34-302, 24-34-306.

20.     Commissioners Anthony Aragon, Ulysses J. Chaney, Miguel "Michael" Rene Elias, Carol Fabrizio, Heidi Hess, Rita Lewis, and Jessica Pocock are members of the Commission and are named as Defendants in their official capacities only.

21.     Mr. Aragon's, Mr. Chaney's, Mr. Elias's, Ms. Fabrizio's, Ms. Hess's, Ms. Lewis's, and Ms. Pocock's authority to enforce CADA is specified in Colo. Rev. Stat. §§ 24-34-305, 24-34-306, 24-34-605.

22.     Cynthia H. Coffman is the Colorado Attorney General and is named as a Defendant in her official capacity only.

23.     Ms. Coffman's authority in relation to CADA is specified in Colo. Rev. Stat. § 24-34-306.

24.     Prior to the filing of Plaintiffs' case, the Division received a charge of discrimination "because of" sexual orientation from a same-sex couple against a Colorado bakery, Masterpiece Cakeshop, Inc., a public accommodation, which is owned and operated by Jack Phillips ("Phillips"), a Christian cake artist.

25.     The facts and procedure of the Masterpiece Cakeshop case is found in the decision published by the Colorado Court of Appeals on August 13, 2015, titled *Charlie Craig and David Mullins v. Masterpiece Cakeshop, Inc., and any successor entity, and Jack C. Phillips and Colorado Civil Rights Commission*, 2015 COA 115, for which the Court may take judicial notice, as well as the following documents: Colorado Civil Rights Division's Probable Cause Determination in *Charlie Craig v. Masterpiece Cakeshop, Inc.* dated March 5, 2013, attached as Exhibit C; Colorado Civil Rights Division's Probable Cause Determination in *David Mullins v. Masterpiece Cakeshop, Inc.* dated March 5, 2013, attached as Exhibit D; Administrative Law Judge's Initial Decision in *Charlie Craig and David Mullins v. Masterpiece Cakeshop, Inc. and Jack C. Phillips* dated December 6, 2013, attached as Exhibit E; and Colorado Civil Rights Commission's Final Agency Order in *Charlie Craig and David Mullins v. Masterpiece Cakeshop, Inc. and Jack C. Phillips* dated May 30, 2014, attached as Exhibit F.

5

26.     Phillips and Masterpiece Cakeshop's petition for writ of certiorari to the Colorado Supreme Court was denied on April 25, 2016.

27.     Phillips and Masterpiece Cakeshop's petition for writ of certiorari to the U.S. Supreme Court is currently pending.

28.     During the pendency of Phillips and Masterpiece Cakeshop's case, the Division considered three claims of discrimination brought by William Jack ("Jack"), a professing Christian, against three Colorado bakeries, all public accommodations: Azucar Bakery, Le Bakery Sensual, Inc., and Gateaux, Ltd. The facts and procedure of these matters are discussed in the following documents: Colorado Civil Rights Commission's Final Agency Order in *William Jack v. Azucar Bakery* dated June 30, 2015, attached as Exhibit G; Colorado Civil Rights Commission's Final Agency Order in *William Jack v. Gateaux, Ltd.* dated June 30, 2015, attached as Exhibit H; Colorado Civil Rights Commission's Final Agency Order in *William Jack v. Le Bakery Sensual, Inc.* dated June 30, 2015, attached as Exhibit I; Colorado Civil Rights Division's No Probable Cause Determination in *William Jack v. Azucar Bakery* dated March 24, 2015, attached as Exhibit J; Colorado Civil Rights Division's No Probable Cause Determination in *William Jack v. Gateaux, Ltd.* dated March 24, 2015, attached as Exhibit K; and Colorado Civil Rights Division's No Probable Cause Determination in *William Jack v. Le Bakery Sensual, Inc.* dated March 24, 2015, attached as Exhibit L.

29.     Plaintiff Lorie Smith is a lifelong resident of the State of Colorado and a citizen of the United States of America.

30.     Ms. Smith is a Christian.

31.     Ms. Smith's religious beliefs, including her religious understanding about marriage as an institution between one man and one woman, are central to her identity, her understanding of existence, and her conception of her personal dignity and identity.

32.     Ms. Smith's decision to speak and act consistently with her religious understanding of marriage defines her personal identity.

33.     Ms. Smith believes that her life is not her own, but that it belongs to God, and that He has called her to live a life free from sin.

34.     Ms. Smith believes that everything she does – personally and professionally –should be done in a manner that glorifies God.

35.     Ms. Smith believes that what is sinful versus what is good is rooted in the Bible and her personal relationship with Jesus Christ.

36.     Ms. Smith believes that she will one day give an account to God regarding the choices she made in life, both good and bad.

37.     Ms. Smith believes that God instructs Christians to steward the gifts He has given them in a way that glorifies and honors Him.

38.     Ms. Smith believes that she must use the creative talents God has given to her in a manner that honors God and that she must not use them in a way that displeases God.

39.     Ms. Smith's creative talents include artistic talents in graphic design, website design, and marketing.

40.     She developed these skills at the University of Colorado Denver, where she received a business degree with an emphasis in marketing.

41. She was then employed by other companies to do graphic and web design before starting her own company, 303 Creative.

42. Ms. Smith started 303 Creative because she desired the freedom to use her creative talents to honor God to a greater degree than was possible while working at other companies.

43. 303 Creative is a for-profit limited liability company organized under Colorado law with its principal place of business in Colorado.

44. Ms. Smith is the sole member-owner of Plaintiff 303 Creative LLC.

45. Through 303 Creative, Ms. Smith offers a variety of creative services to the public, including graphic design, and website design, and in concert with those design services, social media management and consultation services, marketing advice, branding strategy, training regarding website management, and innovative approaches for achieving client goals.

46. All of Plaintiffs' graphic designs are expressive in nature, as they contain images, words, symbols, and other modes of expression that Plaintiffs use to communicate a particular message.

47. All of Plaintiffs' website designs are expressive in nature, as they contain images, words, symbols, and other modes of expression that Plaintiffs use to communicate a particular message.

48. As the sole owner and operator of 303 Creative, Ms. Smith controls the scope, mission, priorities, creative services, and standards of 303 Creative.

49. Ms. Smith does not employ or contract work to any other individuals.

50. Each website 303 Creative designs and creates is an original, customized creation for each client.

51.     In her website design work, Ms. Smith devotes considerable attention to color schemes, fonts, font sizes, positioning, harmony, balance, proportion, scale, space, interactivity, movement, navigability, and simplicity.

52.     Ms. Smith also considers color, positioning, movement, angle, light, complexity, and other factors when designing graphics.

53.     Every aspect of the websites and graphics Plaintiffs design contributes to the overall messages that Plaintiffs convey through the websites and graphics and the efficacy of those messages.

54.     Ms. Smith personally devotes herself to her design work, drawing on her inspiration and sense of beauty to create websites and graphics that effectively communicate the intended messages.

55.     As a seasoned designer, Ms. Smith helps clients implement the ideal websites and graphics—oftentimes by designing custom graphics and textual content for their unique needs — to enhance and effectively communicate a message.

56.     Although clients often have a very basic idea of what they wish for in a graphic or a website and sometimes offer specific suggestions, Ms. Smith's creative skills transform her clients' nascent ideas into pleasing, compelling, marketable graphics or websites conveying a message.

57.     When designing and creating graphics or websites, Ms. Smith is typically in close contact with her clients as they each share their ideas and collaborate to develop graphics or websites that express a message in a way that is pleasing to both Ms. Smith and her clients.

58.     Ms. Smith ultimately has the final say over what she does and does not create and over what designs she does and does not use for each website.

9

59.     For each website 303 Creative makes, Ms. Smith typically creates and designs original text and graphics for that website and then combines that original artwork with text and graphics that Ms. Smith had created beforehand or that Ms. Smith receives from the client or from other sources. Ms. Smith then combines the original text and graphics she created with the already existing text and graphics to create an original website that is unique for each client.

60.     As required by her sincerely held religious beliefs, Ms. Smith seeks to live and operate 303 Creative in accordance with the tenets of her Christian faith.

61.     This means Ms. Smith seeks to use 303 Creative to bring glory to God and to share His truth with its clients and the community.

62.     Ms. Smith strives to serve 303 Creative's customers with love, honesty, fairness, transparency, and excellence.

63.     Ms. Smith designs unique visual and textual expression to promote the purposes, goals, services, products, organizations, events, causes, values, and messages of her clients insofar as they do not, in the sole discretion of Ms. Smith, (1) conflict with Plaintiffs' religious beliefs or (2) detract from Plaintiffs' goal of publicly honoring and glorifying God through the work they perform.

64.     Plaintiffs are willing to work with all people regardless of classifications such as race, creed, sexual orientation, and gender.

65.     Plaintiffs do not object to and will gladly create custom graphics and websites for gay, lesbian, or bisexual clients or for organizations run by gay, lesbian, or bisexual persons so long as the custom graphics and websites do not violate their religious beliefs, as is true for all customers.

66. Among other things, Plaintiffs will decline any request to design, create, or promote content that: contradicts biblical truth; demeans or disparages others; promotes sexual immorality; supports the destruction of unborn children; incites violence; or promotes any conception of marriage other than marriage between one man and one woman.

67. Therefore, Plaintiffs' "Contract for Services" includes the following provision:

> Consultant has determined that the artwork, graphics, and textual content Client has requested Consultant to produce either express messages that promote aspects of the Consultant's religious beliefs, or at least are not inconsistent with those beliefs. Consultant reserves the right to terminate this Agreement if Consultant subsequently determines, in her sole discretion, that Client desires Consultant to create artwork, graphics, or textual content that communicates ideas or messages, or promotes events, services, products, or organizations, that are inconsistent with Consultant's religious beliefs.

68. When considering a potential project, Ms. Smith will view the prospective client's website (if applicable) and ask questions of the prospective client to assist in the vetting process of determining whether the requested project conflicts with Plaintiffs' religious beliefs and whether it is a good fit given Plaintiffs' skills, schedule, preferences, and workload.

69. If Plaintiffs determine that they are unable to assist with a project promoting particular purposes, goals, services, products, organizations, events, causes, values, and messages they find objectionable, Plaintiffs endeavor to refer the prospective client to a different company that can assist them.

70. Even if Plaintiffs were to hire additional employees or contract out work, it would violate their sincerely held religious beliefs to have the employees or independent contractors do work for Plaintiffs that Plaintiffs cannot do themselves due to their religious beliefs.

71. Another purpose of 303 Creative is to develop and design unique visual and textual expression that promotes, celebrates, and conveys messages that promote aspects of Ms. Smith's Christian faith.

72. In furtherance of this end, 303 Creative regularly provides services to various religious and non-religious organizations that are advocating purposes, goals, services, events, causes, values, or messages that align with Plaintiffs' religious beliefs.

73. Ms. Smith believes that our cultural redefinition of marriage conflicts with God's design for marriage as a lifelong union between one man and one woman.

74. Ms. Smith believes that this is not only problematic because it violates God's will, but also because it harms society and children because marriage between one man and one woman is a fundamental building block of society and the ideal arrangement for the rearing of children.

75. Ms. Smith believes that our culture's movement away from God's design for marriage is particularly pronounced in the wake of the Supreme Court's *Obergefell v. Hodges* decision, which held that there is a constitutional right to same-sex marriage.

76. Ms. Smith is compelled by her religious beliefs to use the talents God has given her to promote God's design for marriage in a compelling way.

77. Ms. Smith is compelled by her religious beliefs to do this by expanding the scope of 303 Creative's services to include the design, creation, and publication of wedding websites.

78. Consistent with Plaintiffs' religious beliefs, the wedding websites that Plaintiffs wish to design, create, and publish will promote and celebrate the unique beauty of God's design for marriage between one man and one woman.

79. By creating wedding websites, Ms. Smith and 303 Creative will collaborate with prospective brides and grooms in order to use their unique stories as source material to express Ms. Smith's and 303 Creative's message celebrating and promoting God's design for marriage as the lifelong union of one man and one woman.

80. The collaboration between Plaintiffs and their clients who desire custom wedding websites will also allow Plaintiffs to strengthen and encourage marriages by sharing biblical truths with their clients as they commit to lifelong unity and devotion as man and wife.

81. Plaintiffs' custom wedding websites will be expressive in nature, using text, graphics, and in some cases videos to celebrate and promote the couple's wedding and unique love story.

82. All of these expressive elements will be customized and tailored to the individual couple and their unique love story.

83. Viewers of the wedding websites will know that the websites are Plaintiffs' original artwork because all of the wedding websites will say "Designed by 303Creative.com."

84. An example of the type of wedding website that Plaintiffs desire to design for their prospective clients is attached as Exhibit A.[1]

85. Plaintiffs wish to immediately announce their services for the creation of wedding websites.

86. Plaintiffs have already designed an addition to 303 Creative's website announcing the expansion of their services to include custom wedding websites, but this addition is not yet viewable by the public.

---

[1] Exhibit A is a compilation of captured images of the website that are modified in size and scope to enhance readability in printed form.

87. This addition to the website is attached as Exhibit B.[2]

88. Plaintiffs' intended message of celebration and promotion of their religious belief that God designed marriage as an institution between one man and one woman will be unmistakable to the public after viewing the addition to 303 Creative's webpage.

89. For example, the addition to 303 Creative's webpage states the following:

> I firmly believe that God is calling me to this work. Why? I am personally convicted that He wants me – during these uncertain times for those who believe in biblical marriage – to shine His light and not stay silent. He is calling me to stand up for my faith, to explain His true story about marriage, and to use the talents and business He gave me to publicly proclaim and celebrate His design for marriage as a life-long union between one man and one woman.

90. As part of Plaintiffs' religious calling to celebrate God's design for marriage and due to their sincerely held religious belief that they must be honest and transparent about the services that they can and cannot provide, the webpage also states that their religious beliefs prevent them from creating websites celebrating same-sex marriages or any other marriage that contradicts God's design for marriage.

91. For example, the addition to 303 Creative's webpage states the following:

> These same religious convictions that motivate me also prevent me from creating websites promoting and celebrating ideas or messages that violate my beliefs. So I will not be able to create websites for same-sex marriages or any other marriage that is not between one man and one woman. Doing that would compromise my Christian witness and tell a story about marriage that contradicts God's true story of marriage – the very story He is calling me to promote.

92. As part of their religiously-motivated speech, Plaintiffs desire to—and are prepared to—publish this webpage immediately.

---

[2] Exhibit B is a compilation of captured images of the website that are modified in size and scope to enhance readability in printed form.

93. As a Colorado place of business engaged in sales to the public and offering services to the public, 303 Creative is a "place of public accommodation" subject to CADA. Colo. Rev. Stat. § 24-34-601(1), (2)(a).

94. Plaintiffs believe it would violate Plaintiffs' sincerely held religious beliefs to create a wedding website for a same-sex wedding because, by doing so, Plaintiffs would be expressing a message celebrating and promoting a conception of marriage that they believe is contrary to God's design for marriage.

95. Unwilling to violate their sincerely held religious beliefs, but similarly unwilling to violate CADA and suffer the consequences, Plaintiffs are refraining from publishing the website referenced above and from designing, creating, and publishing wedding websites that celebrate and promote marriages between one man and one woman.

96. If not for CADA, Plaintiffs would have already made the addition to 303 Creative's webpage referenced above viewable to the public and begun offering their creative services for the design, creation, and publication of wedding websites that celebrate and promote marriages between one man and one woman.

97. If Plaintiffs obtain the relief requested in the Complaint, they will immediately publish the addition to 303 Creative's webpage referenced above and begin work designing, creating, and publishing wedding websites.

98. There are numerous companies in the State of Colorado and across the nation that offer custom website design services, the areas of 303 Creative's specialization.

99. For example, the online directory http://sortfolio.com/ lists 245 web design companies in Denver alone and hundreds more nationwide.

100.  Likewise, the online directory http://www.designfirms.org lists 114 web design companies in Colorado and 5,618 in the United States as a whole.

101.  The online directory http://unitedstateswebdesigndirectory.com further lists 127 web design companies in Colorado and 4,097 countrywide.

102.  Ms. Smith has a contact form on 303 Creative's webpage where the public can contact her to request her graphic and website design work.

103.  The parties also stipulate to the admissibility of the following exhibits:

- Exhibit A – An example of the type of wedding website that Plaintiffs desire to design for their prospective clients. The attached exhibit is a compilation of captured images of the sample wedding website, modified in size and scope to enhance readability in printed form.

- Exhibit B - A compilation of captured images of Plaintiffs' desired addition to 303 Creative's website that are modified in size and scope to enhance readability in printed form.

- Exhibit C - Colorado Civil Rights Division's Probable Cause Determination in *Charlie Craig v. Masterpiece Cakeshop, Inc.* dated March 5, 2013.

- Exhibit D - Colorado Civil Rights Division's Probable Cause Determination in *David Mullins v. Masterpiece Cakeshop, Inc.* dated March 5, 2013.

- Exhibit E - Administrative Law Judge's Initial Decision in *Charlie Craig and David Mullins v. Masterpiece Cakeshop, Inc. and Jack C. Phillips* dated December 6, 2013.

- Exhibit F - Colorado Civil Rights Commission's Final Agency Order in *Charlie Craig and David Mullins v. Masterpiece Cakeshop, Inc. and Jack C. Phillips* dated May 30, 2014.

- Exhibit G - Colorado Civil Rights Commission's Final Agency Order in *William Jack v. Azucar Bakery* dated June 30, 2015.

- Exhibit H - Colorado Civil Rights Commission's Final Agency Order in *William Jack v. Gateaux, Ltd.* dated June 30, 2015.

- Exhibit I - Colorado Civil Rights Commission's Final Agency Order in *William Jack v. Le Bakery Sensual, Inc.* dated June 30, 2015.

- Exhibit J - Colorado Civil Rights Division's No Probable Cause Determination in *William Jack v. Azucar Bakery* dated March 24, 2015. Pursuant to Colo. Rev. Stat. § 24-34-306(3), Defendants are prohibited from disclosing information gathered during the Division's investigation of a charge unless the information is disclosed as a result of the Commission noticing the matter for public hearing. Exhibit J contains information covered by this prohibition. Since Exhibit J was not disclosed by Defendants, and was referenced in the Masterpiece Cakeshop decision, Defendants stipulate to its admissibility

- Exhibit K - Colorado Civil Rights Division's No Probable Cause Determination in *William Jack v. Gateaux, Ltd.* dated March 24, 2015. Pursuant to Colo. Rev. Stat. § 24-34-306(3), Defendants are prohibited from disclosing information gathered during the Division's investigation of a charge unless the information is disclosed as a result of the Commission noticing the matter for public hearing. Exhibit K contains information

covered by this prohibition. Since <u>Exhibit K</u> was not disclosed by Defendants, and was referenced in the Masterpiece Cakeshop decision, Defendants stipulate to its admissibility

- <u>Exhibit L</u> - Colorado Civil Rights Division's No Probable Cause Determination in *William Jack v. Le Bakery Sensual, Inc.* dated March 24, 2015. Pursuant to Colo. Rev. Stat. § 24-34-306(3), Defendants are prohibited from disclosing information gathered during the Division's investigation of a charge unless the information is disclosed as a result of the Commission noticing the matter for public hearing. <u>Exhibit L</u> contains information covered by this prohibition. Since <u>Exhibit L</u> was not disclosed by Defendants, and was referenced in the Masterpiece Cakeshop decision, Defendants stipulate to its admissibility

Respectfully submitted this 1st day of February, 2016.

*s/ Jeremy D. Tedesco*
Jeremy D. Tedesco
(Arizona Bar No. 023497)
Jonathan A. Scruggs
(Arizona Bar No. 030505)
Samuel D. Green
(Arizona Bar No. 032586)
Katherine L. Anderson
(Arizona Bar No. 033104)
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 (facsimile)
jtedesco@ADFlegal.org
jscruggs@ADFlegal.org
sgreen@ADFlegal.org
kanderson@ADFlegal.org

*s/ Vincent Edward Morscher*
Vincent Edward Morscher
Deputy Attorney General
Civil Litigation and Employment
Law Section
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: (720) 508-6588
Fax: (720) 508-6032
Vincent.morscher@coag.gov

Jack D. Patten, III
Assistant Attorney General
Civil Litigation and Employment Law
Section
Colorado Department of Law
1300 Broadway, 10th Floor

David A. Cortman
(Georgia Bar No. 188810)
Rory T. Gray
(Georgia Bar No. 880715)
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Road, NE
 Suite D-1100
Lawrenceville, GA 30043
(770) 339-0774
(770) 339-6744 (facsimile)
dcortman@ADFlegal.org
rgray@ADFlegal.org

Michael L. Francisco
(Colorado Bar No. 39111)
MRD Law
3301 West Clyde Place
Denver, CO 80211
(303) 325-7843
(303) 723-8679 (facsimile)
MFL@MRDlaw.com

*Attorneys for Plaintiffs*

Denver, CO 80203
Telephone: (720) 508-6592
Fax: (720) 508-6032
jack.patten@coag.gov

*Attorneys for Defendants Elenis and Coffman*

Eric Maxfield
First Assistant Attorney General
Business and Licensing Section
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, Colorado 80203
Telephone: (720) 508-6404
Fax: (720) 508-6037
eric.maxfield@coag.gov

Leanne B. De Vos
Senior Assistant Attorney General
Business and Licensing Section
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, Colorado 80203
Telephone: (720) 508-6411
Fax: (720) 508-6037
Leanne.DeVos@coag.gov

*Attorneys for Defendants Aragon, Chaney, Elias, Fabrizio, Hess, Lewis and Pocock*

19

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2017, the foregoing was filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Jack D. Patten, III
Assistant Attorney General
Civil Litigation and Employment Law Section
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO 80203
Telephone: (720) 508-6592
Fax: (720) 508-6032
jack.patten@coag.gov

Eric Maxfield
First Assistant Attorney General
Business & Licensing Section
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, Colorado 80203
Telephone: 720-508-6404
Fax: 720-508-6037
eric.maxfield@coag.gov

Vincent E. Morscher
Deputy Attorney General
Civil Litigation and Employment Law Section
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO 80203
Telephone: (720) 508-6588
Fax: (720) 508-6032
vincent.morscher@coag.gov

Leanne B. De Vos
Senior Assistant Attorney General
Business & Licensing Section
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, Colorado 80203
Telephone: 720-508-6411
Fax: 720-508-6037
Leanne.DeVos@coag.gov

*Attorneys for Defendants Elenis and Coffman*

*Attorneys for Defendants Aragon, Chaney, Elias, Fabrizio, Hess, Lewis and Pocock*

*s/ Jeremy D. Tedesco*

Jeremy D. Tedesco (Arizona Bar No. 023497)
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 (facsimile)
jtedesco@ADFlegal.org