# EXHIBIT D



**Department of Regulatory Agencies**

John W. Hickenlooper
Governor

Barbara J Kelley
Executive
Director

Division of Civil Rights
Steven Chavez
Director of Division of Civil Rights

1560 Broadway, Suite 1050
Denver, CO 80202
(303) 894-2997
(303) 894-7830 (fax)
(800) 262-4845 (toll free)

200 West "B" Street, Suite 214
Pueblo CO 81003
(719) 542 1298
(303) 869 0498 (fax)

222 S 6th Street, Suite 101
Grand Junction, CO 81505
(970) 248-7363
(970) 248-7364
(970) 242 1262 (fax)

http://www.dora.state.co.us/civil-rights/

Charge No. P20130007X

David Mullins
1401 E. Girard Pl., #9-135
Englewood, CO 80113          Charging Party

Masterpiece Cakeshop
3355 S. Wadsworth Blvd.
Lakewood, CO 80227           Respondent

## DETERMINATION

Under the authority vested in me by C R S. 24-34-306 (2), I conclude from our investigation that there is sufficient evidence to support the Charging Party's claim of denial of full and equal enjoyment of a place of public accommodation based on his sexual orientation  As such, a Probable Cause determination hereby is issued.

The Respondent is a place of public accommodation within the meaning of C.R.S. 24-34-601 (1), as re-enacted, and the timeliness and all other jurisdictional requirements pursuant to Title 24, Article 34, Parts 3 and 6 have been met.

The Charging Party alleges that on or about July 19, 2012, the Respondent, a place of public accommodation, denied him the full and equal enjoyment of a place of accommodation on the basis of his sexual orientation (gay). The Respondent avers that its standard business practice is to deny service to same-sex couples based on religious beliefs.

The legal framework under which civil rights matters are examined is as follows: The initial burden of proof rests on the Charging Party to prove his/her case. Each key or essential element ("prima facie") of the particular claim must be proven, through a majority ("preponderance") of the evidence. If the Charging Party meets this initial burden of proof, then the Respondent has the next burden of explaining, with sufficient clarity, a business justification for the action taken. This is in response to the specific alleged action named in the charge. In addition, the Respondent has the burden of production of sufficient documents and other information requested by the administrative agency during the civil rights investigation. If the Respondent offers a legitimate business reason, then the burden once again shifts back to the Charging Party to prove that this proffered legitimate business reason is a pretext for discrimination. At this stage, the Charging Party must prove, again through sufficient evidence, that the true and primary motive for the Respondent's actions is unlawful discrimination.

"Unlawful discrimination" means that which is primarily based on the Charging Party's asserted protected group or status. The Respondent's stated reasons for its actions are presumed to be true, unless and until the Charging Party, again through competent evidence found in this investigation, adequately shows that the Respondent's reason is pretext; is not to be believed; and that the Charging Party's protected status was the main reason for the adverse action taken by the Respondent. The Charging Party does not need to submit additional evidence, in response to the Respondent's position, but the available evidence must be legally sufficient so that a reasonable person would find that the Respondent intended to discriminate against the Charging Party because of his/her protected civil rights status. Colorado Civil Rights Commission v. Big O Tires, Inc., 940 P.2d 397 (Colo. 1997), and Ahmad Bodaghi and State Board of Personnel, State of Colorado v. Department of Natural Resources, 995 P.2d 288 (Colo. 2000).

The Respondent is a bakery that provides cakes and baked goods to the public, and operates within the state of Colorado.

The Charging Party states that on or about July 19, 2012, he visited the Respondent's place of business for the purpose of ordering a wedding cake with his significant other, Charlie Craig ("Craig"), and his mother Deborah Munn ("Munn"). The Charging Party and his partner planned to travel to Massachusetts to marry and intended to have a wedding reception in Denver upon their return. The Charging Party and his significant other were attended to by the Respondent's Owner, Jack Phillips ("Phillips"). The Charging Party asserts that while viewing photos of the available wedding cakes, he informed the owner that the cake was for him and his significant other. The Charging Party states that in response, Phillips replied that his standard business practice is to deny service to same-sex couples based on his religious beliefs. The Charging Party states that based on Phillips response and refusal to provide service, the group left the Respondent's place of business.

The Charging Party states that on July 20, 2012, in an effort to obtain more information as to why her son was refused service, Munn telephoned Phillips. During this telephone conversation, Phillips stated that "because he is a Christian, he was opposed to making cakes for same-sex weddings for any same-sex couples."

The record reflects that Phillips subsequently commented to various news organizations, that he had turned approximately six same-sex couples away for this same reason. The Respondent has not argued that it is a business that is principally used for religious purposes.

Respondent Owner Jack Phillips ("Phillips") states that on July 19, 2012, the Charging Party, Craig, and Munn visited his bakery and stated that they wished to purchase a wedding cake. Phillips asserts that he informed the Charging Party that he does not create wedding cakes for same-sex weddings. According to Phillips, this interaction lasted no more than 20 seconds. Phillips states that the Charging Party, Craig, and Munn subsequently exited the Respondent's place of business. The Respondents avers that on July 20, 2012, during a conversation with Munn, he informed her that he refused to create a wedding cake for her son based on his religious beliefs and because Colorado does not recognize same-sex marriages.

The Respondent states that the aforementioned situation has occurred on approximately five or six past occasions. The Respondent contends that in those situations, he advised potential customers that he could not create a cake for a same-sex wedding ceremony or reception based on his religious beliefs. He adds that he told the Charging Party and his partner that he "could

2

create birthday cakes, shower cakes, or any other cakes." The Respondent asserts that this decision rested in part based on the fact that the state of Colorado does not recognize same sex marriages.

In an affidavit provided by the Charging Party during the Division's investigation, Stephanie Schmalz ("S. Schmalz") states that on January 16, 2012, she and her partner Jeanine Schmalz ("J. Schmalz") visited the Respondent's place of business to purchase cupcakes for their family commitment ceremony. S. Schmalz states that when she confirmed that the cupcakes were to be part of a celebration for her and her partner, the Respondent's female representative stated that she would not be able to place the order because "the Respondent had a policy of not selling baked goods to same-sex couples for this type of event." Following her departure from the Respondent's place of business, S. Schmalz telephoned the Respondent to clarify its policies. During this telephone conversation, S. Schmalz learned that the female representative was an owner of the business and that it was the Respondent's stated policy not to provide cakes or other baked goods to same-sex couples for wedding-type celebrations.

S. Schmalz subsequently posted a review on the website Yelp describing her experiences with the Respondent. An individual identifying himself as "Jack P. of Masterpiece Cakeshop" posted a reply to Schmalz's review, in which he stated that ".. a wedding for [gays and lesbians] is something that, so far, not even the State of Colorado will allow" and did not dispute that he refuses to serve gay and lesbian couples planning weddings or commitment celebrations.

S. Schmalz states that after learning of the Respondent's policy, she later contacted the Respondent's place of business and spoke to Phillips. During this conversation, S. Schmalz claimed to be a dog breeder and stated that she planned to host a "dog wedding" between one of her dogs and a neighbor's dog. Phillips did not object to preparing a cake for S. Schmalz's "dog wedding."

In an affidavit provided by the Charging Party during the Division's investigation, Samantha Saggio ("Saggio") states that on May 19, 2012, she visited the Respondent's place of business with her partner, Shana Chavez ("Chavez") to look at cakes for their planned commitment ceremony. Saggio states that upon learning that the cake would be for the two women, the Respondent's female representative stated that the Respondent would be unable to provide a cake because "according to the company, Saggio and Chavez were doing something 'illegal.'"

In an affidavit provided by the Charging Party during the Division's investigation, Katie Allen ("Allen") and Alison Sandlin ("Sandlin") state that on August 6, 2005, they visited the Respondent's place of business to taste cakes for their planned commitment ceremony. Allen states that upon learning of the women's intent to wed one another, the Respondent's female representative stated, "We can't do it then" and explained that the Respondent had established a policy of not taking cake orders for same-sex weddings, "because the owners believed in the word of Jesus."

Allen and Sandlin state that they later spoke directly with Phillips. During this conversation, Phillips stated that "he is not willing to make a cake for a same-sex commitment ceremony, just as he would not be willing to make a pedophile cake."

**Discriminatory Denial of Full and Equal Enjoyment of Services – Sexual Orientation (gay)**

To prevail on a claim of discriminatory denial of full and equal enjoyment of services, the evidence must show that: (1) the Charging Party is a member of a protected class; (2) the Charging Party sought goods, services, benefits or privileges from the Respondent; (3) the Charging Party is otherwise a qualified recipient of the goods and services of the Respondent; (4) the Charging Party was denied a type of service usually offered by the Respondent; (5) under circumstances that give rise to an inference of unlawful discrimination based on a protected class.

The Charging Party is a member of a protected class based on his sexual orientation. The Charging Party visited the Respondent's place of business for the purpose of ordering a wedding cake for his wedding reception. The evidence indicates that the Charging Party and his partner were otherwise qualified to receive services or goods from the Respondent's bakery. During this visit, the Respondent informed the Charging Party that his standard business practice is to deny baking wedding cakes to same-sex couples based on his religious beliefs. The evidence shows that on multiple occasions, the Respondent turned away potential customers on the basis of their sexual orientation, stating that he could not create a cake for a same-sex wedding ceremony or reception based on his religious beliefs. The Respondent's representatives stated that it would be unable to provide a cake because "according to the company, [the potential same-sex customers] were doing something 'illegal,'" and "because the owners believed in the word of Jesus." The Respondent indicates it will bake other goods for same sex couples such as birthday cakes, shower cakes or any other type of cake, but not a wedding cake. As such, the evidence shows that the Respondent refused to allow the Charging Party and his partner to patronize its business in order to purchase a wedding cake under circumstances that give rise to an inference of unlawful discrimination based on the Charging Party's sexual orientation.

Based on the evidence contained above, I determine that the Respondent has violated C.R.S. 24-34-402, as re-enacted

In accordance with C.R.S. 24-34-306(2)(b)(II), as re-enacted, the Parties hereby are ordered by the Director to proceed to attempt amicable resolution of these charges by compulsory mediation. The Parties will be contacted by the agency to schedule this process

On Behalf of the Colorado Civil Rights Division

_____   3/5/2013
Steven Chavez, Director               Date
of Authorized Designee

4

## CERTIFICATE OF MAILING

This is to certify that on **March 7, 2013** a true and exact copy of the Closing Action of the above-referenced charge was deposited in the United States mail, postage prepaid, addressed to the parties listed below.

CCRD #
P20130007X

David Mullins
1401 E. Girard Pl, #9-135
ENGLEWOOD, CO 80113

Sara Rich
ACLU Foundation of Colorado
303 E. 17th Ave., Ste. 350
DENVER, CO 80203

Masterpiece Cakeshop
3355 S. Wadsworth Boulevard
LAKEWOOD, CO 80227

Nicolle Martin
7175 W. Jefferson Ave., Ste 4000
Lakewood, CO 80235

*[signature]*
Lauren Wilkins
Colorado Department of
Regulatory Agencies
Division of Civil Rights
1560 Broadway, Suite 1050
Denver, CO 80202
P 303.894.2997
www.dora.state.co.us