# EXHIBIT E

| | |
|---|---|
| **STATE OF COLORADO**<br>**OFFICE OF ADMINISTRATIVE COURTS**<br>1525 Sherman Street, 4th Floor, Denver, Colorado 80203 | |
| **CHARLIE CRAIG and DAVID MULLINS,**<br>Complainants,<br><br>vs.<br><br>**MASTERPIECE CAKESHOP, INC., and any successor entity, and JACK C. PHILLIPS,**<br>Respondents. | ▲ **COURT USE ONLY** ▲<br><br>**CASE NUMBER:**<br><br>**CR 2013-0008** |
| **INITIAL DECISION**<br>**GRANTING COMPLAINANTS' MOTION FOR SUMMARY JUDGMENT**<br>**AND DENYING RESPONDENTS' MOTION FOR SUMMARY JUDGMENT** | |

Complainants allege that Respondents discriminated against them due to their sexual orientation by refusing to sell them a wedding cake in violation of Colorado's anti-discrimination law. The material facts are not in dispute and both parties filed motions for summary judgment. Following extensive briefing by both sides, oral argument was held before Administrative Law Judge (ALJ) Robert Spencer at the Office of Administrative Courts on December 4, 2013. Complainants were represented by Paula Greisen, Esq., and Dana Menzel, Esq., King & Greisen, LLC; Amanda Goad, Esq., American Civil Liberties Union Foundation LGBT & AIDS Project; and Sara Rich, Esq., and Mark Silverstein, Esq., American Civil Liberties Union Foundation of Colorado.   Respondents were represented by Nicolle H. Martin, Esq.; Natalie L. Decker, Esq., The Law Office of Natalie L. Decker, LLC; and Michael J. Norton, Esq., Alliance Defending Freedom.  Counsel in Support of the Complaint was Stacy L. Worthington, Senior Assistant Attorney General.

## Case Summary

Complainants, a gay couple, allege that on July 19, 2012, Jack C. Phillips, owner of Masterpiece Cakeshop, Inc., refused to sell them a wedding cake because of their sexual orientation. Complainants filed charges of discrimination with the Colorado Civil Rights Commission, which in turn found probable cause to credit the allegations of discrimination. On May 31, 2013, Counsel in Support of the Complaint filed a Formal Complaint with the Office of Administrative Courts alleging that Respondents discriminated against Complainants in a place of public accommodation due to sexual orientation, in violation of § 24-34-601(2), C.R.S. Counsel in Support of the Complaint seeks an order directing Respondents to cease and desist from further discrimination,

as well as other administrative remedies.[1]

Hearing began on September 26, 2013 and was continued until December 4, 2013 to give the parties time to complete discovery and fully brief cross-motions for summary judgment. Complainants and Counsel in Support of the Complaint contend that because there is no dispute that Masterpiece Cakeshop is a place of public accommodation, or that Respondents refused to sell Complainants a wedding cake for their same-sex wedding, that Respondents violated § 24-34-601(2) as a matter of law. Respondents do not dispute that they refused to sell Complainants a cake for their same-sex wedding, but contend that their refusal was based solely upon a deeply held religious conviction that marriage is only between a man and a woman, and was not due to bias against Complainants' sexual orientation. Therefore, Respondents' conduct did not violate the public accommodation statute which only prohibits discrimination "because of . . . sexual orientation." Furthermore, Respondents contend that application of the law to them under the circumstances of this case would violate their rights of free speech and free exercise of religion, as guaranteed by the First Amendment of the U.S. Constitution and Article II, sections 4 and 10 of the Colorado Constitution.

Because it appeared that the essential facts were not in dispute and that the case could be resolved as a matter of law, the ALJ vacated the merits hearing of December 4, 2013 in favor of a hearing upon the cross-motions for summary judgment. For the reasons explained below, the ALJ now grants Complainants' motion for summary judgment and denies Respondents' motion.

## Findings of Fact

The following facts are undisputed:

1. Phillips owns and operates a bakery located in Lakewood, Colorado known as Masterpiece Cakeshop, Inc. Phillips and Masterpiece Cakeshop are collectively referred to herein as Respondents.

2. Masterpiece Cakeshop is a place of public accommodation within the meaning of § 24-34-601(1), C.R.S.

3. Among other baked products, Respondents create and sell wedding cakes.

4. On July 19, 2012, Complainants Charlie Craig and David Mullins entered Masterpiece Cakeshop in the company of Mr. Craig's mother, Deborah Munn.

5. Complainants sat down with Phillips at the cake consulting table. They introduced themselves as "David" and "Charlie" and said that they wanted a wedding cake for "our wedding."

6. Phillips informed Complainants that he does not create wedding cakes for same-sex weddings. Phillips told the men, "I'll make you birthday cakes, shower cakes, sell you cookies and brownies, I just don't make cakes for same-sex weddings."

7. Complainants immediately got up and left the store without further

---

[1] The fines and imprisonment provided for by § 24-34-602, C.R.S. may only be imposed in a proceeding before a civil or criminal court, and are not available in this administrative proceeding.

discussion with Phillips.

8. The whole conversation between Phillips and Complainants was very brief, with no discussion between the parties about what the cake would look like.

9. The next day, Ms. Munn called Masterpiece Cakeshop and spoke with Phillips. Phillips advised Ms. Munn that he does not create wedding cakes for same-sex weddings because of his religious beliefs, and because Colorado does not recognize same-sex marriages.

10. Colorado law does not recognize same-sex marriage. Colo. Const. art. II, § 31 ("Only a union of one man and one woman shall be valid or recognized as a marriage in this state"); § 14-2-104(1), C.R.S. ("[A] marriage is valid in this state if: . . . It is only between one man and one woman.")

11. Phillips has been a Christian for approximately 35 years, and believes in Jesus Christ as his Lord and savior. As a Christian, Phillips' main goal in life is to be obedient to Jesus and His teachings in all aspects of his life.

12. Phillips believes that the Bible is the inspired word of God, that its accounts are literally true, and that its commands are binding on him.

13. Phillips believes that God created Adam and Eve, and that God's intention for marriage is the union of one man and one woman. Phillips relies upon Bible passages such as Mark 10:6-9 (NIV) ("[F]rom the beginning of creation, God made them male and female, for this reason, a man will leave his father and mother and be united with his wife and the two will become one flesh. So they are no longer two, but one. Therefore, what God has joined together, let not man separate.")

14. Phillips also believes that the Bible commands him to avoid doing anything that would displease God, and not to encourage sin in any way.

15. Phillips believes that decorating cakes is a form of art and creative expression, and that he can honor God through his artistic talents.

16. Phillips believes that if he uses his artistic talents to participate in same-sex weddings by creating a wedding cake, he will be displeasing God and acting contrary to the teachings of the Bible.

## Discussion

*Standard for Summary Judgment*

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. C.R.C.P. 56(c); *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 570 (Colo. 2008). A genuine issue of material fact is one which, if resolved, will affect the outcome of the case. *City of Aurora v. ACJ P'ship*, 209 P.3d 1076, 1082 (Colo. 2009).

The purpose of summary judgment is to permit the parties to pierce the formal allegations of the pleadings and save the time and expense connected with trial when,

as a matter of law, based on undisputed facts, one party could not prevail. *Roberts v. Am. Family Mut. Ins. Co.*, 144 P.3d 546, 548 (Colo. 2006). However, summary judgment is a drastic remedy and should be granted only upon a clear showing that there is no genuine issue as to any material fact. *Brodeur v. Am. Home Assurance Co.*, 169 P.3d 139, 146 (Colo. 2007). Even where it is extremely doubtful that a genuine issue of fact exists, summary judgment is not appropriate. *Dominguez Reservoir Corp. v. Feil*, 854 P.2d 791, 795 (Colo. 1993).

The fact that the parties have filed cross-motions does not decrease either party's burden of proof. When a trial court is presented with cross-motions for summary judgment, it must consider each motion separately, review the record, and determine whether a genuine dispute as to any fact material to that motion exists. If there are genuine disputes regarding facts material to both motions, the court must deny both motions. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1340 (Colo. 1988).

Having carefully reviewed the parties' cross-motions, together with the documentation supporting those motions, the ALJ concludes that the undisputed facts are sufficient to resolve both motions.

### *Colorado Public Accommodation Law*

At first blush, it may seem reasonable that a private business should be able to refuse service to anyone it chooses. This view, however, fails to take into account the cost to society and the hurt caused to persons who are denied service simply because of who they are. Thus, for well over 100 years, Colorado has prohibited discrimination by businesses that offer goods and services to the public.[2] The most recent version of the public accommodation law, which was amended in 2008 to add sexual orientation as a protected class, reads in pertinent part:

> It is a discriminatory practice and unlawful for a person, directly or indirectly, to refuse, withhold from, or deny to an individual or a group, *because of . . . sexual orientation* . . . the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation.

Section 24-34-601(2), C.R.S. (emphasis added).

A "place of public accommodation" means "any place of business engaged in any sales to the public, including but not limited to any business offering wholesale or retail sales to the public." Section 24-34-601(1), C.R.S. "Sexual orientation" means "orientation toward heterosexuality, homosexuality, bisexuality, or transgender status or another person's perception thereof." Section 24-34-301(7), C.R.S. "Person" includes individuals as well as business and governmental entities. Section 24-34-301(5), C.R.S.

There is no dispute that Respondents are "persons" and that Masterpiece Cakeshop is a "place of public accommodation" within the meaning of the law. There is also no dispute that Respondents refused to provide a cake to Complainants for their

---

[2] *See* § 1, ch. 61, Laws of 1895, providing that "all persons" shall be entitled to the "equal enjoyment" of "places of public accommodation and amusement."

4

same-sex wedding. Respondents, however, argue that the refusal does not violate § 24-34-601(2) because it was due to their objection to same-sex weddings, not because of Complainants' sexual orientation. Respondents deny that they hold any animus toward homosexuals or gay couples, and would willingly provide other types of baked goods to Complainants or any other gay customer. On the other hand, Respondents would refuse to provide a wedding cake to a heterosexual customer if it was for a same-sex wedding. The ALJ rejects Respondents' argument as a distinction without a difference.

The salient feature distinguishing same-sex weddings from heterosexual ones is the sexual orientation of its participants. Only same-sex couples engage in same-sex weddings. Therefore, it makes little sense to argue that refusal to provide a cake to a same-sex couple for use at their wedding is not "because of" their sexual orientation.

Respondents' reliance on *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993) is misplaced. In *Bray,* a group of abortion clinics alleged that anti-abortionist demonstrators violated federal law by conspiring to deprive women seeking abortions of the right to interstate travel. In rejecting this challenge, the Supreme Court held that opposition to abortion was not the equivalent of animus to women in general. *Id.* at 269. To represent unlawful class discrimination, the discrimination must focus upon women "*by reason of their sex.*" *Id.* at 270 (emphasis in original). Because the demonstrators were motivated by legitimate factors other than the sex of the participants, the requisite discriminatory animus was absent. That, however, is not the case here. In this case, Respondents' objection to same-sex marriage is inextricably tied to the sexual orientation of the parties involved, and therefore disfavor of the parties' sexual orientation may be presumed. Justice Scalia, the author of the majority opinion in *Bray,* recognized that "some activities may be such an irrational object of disfavor that, if they are targeted, and if they also happen to be engaged in exclusively or predominantly by a particular class of people, an intent to disfavor that class can readily be presumed. A tax on wearing yarmulkes is a tax on Jews." *Id.* at 270. Similarly, the ALJ concludes that discrimination against same-sex weddings is the equivalent of discrimination due to sexual orientation.[3]

If Respondents' argument was correct, it would allow a business that served all races to nonetheless refuse to serve an interracial couple because of the business owner's bias against interracial marriage. That argument, however, was rejected 30 years ago in *Bob Jones Univ. v. U.S.,* 461 U.S. 574 (1983). In *Bob Jones*, the Supreme Court held that the IRS properly revoked the university's tax-exempt status because the university denied admission to interracial couples even though it otherwise admitted all races. According to the Court, its prior decisions "firmly establish that discrimination on the basis of racial affiliation and association is a form of racial discrimination." *Id.* at 605. This holding was extended to discrimination on the basis of sexual orientation in *Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez*, ___ U.S. ___, 130 S.Ct.

---

[3] In a case similar to this one but involving a photographer's religiously motivated refusal to photograph a same-sex wedding, the New Mexico Supreme Court stated that, "To allow discrimination based on conduct so closely correlated with sexual orientation would severely undermine the purpose of the [state public accommodation law]." *Elane Photography, LLC v. Willock,* 2013 N.M. Lexis 284 at p. 4, 309 P.3d 53 (N.M. 2013).

5

2971, 2990 (2010).  In rejecting the Chapter's argument that denying membership to students who engaged in "unrepentant homosexual conduct" did not violate the university's policy against discrimination due to sexual orientation, the Court observed, "Our decisions have declined to distinguish between status and conduct in this context." *Id.*

Nor is the ALJ persuaded by Respondents' argument that they should not be compelled to recognize same-sex marriages because Colorado does not do so.  Although Respondents are correct that Colorado does not recognize same-sex marriage, that fact does not excuse discrimination based upon sexual orientation.  At oral argument, Respondents candidly acknowledged that they would also refuse to provide a cake to a same-sex couple for a commitment ceremony or a civil union, neither of which is forbidden by Colorado law.[4]  Because Respondents' objection goes beyond just the act of "marriage," and extends to any union of a same-sex couple, it is apparent that Respondents' real objection is to the couple's sexual orientation and not simply their marriage.  Of course, nothing in § 24-34-601(2) compels Respondents to recognize the legality of a same-sex wedding or to endorse such weddings.  The law simply requires that Respondents and other actors in the marketplace serve same-sex couples in exactly the same way they would serve heterosexual ones.

Having rejected Respondents' arguments to the contrary, the ALJ concludes that the undisputed facts establish that Respondents violated the terms of § 24-34-601(2) by discriminating against Complainants because of their sexual orientation.

*Constitutionality of Application*

To say that Respondents' conduct violates the letter of § 24-34-601(2) does not resolve the case if, as Respondents assert, application of that law violates their constitutional right to free speech or free exercise of religion.  Although the ALJ has no jurisdiction to declare a state law unconstitutional, the ALJ does have authority to evaluate whether a state law has been unconstitutionally applied in a particular case.  *Horrell v. Dep't of Admin.,* 861 P.2d 1194, 1204 n. 4 (1993) (although the state personnel board has no authority to determine whether legislative acts are constitutional on their face, the board "may evaluate whether an otherwise constitutional statute has been unconstitutionally applied with respect to a particular personnel action"); *Pepper v. Indus. Claim Appeals Office,* 131 P.3d 1137, 1146 (Colo. 2005).  The ALJ will, therefore, address Respondents' arguments that application of § 24-34-601(2) to them violates their rights of free speech and free exercise of religion.[5]

*Free Speech*

The state and federal constitutions guarantee broad protection of free speech.  The First Amendment of the United States Constitution bars congress from making any

---

[4]  As the result of passage of SB 03-011, effective May 1, 2013, civil unions are now specifically recognized in Colorado.
[5]  Corporations like Masterpiece Cakeshop have free speech rights.  *Citizens United v. Federal Election Comm'n,* 558 U.S. 310 (2010).  In addition, at least in the Tenth Circuit, closely held for-profit business entities like Masterpiece Cakeshop also enjoy a First Amendment right to free exercise of religion.  *Hobby Lobby Stores, Inc. v. Sebelius,* 723 F.3d 1114, 1137 (10th Cir. 2013).

law "abridging the freedom of speech, or of the press," and the Fourteenth Amendment applies that protection to the states. Article II, § 10 of the Colorado Constitution states that, "No law shall be passed impairing the freedom of speech." Free speech holds "high rank . . . in the constellation of freedoms guaranteed by both the United States Constitution and our state constitution." *Bock v. Westminster Mall Co.*, 819 P.2d 55, 57 (Colo. 1991). The guarantee of free speech applies not only to words, but also to other mediums of expression, such as art, music, and expressive conduct. *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*, 515 U.S. 557, 569 (1995) ("the Constitution looks beyond written or spoken words as mediums of expression . . . symbolism is a primitive but effective way of communicating ideas.")

Respondents argue that compelling them to prepare a cake for a same-sex wedding is equivalent to forcing them to "speak" in favor of same-sex weddings – something they are unwilling to do. Indeed, the right to free speech means that the government may not compel an individual to communicate by word or deed an unwanted message or expression. *West Virginia State Bd. of Educ. v. Barnette,* 319 U.S. 624, 642 (1943) (compelling a student to pledge allegiance to the flag "invades the sphere of intellect and spirit which it is the purpose of the First Amendment to our Constitution to reserve from all official control"); *Wooley v. Maynard,* 430 U.S. 705, 715 (1977) (compelling a motorist to display the state's motto, "Live Free of Die," on his license plate forces him "to be an instrument for fostering public adherence to an ideological point of view he finds unacceptable.")

The ALJ, however, rejects Respondents' argument that preparing a wedding cake is necessarily a medium of expression amounting to protected "speech," or that compelling Respondents to treat same-sex and heterosexual couples equally is the equivalent of forcing Respondents to adhere to "an ideological point of view." There is no doubt that decorating a wedding cake involves considerable skill and artistry. However, the finished product does not necessarily qualify as "speech," as would saluting a flag, marching in a parade, or displaying a motto. *United States v. O'Brien,* 391 U.S. 367, 376 (1968) ("We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea.")[6] The undisputed evidence is that Phillips categorically refused to prepare a cake for Complainants' same-sex wedding before there was any discussion about what that cake would look like. Phillips was not asked to apply any message or symbol to the cake, or to construct the cake in any fashion that could be reasonably understood as advocating same-sex marriage. After being refused, Complainants immediately left the shop. For all Phillips knew at the time, Complainants might have wanted a nondescript cake that would have been suitable for consumption at any wedding.[7] Therefore, Respondents' claim that they refused to provide a cake because it would convey a message supporting same-sex marriage is specious. The act of preparing a cake is simply not "speech" warranting First

---

[6] Upholding O'Brien's conviction for burning his draft card.

[7] Respondents point out that the cake Complainants ultimately obtained from another bakery had a filling with rainbow colors. However, even if that fact could reasonably be interpreted as the baker's expression of support for gay marriage, which the ALJ doubts, the fact remains that Phillips categorically refused to bake a cake for Complainants without any idea of what Complainants wanted that cake to look like.

7

Amendment protection.[8]

Furthermore, even if Respondents could make a legitimate claim that § 24-34-601(2) impacts their right to free speech, such impact is plainly incidental to the state's legitimate regulation of discriminatory conduct and thus is permissible.  In *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47 (2006), the Supreme Court rejected the argument that withholding federal funding from schools that denied access to military recruiters violated the schools' right to protest the military's sexual orientation policies.  In the Court's opinion, any impact upon the schools' right of free speech was "plainly incidental" to the government's right to regulate objectionable conduct.  "The compelled speech to which the law schools point is plainly incidental to the Solomon Amendment's regulation of conduct, and 'it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.'"  *Id. a*t 62 (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949)).  "Congress, for example, can prohibit employers from discriminating in hiring on the basis of race. The fact that this will require an employer to take down a sign reading 'White Applicants Only' hardly means that the law should be analyzed as one regulating the employer's speech rather than conduct."  *Rumsfeld, supra.*  "Compelling a law school that sends scheduling e-mails for other recruiters to send one for a military recruiter is simply not the same as forcing a student to pledge allegiance, or forcing a Jehovah's Witness to display the motto 'Live Free or Die,' and it trivializes the freedom protected in *Barnette* and *Wooley* to suggest that it is."  *Id.*

Similarly, compelling a bakery that sells wedding cakes to heterosexual couples to also sell wedding cakes to same-sex couples is incidental to the state's right to prohibit discrimination on the basis of sexual orientation, and is not the same as forcing a person to pledge allegiance to the government or to display a motto with which they disagree.  To say otherwise trivializes the right to free speech.

This case is also distinguishable from cases like *Barnette* and *Wooley* because in those cases the individuals' exercise of free speech (refusal to salute the flag and refusal to display the state's motto) did not conflict with the rights of others.  This is an important distinction.  As noted in *Barnette*, "The freedom asserted by these appellees does not bring them into collision with rights asserted by any other individual. It is such conflicts which most frequently require intervention of the State to determine where the rights of one end and those of another begin."  *Barnette*, 319 U.S. at 630.  Here, the refusal to provide a wedding cake to Complainants directly harms Complainants' right to be free of discrimination in the marketplace.  It is the state's prerogative to minimize that harm by determining where Respondents' rights end and Complainants' rights begin.

Finally, Respondents argue that if they are compelled to make a cake for a same-sex wedding, then a black baker could not refuse to make a cake bearing a white-

---

[8]  The ALJ also rejects Respondents' argument that § 24-34-601(2), C.R.S. bars them from "correcting the record" by publicly disavowing support for same-sex marriage.  The relevant portion of § 24-34-601(2) only bars businesses from publishing notice that individuals will be denied service or are unwelcome because of their disability, race, creed, sex, sexual orientation, marital status, national origin, or ancestry. Nothing in § 24-34-601(2) prevents Respondents from posting a notice that the design of their products is not an intended to be an endorsement of anyone's political or social views.

8

supremacist message for a member of the Aryan Nation; and an Islamic baker could not refuse to make a cake denigrating the Koran for the Westboro Baptist Church. However, neither of these fanciful hypothetical situations proves Respondents' point. In both cases, it is the explicit, unmistakable, offensive message that the bakers are asked to put on the cake that gives rise to the bakers' free speech right to refuse. That, however, is not the case here, where Respondents refused to bake any cake for Complainants regardless of what was written on it or what it looked like. Respondents have no free speech right to refuse because they were only asked to bake a cake, not make a speech.

Although Respondents cite *Bock v. Westminster Mall Co., supra,* for the proposition that Colorado's constitution provides greater protection than does the First Amendment, Respondents cite no Colorado case, and the ALJ is aware of none, that would extend protection to the conduct at issue in this case.

For all these reasons the ALJ concludes that application of § 24-34-601(2) to Respondents does not violate their federal or state constitutional rights to free speech.

*Free Exercise of Religion*

The state and federal constitutions also guarantee broad protection for the free exercise of religion. The First Amendment bars congress from making any law "respecting an establishment of religion or prohibiting the free exercise thereof," and the Fourteenth Amendment applies that protection to the states. Article II, § 4 of the Colorado Constitution states that, "The free exercise and enjoyment of religious profession and worship, without discrimination, shall forever hereafter be guaranteed; and no person shall be denied any civil or political right, privilege or capacity on account of his opinions concerning religion." The door of these rights "stands tightly closed against any governmental regulation of religious beliefs as such." *Sherbert v. Verner,* 374 U.S. 398, 402 (1963).

The question presented by this case, however, does not involve an effort by the government to regulate what Respondents *believe*. Rather, it involves the state's regulation of *conduct*; specifically, Respondents' refusal to make a wedding cake for a same-sex marriage due to a religious conviction that same-sex marriage is abhorrent to God. Whether regulation of conduct is permissible depends very much upon the facts of the case.

The types of conduct the United States Supreme Court has found to be beyond government control typically involve activities fundamental to the individual's religious belief, that do not adversely affect the rights of others, and that are not outweighed by the state's legitimate interests in promoting health, safety and general welfare. Examples include the Amish community's religious objection to public school education beyond the eighth grade, where the evidence was compelling that Amish children received an effective education within their community, and that requiring public school education would threaten the very existence of the Amish community, *Wisconsin v. Yoder,* 406 U.S. 205 (1972); a Jewish employee's right to refuse Saturday employment without risking loss of unemployment benefits, *Sherbert v. Verner, supra;* and a religious sect's right to engage in religious soliciting without being required to have a license,

9

*Cantwell v. Connecticut,* 310 U.S. 296 (1940).

On the other hand, the Supreme Court has held that "activities of individuals, even when religiously based, are often subject to regulation by the States in the exercise of their undoubted power to promote the health, safety, and general welfare." *Wisconsin v. Yoder,* 406 U.S. at 220.  To excuse all religiously-motivated conduct from state control would "permit every citizen to become a law unto himself."  *Employment Division v. Smith,* 494 U.S. 872, 879 (1990).  Thus, for example, the Court has upheld a law prohibiting religious-based polygamy, *Reynolds v. United States,* 98 U.S. 145 (1879); upheld a law restricting religious-based child labor, *Prince v. Massachusetts,* 321 U.S. 158 (1944); upheld a Sunday closing law that adversely affected Jewish businesses, *Braunfeld v. Brown,* 366 U.S. 599 (1961); upheld the government's right to collect Social Security taxes from an Amish employer despite claims that it violated his religious principles, *United States v. Lee,* 455 U.S. 252 (1982); and upheld denial of unemployment compensation to persons who were fired for the religious use of peyote, *Employment Division v. Smith, supra.*

As a general rule, when the Court has held religious-based conduct to be free from regulation, "the conduct at issue in those cases was not prohibited by law," *Employment Division v. Smith,* 494 U.S. at 876; the freedom asserted did not bring the appellees "into collision with rights asserted by any other individual," *Braunfeld v. Brown,* 366 U.S. at 604 ("It is such conflicts which most frequently require intervention of the State to determine where the rights of one end and those of another begin"); and the regulation did not involve an incidental burden upon a commercial activity.  *United States v. Lee,* 455 U.S. at 261 ("When followers of a particular sect enter into commercial activity as a matter of choice, the limits they accept on their own conduct as a matter of conscience and faith are not to be superimposed on the statutory schemes which are binding on others in that activity.")

Respondents' refusal to provide a cake for Complainants' same-sex wedding is distinctly the type of conduct that the Supreme Court has repeatedly found subject to legitimate regulation.  Such discrimination is against the law (§ 24-34-601. C.R.S.); it adversely affects the rights of Complainants to be free from discrimination in the marketplace; and the impact upon Respondents is incidental to the state's legitimate regulation of commercial activity.  Respondents therefore have no valid claim that barring them from discriminating against same-sex customers violates their right to free exercise of religion.  Conceptually, Respondents' refusal to serve a same-sex couple due to religious objection to same-sex weddings is no different from refusing to serve a biracial couple because of religious objection to biracial marriage.  However, that argument was struck down long ago in *Bob Jones Univ. v. United States, supra*.

Respondents nonetheless argue that, because § 24-34-601(2) limits their religious freedom, its application to them must meet the strict scrutiny of being narrowly drawn to meet a compelling governmental interest.  The ALJ does not agree.  In *Employment Division v. Smith, supra,* the Court announced the standard applicable to cases such as this one; namely, that "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes

10

(or proscribes)." *Employment Division v. Smith,* 494 U.S. at 879.[9]  This standard is followed in the Tenth Circuit, *Grace United Methodist Church v. City of Cheyenne,* 451 F.3d 643, 649 (10th Cir. 2006) (a law that is both neutral and generally applicable need only be rationally related to a legitimate governmental interest to survive a constitutional challenge).

Only if a law is not neutral and of general applicability must it meet strict scrutiny. *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520 (1993) (because a city ordinance outlawing rituals of animal sacrifice was adopted to prevent church's performance of religious animal sacrifice, it was not neutral and of general applicability and therefore had to be narrowly drawn to meet a compelling governmental interest). *Town of Foxfield v. Archdiocese of Denver,* 148 P.3d 339 (Colo. App. 2006) is an example of how this test has been applied in Colorado.  In *Town of Foxfield*, the court of appeals held that a parking ordinance was subject to strict scrutiny because it was not of general applicability in that it could only be enforced after receipt of three citizen complaints, and was not neutral because there was ample evidence that it had been passed specifically in response to protests by the church's neighbors.  *Id.* at 346.

Section 24-34-601(2) is a valid law that is both neutral and of general applicability; therefore, it need only be rationally related to a legitimate government interest, and need not meet the strict scrutiny test.  There is no dispute that it is a valid law.  *Hurley,* 515 U.S. at 572 ("Provisions like these are well within the State's usual power to enact when a legislature has reason to believe that a given group is the target of discrimination, and they do not, as a general matter, violate the First or Fourteenth Amendments.")[10]  Colorado's public accommodation law is also neutral and of general applicability because it is not aimed at restricting the activities of any particular group of individuals or businesses, nor is it aimed at restricting any religious practice.  Any restriction of religious practice that results from application of the law is incidental to its focus upon preventing discrimination in the marketplace.  Unlike *Church of Lukumi Babalu Aye* and *Town of Foxfield,* the law is not targeted to restrict religious activities in general or Respondents' activities in particular.  Therefore, § 24-34-601(2) is not subject to strict scrutiny and Respondents are not free to ignore its restrictions even though it may incidentally conflict with their religiously-driven conduct.

Respondents contend that § 24-34-601 is not a law of general applicability because it provides for several exceptions.  Where a state's facially neutral rule contains a "system" of individualized exceptions, the state may not refuse to extend that system of exceptions to cases of "religious hardship" without compelling reason.  *Smith*, 494 U.S. at 881-82.  But, the only exception in § 24-34-601 that has anything to do with religious practice is that for churches or other places "principally used for religious purposes."  Section 24-34-601(1).  It cannot reasonably be argued that this exception is targeted to restrict religious-based activities.  To the contrary, the exemption for

---

[9] Respondents have not cited the ALJ to any Colorado law that requires a higher standard.  Although Congress made an attempt to legislatively overrule *Smith* when it passed the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb-1(a), the Supreme Court has held that RFRA cannot be constitutionally applied to the states.  *City of Boerne v. Flores*, 521 U.S. 507, 532 (1997).  Colorado has not adopted a state version of RFRA, and no Colorado case imposes a higher standard than *Smith*.

[10] Of course, the ALJ has no jurisdiction to declare CADA facially unconstitutional in any event.

11

churches and other places used primarily for religious purposes underscores the legislature's respect for religious freedom.[11] *Conestoga Wood Specialties Corp. v. Sebelius,* 917 F.Supp.2d 394, 410 (E.D. Pa. 2013) (the fact that exemptions were made for religious employers "shows that the government made efforts to accommodate religious beliefs, which counsels in favor of the regulations' neutrality"), *aff'd* 724 F.3d 377 (3rd Cir. 2013).

The only other exception in § 24-34-601 is a secular one for places providing public accommodations to one sex, where the restriction has a bona fide relationship to the good or service being provided; such as a women's health clinic. Section 24-34-601(3). The Tenth Circuit, however, has joined other circuits in refusing to interpret *Smith* as standing for the proposition that a narrow secular exception automatically exempts all religiously motivated activity. *Grace United,* 451 F.3d at 651 ("Consistent with the majority of our sister circuits, however, we have already refused to interpret *Smith* as standing for the proposition that a secular exemption automatically creates a claim for a religious exemption.") The ALJ likewise declines to do so.

Respondents argue that § 24-34-601(2) must nevertheless meet the strict scrutiny test because the Supreme Court has historically applied strict scrutiny to "hybrid" situations involving not only the free exercise of religion but also other constitutional rights such as freedom of speech. *Smith,* 494 U.S. at 881-82. Respondents contend that this case is a hybrid situation because the public accommodation law not only restricts their free exercise of religion, but also restricts their freedom of speech and amounts to an unconstitutional "taking" of their property without just compensation in violation of the Fifth and Fourteenth Amendments. Therefore, they say, application of the law to them must be justified by a compelling governmental interest, which cannot be shown.

The mere incantation of other constitutional rights is not sufficient to create a hybrid claim. *See Axson-Flynn v. Johnson*, 356 F.3d. 1277, 1295 (10th Cir. 2004) (requiring a showing of "'fair probability, or a likelihood,' of success on the companion claim.") As discussed above, Respondents have not demonstrated that § 24-34-601(2) violates their rights of free speech; and, there is no evidence that the law takes or impairs any of Respondents' property or harms Respondents' business in any way. On the contrary, to the extent that the law prohibits Respondents from discriminating on the basis of sexual orientation, compliance with the law would likely increase their business by not alienating the gay community. If, on the other hand, Respondents choose to stop making wedding cakes altogether to avoid future violations of the law; that is a matter of personal choice and not a result compelled by the state. Because Respondents have not shown a likelihood of success in a hybrid claim, strict scrutiny does not apply.

*Summary*

The undisputed facts show that Respondents discriminated against Complainants because of their sexual orientation by refusing to sell them a wedding cake for their same-sex marriage, in violation of § 24-34-601(2), C.R.S. Moreover,

---

[11] In fact, such an exception may be constitutionally required. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC,* ___ U.S. ___, 132 S.Ct. 694, 705-06 (2012).

application of this law to Respondents does not violate their right to free speech or unduly abridge their right to free exercise of religion. Accordingly, Complainants' motion for summary judgment is GRANTED and Respondents' motion for summary judgment is DENIED.

## Initial Decision

Respondents violated § 24-34-601(2), C.R.S. substantially as alleged in the Formal Complaint. In accordance with §§ 24-34-306(9) and 605, C.R.S., Respondents are ordered to:

(1)   Cease and desist from discriminating against Complainants and other same-sex couples by refusing to sell them wedding cakes or any other product Respondents would provide to heterosexual couples; and

(2) Take such other corrective action as is deemed appropriate by the Commission, and make such reports of compliance to the Commission as the Commission shall require.

**Done and Signed**
December 6, 2013

_____
ROBERT N. SPENCER
Administrative Law Judge

Hearing digitally recorded in CR#1

13