**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-02372-MSK-CBS

303 CREATIVE LLC, a limited liability company; and
LORIE SMITH,

       *Plaintiffs*,

vs.

AUBREY ELENIS, Director of the Colorado Civil Rights
Division, in her official capacity;
ANTHONY ARAGON,
ULYSSES J. CHANEY,
MIGUEL "MICHAEL" RENE ELIAS,
CAROL FABRIZIO,
HEIDI HESS,
RITA LEWIS, and
JESSICA POCOCK, as members of the Colorado Civil Rights
Commission, in their official capacities; and
CYNTHIA H. COFFMAN, Colorado Attorney General,
in her official capacity;

       *Defendants*.

---

**MEMORANDUM OF LAW IN REPLY TO DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

---

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .............................................................................................. ii

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 6

ARGUMENT .................................................................................................................. 7

I.      This Court's Jurisdiction Is Well-Established. .................................................. 7

II.     Summary Judgment Is Appropriate As A Matter of Law ................................ 12

      A.      Defendants' application of CADA violates Lorie's free speech rights by coercing her to create unwanted expression. ....................................... 12

      B.      Defendants' application of CADA is a prior restraint on publication that violates Lorie's right to free press. ..................................................... 20

      C.      Defendants' application of CADA violates Lorie's rights to free association. .... 22

      D.      Defendants' application of CADA is content-based and discriminates on the basis of viewpoint; grants the Defendants' unbridled discretion to censor speech; creates an unconstitutional condition; and as to the Banned Speech Provision is overbroad. Defendants do not dispute any of these violations. ........ 23

      E.      Defendants' application of CADA violates Lorie's right to free exercise of her religion. ........................................................................................ 25

      F.      Defendants' application of CADA violates the equal protection clause. ............. 27

      G.      Defendants' application of CADA violates the due process clause, both procedurally and substantively. ............................................................ 29

      H.      Defendants' application of CADA cannot survive strict scrutiny. ....................... 31

III.    Injunctive Relief Is Proper And Necessary To Prevent Further Violation Of Plaintiffs' Rights: Plaintiff Will Suffer Irreparable Harm Absent A Permanent Injunction And Both the Balance Of Equities And The Public Interest Favor An Injunction. ................. 33

IV.     The Court Should Not Abstain From Lorie's Claims. ..................................... 35

CONCLUSION ............................................................................................................ 36

## TABLE OF AUTHORITIES

**<u>Cases</u>**

*Agency for International Development v. Alliance for Open Society International, Inc.*,
    133 S. Ct. 2321 (2013) ................................................................................................12, 17

*American Civil Liberties Union v. Alvarez*,
    79 F.3d 583 (7th Cir. 2012) ...............................................................................................9

*American Civil Liberties Union v. Johnson*,
    194 F.3d 1149 (10th Cir. 1999) ...............................................................................34, 35

*Anderson v. City of Hermosa Beach*
    621 F.3d 1051 (9th Cir. 2010) .................................................................................15, 17

*Board of Regents of State of Colleges v. Roth*,
    408 U.S. 564 (1972)................................................................................................30

*Board of Directors of Rotary International v. Rotary Club of Duarte*,
    481 U.S. 537 (1987)................................................................................................26

*Bob Jones University v. United States*,
    461 U.S. 574 (1983)................................................................................................27

*Bono Film & Video, Inc. v. Arlington City Human Rights Commision*,
    72 Va. Cir. 256, 2006 WL 3334994 (Va. Cir. Ct. Nov. 16, 2006). ...................................16

*Bourgeois v. Peters*,
    387 F.3d 1303 (11th Cir. 2004) ....................................................................................24

*Boy Scouts of America v. Dale*,
    530 U.S. 640 (2000)................................................................................8, 22, 23, 32

*Brandt v. Village of Winnetka*,
    612 F.3d 647 (7th Cir. 2010) .........................................................................................10

*Brown v. Entertainment Merchants Association*,
    564 U.S. 786 (2011)................................................................................................8, 31, 32

*Buehrle v. City of Key West*,
    813 F.3d 973 (11th Cir. 2015) .................................................................................17, 19

*Burson v. Freeman*,
    504 U.S. 191 (1992)................................................................................................31

*Burwell v. Hobby Lobby Stores, Inc*,
    134 S. Ct. 2751 (2014) ............................................................................27, 30

*City of Boerne v. Flores*,
    521 U.S. 507 (1997) ............................................................................31

*City of Cleveland v. Nation of Islam*,
    922 F. Supp. 56 (N.D. Ohio 1995) ....................................................16

*City of Lakewood v. Plain Dealer Publishing Company*,
    486 U.S. 750 (1988) ............................................................................17

*Clapper v. Amnesty International USA*,
    133 S. Ct. 1138 (2013) ........................................................................10

*Claybrooks v. American Broadcasting Companies*,
     898 F. Supp. 2d 986 (M.D. Tenn. 2012) ..........................................16

*Connecticut v. Massachusetts*,
    282 U.S. 660 (1931) ............................................................................34

*Consumer Data Industries Association v. King*,
    678 F.3d 898 (10th Cir. 2012) ...........................................................12

*COPE v. Kansas State Board of Education*,
    821 F.3d 1215 (10th Cir. 2016). .........................................................11

*Craig v. Masterpiece Cakeshop, Inc.*,
    370 P.3d 272 (2015) ...........................................................3, 5, 15, 21

*Cressman v. Thompson*,
    719 F.3d 1139 (10th Cir. 2013) ....................................................7, 12

*Cressman v. Thompson*,
    798 F.3d 938 (10th Cir. 2015) .................................................. *passim*

*Curtis Publishing Company v. Butts*,
    388 U.S. 130 (1967) ............................................................................20

*Deja Vu of Nashville, Inc. v. Metropolitan Government of Nashville*,
    274 F.3d 377 (6th Cir. 1002) .......................................................34, 35

*Doe v. Bolton*,
    410 U.S. 179 (1973) ..............................................................................9

*Dubbs v. Head Start, Inc.*,
     336 F.3d 1194 (10th Cir. 2003) ...................................................................................31

*Elrod v. Burns*,
     427 U.S. 347(1976)...................................................................................................34

*Exxon Mobil Corporation v. Saudi Basic Industries Corporation*,
     544 U.S. 280 (2005)..................................................................................................35

*Faircloth v. Colorado Department of Corrections*,
     2016 WL 234356 (2016)...........................................................................................34

*Fox v. Maulding*,
     16 F.3d 1079 (10th Cir. 1994) ..................................................................................35

*Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal*,
     546 U.S. 418 (2006)............................................................................................32, 33

*Greater Yellowstone Coalition v. Flowers*,
     321 F.3d 1250 (10th Cir. 2003) ............................................................................33, 34

*Greene v. McElroy*,
     360 U.S. 474 (1959)..................................................................................................30

*Guttman v. Khalsa*,
     446 F.3d 1027 (10th Cir. 2006) ................................................................................35

*Hands on Originals, Inc. v. Lexington-Fayette Urban County Human Rights Commission*
     No. 14-CI-04474 (Fayette Cir. Ct. Apr. 27, 2015) ...........................................15

*Heideman v. South Salt Lake City*,
     348 F.3d 1182 (10th Cir. 2003) ................................................................................33

*Hishon v. King & Spalding*,
     467 U.S. 69 (1984)....................................................................................................26

*Hobby Lobby Stores, Inc. v. Sebelius*,
     723 F.3d 1114 (10th Cir. 2013) ................................................................................11

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*,
     515 U.S. 557 (1995)........................................................................................ *passim*

*Kaplan v. California*,
     413 U.S. 115 (1973)....................................................................................................4

*Larson v. Valente*,
456 U.S. 228 (1982)................................................................................................12

*Lefkowitz v. Cunningham*,
357 U.S. 449 (1958)................................................................................................24

*Massachusetts v. EPA*,
549 U.S. 497 (2007)................................................................................................12

*Miami Herald Publishing Company v. Tornillo*
418 U.S. 241 (1974)...........................................................................................13, 17

*Mitchum v. Foster*,
407 U.S. 225 (1972)...........................................................................................14, 35

*Moses H. Cone Memorial Hospital v. Mercury Construction Corporation*,
460 U.S. 1 (1983)...................................................................................................35

*NAACP v. Alabama*,
357 U.S. 449 (1958)................................................................................................23

*Near v. Minnesota ex rel. Olson*,
283 U.S. 697 (1931)................................................................................................20

*Obergefell v. Hodges*,
135 S. Ct. 2584 (2015)............................................................................................31

*Pacific Gas & Electric Company v. Public Utilities Commission of California*,
475 U.S. 1 (1986)..............................................................................13, 16, 17, 21, 22

*Pacific Frontier v. Pleasant Grove City*,
414 F.3d 1221 (10th Cir. 2005) .............................................................................35

*Phelps v. Hamilton*,
59 F.3d 1058 (10th Cir. 1995) ...............................................................................35

*Prairie Band of Potawatomi Indians v. Pierce*,
253 F.3d 1234 (10th Cir. 2001) .............................................................................33

*Prairie Band Potawatomi Nation v. Wagnon*,
476 F.3d 818 (10th Cir. 2007) ...............................................................................34

*Pruneyard Shopping Center v. Robins*,,
447 U.S. 74 (1980)............................................................................................21, 22

*Riley v. National Federation of the Blind of North Carolina,*
    487 U.S. 781 (1988)......................................................................................16

*Roberts v. U.S. Jaycees,*
    468 U.S. 609 (1984)...............................................................................23, 26

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.,*
    547 U.S. 47(2006)......................................................................................18

*South Boston Allied War Veterans Council v. City of Boston,*
    297 F. Supp. 2d 388 (D. Mass 2003) ........................................................16

*Seegmiller v. LaVerkin City,*
    528 F.3d 762 (10th Cir. 2008) ...................................................................31

*Sprint Communications, Inc. v. Jacobs,*
    134 S. Ct. 584 (2013)............................................................................35, 36

*State v. Arlene's Flowers, Inc.,*
    No. 91615-2, 2017 WL 629181 (Wash. Feb. 16, 2017). ...........................15

*Susan B. Anthony List v. Driehaus,*
    134 S. Ct. 2334 (2014)....................................................................7, 8, 9, 10

*Texas v. Johnson,*
    491 U.S. 397 (1989)...................................................................................28

*Thornhill v. Alabama,*
    310 U.S. 88 (1940)....................................................................................20

*United States v. Lee,*
    455 U.S. 252 (1982)...................................................................................27

*Vallejos v. C.E. Glass Company,*
    583 F.2d 507 (10th Cir. 1978) .................................................................2, 19

*Verlo v. Martinez,*
    820 F.3d 1113 (10th Cir. 2016) ............................................................34, 35

*West Virginia State Board of Education v. Barnette,*
    319 U.S. 624 (1943)..................................................................12, 13, 17, 26

*Ward v. Utah,*
    321 F.3d 1263 (10th Cir. 2003) .................................................................7, 8

*White v. City of Sparks*,
    500 F.3d 953 (9th Cir. 2007) ............................................................................17

*Wooley v. Maynard*,
    430 U.S. 705 (1977)...........................................................................12, 13, 17

**<u>Rules</u>**

Fed. R. Civ. P. 56......................................................................................................7

Fed. R. Civ. P. 56(c) .............................................................................................6, 7

**<u>Statutes</u>**

42 U.S.C. § 1983......................................................................................................14

Colo. Rev. Stat. § 24-34-601(1)............................................................................5, 25

Colo. Rev. Stat. § 24-34-601(2)(a) .......................................................................4, 29

## **<u>INTRODUCTION</u>**

 

Is this speech? Plaintiffs say it is. Defendants say it is not, resting their entire case on the premise that custom words and graphics are conduct, not speech. That premise is wrong.

Federal courts have answered this question, consistently holding that words and custom images like Lorie's[1] are pure speech afforded the most rigorous protection under the Constitution. *Cressman v. Thompson (Cressman II)*, 798 F.3d 938, 951-52 (10th Cir. 2015) (holding that "[t]he concept of pure speech is fairly capacious," including, in addition to words, "music without words, dance, theater, movies, and pictures, paintings, drawings, and engravings," as well as "tattoos, artwork, custom-painted clothing, and stained-glass windows," all of which are "rigorously protected" and citing various federal cases holding the same) (internal quotations and alterations omitted).

---

[1] In accordance with prior briefing and for simplicity's sake, this motion refers to both Plaintiffs collectively as "Lorie" whenever possible.

Moreover, the Defendants stipulated that all of Lorie's graphic and website designs are expressive, although their most recent briefing omits that fact. Joint Statement of Stipulated Facts ¶¶ 46-47 ("Stipulated Facts") ("All of Plaintiffs' graphic designs" and "website designs are expressive in nature, as they contain images, words, symbols, and other modes of expression that Plaintiffs use to communicate a particular message."). This includes the custom wedding websites she intends to create. Stipulated Facts ¶¶ 81-82 ("Plaintiffs' custom wedding websites will be expressive in nature, using text, graphics, and in some cases videos to celebrate and promote the couple's wedding and unique love story."). These stipulations are binding. *Vallejos v. C.E. Glass Co.*, 583 F.2d 507, 510 (10th Cir. 1978) ("As a general rule, a stipulation is a judicial admission binding on the parties making it . . . .").

No doubt thus exists that Lorie's case is about the State of Colorado's pure-speech coercing and pure-speech squelching efforts. Significantly, Defendants do not deny those efforts. Instead, they repeat their position that Lorie's speech violates CADA and warrants punishment. *See e.g.* Defs.' Resp. to Pls.' Mot. for Summ. J. and Mem. in Supp. 28, ECF No. 50 ("Defs.' MSJ Resp.") (characterizing Plaintiffs' free speech claims as no more than a request "to bar Defendants from enforcing Colorado's public accommodations law so that they can discriminate against same-sex couples on the basis of their religious belief"); 27 (accusing Lorie of "using religion to perpetuate discrimination against individuals" in "violat[ion of] . . . state[] laws[]"); 6, 20, 26 (suggesting that a blanket interest in "erasing discrimination against its citizens," "eradicating discriminatory behaviors," or "eliminating discrimination" justifies any and all enforcement of CADA even against speech); 8, 20 (calling messages opposing same-sex marriage "derogatory" and "offensive"). Defendants' prior briefing and oral argument before this Court stated the same.

Defs.' Resp. to Pls.' Mot. for Prelim. Inj. 2, 6, ECF No. 38 ("Defs.' MPI Resp.") (describing Lorie's efforts to live and work in accordance with her religious beliefs about marriage as "seek[ing] . . . permission to discriminate . . . in violation of Colorado's Anti-discrimination Act" and "accusing her of "assert[ing] her religious beliefs as a reason to discriminate"); Defs.' Mot. to Dismiss V. Compl. for Decl. and Inj. Relief 2, ECF 37 ("Defs.' MTD Br.") (same); Hr'g Tr. (Jan. 11, 2017) 8:10, ECF No. 47 (describing the statement Lorie desires to post on 303 Creative's website as "discriminatory language").

In defense of their actions, Defendants raise only distractions. Primary among these are the persistent treatment of Lorie's speech as conduct, the confusion of Lorie's as-applied and facial challenges, and the accusation that Lorie's case is no more than a collateral attack on *Craig v. Masterpiece Cakeshop*, 370 P.3d 272 (Colo. Ct. App. 2015). None of these arguments are prevailing. Yet, they are so pervasive in Defendants' briefing that they bear discussion at the onset.

Lorie's speech falls comfortably within the Tenth Circuit's definition of pure speech. *See* Pls.' Mot. for Summ. J. and Mem. in Supp., Section II.A.1.a, ECF No. 48 ("Pls.' MSJ Br."); Stipulated Facts ¶¶ 46-47, 81-82; *see also supra* Section II.A. Lorie intends to speak into the culture on the subject of marriage by (1) posting her desired statements on 303 Creative's website and by (2) creating custom wedding websites exclusively promoting marriages between one man and one woman. Stipulated Facts ¶¶ 46-59, 71, 73-92, Ex. A (sample custom wedding website), Ex. B (desired statement for 303 Creative's website). [2] Both types of expression are made up of

---

[2] The character of Lorie's protected expression is not impacted by its electronic medium. Numerous courts have found electronic text, images, and graphics to be protected speech. *See* Pls.' MSJ Br. 26, n.4. Her graphic and website designs, therefore, are just the modern equivalent

3

custom words and graphics expressing Lorie's views and values. The only difference between the two is that one is sold. Yet, commissioned speech remains protected under the Constitution. *Cressman II*, 798 F.3d at 951-952 (including the commercial sale of "tattoos, the sale of original artwork," and the sale of "custom-painted clothing" within the "fairly capacious" definition of pure speech) (internal quotations and alterations omitted); *see also supra* Section II.A.

Defendants' response also conflates Lorie's as-applied and facial challenges. This includes arguments to the effect that the Compelled Speech Provision does not violate Lorie's rights on its face. Lorie does not contest the facial validity of the Compelled Speech Provision, Colo. Rev. Stat. § 24-34-601(2)(a). Lorie only facially challenges the Banned Speech Provision. This provision is a content-based restriction on speech because it regulates speech about a handful of topics ("disability, race, creed, color, sex, sexual orientation, marital status, national origin, [and] ancestry") while leaving virtually all other topics unregulated. V. Compl. ¶ 223; Pls.' MSJ Br. Section II.A.1.e.; *see supra* Section II.D. The provision is facially overbroad and vague due to its undefined terms – "directly," "indirectly," "unwelcome," "objectionable," "unacceptable," or "undesirable," that grant the Defendants unbridled discretion to censor protected speech. Colo. Rev. Stat. § 24-34-601(2)(a); V. Compl. ¶¶ 252-265, 266-273, 345-370; Pls.' MSJ Br. Section II.E, II.A.1.f.; *see also supra* Section II.D., II.G. The statute's vague language also violates the free exercise clause by allowing individualized, secular exemptions while excluding individual religious exemptions. V. Compl. ¶¶ 293-329; Pls.' MSJ Br. Section II.C.; *see supra* Section II.E. And it is not neutral or generally applicable, in violation of the free exercise clause, because it

---

of the traditional visual media like "pictures, ... paintings, drawings, and engravings" that courts have protected as speech for over forty years. *Kaplan v. California*, 413 U.S. 115, 119 (1973).

contains categorical exemptions including for any "church, synagogue, mosque, or other place that is principally used for religious purposes." *Id.*; Colo. Rev. Stat. § 24-34-601(1); Pls.' MSJ Br. Section II.C.; *see supra* Section II.E. All of Lorie's other claims are to as-applied application of CADA that squelch or compel her expression. V. Compl. ¶¶ 205-398.

The as-applied nature of these challenges highlights the weakness of Defendants' claim that Lorie raises no more than a collateral attack on *Masterpiece Cakeshop*, 370 P.3d 272. This case is about Lorie—a life-long Colorado native with a talent for graphic and website design who is barred by her government from speaking and creating freely in accordance with her religious beliefs. Stipulated Facts ¶¶ 92-97.

That injury is Lorie's, not Masterpiece's. The two cases concern different litigants, different businesses, and different expression. However, *Masterpiece* matters because it is a concrete example of Defendants' speech-squelching and speech-compelling enforcement of CADA. *Masterpiece* demonstrates two things: First, that Defendants interpret CADA to prohibit commissioned speakers from declining to create messages that celebrate same-sex marriage, and second, that Defendants believe they have the authority to compel speech and punish messages with which they disagree. *See* Ex. F (Commission's Final Agency Order (1) adopting the Administrative Law Judge ("ALJ") decision that found Jack Phillips and Masterpiece Cakeshop in violation of CADA for declining to create a wedding cake for a same-sex ceremony and (2) issuing "remedial measures" that included a "cease and desist" order requiring Phillips to create custom wedding cakes for same-sex couples, and orders forcing him to file compliance reports with the state and put his staff through reeducation training about CADA); *see also* Ex. E (related ALJ decision). The threat of punishment is real and Defendants have done everything they can to

reinforce it. Defs.' MSJ Resp. 6, 8, 20, 27-28 (collectively confirming their authority under CADA to punish speech they deem discriminatory, including views that are critical of same-sex marriage). That fact makes Defendants' accusation that Lorie invented this case to challenge *Masterpiece* all the more disingenuous. Defs.' MSJ Resp. 1. It also renders Lorie's need for relief from this Court all the more urgent.

## STATEMENT OF FACTS

The material facts are contained in the following documents and the Court can properly rely upon them: Stipulated Facts, the Affidavit of Lorie Smith in Support of Plaintiffs' Motion for Summary Judgment, ECF No. 48-1; the Affidavit of Counsel for the Plaintiffs, Jeremy D. Tedesco, In Support of Plaintiffs' Motion for Summary Judgment, ECF No. 48-2; and the Appendix, ECF No. 48-3 ("App."). Defendants do not dispute these facts. Instead, Defendants raise a blanket objection to "non-stipulated facts." Defs.' MSJ Resp. 2. That objection is misplaced.

Plaintiffs followed this Court's direction and filed a separate statement of stipulated facts. *See* Stipulated Facts; *see also* Courtroom Minutes 2, ECF No. 46 ("The parties will also file a separate stipulation of facts."); Hr'g Tr. 12:3-13:2 (stating same). But that filing does not preclude Plaintiffs from properly directing the Court to undisputed facts not contained in the stipulation. Federal Rule of Civil Procedure 56 instructs as much. Fed. R. Civ. P. 56(c). Ignoring this federal procedure, Defendants view themselves as the sole arbiters of the record on summary judgment, with the power to shape the record by withholding agreement despite having no basis to do so. That is not how Rule 56 operates. *Id.*

To dispute a material fact under Rule 56, Defendants must point to evidence in the record, or submit additional evidence, contradicting the disputed fact. Fed. R. Civ. P. 56(c). Defendants have not done this as to any fact, let alone a material one. Therefore, all material facts are agreed, admitted, and properly before this Court on summary judgment. Fed. R. Civ. P. 56.

## **ARGUMENT**

**I.      This Court's Jurisdiction Is Well-Established.**

Standing in this case is well-established and Defendants' response only underscores it. Lorie has standing because her constitutionally protected speech is chilled based on a credible threat of enforcement. Defendants do not dispute that, repeatedly describing Lorie's efforts to live and work in accordance with her religious beliefs about marriage as "seek[ing] . . . permission to discriminate . . . in violation of Colorado's Anti-discrimination Act . . ." and espousing Defendants' power to enforce CADA against such "discrimination." *See* Defs.' MSJ Resp. 6, 8, 20, 26-28; Defs.' MPI Resp. 2, 6; Defs.' MTD Br. 2, 3-4, 16-19; *see also* Stipulated Facts ¶¶ 7-28 (Defendants' stipulation to each of the Defendants' power to enforce CADA).

In light of these statements, Lorie's case presents classic pre-enforcement standing in the wake of *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2346 (2014); *Cressman v. Thompson (Cressman I)*, 719 F.3d 1139, 1147 (10th Cir. 2013); and *Ward v. Utah*, 321 F.3d 1263, 1269-70 (10th Cir. 2003). These three cases control and they confirm that where there is a credible threat of enforcement and the chilling of constitutionally protected speech, as in Lorie's case, a plaintiff has standing. *Susan B. Anthony List*, 134 S. Ct. at 2346 (upholding the standing of two advocacy groups to challenge a state law on a pre-enforcement basis on the chilling effect on their speech); *Cressman I*, 719 F.3d at 1147 (affirming a motorist's standing to bring a First Amendment pre-

enforcement challenge to state law); and *Ward*, 321 F.3d at 1269-70 (holding that an animal rights activist had standing to bring a pre-enforcement challenge to a state law that chilled his speech).

Defendants ignore this pre-enforcement standing test entirely. Their only reference to this binding case law is a summary dismissal at the end of their standing section on the alleged basis that these cases involved statutes that "explicitly prohibit specific types of speech" and carry criminal penalties. Defs.' MSJ Resp. 9. But like the statutes in those cases, CADA also explicitly prohibits speech. It prohibits "unwelcome, objectionable, unacceptable, or undesirable" speech. Stipulated Fact. ¶ 3; *see also* Hr'g Tr. 8:4-9:7 (Defense counsel confirmed that any individual can file a complaint, triggering a mandatory investigation, based on a business owner's speech on their website). However, a statute need not explicitly prohibit speech to be challenged. *Hurley v. Irish-American Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 573 (1995) (finding an otherwise valid public accommodations statute unconstitutional only as it is "peculiar[ly]" applied to speech); *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 656-60 (2000) (same).

Defendants' suggestion regarding the criminal nature of statutes is similarly unavailing. Federal courts do not limit pre-enforcement challenges to cases involving criminal statutes. *See e.g. Brown v. Entm't Merchs. Ass'n,* 564 U.S. 786, 788-789 (2011) (pre-enforcement, free speech challenge to statute punishing the sale of violent video games to minors with a civil fine of up to $1,000). Doing so would shield every civil statute from pre-enforcement judicial review.

Rather than grapple with the binding precedent, Defendants simply restate their arguments from their motion to dismiss. *See generally* Defs.' MTD Br. For example, the "ten item list" reappears. Defs.' MSJ Resp. 3. Defendants argue that "ten things must occur" before Plaintiff sustains injury, which occurs after Lorie has exhausted all of her appeal rights. *Id.* Yet, *Susan B.*

*Anthony List* instructs that the threat of a commission proceeding is *an injury*. *Susan B. Anthony List*, 134 S. Ct. at 2345-46 ("The burdens that Commission proceedings can impose . . . are of particular concern" particularly because "the target" of a "complaint may be forced to divert significant time and resources to hire legal counsel and respond to discovery requests."). Indeed at oral argument on January 11, 2017, Defense Counsel agreed that the triggering event for enforcement in Lorie's case is the mere initiation of a complaint, not the exhaustion of appeal rights, because the complaint triggers a mandatory investigation. Hr'g Tr. 8:21-23 ("Well, the State's position is that a matter needs to be initiated before any prosecution is made."); *Id.* 9:2-7 (confirming in response to the Court's question that the Division "exercises no discretion as to the complaints it pursues" and "has no discretion whether it could accept a complaint as long as it is filed").

This statement alone excludes items five through ten on Defendants' list. Defs.' MSJ Resp. 3. Items one and three—Plaintiffs' offering of wedding website services and Plaintiffs' declining of a request to create a website promoting same-sex marriage—are fully within Lorie's control. And Lorie has stipulated to both, stating that she is prepared to offer custom wedding website services immediately and that she will decline a request to create a custom wedding website promoting same-sex marriage. Stipulated Facts ¶¶ 92-97.

This leaves only the third party request. Yet, as the Supreme Court announced in *Doe v. Bolton*, absence of a third party request does not negate standing. 410 U.S. 179, 188 (1973) (affirming physician plaintiffs' standing even though they could not violate the law absent a request by a third party to perform an abortion); *see also Am. Civil Liberties Union v. Alvarez*, 679 F.3d 583, 594 (7th Cir. 2012) (recognizing that "[p]reenforcement suits always involve a

degree of uncertainty about future events"); *Brandt v. Vill. of Winnetka*, 612 F.3d 647, 649 (7th Cir. 2010) ("Any pre-enforcement suit entails some element of chance."). Moreover, Lorie has already received such a request. App. 001-002 (email from Stewart to 303 Creative requesting graphic and website design services for his same-sex wedding). Lorie has not responded to the request because she is not currently creating custom wedding websites solely because of CADA. Stipulated Facts ¶¶ 95-96. However, the request highlights her need for relief from this Court. If she were in the wedding industry, that request would have placed Lorie in the impossible position of choosing between compliance with CADA and exercising her fundamental rights. Stipulated Facts ¶¶ 92-97. In addition to lifting the unlawful chill on her speech, that is the impossible choice she seeks to avoid by filing this pre-enforcement lawsuit. *Id.*

Defendants also re-assert *Clapper v. Amnesty Int'l USA* as if it is binding here. 133 S. Ct. 1138 (2013). As previously briefed, *Clapper* has little application outside of its unique facts. *See* Pls.' Resp. to Defs.' Mot. to Dismiss Pls.' V. Compl. for Decl. and Inj. Relief 8, ECF 43 ("Pls.' MTD Resp."). *Clapper* confronted a foreign intelligence surveillance statute that was completely discretionary, required a five-step process before the alleged injury (surveillance) could occur, and triggered—by nature of the statute at issue—an "especially rigorous" "standing inquiry." *Clapper*, 133 S. Ct. at 1143-1147. In addition to this high standard, which has no application to Lorie's case, the statute in *Clapper* exempted the plaintiffs and those plaintiffs did not facially violate the statute. *Id.* at 1148. The case, therefore, has no application to Lorie's. *Susan B. Anthony List*, which followed *Clapper*, tracks the law of this Circuit, announced in *Cressman I* and *Ward* that an injury is not speculative if it is based on a credible threat of enforcement. *Susan B. Anthony List*, 134 S.Ct. at 2346.

Defendants' erroneous reliance on *Clapper* is not resolved by reference to *COPE v. Kansas State Bd. of Educ.*, 821 F.3d 1215, 1222-23 (10th Cir. 2016), an establishment clause case that like *Clapper* has little application beyond its specific facts. The case concerned Board of Education guidance standards that had not yet been adopted or implemented by the local school boards. *Id.* The court found no standing existed because the guidance could be implemented without causing injury. *Id.* Unlike in *COPE*, the Defendants here have already implemented the law in an unconstitutional way and promised to do so again. Ex. C-F (Commission findings and orders regarding Masterpiece); Defs.' MSJ Resp. 6, 8, 20, 26-28; Defs.' MPI Resp. 2, 6; Defs.' Mot. to Dismiss 2, 3-4, 16-19; Stipulated Facts ¶¶ 7-28. Defendants' reference to *Hobby Lobby* in defense of standing is even less compelling. Defs.' MSJ Resp. 4. Failure to *address* standing based on "potential regulatory action" is not the same as *denying* standing on that basis. *Hobby Lobby Stores, Inc. v. Sebelius,* 723 F.3d 1114, 1125-26 (10th Cir. 2013).

Lorie's case, in contrast, presents a current and irreparable injury—her chilled speech. Stipulated Facts ¶¶ 92-97. There is nothing speculative about it. Yet, in a final attempt to avoid having to address the merits of this case, Defendants accuse Lorie of self-inflicting harm and wrongly presuming enforcement. Defs.' MSJ Resp. 4. Both statements are incredible and disingenuous given Defendants' persistent threats against her and promises to enforce CADA to squelch and coerce her speech. Defs.' MSJ Resp. 6, 8, 20, 26-28; Defs.' MPI Resp. 2, 6; Defs.' MTD Br. 2, 3-4, 16-19.

Finally, without citation to any case law, Defendants suggest that the Court cannot redress Plaintiffs' injury because private citizens can file private lawsuits alleging violations of CADA. Defs.' MTD Br. 9-10. Redressability need not be "complete" but is satisfied where "the risk of

harm 'would be reduced *to some extent* if petitioners received the relief they seek.'" *Consumer Data Indus. Ass'n v. King*, 678 F.3d 898, 902 (10th Cir. 2012) (quoting *Mass. v. EPA*, 549 U.S. 497, 526 (2007)); *see also Larson v. Valente*, 456 U.S. 228, 243 (1982); *Cressman I*, 719 F.3d at 1146-47.

A favorable decision will immediately redress Lorie's chilled speech injury by allowing her to speak. Stipulated Facts ¶ 97 ("If Plaintiffs obtain the relief requested in the Complaint, they will immediately publish the addition to 303 Creative's webpage referenced above and begin work designing, creating, and publishing wedding websites."). A favorable decision will also define the constitutional confines of CADA for future litigation, in the event a civil suit is later filed. This Court, therefore, can properly redress Lorie's injury.

## II.   Summary Judgment Is Appropriate As A Matter of Law.

Defendants' response raises no dispute of material fact. The dispute remains one of differing views of the case law and legal principles that control Lorie's case. For the reasons discussed below, the Court should decide those legal questions in Lorie's favor.

### A.   Defendants' application of CADA violates Lorie's free speech rights by coercing her to create unwanted expression.

The First Amendment guarantees every individual "both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). The latter protection, known as the compelled speech doctrine, bars the government from coercing unwanted expression. *See Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 133 S. Ct. 2321, 2327 (2013) ("It is, however, a basic First Amendment principle that 'freedom of speech prohibits the government from telling people what they must say.'") (internal citation omitted). This doctrine, first recognized in *West Virginia State Board of Education v. Barnette*, 319 U.S. 624

(1943), has been jealously guarded by the Court in an unbroken line of cases. *Hurley*, 515 U.S. at 573 ([O]ne important manifestation of the principle of free speech is that one who chooses to speak may also decide 'what not to say.'") (citing *Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal.*, 475 U.S. 1, 11 (1986)); *see also Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 256-258 (1974) (rejecting government efforts to "compel[] editors or publishers to publish that which reason tells them should not be published") (internal quotations omitted); *Wooley*, 430 U.S. at 714; *Barnette*, 319 U.S. at 634 (the government may not "compel [an individual] to utter what is not in his mind"); *Cressman II*, 798 F.3d at 950 (noting that "a State runs afoul of the First Amendment if it 'compel[s] a party to express a view with which the private party disagrees'") (internal citation omitted). "[T]he fundamental rule of protection under the First Amendment" is therefore, that "a speaker has the autonomy to choose the content of his own message." *Hurley*, 515 U.S. at 573.

 *Cressman v. Thompson* controls this Court's compelled speech analysis. Under *Cressman*, a plaintiff makes out a compelled-speech claim if she "establish[es] (1) speech; (2) to which [s]he objects; that is (3) compelled by some governmental action." *Cressman II*, 798 F.3d at 951. Lorie has done this. Lorie's custom wedding websites are pure speech. *Id.*; Stipulated Facts ¶¶ 46-47, 81-82 (Defendants' stipulation that Lorie's graphic, website designs, and custom wedding websites are expression.). Lorie objects to creating pure speech that violates her religious beliefs, including speech promoting same-sex marriages. Stipulated Facts ¶¶ 60-61, 63, 66-71, 73-80, 88-92, 94. And Defendants' plan to enforce CADA to force Lorie to create custom websites for same-sex marriages if she creates custom websites celebrating marriages between one man and one woman. Defs.' MSJ Resp. 6, 8, 20, 26-28; Defs.' MPI Resp. 2, 6; Defs.' MTD Br. 2. Indeed

Defendants have a record of enforcing CADA in such a speech compelling way. *See* Ex. C-F (Commission orders compelling the owner of Masterpiece Cakeshop to create speech, custom wedding cakes, celebrating same-sex marriages in violation of his strong religious objection.). While Defendants quibble with the role of *Masterpiece* they do not dispute the interpretation of CADA that *Masterpiece* confirms—namely, that an expressive business cannot decline to create custom expression because the expression conveys an unwanted message promoting same sex marriage without violating CADA. *See* Defs.' MSJ Resp. 6, 8, 11, 17, 20, 27-28; Defs.' MPI Resp. 2, 6; and Defs.' MTD Br. 2 (collectively describing Lorie's efforts to live and work in accordance with her religious beliefs about marriage as "seek[ing] . . . permission to discriminate . . . in violation of Colorado's Anti-discrimination Act . . ." and confirming their perceived right to regulate Lorie's speech).

Defendants' brief is notable for its lack of reference to federal case law. Instead, Defendants urge the Court to rely on three state court decisions that applied public accommodations laws to force expressive business owners to create unwanted speech celebrating same-sex marriages. Defs.' MSJ Resp. 11-21 (citing *Masterpiece Cakeshop*, *Arlene's Flowers*, and *Elane Photography* repeatedly). 42 U.S.C. § 1983's very purpose is, however, "to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law. . . ." *Mitchum v. Foster*, 407 U.S. 225, 242 (1972). Federal, not state decisions, should guide the Court's ruling here. Moreover, the judgments in two of the three cases, *Arlene's Flowers* and *Masterpiece Cakeshop*, are not final, as the U.S. Supreme Court may grant review.

Additionally, the errors in the reasoning in these three state court cases are too numerous to recite. It suffices to say that although federal courts have not decided whether custom floral arrangements and wedding cakes are speech, they have unanimously ruled that words and custom images are pure speech. *See e.g.*, *Hurley* 515 U.S. at 569; *Cressman II*, 798 F.3d at 952. And even *Masterpiece* and *Arlene's Flowers* agree that pure speech receives full constitutional protection. *Masterpiece Cakeshop*, 370 P.3d at 288 ("We recognize that a wedding cake, in some circumstances, may convey a particularized message celebrating same-sex marriage, and in such cases, First Amendment speech protections may be implicated."); *State v. Arlene's Flowers, Inc.*, No. 91615-2, 2017 WL 629181, at 10 n. 13 (Wash. Feb. 16, 2017) (agreeing with the *Anderson* court's "finding that tattoos receive First Amendment protections by pointing out that they 'are generally composed of words, realistic or abstract images, symbols, or a combination of these, all of which are forms of pure expression that are entitled to full First Amendment protection'") (*quoting Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1061 (9th Cir. 2010)); *see also* Stipulated Facts ¶¶ 46-47, 81-82 (Defendants stipulation that Lorie's graphic and website designs "are expressive in nature, as they contain images, words, symbols, and other modes of expression that Plaintiffs use to communicate a particular message" and that her "custom wedding websites will be expressive in nature using text, graphics, and in some cases videos to celebrate and promote the couple's unique love story.").

Many courts agree. To list a few:

- *Hands on Originals, Inc. v. Lexington-Fayette Urban Cty. Human Rights Comm'n*, No. 14-CI-04474, at 10-11 (Fayette Cir. Ct. Apr. 27, 2015) (appeal pending)[3]: An LGBT organization brought a public accommodations claim against the owner of a closely-held small print and graphic-design shop because he referred its request

---

[3] Opinion available at: http://perma.cc/75FY-Z77D

for t-shirts promoting a LGBT pride festival. *Id.* at 10-11. Based on *Hurley*, a state trial court held that the county could not "compel [the print shop] and its owners to print a t-shirt conveying a message [they] do not support." *Id.* at 11.

- *Bono Film & Video, Inc. v. Arlington Cty. Human Rights Comm'n*, 72 Va. Cir. 256, 2006 WL 3334994 (Va. Cir. Ct. Nov. 16, 2006): An LGBT person requested that the owner of a closely-held film and video postproduction company turn betacams of two LGBT films into VHS tapes and filed a complaint with the local human rights commission when he declined. *Id.* at *1. After initially finding sexual orientation discrimination, the commission dismissed the case because the owner declined not based on the patron's "sexual orientation" but on his opposition to the films' "content," which he found religiously objectionable. *Id.* at *1-2.

- *City of Cleveland v. Nation of Islam*, 922 F. Supp. 56 (N.D. Ohio 1995): Cleveland prevented Nation of Islam ministers from delivering "separate speeches to men and women" at a conference pursuant to a state public accommodations law that prohibited sex discrimination. *Id.* at 59. A federal district court recognized that forcing ministers to speak to a mixed gender audience would necessarily change "the content and character of the speech" and barred application of the law. *Id.*

- *Claybrooks v Am. Broad. Cos.*, 898 F. Supp. 2d 986, 989-90 (M.D. Tenn. 2012): African-American men who auditioned for, but were rejected by, ABC's television show *The Bachelor* sued for racial discrimination under 42 U.S.C. § 1981. *Id.* at 989-90, 1000. A federal district court dismissed the suit because "the First Amendment protects the producers' right unilaterally to control their own creative content" and base their casting decisions "on whatever considerations the producers wish to take into account." *Id.* at 999-1000.

- *S. Bos. Allied War Veterans Council v. City of Boston*, 297 F. Supp. 2d 388 (D. Mass 2003): Boston officials forced parade organizers to allow a Veterans for Peace group to march at the end of their St. Patrick's Day parade, even though they had denied the anti-war group's request to take part. *Id.* at 394. A federal district court held that these private speakers had the right "not [to] have the message of an opposing group forced on them by the state," *id.*at 393, and that a distance of "no less than a mile" between the groups was required to adequately "distinguish the two sets of speech," *id.* at 399.

Ignoring these progeny, Defendants suggest that *Hurley*'s compelled speech ruling is cabined to the non-profit realm. Defs.' MSJ Resp. 12-13. Yet, *Hurley* itself affirmed that the right not to speak is "enjoyed by business corporations generally . . . as well as by professional publishers." *Hurley*, 515 U.S. at 574. And federal courts have consistently extended free speech

protection to for-profit businesses. *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.,* 487 U.S. 781, 784 (1988) (protecting for-profit fundraisers); *Pac. Gas* , 475 U.S. at 4  (protecting for-profit electric company); *Tornillo*, 418 U.S. at 243 (protecting for-profit newspaper); *Anderson*, 621 F.3d at 1061 (protecting for-profit tattoo business); *Beurhle v. City of Key West*, 813 F.3d 973, 976-78 (11th Cir. 2015) (protecting for-profit tattoo business); *Cressman II*, 798 F.3d at 951-952 (listing the commercial sale of "tattoos, the sale of original artwork," and sale of "custom-painted clothing" within the "fairly capacious" definition of pure speech) (internal quotations and alterations omitted); *see also White v. City of Sparks*, 500 F.3d 953, 956 (9th Cir. 2007) ("White's sale of his paintings" does not "remove[] them from the ambit of protected expression."); *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 756 n.5 (1988) ("Of course, the degree of First Amendment protection is not diminished merely because the . . . speech is sold rather than given away.").

Defendants attempt to side-step this venerable case law by claiming the primary Supreme Court cases on this point, *Tornillo* and *Pacific Gas*, are distinguishable because in both cases the compelled speech claim rested on the government requirement that a speaker "disseminate a third-party message along with its own protected message." Defs.' MSJ Resp. 13. Yet, Defendants' creative "intermingled" speech theory is not the law, as the Supreme Court has never required a compelled speech litigant to prove that their speech is combined with someone else's speech to prevail. *Cf. Agency for Int'l Dev.*, 133 S. Ct. at 2327 ("It is, however, a basic First Amendment principle that 'freedom of speech prohibits the government from telling people what they must say.'") (internal citation omitted); *Hurley*, 515 U.S. at 573; *Wooley*, 430 U.S. at 714; *Barnette*, 319 U.S. at 634; *Cressman II*, 798 F.3d at 951. Rather, as *Cressman* confirms, the Supreme

Court's test for a compelled speech claim is unwanted speech "compelled by some governmental action." *Id.*

Furthermore, CADA fails even Defendants' faulty articulation of the compelled speech test. As applied, CADA forces Lorie to disseminate messages promoting same-sex marriage with her message of the distinct virtue of marriage between one man and one woman. Defs.' MSJ Resp. 6, 8, 11, 17, 20, 26-28 (stating Defendants' interpretation of CADA as requiring Lorie to create custom wedding websites for same-sex weddings if she creates custom wedding websites extolling the virtues of marriage between one man and one woman); *see also* Ex. F (Commission order compelling Jack Phillips, owner of Masterpiece Cakeshop, to create custom wedding cakes disseminating a message promoting same-sex marriage). For example, Lorie's custom wedding websites state, "We invite you to celebrate our marriage." Ex. A. Defendants' application of CADA requires her to state this message of celebration for same-sex marriages as well as marriages between one man and one woman in violation of her religious beliefs.

Defendants try to bolster the point with a citation to *Rumsfeld* but that effort is unavailing. Defs.' MSJ Resp. 14. The law in *Rumsfeld* required schools to provide an empty room for student "interviews and recruiting receptions" with military recruiters on equal terms with other employers. *Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*, 547 U.S. 47, 64 (2006). Because "the schools [were] not speaking," no pure speech was directly at issue. *Id.* The schools merely had to allow "expressive activities by others on [their] property." *Id.* at 65. Defendants do not seek to force Lorie to open an empty room, they want Lorie to create the pure speech *herself*.

Rumsfeld would have been more akin to the present matter had the government demanded that the law schools create posters promoting the very thing they objected to: the military's policy

barring homosexuals from service. *See id*. at 52 & n.1. But the law schools were not required to create any expression regarding that policy. Such compulsion would have impermissibly "interfer[ed] with a speaker's desired message" because the law schools opposed that policy. *Cf. id*. at 52, 64. Yet that is the type of compulsion involved here, wherein Defendants interfere with Lorie's desired message explaining God's design for marriage by requiring her to design and publish websites promoting a different conception of marriage. *See* Defs.' MSJ Resp. 6, 8, 11, 17, 20, 26-28.

Defendants further suggest that they can force Lorie to speak a message that violates her religious beliefs because the public would likely attribute her coerced speech to the patron. Yet, Defendants stipulated to the contrary—"Viewers of the wedding websites will know that the websites are Plaintiffs' original artwork because all of the wedding websites will say 'Designed by 303Creative.com.'" Stipulated Facts ¶ 83; *see also Buehrle*, 813 F.3d at 977 (stating that the First Amendment's protection is not "a mantle, worn by one party to the exclusion of another and passed between them" but instead "protects the artist who paints a piece just as surely as it protects the gallery owner who displays it, the buyer who purchases it, and the people who view it"). Defendants' stipulation is binding. *Vallejos*, 583 F.2d at 510. Additionally, third party perception is irrelevant when it comes to pure speech. *Cressman II*, 798 F.3d at 952-955 (applying the *Spence-Johnson* test only to symbolic expression, not pure speech). The government may not coerce undesired speech regardless of third party perceptions. That consideration is only relevant when symbolic conduct is at issue, which is not the case here. *Id*.

Defendants finally suggest that protecting Lorie's speech creates a slippery slope that protects "architects, chefs, hair stylist, baristas, etc." Defs.' MSJ Resp. 16-17. Yet, those

businesses do not sell expression. Instead the slippery slope slides the other direction. Refusing to protect Lorie's speech means that no expressive business is safe. The government may compel any commissioned speaker to violate her beliefs, including, for example, forcing:

- gay musicians to play the piano at a Westboro Baptist Church fundraiser;
- atheist singers to sing hymns at a Catholic Easter service;
- Muslim printers to print a synagogue's pro-Israel pamphlets; or
- lesbian web designers to create a Mormon group's website criticizing same-sex marriage.

Who will be coerced simply depends on which viewpoint temporarily holds majoritarian sway. If the state truly enforced CADA in an even-handed manner, it would force the African-American baker to create a custom cake celebrating the racist ideals of a member of the Aryan Nation or the Muslim baker to create a custom cake denigrating his faith for the Westboro Baptist Church. But it does not. *See* App. 029.

## B.   Defendants' application of CADA is a prior restraint on publication that violates Lorie's right to free press.

The Free Press Clause stands as "a guarantee to individuals of their personal right to make their thoughts public and put them before the community." *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 149 (1967). Its chief purpose is "to prevent previous restraints upon publication." *Near v. Minn. ex rel. Olson*, 283 U.S. 697, 713 (1931). Certainly no private speaker should "fear physical or economic retribution solely because of what they choose to think and publish." *Curtis*, 388 U.S. at 151; *see also Thornhill v. Alabama*, 310 U.S. 88, 101-02 (1940) (noting the freedom of press protects the ability "to discuss publicly and truthfully all matters of public concern without previous restraint or fear of subsequent punishment" by the government). Defendants' application of CADA to Lorie's speech violates her right to free press and chills her speech because if she publishes her desired speech on the unique virtue of one man and one woman marriages and

criticizes or opposes same-sex marriages, she will be punished. Defs.' MSJ Resp. 6, 8, 20, 26-28; Stipulated Facts ¶¶ 92-97.

Defendants respond by citing *Masterpiece* for the proposition that CADA "does not prohibit a for-profit vendor from expressing its views on same-sex marriage." Defs.' MSJ Resp. 17. Yet, that is not what *Masterpiece* holds. The Colorado Court of Appeals stated in *Masterpiece* that "CADA prohibits Masterpiece from displaying or disseminating a notice . . . indicating that those engaging in same-sex marriage are unwelcome in the bakery." *Masterpiece Cakeshop*, 270 P.3d at 288. Certainly a posting stating Lorie's opposition to same-sex marriage would make a same-sex couple feel "unwelcome."  And Defendants agree. In briefing and at oral argument, Defendants consistently call views, like Lorie's, opposing same-sex marriage "offensive," "derogatory" and "discriminatory." Defs.' MSJ Resp. 8, 20; Defs.' MPI Resp. 18; Hr'g Tr. 8:10. Defense Counsel affirmed in Court that Defendants will investigate any complaint submitted against her for language she posts on her 303 Creative website. Hr'g Tr. 7:5-9:7. That investigation violates her free press rights and chills her speech. Moreover, the certainty of a probable cause finding is no mystery given Defendants' statements that Lorie's desired statement is "discriminatory language" and that views opposing same sex marriage are "offensive" and "derogatory." Defs.' MSJ Resp. 8, 20; Defs.' MPI Resp. 18; Hr'g Tr.8:10.

Defendants' back-up position is that Lorie can post a disclaimer, disassociating herself from her customers' viewpoints. Defs.' MSJ Resp. 17. Federal courts have ruled that disclaimers do not remedy the free speech violation, particularly when pure speech is involved. *Pac. Gas*, 475 U.S. at 15 n. 11 ("The presence of a disclaimer . . . does not suffice to eliminate" the burden on speech). *PruneYard*, which the Defendants cite, did not rule differently. *Pruneyard Shopping*

*Center v. Robins*, 447 U.S. 74 (1980). Like *Rumsfeld*, *PruneYard* involved the mere requirement that a shopping center provide an empty space for others' expression. As the Supreme Court observed in *Pacific Gas* and *Hurley*, the shopping center was not required to speak, so compelled speech and freedom of press were not at issue, as they are in Lorie's case. *Pac. Gas*, 475 U.S. at 12 ("Notably absent from *PruneYard* was any concern that access to this area might affect the shopping center owner's exercise of his own right to speak: the owner did not even allege that he objected to the content of the pamphlets . . . ."); *Hurley*, 515 U.S. at 580 (stating same). Defendants do not ask Lorie to provide an empty space for same-sex couples to speak their own message about marriage, they demand that Lorie create the speech herself, an invasion of the mind that cannot be remedied by a disclaimer.

Moreover, since any disclaimer Lorie could post would necessarily look much like the statement she desires to post on her website now, Defendants have already precluded that posting. Stipulated Facts ¶¶ 85-92, Ex. B (desired statement). Defendants have already stated that this "disclaimer" constitutes "discriminatory language" that will be investigated as soon as they receive a Complaint. Hr'g Tr. 8:10. Lorie is left unable to exercise her free press rights.

### C.     Defendants' application of CADA violates Lorie's rights to free association.

Defendants suggest that Lorie's free association rights are not violated because she can exercise that freedom in other contexts—for example, the church she attends or the groups in which she seeks membership. Defs.' MSJ Resp. 18. That is cold comfort. Failure to violate Lorie's free association rights in all respects does not justify the violation of her rights in one respect. Otherwise, *Dale* would have been decided differently. *Dale*, 530 U.S. at 656 (holding that a public accommodations law as applied to the Boy Scouts to force them to retain a homosexual assistant

scoutmaster, "runs afoul of the Scouts' freedom of expressive association" by "significantly affect[ing] its expression"). The First Amendment guarantees the "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984). This joint "advancement of beliefs and ideas is an inseparable aspect of . . . freedom of speech" regardless of "whether the beliefs sought to be advanced . . . pertain to political, economic, religious or cultural matters." *NAACP v. Alabama*, 357 U.S. 449, 460 (1958). Banning Lorie from declining to collaborate with those expressing different philosophies of marriage, profoundly impacts Lorie's speech and violates her free association rights. Letting her attend the church of her choice does not remedy that harm.

**D.  Defendants' application of CADA is content-based and discriminates on the basis of viewpoint; grants the Defendants' unbridled discretion to censor speech; creates an unconstitutional condition; and as to the Banned Speech Provision is overbroad. Defendants do not dispute any of these violations.**

Defendants have not responded to the merits of several of Plaintiffs' speech claims, thus conceding them. These include Lorie's challenges that, as applied, the Compelled Speech and Banned Speech provisions are unconstitutionally content and viewpoint based and grant the Defendants' unbridled discretion to censor speech; that, as applied, the Compelled Speech Provision and the Banned Speech Provision violate the unconstitutional conditions doctrine; and finally that the Banned Speech Provision is facially overbroad. Plaintiffs refer the Court to prior briefing on all three points. Pls.' MSJ Br. 41-47 (content and viewpoint discrimination, unbridled discretion); 53-55 (unconstitutional conditions); 47-49, 62-65 (overbreadth, vagueness, unbridled discretion). However, Defendants' most recent briefing further confirms the validity of all three claims.

As to content and viewpoint discrimination, Defendants leave no doubt that they interpret CADA to prohibit Lorie from declining to create custom wedding websites for same-sex marriages based on the objectionable message they convey, Defs.' MSJ Resp. 6, 8, 20, 27-28 (collectively describing Lorie's intent to decline such messages as discrimination that violates CADA), while they allow other expressive business owners to decline messages opposing same-sex marriage, labeling such messages "derogatory, offensive messages." Defs.' MSJ Resp. 20. This accords with Defendants' position in regard to the complaints against Masterpiece, Azucar Bakery, Gateaux, Ltd., and Le Bakery Sensual and demonstrates their exercise of unbridled discretion. Ex. C-L (Commission findings and orders regarding the messages declined by these four cake artists).

Defendants' statements confirm that Lorie must give up her free speech and free exercise rights to enter the marketplace, thus proving her unconstitutional conditions claim. *See Lefkowitz v. Cunningham*, 431 U.S. 801, 807-08 (1977) (explaining the unconstitutional conditions doctrine applies to forfeiting "one constitutionally protected right as the price for exercising another"); *Bourgeois v. Peters*, 387 F.3d 1303, 1324 (11th Cir. 2004) (explaining that it is "an especially malignant unconstitutional condition" to require citizens "to surrender a constitutional right . . . to exercise . . . other fundamental rights").

Finally, Defendants' broad construction of the language in the Banned Speech Provision emphasizes its expansive breadth. Defs.' MSJ Resp. 22. Indeed, Defense Counsel confirmed that any citizen can file a subjective complaint based on any language an expressive business owner posts online and the Defendants will investigate it on a mandatory basis. Hr'g Tr. 8:4-9:7; Pls.' MSJ Br. Section II.E; *see also supra* Section II.G.

**E.      Defendants' application of CADA violates Lorie's right to free exercise of her religion.**

While not separately addressed, Defendants appear to challenge Plaintiffs' free exercise claims in the course of their standing discussion, asserting that the law is neutral and generally applicable. Defs.' MSJ Resp. 5-9.

The law is neither neutral nor generally applicable. It contains categorical exemptions, for any "church, synagogue, mosque, or other place that is principally used for religious purposes", Colo. Rev. Stat. § 24-34-601(1), undermining its neutrality and general applicability, and Defendants enforce it in such a way that individualized assessments are rampant. *See* Pls.' MSJ Br. 55-60. These individualized assessments permit expressive businesses to decline unwanted messages for secular reasons, but not for religious reasons. This is evident, for example, in the Defendants' dispositions of complaints against the four bakeries who each declined to create cakes that conveyed unwanted messages about same-sex marriage. Ex. C-L (Commission findings and orders related to the complaints filed against Azucar Bakery, Gateaux, Ltd., Le Bakery Sensual, and Masterpiece). The Division found no probable cause for discrimination as to the three bakeries who declined to create cakes conveying messages opposing same-sex marriage based on secular objections to the messages. Ex. G-L. The Commission affirmed those decisions and the Defendants stand by them here. *Id.*; Defs.' MSJ Resp. 6, 20 (labeling messages critical of same-sex marriage "derogatory" and "offensive").Yet, the Division found probable cause for discrimination against similarly situated cake artist, Jack Phillips, who declined to create a custom wedding cake because it conveyed a message promoting same-sex marriage in violation of his religious beliefs. Ex. C-F. They promise the same decision against Lorie. Defs.' MSJ Resp. 6, 8, 20, 26-28 (confirming that CADA requires Lorie to create custom wedding websites

celebrating same-sex weddings despite her religious objection to the message those websites convey). This leaves Lorie unable to exercise her religious beliefs, which compel her to speak publicly about God's design for marriage. Stipulated Facts ¶¶ 71-79, 92-97.

Defendants try to undermine Lorie's free exercise claim by accusing her of using religion to justify discrimination. Defs.' MSJ Resp. 6-7, 27-28. But Lorie's case is about speaker autonomy, not discrimination, as Defendants suggest. As the Supreme Court explained in *Hurley*, when a public accommodations law is "applied to expressive activity . . . simply to require speakers to modify the content of their expression" it unconstitutionally infringes "speaker[] autonomy." *Hurley*, 515 U.S. at 578. That is not discrimination, it is preserving "the sphere of intellect and spirit which it is the purpose of the First Amendment to our Constitution to reserve from all official control." *Barnette*, 319 U.S. at 642.

Moreover, the cases Defendants rely on have no application to Lorie's case. In *Duarte*, *U.S. Jaycees*, and *Hishon,* the Supreme Court's rulings rested on findings that the public accommodations laws at issue had no effect whatsoever on the objectors' speech. *See, e.g.*, *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 548 (1987) (explaining that the association's "ability to carry out [its] [expressive] purposes" was not affected); *U.S. Jaycees*, 468 U.S. at 627  (confirming that the association could "exclude individuals with ideologies or philosophies different from" its own); *Hishon v. King & Spalding*, 467 U.S. 69, 78 (1984) (noting the firm could not show any way in which its speech "would be inhibited"). Here in contrast, Lorie's desired speech is precluded and coerced by Defendants' application of CADA. Stipulated Facts ¶¶ 92-97.

Moreover, Defendants' citations to *Lee* and *Bob Jones* do not help them. These cases did not consider free exercise claims involving speech, and each case presented a fact specific analysis that is distinguishable from Lorie's case. *Lee* recognized a burden on free exercise rights, but found that there was simply no less restrictive alternative to the unconditional payment of taxes. *United States v. Lee*, 455 U.S. 252 (1982). When considered by the Supreme Court in *Hobby Lobby*, the Court limited *Lee* to its tax related facts. *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2784 (2014). Similarly, *Bob Jones* considered a university's tax exempt status and claims of race discrimination in education. *Bob Jones Univ. v. United States*, 461 U.S. 574 (1983). Its analysis, necessarily, focused on the distinct history of systematic discrimination based on race in this country, *id.*, a history that has no application to Lorie's case as she is "willing to work with all people regardless of classifications such as race, creed, sexual orientation, and gender." Stipulated Facts. ¶ 64.

**F.    Defendants' application of CADA violates the equal protection clause.**

Defendants' entire equal protection claim response comes down to an argument that the Court should not consider the dispositions in Azucar Bakery, Gateaux, Ltd, or Le Bakery Sensual, Inc., because they are administrative determinations. Defs.' MSJ Resp. 19; Ex. J-L (No probable cause findings). Defendants omit the fact that the Commission affirmed the findings on appeal in all three cases, issuing "final agency order[s]". Ex. G-I ("Commission's Final Agency Order[s]" affirming the no probable cause findings in all three cases). Moreover, Defendants do not renounce the determinations of those complaints. Instead, they defend them and repeatedly affirm their interpretation of CADA. Defs.' MSJ Resp. 8 (stating that the three bakeries "refused to create offensive messages on cakes"), 20 (stating that the desired cakes "contain[ed] derogatory,

offensive messages"); Defs.' MPI Resp. 18 ("[T]he three bakeries refused to make a cake for a patron . . . because of the derogatory, offensive message, not because of the patron's creed."); Hr'g Tr. 8:10 (calling Lorie's desired statement for her 303 Creative's website "discriminatory language"). According to the Defendants, CADA prohibits expressive business owners from declining to create messages promoting same-sex marriage but permits expressive business owners to decline to create messages opposing same-sex marriage because those messages are offensive and derogatory. Defs.' MSJ Resp. 8, 20. Offensiveness has never been a permissible standard for the regulation of speech. *Texas v. Johnson*, 491 U.S. 397, 414 (1989) ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."). Moreover, Defendants' repeated affirmation of the results in *Masterpiece Cakeshop* versus the determinations in Azucar Bakery, Gateaux, Ltd, and Le Bakery Sensual, Inc. prove the violation of the equal protection clause. Defendants have treated expressive businesses with Lorie's views on marriage differently than similarly-situated owners in the past and they promise to do so in the future.

Defendants also suggest that Plaintiffs cannot prevail in an equal protection claim because Plaintiffs do not know how the Division has disposed of every complaint it has received. Equal Protection does not require the Defendants to apply CADA unconstitutionally in every circumstance. It suffices that Defendants apply it unconstitutionally to Lorie, particularly since she raises an as applied challenge. Defendants have confirmed their unconstitutional application here. This is only emphasized by their explanation of *Masterpiece*—that to "refuse to make a wedding cake for a same-sex couple" is a refusal "because of their sexual orientation" but to

refuse to make a cake opposing same-sex marriage is permissible because such a cake is "derogatory, offensive" expression. Defs.' MSJ Resp. 19-20. There is no question that Defendants enforce CADA in violation of Lorie's equal protection rights.

G.     **Defendants' application of CADA violates the due process clause, both procedurally and substantively.**

CADA is unconstitutionally vague because it fails to define "directly," "indirectly," "unwelcome," "objectionable," "unacceptable," and "undesirable" leaving Lorie and anyone subject to the statute unable to identify what activity is prohibited. Colo. Rev. Stat. § 24-34-601(2)(a). Moreover, Defendants have issued no guidance interpreting the statute despite their authority to do so. The dictionary definitions Defendants proffer highlight CADA's vagueness rather than fixing it. Defs.' MSJ Resp. 22. "Not welcome" is no more descriptive than "unwelcome" for example. *Id.* And citing "unwelcome" to define "unacceptable" or "undesirable" to define "objectionable" is unhelpful. *Id.*

The problem is that each of these terms is subjective. What is "unacceptable" to one person will be entirely acceptable to another, and what might make one person feel "unwelcome" may have the opposite impact on another. And none of this sheds any light on what activity is prohibited and what is allowed. This leaves Defendants as the exclusive authority on these issues and even they cannot articulate what these terms mean. Defs.' MSJ Resp. 22. When questioned by this Court, Defense Counsel confirmed that the Division's investigation (the harm Lorie seeks to avoid by chilling her speech) is mandatory upon the filing of a complaint by any individual who subjectively believes that a "posting [contains] discriminatory language." Hr'g Tr. 7:5-9:7. Defendants are thus left to make a probable cause determination based solely on their subjective views of which statements are "unacceptable," "unwelcome," "objectionable," and "undesirable,"

and which are not. This sort of unbridled discretion is precisely what the Due Process Clause prohibits. And we have seen that unbridled discretion in practice as Defendants have reached incongruous conclusions in reviewing complaints against the four similarly situated bakeries who all declined to create cakes because of the messages requested, not the status of the patrons requesting them. Ex. C-L.

Defendants' only response to Plaintiffs' substantive due process claim is the bare assertion that there is no fundamental right to carry on a business. Defs.' MSJ Resp. 23. Unsurprisingly, Defendants make that assertion and cite nothing in support because their argument contradicts Supreme Court precedent. "[T]he right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of [due process]," as recognized by the Supreme Court. *Greene v. McElroy*, 360 U.S. 474, 492 (1959); *see also Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 572 (1972) ("Without doubt," the Fourteenth Amendment protects a person's freedom "to engage in any of the common occupations of life . . . [and] to worship God according to the dictates of [her] own conscience."). This is essential to an individual's participation and realization of their "self-definition in the political, civic, and economic life of our larger community." *Hobby Lobby*, 134 S. Ct. at 2785 (Kennedy, J., concurring).

Defendants' application of CADA to Lorie bars her from full participation in the "economic life" of the community by prohibiting her from pursuing her entrepreneurial dream, in accordance with her religious beliefs, to promote marriages between one man and one woman through the creation of custom wedding websites. Stipulated Facts. ¶¶ 42, 71-79. Accordingly, Defendants' actions must satisfy strict scrutiny, which they do not. *See supra* Section II.H.

Because Defendants violate Lorie's fundamental right in this regard, the "shock the conscience" standard cited by Defendants does not apply. *Seegmiller v. LaVerkin City*, 528 F.3d 762, 768 (10th Cir. 2008) (explaining that laws that infringe fundamental rights must satisfy strict scrutiny, not the "shock the conscience" standard); *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1203 (10th Cir. 2003) ("While the 'shocks the conscience' standard applies to tortious conduct challenged under the Fourteenth Amendment, it does not . . . eliminate more categorical protection for 'fundamental rights'.") (internal citations omitted).

Defendants do not dispute, thereby conceding, that their application of CADA infringes Lorie's personal autonomy and dignity. *See* V. Compl. ¶¶ 372-399 (Pls.' Fifth Cause of Action); Pls.' MSJ Br. Section II.F. Indeed, Defendants' latest round of briefing only renews their disparagement of Lorie's religious views as "discriminatory" and "offensive," and confirms that they will require her to promote a view of marriage that violates her beliefs, bar her public message on marriage, and exclude her from the marketplace based on her religious beliefs. Defs.' MSJ Resp. 6, 8, 11, 17, 20, 26-28. This stands in stark violation of the personal dignity and autonomy protections recognized by the Supreme Court in *Obergefell v. Hodges.* 135 S. Ct. 2584, 2597 (2015).

### H.   Defendants' application of CADA cannot survive strict scrutiny.

Since Defendants' application of CADA to Lorie violates her fundamental constitutional rights, it must survive strict scrutiny. This test is "the most demanding test known to constitutional law," *City of Boerne v. Flores*, 521 U.S. 507, 509 (1997), and "it is the rare case in which . . . a law survives strict scrutiny," *Burson v. Freeman*, 504 U.S. 191, 211 (1992). As the Supreme Court instructed: "The state must specifically identify an actual problem in need of solving, and the

curtailment of free speech must be actually necessary to the solution." *Brown*, 564 U.S. at 799 (internal citations omitted).

To overcome strict scrutiny, Defendants bear the burden of showing that their application of CADA to Lorie is justified by a compelling state interest and is narrowly tailored to serve that interest. They have done neither. Defendants do not even attempt to establish narrow tailoring, thereby conceding that point. Defendants' compelling interest statement is so broad that they might as well have conceded that point as well.

Defendants announce a compelling interest in "erasing discrimination against its citizens," "eradicating discriminatory behaviors," and "eliminating discrimination." Defs.' MSJ Resp. 6, 20, 26. But such broad-based interests do not satisfy the requirements of strict scrutiny. *Dale*, 530 U.S. at 656, 659 (holding that despite the goal of "prevent[ing] discrimination" that justifies the enactment of public accommodations laws, "state interests embodied in . . . [the] public accommodations law do[es] not justify . . . intrusion on the . . . rights to freedom of expressive association."); *Hurley*, 515 U.S. at 572-73 (same in regards to freedom of speech). As the Supreme Court noted in *Dale*, public accommodations laws, "originally enacted to prevent discrimination" by those providing basic necessities like food, lodging, and transportation, "have expanded to cover more places" over time. *Dale*, 530 U.S. at 656. The ever-increasing expansion of these laws increases the likelihood of "conflict between state public accommodation laws and . . . First Amendment rights." *Id.* at 657. When those conflicts occur, First Amendment rights prevail. *See e.g. Id.*; *see also supra* Section II.A. (collecting cases).

Moreover, the compelling interest test demands a particularized assessment requiring Defendants to show that the interest is specific, not a "broadly formulated interest[]," and

specifically served by squelching and coercing "the particular claimants" speech. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 420-21 (2006). Defendants have not shown this, particularly in light of *Hurley*'s holding that applying public accommodations laws to expressive activity does not serve a valid—let alone compelling—state interest. *Hurley*, 515 U.S. at 578-79 (stating that if the purpose of "applying the state law to expressive conduct" is to coerce government-favored messages, then the objective is "decidedly fatal"). This is further cemented by the wide availability of expressive businesses nationwide, many of which market their services specifically for same-sex weddings, and all of which undercuts Defendants' unsubstantiated claim of widespread discrimination. App. 003-010. Coercing and squelching Lorie's individual speech only violates her constitutional rights. It does not serve any compelling state interest.

### III.  Injunctive Relief Is Proper And Necessary To Prevent Further Violation Of Plaintiffs' Rights: Plaintiff Will Suffer Irreparable Harm Absent A Permanent Injunction And Both the Balance Of Equities And The Public Interest Favor An Injunction.

Defendants urge the Court to deny Plaintiffs injunctive relief, but rely exclusively on cases that either found no First Amendment violation or where no First Amendment challenge was brought in the first place. These cases also all deal with preliminary, rather than permanent, injunction standards. Defs.' MSJ Resp. 25-26; *Heideman v. S. Salt Lake City*, 348 F.3d 1182 (10th Cir. 2003) (denying nude dancers a disfavored preliminary injunction because the dancers failed to show a likelihood of success on their First Amendment challenge); *Prairie Band of Potawatomi Indians v. Pierce (Prairie Band I)*, 253 F.3d 1234, 1250 (10th Cir. 2001) (affirming the district court's finding of "irreparable harm" and granting of a disfavored preliminary injunction); *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250 (10th Cir. 2003) (remanded, but the court

found a significant risk of irreparable harm absent a preliminary injunction stopping the development of a golf course that threatened bald eagle habitat); *Faircloth v. Colo. Dep't of Corr.*, 2016 WL 234356 (2016) (denying a pro se inmate a disfavored preliminary injunction related to limits on his outgoing mail costs because he could not prevail on either the merits or irreparable harm prongs of the test); *Conn. v. Mass.*, 282 U.S. 660 (1931) (concerning a preliminary injunction related to water rights between the states). These cases thus have no application to Lorie's case.

A permanent injunction is proper where the court finds "(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Prairie Band Potawatomi Nation v. Wagnon (Prairie Band II)*, 476 F.3d 818, 822 (10th Cir. 2007). This case meets each of those requirements.

Lorie succeeds on the merits of her claims. *See supra.* She currently suffers irreparable harm in the chilling of her constitutional rights and that harm will continue absent an injunction. *Verlo v. Martinez*, 820 F.3d 1113, 1126 (10th Cir. 2016) ("[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.") (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). The balance of equities always lie in favor of vindicating First Amendment rights. *Am. Civil Liberties Union v. Johnson*, 194 F.3d 1149, 1163 (10th Cir. 1999) ("The threatened injury to Plaintiffs' constitutionally protected speech outweighs whatever damage . . . may [be] cause[d] [by] Defendants' inability to enforce what appears to be an unconstitutional statute."); *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville*, 274 F.3d 377, 400 (6th Cir. 2001) ("[N]o substantial harm to others can be said to

inhere in [the] enjoinment" of Defendants' unequal application of the law.). And "it is always in the public interest to prevent the violation of a party's constitutional rights." *Verlo*, 820 F.3d at 1132; *see also Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1237 (10th Cir. 2005) ("Vindicating First Amendment freedoms is clearly in the public interest."). After all, the vindication of constitutional rights "protect[s] the free expression of . . . millions." *Johnson*, 194 F.3d at 1163.

**IV.    The Court Should Not Abstain From Lorie's Claims.**

Defendants repeat their request for abstention based on a pending petition for certiorari in a case involving a different expressive business owner. Plaintiffs have already responded to Defendants' arguments in detail and refer the Court to that briefing. Pls.' MTD Resp. 15-21. Suffice to say that abstention by all its names is restricted to cases involving the *same litigants* in state and federal court. *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013) (so limiting *Younger* abstention); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (limiting *Rooker/Feldman* abstention); *Guttman v. Khalsa*, 446 F.3d 1027, 1031-32 (10th Cir. 2006) (same); *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994) (limiting *Colorado River* abstention); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983) (same). Lorie is not a party to *any* state court proceeding. Therefore, to hold her "constitutional rights hostage to the outcome and timing" of another person's state court proceeding would enact a grave injustice, *Phelps v. Hamilton (Phelps I)*, 59 F.3d 1058, 1069 (10th Cir. 1995), and ignore the unique task of the federal courts to protect individual constitutional rights from state interference. *Mitchum*, 407 U.S. at 242. In the alternative, Defendants also urge this Court to take extraordinary action to stay Plaintiffs' case while Defendants wait and see if the Supreme Court

grants the petition for certiorari in *Masterpiece*. Defs.' MSJ Resp. 29-32. Plaintiffs responded in detail to this request as well when it was made at the motion to dismiss stage. Pls.' MTD Resp. 27-29. Defendants have not responded to that briefing. Instead, they reiterate their request that this Court perpetuate the irreparable harm Lorie suffers while they wait to see if the Supreme Court grants certiorari in an unrelated case. The Supreme Court receives 7,000-8,000 petitions for certiorari each term. It grants review in about 80 cases. *Id.* The statistical chance of the Supreme Court taking *Masterpiece* is 0.1% versus the 100% certainty that Lorie's irreparable harm will continue if this Court stays the case.

Moreover, a grant of certiorari in *Masterpiece* would not change this Court's "virtually unflagging" obligation to hear Lorie's case. *Sprint Commc'ns*, 134 S. Ct. at 591. To the extent a Supreme Court decision in *Masterpiece* might inform this Court's ruling, it can be considered if and when the Supreme Court rules on the merits of the *Masterpiece* case. This does not warrant a stay.

## CONCLUSION

Lorie's case necessitates immediate action from the federal courts to free her chilled speech from the speech-coercing and speech-squelching power exercised by the State of Colorado. A permanent injunction is necessary to preserve Lorie's First and Fourteenth Amendment rights. Plaintiffs respectfully request that this Court issue one as soon as possible, with the other relief requested in Plaintiffs' Prayer for Relief.

Respectfully submitted this 8th day of March, 2017.

s/ Jeremy D. Tedesco

Jeremy D. Tedesco (Arizona Bar No. 023497)
Jonathan A. Scruggs (Arizona Bar No. 030505)
Samuel D. Green (Arizona Bar No. 032586)
Katherine L. Anderson (Arizona Bar No. 033104)
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 (facsimile)
jtedesco@ADFlegal.org
jscruggs@ADFlegal.org
sgreen@ADFlegal.org
kanderson@ADFlegal.org

David A. Cortman (Georgia Bar No. 188810)
Rory T. Gray (Georgia Bar No. 880715)
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Road, NE, Suite D-1100
Lawrenceville, GA 30043
(770) 339-0774
(770) 339-6744 (facsimile)
dcortman@ADFlegal.org
rgray@ADFlegal.org
Attorneys for Plaintiffs

Michael L. Francisco (Colorado Bar No. 39111)
MRD Law
3301 West Clyde Place
Denver, CO 80211
(303) 325-7843
(303) 723-8679 (facsimile)
MLF@mrdlaw.com

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2017, the foregoing was filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Jack D. Patten, III
Assistant Attorney General
Civil Litigation and Employment
Law Section
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: (720) 508-6592
Fax: (720) 508-6032
jack.patten@coag.gov

Vincent E. Morscher
Deputy Attorney General
Civil Litigation and Employment Law Section
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: (720) 508-6588
Fax: (720) 508-6032
vincent.morscher@coag.gov

Eric Maxfield
First Assistant Attorney General
Colorado Department of Law
Office of the Colorado Attorney General
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 8th Floor
Business & Licensing Section
Denver, Colorado 80203
720-508-6404 Direct
720-508-6000 Main
eric.maxfield@coag.gov

Leanne B. De Vos
Senior Assistant Attorney General
Office of the Colorado Attorney General
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 8th Floor
Business & Licensing Section
Denver, Colorado 80203
720-508-6411 Direct
720-508-6000 Main
Fax: (720) 508-6037
Leanne.DeVos@coag.gov

Attorneys for Defendants

*s/ Jeremy D. Tedesco*

Jeremy D. Tedesco (Arizona Bar No. 023497)
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 (facsimile)
jtedesco@ADFlegal.org

38