IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 16-cv-02372-MSK-CBS

303 CREATIVE LLC, a limited liability company;
LORIE SMITH,

      Plaintiffs,

v.

AUBREY ELENIS, Director of the Colorado Civil Rights Division, in her official capacity;
ANTHONY ARAGON, member of the Colorado Civil Rights Commission in his official capacity;
ULYSSES J. CHANEY, member of the Colorado Civil Rights Commission in his official capacity;
MIGUEL RENE ELIAS, "Michael" member of the Colorado Civil Rights Commission in his official capacity;
CAROL FABRIZIO, member of the Colorado Civil Rights Commission in her official capacity;
HEIDI HESS, member of the Colorado Civil Rights Commission in her official capacity;
RITA LEWIS, member of the Colorado Civil Rights Commission in her official capacity;
JESSICA POCOCK, member of the Colorado Civil Rights Commission in her official capacity;
CYNTHIA H. COFFMAN, Colorado Attorney General, in her official capacity,

      Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS and DENYING MOTION FOR PRELIMINARY INJUNCTION and MOTION FOR SUMMARY JUDGMENT, WITH LEAVE TO RENEW**

---

THIS MATTER comes before the Court on the Plaintiffs' Motion for Preliminary Injunction **(#6)**, the Defendants' Response **(#38)**, and the Plaintiffs' Reply **(#40)**; the Defendants' Motion to Dismiss **(#37)**, the Plaintiffs' Response **(#43)**, and the Defendants' Reply **(#45)**; and the Plaintiffs' Motion for Summary Judgment **(#48)**, the Defendants' Response **(#50)**, and the Plaintiffs' Reply **(#51)**.

# PROCEDURAL HISTORY

Plaintiffs 303 Creative LLC ("303") and Lorie Smith filed this action challenging the constitutionality of two clauses of Colorado Revised Statues § 24-34-601(2) ("Public Accommodation Statute"). The two clauses at issue are as follows:

The first clause ("Accommodation Clause") states,

It is a discriminatory practice and unlawful for a person, directly or indirectly, to refuse, withhold from, or deny to an individual or a group, because of disability, race, creed, color, sex, sexual orientation, marital status, national origin, or ancestry, the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation

The second clause ("Communication Clause") states,

It is a discriminatory practice and unlawful for a person … directly or indirectly, to publish, circulate, issue, display, post, or mail any written, electronic, or printed communication, notice, or advertisement that indicates that the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation will be refused, withheld from, or denied an individual or that an individual's patronage or presence at a place of public accommodation is unwelcome, objectionable, unacceptable, or undesirable because of disability, race, creed, color, sex, sexual orientation, marital status, national origin, or ancestry.

Colo. Rev. Stat. § 24-34-601(2)(a).

The Complaint actually asserts five claims challenging the validity of the Communication Clause under several provisions of the United States Constitution: the (1) Free Speech Clause, (2) Free Press Clause, and (3) Free Exercise Clause of the First Amendment, and (4) the Equal Protection Clause and (5) Due Process Clause of the Fourteenth Amendment. The Complaint also asserts four claims challenging the validity of the Accommodation Clause under the (1) Free Speech Clause and (2) Free Exercise Clause of the First Amendment, and the (3) Equal Protection Clause and (4) Due Process Clause of the Fourteenth Amendment.

Simultaneously with the Complaint, the Plaintiffs sought a preliminary injunction **(#6)** to restrain the Defendants from enforcing either statutory provision against them. The Defendants

then moved to dismiss the Plaintiffs' claims **(#37)**. At a hearing held on January 11, 2017, the parties agreed that (1) the Motion for Preliminary Injunction should be determined in conjunction with a determination on the merits; and (2) there were no disputed issues of material fact, no need for discovery, and this matter should be resolved through summary judgment. Consequently, the Plaintiffs filed their Motion for Summary Judgment **(#48)**, and the parties filed stipulated facts **(#49)**.

However, after briefing was completed on the Plaintiffs' Motion for Summary Judgment, the United States Supreme Court granted certiorari in a case involving similar facts and legal issues and raising issues of the constitutionality of the Public Accommodation Statute. In *Craig v. Masterpiece Cakeshop, Inc.*, 370 P.3d 272 (Colo. Ct. App. 2015), *cert* granted, *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 85 U.S.L.W. 3593 (U.S. June 26, 2017) (No. 16-111), a baker, citing religious objections, declined to bake a wedding cake for a same-sex couple and was prosecuted under the Public Accommodation Statute. The issues to be determined by the Supreme Court in that case are whether compelling the baker to provide services for a same-sex wedding under the Public Accommodation Statute violates the Free Speech Clause or Free Exercise Clause of the First Amendment, which are essentially identical to two of the issues presented in this action.

## UNDISPUTED FACTS

The facts in this matter are not in dispute. The Court offers a brief summary of the pertinent facts here and elaborates as necessary in its analysis.

303 is a Colorado limited liability company that is wholly owned and operated by Ms. Smith. Defendant Aubrey Elenis is the Director of the Colorado Civil Rights Division. Defendants Anthony Aragon, Ulysses J. Chaney, Miguel "Michael" Rene Elias, Carol Fabrizio,

3

Heidi Hess, Rita Lewis, and Jessica Pocock are members of the Colorado Civil Rights Commission ("Commission"). Defendant Cynthia H. Coffman is the Colorado Attorney General.

303 offers services to the general public, including graphic design, website design, social media management and consultation, marketing, branding strategy, and website management training. Ms. Smith provides these services for 303 without the assistance of employees or contractors.

Ms. Smith describes herself as a Christian and states that her religious beliefs are central to her identity. She believes that she must use her talents in a manner that glorifies God and that she must use her creative talents in operating 303 in a way that she believes will honor and please him.

Consistent with her beliefs, Ms. Smith limits the scope of services she is willing to provide to 303's customers. She is willing to work with all people regardless of their race, religion, gender, and sexual orientation, but she "will decline any request to design, create, or promote content that: contradicts biblical truth; demeans or disparages others; promotes sexual immorality; supports the destruction of unborn children; incites violence; or promotes any conception of marriage other than marriage between one man and one woman."

Although 303 does not currently do so, Ms. Smith intends to expand its services by offering to build websites for couples who plan to marry. These websites would be intended to keep a couple's friends and family informed about the upcoming wedding. Ms. Smith desires to use the websites to "affect the current cultural narrative regarding marriage". Because she believes that marriage is ordained of God and should only be between one man and one woman, she intends to deny any request a same-sex couple may make for a wedding website.

Ms. Smith has prepared a Proposed Statement that she intends to post on 303's website to explain 303's policies with regard to wedding websites. It reads:

> I love weddings.
>
> Each wedding is a story in itself, the story of a couple and their special love for each other.
>
> I have the privilege of telling the story of your love and commitment by designing a stunning website that promotes your special day and communicates a unique story about your wedding - from the tale of the engagement, to the excitement of the wedding day, to the beautiful life you are building together.
>
> I firmly believe that God is calling me to this work. Why? I am personally convicted that He wants me - during these uncertain times for those who believe in biblical marriage - to shine His light and not stay silent. He is calling me to stand up for my faith, to explain His true story about marriage, and to use the talents and business He gave me to publicly proclaim and celebrate His design for marriage as a life-long union between one man and one woman.
>
> These same religious convictions that motivate me also prevent me from creating websites promoting and celebrating ideas or messages that violate my beliefs. So I will not be able to create websites for same-sex marriages or any other marriage that is not between one man and one woman. Doing that would compromise my Christian witness and tell a story about marriage that contradicts God's true story of marriage-the very story He is calling me to promote.

According to Ms. Smith, the only reason why 303 has not begun offering to build wedding websites and she has not posted the Proposed Statement is that doing so would violate the Accommodation and Communication Clauses of the Public Accommodation Statute and expose her and 303 to penalties and civil liability.

## ANALYSIS

### A. Standing

The Defendants argue under Federal Rule of Civil Procedure 12(b)(1) in their Motion to Dismiss that the Plaintiffs lack standing to challenge the Public Accommodation Statute and thus their claims must be dismissed.

Standing is a component of subject-matter jurisdiction and may be challenged in a motion to dismiss under Fed. R. Civ. P. 12(b)(1). The party asserting the existence of subject matter jurisdiction (here the Plaintiffs) bears the burden of proving such jurisdiction exists, including the burden of demonstrating standing. *Hydro Res., Inc. v. E.P.A.,* 608 F.3d 1131, 1144 (10th Cir. 2010); *Montoya v. Chao,* 296 F.3d 952, 955 (10th Cir.2002).

The jurisdiction of federal courts is limited to actual cases or controversies. U.S. Const. art. III, § 2 cl.1. To have a cognizable case or controversy, a plaintiff must have standing to sue. *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 543 (10th Cir. 2016). Whether a plaintiff has standing is determined as of the date that he or she files the action. *Nova Health Sys*, 416 F.3d at 1154. When a plaintiff asserts multiple claims, he or she may have standing as to some claims but not to others, and under such circumstances, the claims for which the plaintiff lacks standing must be dismissed. *See Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007).

To establish standing, the Plaintiffs must demonstrate three elements. First, the Plaintiffs must have suffered an "injury in fact". Such injury must be concrete, particularized, and actual or imminent but not conjectural or hypothetical. Second, the injury must be fairly traceable to the challenged actions of the defendant. Finally, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Bronson*, 500 F.3d at 1106 (*citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000)).

Working backwards through the elements listed above, the traceability and redressability elements can be addressed summarily. The Defendants claim that any injury to the Plaintiffs is not traceable to them, and that the Plaintiffs' injuries are not redressable because, even if the Court were to rule in the Plaintiffs' favor, private parties could bring an independent civil action against them for violations of the Public Accommodation Statute.

An injury in fact is fairly traceable to a defendant if the defendant is charged with the responsibility to enforce the statute. *See Nova Health Sys.*, 416 F.3d at 1158. Because it is undisputed that the Commission is charged with the responsibility to enforce the Public Accommodation Statute, any injury is traceable to it. The Court declines to address whether every Defendant is charged with enforcement of the statute.

Redressability concerns whether a court is empowered to redress an injury, not whether the lawsuit would result in an outcome that redresses every injury. If a named defendant has the authority to enforce a statute, a plaintiff's injury caused by enforcement of the statute is redressable even if a private person could also seek to enforce the statute through a civil lawsuit. *Consumer Data Indus. Ass'n v. King*, 678 F.3d 898, 905 (10th Cir. 2012). Again, because the Commission is charged with enforcing the statute, and is named as a defendant, it does not matter that a private person could also seek to enforce the statute. The Court can redress the injury traceable to enforcement of the statute by the governmental entities and actors.

The final standing element is whether the Plaintiffs have suffered an injury in fact. The Defendants argue that the Plaintiffs will not suffer any injury until they publically offer to build wedding websites, they receive a request for and then decline to build a website for a same-sex couple, the same-sex couple files a complaint against them, an administrative law judge finds that the Plaintiffs violated the Public Accommodation Statute and orders them to comply, and the Plaintiffs exhaust their state appellate remedies. The Plaintiffs respond that they are suffering two continuing constitutional injuries in so far as (1) they face a credible threat that the Defendants will enforce the Public Accommodation Statute and (2) the Public Accommodation Statue has a chilling effect on their ability to exercise their rights of free speech.

Plaintiffs are correct that it is not necessary that the Public Accommodation Statute be enforced against them in order for there to be an "injury in fact". An "injury in fact" is recognized if the Plaintiffs show that a threatened injury is certainly impending, or there is a substantial risk that a harm will occur. *Tandy v. City of Wichita,* 380 F.3d 1277, 1283 (10th Cir.2004); *see also Steffel v. Thompson*, 415 U.S. 452, 459 (1974); *Bronson v. Swensen*, 500 F.3d 1099, 1107 (10th Cir. 2007); *U.S. v. Supreme Ct. of N.M.*, 839 F.3d 888, 901 (10th Cir. 2016); *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1182 (10th Cir. 2010). For a threat of injury to equate to an injury in fact, the Plaintiffs must show that (1) they intend to engage in conduct arguably affected by a constitutional interest, but proscribed by a statute, and (2) there exists a credible threat of enforcement of the statute for their conduct. *See Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 545 (10th Cir. 2016); *see also Supreme Ct. of N.M.*, 839 F.3d at 901. For a threat of enforcement to be credible, the injury cannot rest on a "highly attenuated chain of possibilities", but rather the Plaintiffs must demonstrate that "but for" their decision not to engage in conduct proscribed by statute, there is a substantial risk the statute would be enforced against them. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410-11 (2013).

It is helpful for analytical purposes to distinguish between two actions which Plaintiffs intend but have refrained from taking due to fear that the Public Accommodation Statute will be enforced against them:

1. Publishing the Proposed Statement on 303's website.
2. Declining any request by a same-sex couple to build a wedding website.

The Communication Clause would appear to prohibit publishing the Proposed Statement because the Statement announces an intention to deny service to persons based on sexual orientation. The Accommodation Clause would appear to prohibit the second action – refusal to

8

provide services to a person because of his or her sexual orientation.[1] Thus, both intended actions would appear to be proscribed by the Public Accommodation Statute.

The next question is whether there is a credible threat that the Public Accommodation Statute will be enforced. As to publishing the Proposed Statement, once the Plaintiffs post it to their website, they arguably will have violated the Communication Clause. If any person files a formal complaint with the Commission against the Plaintiffs pursuant to Colo. Rev. Stat. §§ 24-34-306(1)(a), the Commission has no discretion to not enforce the statute. This was confirmed by its counsel during the January 11 hearing. Given the public interest in and legal disagreement that is evident in *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 16-111 (U.S. filed Jul. 22, 2016), it is not difficult to find it likely that a complaint will be filed if the Proposed Statement is posted. Because the only conditions precedent to enforcement are the posting of the Proposed Statement and the filing of a complaint, the Court finds that the Plaintiffs are subject to a credible threat of enforcement.

However, such is not the case with the Plaintiffs' intent to decline any same-sex couple's request to build wedding websites. For the Plaintiffs to violate the Accommodation Statute there are many conditions precedent to be satisfied. The Plaintiffs must offer to build wedding websites, a same-sex couple must request Plaintiffs' services, the Plaintiffs must decline, and then a complaint must be filed. This scenario is more attenuated and thus more speculative. If the Court assumes that the Plaintiffs would offer to build wedding websites, decline a request by a same-sex couple, and the unhappy customer filed a complaint, there remains the question of whether a same-sex couple would request Plaintiffs' services.

---

[1] Indeed, the Colorado Court of Appeals has determined that the refusal to provide goods or services for a same-sex wedding on religious grounds constitutes discrimination because of sexual orientation. *Masterpiece Cakeshop, Inc.*, 370 P.3d at 280-81.

The parties have submitted stipulated facts as to the number of web design companies in Denver, Colorado and in the United States, but such general information does not provide details as to how many web design companies offer wedding websites, how many websites are built for weddings, or how many same-sex couples use such services. On this evidence, the Court cannot determine the imminent likelihood that anyone, much less a same-sex couple, will request Plaintiff's services. The Plaintiffs also direct the Court to an email that Ms. Smith received on September 21, 2016, after the Complaint in this matter was filed. Ostensibly in response to a prompt from 303's website asking "If your inquiry relates to a specific event, please describe the nature of the event and its purpose", the email states: "My wedding. My name is Stewart and my fiancee is Mike. We are getting married early next year and would love some design work done for our invites (sic.), placenames(sic.), etc. We might also stretch to a website." This evidence is too imprecise, as well. Assuming that it indicates a market for Plaintiffs' services, it is not clear that Stewart and Mike are a same-sex couple (as such names can be used by members of both sexes) and it does not explicitly request website services, without which there can be no refusal by Plaintiffs. Because the possibility of enforcement based on a refusal of services is attenuated and rests on the satisfaction of multiple conditions precedent, the Court finds that the likelihood of enforcement is not credible.

Based on the record before the Court, the Plaintiffs have established an injury in fact sufficient for standing as to the intended posting of the Proposed Statement but not as to the intended denial of wedding website building services.

With regard to the speech related claims, the Plaintiffs also argue that their protected speech is currently being chilled by the threat of enforcement of the Public Accommodation

10

Statute.[2] A statute has a chilling effect on speech if it causes plaintiffs to refrain from speaking based on "an objectively justified fear of real consequences". *Brammer-Hoelter*, 602 F.3d at 1182. A plaintiff can show a chilling effect with:

> (1) evidence that in the past they have engaged in the type of speech affected by the challenged government action[3]; (2) affidavits or testimony stating a present desire, though no specific plans, to engage in such speech; and (3) a plausible claim that they presently have no intention to do so because of a credible threat that the statute will be enforced.

*Initiative & Referendum Institute*, 450 F.3d at 1089.

Because the third element of this showing requires evidence of a credible threat that the statute will be enforced, the analysis duplicates that which is provided above. The evidence is sufficient to find a credible threat of enforcement of the Public Accommodation Statute only as to the posting of the Proposed Statement. With regard to the Proposed Statement, it is undisputed that it has been prepared and the sole impediment to its posting is enforcement of the Public Accommodation Statute. This is sufficient to show a chilling effect.

In summary, the Plaintiffs have standing only to pursue claims challenging the Communication Clause that arise from publication of the Proposed Statement. They lack standing to assert claims challenging the Accommodation Clause based on the possibility that they will decline all requests by same-sex couples to build wedding websites. Accordingly, such claims are dismissed for lack of subject-matter jurisdiction.

---

[2] The Defendants argue that publishing the Proposed Statement and building websites constitutes conduct and not speech. Publishing a statement on a website is clearly speech. The Court need not resolve this issue, however, at this time. For purposes of the instant analysis, the Court will assume, without deciding, that building websites for another constitutes speech entitled to First Amendment protection.

[3] Evidence that they engaged in the type of speech affected in the past is not an indispensable element if other evidence sufficiently establishes that the Plaintiffs' fear of real consequences is not speculative.

### B. Denial of remaining motions

The parties have agreed that the case is at issue and that the Preliminary Injunction Motion and Motion for Summary Judgment should be determined together in resolution of the matters in dispute on the merits. Although the Plaintiffs have standing to challenge the Communication Clause of the Public Accommodation Statute, the Court declines to rule on the merits due to the pendency of *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 16-111 (U.S. filed Jul. 22, 2016) before the United States Supreme Court. As noted, the factual and legal similarities between *Masterpiece Cakeshop* and this case are striking. It is likely that a determination by the Supreme Court will either guide determination of or eliminate the need for resolution of the issues in this case as to whether prosecuting the Plaintiffs for publishing the Proposed Statement would violate their rights guaranteed by the Free Speech and Free Exercise Clauses of the First Amendment.

Further, the Court finds that the parties will not be prejudiced by delay in resolution of the issues in this case. The Plaintiffs are not currently offering to build wedding websites, and no evidence has been presented to show that their financial viability is threatened if they do not begin offering to do so. Thus, the Court denies the Motions for Preliminary Injunction and Summary Judgment with leave to renew after ruling by the United States Supreme Court in *Masterpiece Cakeshop*.

## **CONCLUSION**

Defendants' Motion to Dismiss **(#37)** is **GRANTED IN PART**, and **DENIED IN PART.** For the foregoing reasons, the Court **GRANTS** the motion and **DISMISSES** Plaintiffs' claims challenging the constitutional validity of the Accommodation Clause of the Public Accommodation Statute under the (1) Free Speech Clause, (2) Free Exercise Clause, (3) Equal

Protection Clause, and (4) Due Process Clause of the First and Fourteenth Amendments of the United States Constitution for lack of standing. The Motion is **DENIED** as to the Plaintiffs' five claims challenging the validity of the Communication Clause of the Public Accommodation Statute under the (1) Free Speech Clause, (2) Free Press Clause, (3) Free Exercise Clause, (4) Equal Protection Clause, and (5) Due Process Clause of the First and Fourteenth Amendments of the United States Constitution.

The Plaintiff's Motion for Preliminary Injunction and Motion for Summary Judgment **(#6)** and **(#48)** are **DENIED, WITH LEAVE TO RENEW** after a final ruling has been issued by the United States Supreme Court in *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 16-111 (U.S. filed Jul. 22, 2016). Within 14 days of issuance of such ruling, the parties will advise this Court in writing of their desire to proceed (and if so whether they desire to refile or reopen their briefing on the Motion for Summary Judgment and Preliminary Injunction) or dismiss the action.

Dated this 1st day of September, 2017

**BY THE COURT:**

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
Chief United States District Judge