# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02372-MSK-CBS

303 CREATIVE LLC, a limited liability company; and
LORIE SMITH,

      Plaintiffs,

v.

AUBREY ELENIS, et al.

      Defendants.

---

## DEFENDANTS' SUPPLEMENTAL BRIEF

---

Pursuant to the Court's orders of July 12 **(#63)** and 31 **(#65)**, 2018, Defendants submit this brief regarding the impact of the Supreme Court's opinions in *Masterpiece*, *NIFLA*, and *Janus* on Plaintiffs' case as follows:

### INTRODUCTION

Plaintiffs 303 Creative LLC and Lorie Smith filed this suit to challenge the constitutionality of the Accommodation and Communication Clauses of the Colorado Anti-Discrimination Act (CADA).  On September 1, 2017, the Court dismissed Plaintiffs' challenge to the Accommodation Clause for lack of standing. **(#52.)**  The Court stayed consideration of the Communication Clause challenge until after the Supreme Court issued its opinion in the related case of *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights*

*Commission.*  Plaintiffs filed an interlocutory appeal of the Court's Order to the Tenth Circuit, styled *303 Creative LLC v. Elenis*, No. 17-1344.  The Tenth Circuit will hear oral arguments on September 25, 2018.

On June 4, 2018, the Supreme Court issued its opinion in *Masterpiece*, 138 S. Ct. 1719 (2018).  After the Supreme Court issued its decision, Plaintiffs informed this Court that they were renewing their previously stayed Communication Clause challenge, despite their pending appeal. **(# 62.)**  While the Tenth Circuit is considering Plaintiffs' challenges to both the Accommodation and Communication Clauses, only the Communications Clause challenge is properly before this Court, and Defendants limit this supplemental brief accordingly.  However, were the Tenth Circuit to reverse this Court's dismissal of the Accommodation Clause challenge and remand, Defendants request that this Court hold a status conference to determine how best to move this case forward.  Defendants believe that if the Tenth Circuit reverses this Court's prior dismissal, further proceedings may be necessary.

With regard to Plaintiffs' remaining claims in this Court, the Communication Clause prohibits all places of public accommodation from posting a notice that the full and equal enjoyment of services will be denied to an individual because of various protected characteristics, including sexual orientation.  § 24-34-601(2)(a), C.R.S. (2014).  Plaintiffs, however, allege that

2

they intend to post a notice on their website that Plaintiff Smith "will not be able to create websites for same-sex marriages or any other marriage that is not between one man and one woman" because of her religious beliefs. **(#52 at p. 5.)** They further allege that the Communication Clause makes it illegal to publish the proposed notice and that they are only refraining from publishing the notice due to CADA. As a result, Plaintiffs argue that the Communication Clause violates several provisions of the First and Fourteenth Amendments to the United States Constitution. **(*Id.* at p. 2.).**

The Supreme Court's recent decision in *Masterpiece* undermines Plaintiffs' claims. Like this case, *Masterpiece* addressed constitutional challenges to CADA, albeit to the Accommodation Clause only. In that context, the Supreme Court made clear that a State can enforce laws that require businesses to provide their products and services—including wedding-related products and services—to all members of the public on the same terms. *Masterpiece,* 138 S. Ct. at 1127-28. *Masterpiece* also confirms that strict scrutiny should not apply in this case and that Plaintiffs have not satisfied the standards for injunctive relief. As for the recent Supreme Court decisions in *National Institute of Family and Life Advocates v. Becerra* (*NIFLA*), 138 S. Ct. 2361 (2018) and *Janus v. American Federation of State, County, and Municipal Employees, Counsel 31*, 138 S. Ct. 2448 (2018), those cases are distinguishable and of no help to Plaintiffs' case.

3

# ARGUMENT

## I.   *Masterpiece* supports Colorado's position and undermines Appellants' claims.

*Masterpiece* concerned a challenge to the Accommodation Clause of CADA,

under the First Amendment, and not a challenge to the Communication Clause.

Further, *Masterpiece* was decided on narrow, fact-specific grounds concerning the

treatment of several bakers by former members of the Colorado Civil Rights

Commission, facts that are not relevant here.   However, *Masterpiece* emphasized

important principles that support Colorado's position in this case.

### A.   *Masterpiece* approved the enforcement of "unexceptional" public accommodations laws that prohibit notices which "impose a serious stigma on gay persons."

As *Masterpiece* recognized, "[f]or most of its history, Colorado has prohibited

discrimination in places of public accommodation."  138 S. Ct. at 1724–25.  CADA is

thus merely the latest enactment in a long Colorado "tradition of prohibiting

discrimination in places of public accommodation."  *Id.* at 1725.  This tradition is

grounded in "compelling state interests of the highest order," *Roberts v. U.S.

Jaycees*, 468 U.S. 609, 624 (1984); namely, the eradication of discrimination in

places of public accommodation on the basis of a protected classification.  *See also

Newman v. Piggie Park Enters.*, 390 U.S. 400, 402 n.5 (1968) (per curiam) (stating

that a defense to Title II of the Civil Rights Act of 1964—a federal public

accommodations law that prohibited discrimination based on race— was invalid

4

"because it contravenes the will of God and constitutes an interference with the free exercise of the Defendant's religion" was "so patently frivolous that a denial of counsel fees to the petitioners would be manifestly inequitable") (internal quotation marks and citations omitted).

*Masterpiece* endorsed that interest, emphasizing the importance of "civil rights laws that ensure equal access to goods, services, and public accommodations." 138 S. Ct. at 1727.  And although "[t]he First Amendment ensures that religious organizations and persons are given proper protection," *id.* (quoting *Obergefell v. Hodges*, 135 S. Ct. 2584, 2607 (2015)), "[t]he Court's precedents [also] make clear that … the owner of a business serving the public[ ] might have his right to the free exercise of religion limited by generally applicable laws."  *Id.* at 1723–24; *see also Prince v. Mass.*, 321 U.S. 158, 177 (1944) ("[the] limitations which of necessity bound religious freedom … begin to operate whenever activities begin to affect or collide with liberties of others or of the public").  CADA is such a law.

The Supreme Court also stated that it is "unexceptional" for CADA to "protect gay persons … in acquiring whatever products and services they choose on the same terms and conditions as are offered to other members of the public." *Masterpiece*, 138 S. Ct. at 1728; *see also Hurley v. Irish–Am. Gay, Lesbian & Bisexual Grp. of Bos.,* 515 U.S. 557, 572 (1995) ("Provisions like these are well within the State's usual power to enact ….").  The Court emphasized that these specific protections are justified by society's recognition that "gay persons and gay

couples cannot be treated as social outcasts or as inferior." *Masterpiece*, 138 S. Ct.
at 1727. Thus, a State's laws "can, and in some instances must, protect them in the
exercise of their civil rights." *Id.*

As to weddings specifically, *Masterpiece* "assumed that a member of the
clergy who objects to gay marriage on moral and religious grounds could not be
compelled to perform the ceremony." *Id.* However, the Court emphasized that any
such exception must be narrowly confined. *Id.* Otherwise, "persons who provide
goods and services for marriages and weddings might refuse to do so for gay
persons," and the resulting stigma would violate the "history and dynamics" of our
civil rights laws. *Id.*

*Masterpiece* thus not only approved generally of public accommodations laws
like CADA, but specifically endorsed its use of sexual orientation as a protected
characteristic. And although the Court concluded that the now-former members of
Colorado's Civil Rights Commission had failed to accord the owner of the
Masterpiece Cakeshop a "neutral and respectful consideration" of his religious
beliefs, *id.* at 1729, it left no doubt that objections to gay marriage, whatever their
source, "do not allow business owners … to deny protected persons equal access to
goods and services under a neutral and generally applicable public accommodations
law." *Id.* at 1727.

Given *Masterpiece's* narrow holding, the Court did not address the
constitutionality of CADA's Accommodation Clause. However, the Court provides

6

guidance to lower courts in reaching future decisions.  Specifically, the majority

opinion cautions against broad exemptions for religious beliefs that may invalidate

the Communication Clause:

> And any decision in favor of the baker would have to be sufficiently
> constrained, lest all purveyors of goods and services who object to gay
> marriages for moral and religious reasons in effect be allowed to put up
> signs saying "no goods or services will be sold if they will be used for
> gay marriages," something that would impose a serious stigma on gay
> persons.

*Masterpiece*, 138 S. Ct. at 1728-29; *see also Rumsfeld v. Forum for Acad. &*

*Institutional Rights, Inc.*, 547 U.S. 47, 62 (2006) (finding if Congress prohibits

employment-based racial discrimination, then States can require employers to

remove "White Applicants Only" signs as a proper restriction on conduct not

speech).

### B.  *Masterpiece* confirms that Plaintiffs' challenge does not trigger strict scrutiny.

Although *Masterpiece* did not specify what level of scrutiny it applied to

public accommodations laws like CADA, the Court repeatedly referred to such laws

as "neutral and generally applicable."  *See, e.g.*, 138 S. Ct. at 1727 (holding that

although religious objections to gay marriage are "protected views," they "do not

allow business owners … to deny protected persons equal access to goods and

services under a neutral and generally applicable public accommodations law").

The Court concluded that the former Commission members had failed to consider

the religious objection of the Masterpiece Cakeshop's owner "with the neutrality

that the Free Exercise Clause requires," 138 S. Ct. at 1731, but it never intimated

that CADA itself was anything other than neutral and generally applicable.  And

"[a] law that is both neutral and generally applicable need only be rationally related

to a legitimate governmental interest to survive a constitutional [free exercise]

challenge." *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 649

(10th Cir. 2006).  Thus, *Masterpiece* undermines Plaintiffs' assertion that CADA is

subject to strict scrutiny.[1]

     **C.**    ***Masterpiece* supports the denial of Plaintiffs' request for injunctive relief.**

As the majority opinion in *Masterpiece* makes clear, a notice that "'no goods

or services will be sold if they will be used for gay marriages' … would impose a

serious stigma on gay persons." *Masterpiece*, 138 S. Ct. at 1728-29.  However, that

is exactly the type of notice that Plaintiffs wish to post in this case.  Plaintiffs

cannot establish that they are likely to succeed on their claim that the notice they

seek to post is constitutionally protected when the Supreme Court has already

recognized that an almost identical notice is not.  Similarly, Plaintiffs do not suffer

irreparable harm when they are prohibited from posting a notice that is not

constitutionally protected.

---

[1] Regardless of the scrutiny applied, the Court "has long held, and reaffirms [in *Masterpiece*]," that "a vendor cannot escape a public accommodations law because his religion disapproves selling a product to a group of customers."  138 S. Ct. at 1733 n* (Kagan, J., concurring).

8

Additionally, *Masterpiece* confirms that the balance of equities does not tip in Plaintiffs' favor and that injunctive relief is not in the public's best interest. To the contrary, *Masterpiece* recognizes that gay persons and couples must be protected and not treated as social outcasts or inferior. *Id*. at 1727. This has long been the view in Colorado, such that years before the extension of marriage rights to same-sex couples, Colorado included sexual orientation as a protected characteristic. *Id*. at 1725 (noting that CADA was amended in 2007 and 2008 to include sexual orientation).[2]

Society has a strong interest in ensuring that all persons have equal access to goods and services in the economy, even—and perhaps especially—when religious or philosophical objections would otherwise lead a business owner "to deny protected persons equal access to goods and services." *Id*. at 1727; *see also United States v. Lee*, 455 U.S. 252, 261 (1982) ("When followers of a particular [religious] sect enter into commercial activity as a matter of choice, the limits they accept on their own conduct as a matter of conscience and faith are not to be superimposed on the statutory schemes …."). There is no question that Plaintiffs' religious views must be respected, yet "[t]he exercise of [gay persons' and couples'] freedom on

---

[2] Because Colorado did not recognize same-sex marriages in 2012, the dilemma faced by the owner of Masterpiece Cakeshop was "particularly understandable" and his position "not unreasonable." 138 S. Ct. at 1728. Marriage rights have now been extended to same-sex couples nationwide, so the same cannot be said today.

terms equal to others must be given great weight and respect by the courts."

*Masterpiece*, 138 S. Ct. at 1727.

## II.     *NIFLA* and *Janus* do not support Plaintiffs' claims.

*NIFLA* was a challenge to a California law requiring "crisis pregnancy

centers" to post a government-drafted notice about publicly funded contraception

and abortion services.  138 S. Ct. at 2365.  The Court concluded that this notice

requirement failed even intermediate scrutiny because it was "wildly

underinclusive" and because the law "targets speakers, not speech."  *Id.* at 2375,

2378.  But the "government-scripted, speaker-based disclosure requirement" in

*NIFLA*, where the government *prescribed* the *content* of speech, *id.* at 2377, bears

little resemblance to the content—and viewpoint—neutral language of CADA that

only *prohibits* notices refusing services based on sexual orientation.  Moreover,

*NIFLA* reaffirmed that there is no First Amendment violation when "restrictions

directed at commerce or conduct"—such as CADA—"impos[e] incidental burdens on

speech."  *Id.* at  2373 (quotation omitted).

*Janus* similarly involved a challenge to an Illinois law *compelling* unions to

collect fees even from non-member public employees on whose behalf the union

negotiates.  138 S. Ct. at 2455.  The Supreme Court declined to decide what level of

scrutiny applied to that challenge, *id.* at 2465, because regardless of the scrutiny

applied, this arrangement violated the non-members' free speech rights.  *Id.* at 2460

(concluding the forced payment of agency fees "compell[ed] them to subsidize

private speech on matters of substantial public concern."). CADA has no requirement even remotely similar. And although Plaintiffs will doubtless point to *Janus*'s statement that "[c]ompelling individuals to mouth support for views they find objectionable violates [a] cardinal constitutional command," *id.* at 2463, CADA's prohibition on discrimination does not compel business owners to "mouth support" for anything, either directly or by charging fees used to subsidize others' private speech.

Given Colorado's long tradition of prohibiting discrimination, plus society's recognition that "gay persons and gay couples cannot be treated as social outcasts or as inferior in dignity and worth," *Masterpiece*, 138 S. Ct. at 1724–25, 1727, CADA is a constitutional application of a legitimate government interest in eradicating discrimination in places of public accommodation. *Id.* at 1727.

## CONCLUSION

*Masterpiece* confirms that Defendants are entitled to summary judgment on Plaintiffs' remaining claims concerning the Communications Clause. For the reasons stated above and in prior briefing, Colorado therefore respectfully requests that the Court find in favor of Defendants. However, if the Tenth Circuit reverses this Court's dismissal of the Accommodation Clause challenge and remands for further consideration, Defendants request that this Court hold a status conference to determine how best to move this case forward.

Respectfully submitted this 6th day of August, 2018.

11

*s/ Skip Spear*
VINCENT EDWARD MORSCHER*
Senior Assistant Attorney General
SKIPPERE S. SPEAR*
Senior Assistant Attorney General
JACK D. PATTEN, III*
Assistant Attorney General

Civil Litigation and Employment Law Section
Attorneys for Defendants Elenis and Coffman

BILLY L. SEIBER*
First Assistant Attorney General

Business and Licensing Section
Attorney for Defendants Aragon, Chaney,
Elias, Fabrizio, Hess Lewis and Pocock

1300 Broadway, 10th floor
Denver, CO 80203
Telephone: (720) 508-6588
Fax: (720) 508-6032
E-Mail: vincent.morscher@coag.gov
        skip.spear@coag.gov
        jack.patten@coag.gov
        billy.seiber@coag.gov
  *Counsel of Record

## CERTIFICATE OF SERVICE

I certify that I served the foregoing DEFENDANTS' SUPPLEMENTAL

BRIEF upon all parties herein by e-filing with the CM/ECF system maintained by the

court or by depositing copies of same in the United States mail, first-class postage

prepaid, at Denver, Colorado, this 6th day of August, 2018, addressed as follows:

**Jeremy David Tedesco**
**Jonathan Andrew Scruggs**
**Samuel David Green**
**Katherine Leone**
**Anderson**
Alliance Defending Freedom-Scottsdale
15100 North 90th St., Suite 165
Scottsdale, AZ 85260
(480) 444-0020
Fax: (480)444-0028
Email:jtedesco@ADFlegal.org
jscruggs@ADFlegal.org
sgreen@ADFlegal.org
kanderson@ADFlegal.org

**Michael L. Francisco**
MRD Law
3301 West Clyde Place
Denver, CO 80211
(303) 325-7843
Fax: (303) 723-8679
Email: MLF@mrdlaw.com

**Rory Thomas Gray**
**David Andrew Cortman**
Alliance Defending Freedom- Lawrenceville
1000 Hurricane Shoals Rd., NE Suite D-1100
Lawrenceville, GA 30043
(770) 339-0774
Fax: (770) 339-6744
Email: rgray@adflegal.org
dcortman@alliancedefendingfreedom.org

*s/ Denise Munger*