**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-02372-MSK-CBS

303 CREATIVE LLC, a limited liability company; and
LORIE SMITH,

      *Plaintiffs*,

vs.

AUBREY ELENIS, Director of the Colorado Civil Rights
Division, in her official capacity;
ANTHONY ARAGON;
ULYSSES J. CHANEY;
MIGUEL "MICHAEL" RENE ELIAS;
CAROL FABRIZIO;
HEIDI HESS;
RITA LEWIS; and
JESSICA POCOCK, as members of the Colorado Civil Rights
Commission, in their official capacities; and
CYNTHIA H. COFFMAN, Colorado Attorney General,
in her official capacity;

      *Defendants*.

---

**PLAINTIFFS' SUPPLEMENTAL BRIEF ON *MASTERPIECE*, *NIFLA*, AND *JANUS***

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ........................................................................................................ 1

ARGUMENT ................................................................................................................ 2

I.      Colorado violates the Free Exercise Clause by banning Lorie's statement because of
        religious hostility. ........................................................................................... 2

II.     Colorado violates the Free Speech Clause because it bans Lorie's website statement
        based on content that is constitutionally protected. ........................................ 4

CONCLUSION ............................................................................................................. 8

## TABLE OF AUTHORITIES

**Cases**

*Brush & Nib Studio, LLC v. City of Phoenix*,
    418 P.3d 426 (Ariz. Ct. App. 2018)...............................................................................7, 8

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*,
    515 U.S. 557 (1995)....................................................................................................6

*Janus v. American Federation of State, County, & Municipal Employees, Council 31*,
    138 S. Ct. 2448 (2018)............................................................................................4, 6, 7

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*,
    138 S. Ct. 1719 (2018)................................................................................ *passim*

*National Institute of Family & Life Advocates v. Becerra* ("NIFLA"),
    138 S. Ct. 2361 (2018)..........................................................................................1, 4, 5, 6

*Reed v. Town of Gilbert*,
    135 S. Ct. 2218 (2015).......................................................................................5


**Other Authorities**

*Autumn Scardina v. Masterpiece Cakeshop Inc.*,
    Charge No. CP2018011310 (Colo. Civil Rights Commission June 28, 2018)....................3

## INTRODUCTION

Web designer Lorie Smith[1] seeks to stop Colorado from applying the Colorado Anti-Discrimination Act ("CADA") to stop her from posting a religiously motivated statement on her website, compel her to create websites with objectionable content, and target her faith for punishment. Although this Court dismissed Lorie's challenge to the provision compelling her to create websites, Lorie still wants to post her statement and CADA still forbids this. That violates the Constitution for two reasons that recent Supreme Court decisions affirm.

First, Colorado applies CADA to silence Lorie because of her religious beliefs. But *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission* teaches that the government cannot act with "hostil[ity] to the religious beliefs of [its] citizens." 138 S. Ct. 1719, 1731 (2018). Here, the same state is applying the same law to target a person holding the same religious beliefs while reciting the same rhetoric *Masterpiece* condemns—calling Lorie's beliefs "offensive" and "discriminatory." Defs.' Resp. to Pls.' Mot. for Summ. J. and Mem. in Supp. 6-8, 20 ("MSJ Resp."), ECF No. 50. Yet Colorado does not condemn secular views and allows secular speakers (the three bakers mentioned in *Masterpiece*) to escape punishment. This rhetoric and inconsistency prove the hostility the Free Exercise Clause condemns.

Second, Colorado applies CADA to ban Lorie's statement based on its content and viewpoint—content explaining her religious reasons for not creating websites celebrating same-sex marriage. Content-based restrictions trigger strict scrutiny. *Nat'l Inst. of Family & Life Advocates v. Becerra* ("NIFLA"), 138 S. Ct. 2361, 2371 (2018). Colorado tries to avoid this scrutiny, arguing that it can ban Lorie's statement because it describes mere "conduct." MSJ Resp. 13. But choosing what website content to create is not simply conduct; it's protected speech—Lorie's editorial judgment to choose what she can and cannot say. Because Lorie can decline to create websites, Colorado cannot ban her speech saying so.

---

[1] In this brief, "Lorie Smith" and "Lorie" refer to both plaintiffs.

In sum, Colorado is not protecting the right of its citizens to express and live "the principles that are so fulfilling and so central to their lives and faith." *Masterpiece*, 138 S. Ct. at 1727 (citation omitted). This Court should ensure that Lorie is free to express and live consistently with her beliefs.

## ARGUMENT

I.     **Colorado violates the Free Exercise Clause by banning Lorie's statement because of religious hostility.**

According to *Masterpiece*, public accommodation laws may not be applied with hostility toward religious beliefs. Colorado violated that command in *Masterpiece* and continues to do the same here. That hostility is obvious in two ways.

First, Colorado applied CADA against Jack Phillips—who holds the same beliefs about marriage as Lorie—and Colorado spoke against those beliefs, showing "clear and impermissible hostility toward [his] sincere religious beliefs." 138 S. Ct. at 1729. According to officials, Phillips "can believe 'what he wants to believe,' but cannot act on his religious beliefs 'if he decides to do business in the state'"; Phillips must "compromise" his religious beliefs if he wants to do business in Colorado; and officials accused Phillips of using his faith to excuse discrimination. *Id.* ("Freedom of religion and religion has been used to justify all kinds of discrimination throughout history, whether it be slavery…the holocaust…we can list hundreds of situations where freedom of religion has been used to justify discrimination.") Officials even described Phillip's faith as "one of the most despicable pieces of rhetoric that people can use." *Id.*

Colorado has never rectified those statements. It has not retrained enforcement officials or altered operating policies. At most, Colorado downplays those comments in this litigation— stating they do "not reflect the views of all Commissioners." MSJ Resp. 7 fn.2. But *Masterpiece* rejected that argument. *Masterpiece*, 138 S. Ct. at 1729-30 (stating that the "statements cast

doubt on the fairness and impartiality" because "no objection to these comments" was made by other officials and the comments were never "disavowed in the briefs"). If statements by a few officials criticizing religious beliefs reveal the system's mistreatment of Phillips, those statements also prove mistreatment of Lorie, *who holds the same beliefs.*

Worse, Colorado uses the same disparaging rhetoric to describe Lorie's beliefs throughout this litigation. Colorado has argued that Lorie must compromise her beliefs to do business in Colorado. MSJ Resp. 11; Defs.' Resp. to Pls.' Mot. for Prelim. Inj. 15-16 ("MPI Resp."), ECF No. 38. It has accused Lorie of "assert[ing] her religious beliefs as a reason to discriminate," MPI Resp. 2, 6; Defs.' Mot. to Dismiss V. Compl for Decl. and Inj. Relief 2 ("MTD"), ECF No. 37, and "using religion to perpetuate discrimination." MPI Resp. 22; MSJ Resp. 27-28. It has called the beliefs about marriage "derogatory" and "offensive." MPI Resp. 18; MSJ Resp. 8, 20. And it has compared Lorie's beliefs to invidious race discrimination. MPI Resp. 16-17; MTD 10; MSJ Resp. 6-7. These statements all indicate that Colorado will enforce its law against Lorie just as it did against Phillips and that it will do so with the same anti-religious hostility.

Colorado's hostility toward Lorie's beliefs are confirmed in other ways. Mere weeks after Phillips prevailed in the Supreme Court, Colorado issued another probable-cause determination against him for allegedly violating CADA *again* when he declined to create a custom cake that expressed a message in violation of his religious beliefs. Determination in *Autumn Scardina v. Masterpiece Cakeshop Inc.*, Charge No. CP2018011310, dated June 28, 2018.[2] Given this consistent targeting of people of faith, Lorie cannot hope to receive "the

---

[2] Colorado found probable cause of discrimination even though Phillips declined to create the requested cake because of its message, has never created that cake for anyone, and was targeted by the complainant, an attorney who—on the day the news broke that the Supreme Court would hear *Masterpiece*—asked Masterpiece Cakeshop for a custom cake with a "blue exterior and a pink interior" to "reflect[] … the fact that [he] transitioned from male-to-female." Exhibit 1.

neutral and respectful consideration of [her] claims" which she is due, *Masterpiece*, 138 S. Ct. at 1729, absent this Court's immediate intervention.

Colorado also showed hostility in *Masterpiece* by punishing Phillips for not creating cakes conveying objectionable messages but allowing three other bakeries to refuse to create cakes that they and the Commission found to convey "offensive" messages. 138 S. Ct. at 1730-31. As the Supreme Court observed, "[a] principled rationale for the difference in treatment… cannot be based on the government's own assessment of offensiveness." *Id.* at 1731.

Colorado has not changed this inconsistent treatment. In this litigation, it has not disavowed its free pass for the three bakeries, or changed its law to clarify a different path. As a result, those bakeries and other speakers may continue to decline to create expression they think offensive and may also erect statements declining to create those offensive messages. Yet Lorie can do neither. Colorado displays the same hostility in banning Lorie's religiously motivated statement that it directed toward Phillips.

## II.     Colorado violates the Free Speech Clause because it bans Lorie's website statement based on content that is constitutionally protected.

The Free Speech Clause also supports Lorie's right to publish her views. Under this Clause, the government cannot compel or ban speech because it "is essential to our democratic form of government" and "furthers the search for truth." *Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2464 (2018). That is particularly true here where Lorie wants to speak about what website content she can and cannot create. Her right to speak is thus intertwined with her right to choose what she will and will not say.

Colorado infringes Lorie's right by banning her statement because of its content and view. If a statement explains why someone creates websites celebrating same-sex marriage, it is allowed. But Lorie's statement saying she *cannot* create those websites is banned. The restriction turns entirely on content and viewpoint. *NIFLA*, 138 S. Ct. at 2371 ("Content-based

regulations 'target speech based on its communicative content.'" (quoting *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015)). Accordingly, it triggers strict scrutiny. *Id*. at 2371.

Colorado tries to avoid this scrutiny by characterizing Lorie's statement as "conduct," MPI Resp. 14-15, as "discriminat[ory]," MPI Resp. 2, 6; MTD 2, and thus illegal. The Supreme Court has rejected that position too, holding that "the religious and philosophical objections to gay marriage are protected views." *Masterpiece*, 138 S. Ct. at 1727; *accord id.* at 1729 (condemning statement comparing beliefs in marriage like Lorie's to "all kinds of discrimination through history").

Lorie's statement does not even describe conduct; it describes a constitutionally protected decision—the decision not to convey messages celebrating same-sex marriage. *Masterpiece* acknowledged this possibility, noting that "objections to gay marriage are … in some instances protected forms of expression." *Id*. at 1727.

Significantly, Lorie creates website content for clients no matter their sexual orientation; she just will not create certain website content for anyone, such as content that disparages others, promotes violence, or celebrates same-sex marriage. Joint Statement of Stipulated Facts ¶ 66 ("Stipulated Facts"), ECF No. 49. That means her decision whether to create turns on the message, not the requestor—the what, not the who.[3] So when CADA compels Lorie to create

---

[3] For example, Lorie will create website content celebrating opposite-sex marriage for a bride's homosexual father but will not create content celebrating same-sex marriage for a bride's heterosexual father. *See Masterpiece*, 138 S. Ct. at 1735 (Gorsuch, J., concurring) (noting this fact proved that "it was the kind of cake, not the kind of customer, that mattered to" Phillips). In *Masterpiece*, Justices Kagan and Breyer concurred that it is not unlawful for business owners to decline a request for an expressive item that "they would not have made for any customer," because doing so treats the requester "the same way they would have treated anyone else—just as [public accommodation law] requires." 138 S. Ct. at 1733 (Kagan, J., concurring). In other words, business owners do "not engage in unlawful discrimination" when they "would not sell[a] requested [item] to anyone." *Id.* at 1733 n*. Because Lorie declines websites with different content that are not "suitable for use at same-sex and opposite-sex weddings alike," her decisions do not turn on her clients' sexual orientation but on the content of their requested websites. *Id.* at 1733 n*.

website content, it does not regulate a "decision to refuse to serve persons based on their sexual orientation," MSJ Resp. 13; *see also* MPI Resp. 4, 18, 22, MTD 5; it regulates "the choice of a speaker not to propound a particular point of view." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 572-75 (1995) (distinguishing an "intent to exclude homosexuals as such" from "disagreement" with a message promoting "unqualified social acceptance" of LGBT activities). That choice lies beyond the state's power to punish.

Thus Colorado cannot compel Lorie to create website content for two reasons. First, compelling this alters the content of Lorie's desired speech. Just like the law in *NIFLA* that compelled pro-life centers to discuss abortion, a law compelling Lorie to "speak a particular message" about marriage "alters the content" of her desired message and is a "content-based regulation of speech." 138 S. Ct. at 2371 (citation omitted). Second, compelling content creation severely burdens Lorie. "Compelling individuals to mouth support for views they find objectionable violates [a] cardinal constitutional command, and in most contexts, any such effort would be universally condemned." *Janus*, 138 S. Ct. at 2463. If merely forcing people "to subsidize … speech" they oppose is "tyrannical," then compelling Lorie to *create* objectionable content from scratch and publish it is unthinkable. *Id.* at 2464.

Colorado responds by dismissing Lorie's expression as something "reasonable observers would attribute" to those "being married," not her. MSJ Resp. 15. The respondents in *NIFLA* made similar arguments to no avail. Br. for Resp't at 43-44, *NIFLA*, 138 S. Ct. 2361 (2018) (No. 16-1140), 2018 WL 1027815, at *43-44 (defending compelled disclosures because speakers can "expressly disavow" them and no one would think the disclosures "represent[ ] [their] personal choice"). The Supreme Court analysis ignored these arguments in its analysis. *NIFLA*, 138 S. Ct. at 2371-76. And for good reason. Such logic would allow officials to compel (or restrict) the speech of any commissioned speaker.

Moreover, Colorado cannot explain why its attribution point justifies compelling Lorie's speech but not the speech of those declining to convey "anti-gay marriage symbolism." *Masterpiece,* 138 S. Ct. at 1721. That discrepancy demonstrated Colorado's hostility and inconsistency in *Masterpiece*. *Id*. It does here as well.

Undeterred, Colorado tries to frame CADA as regulating Lorie's "business operation" instead of her speech. MSJ Resp. 13. The respondents in *Masterpiece* made the same pitch. Br. for Resp'ts Charlie Craig & David Mullins at 20, *Masterpiece*, 138 S. Ct. 1719 (2018) (No. 16-111), 2017 WL 4838415, at *20 (arguing "generally applicable regulations of commercial conduct … do not violate the First Amendment"). Yet no justice in *Masterpiece* embraced the theory that public accommodation laws transform speech created for profit into conduct. The majority said facially neutral laws cannot force for-profit ministers to perform same-sex wedding ceremonies. *Masterpiece*, 138 S. Ct. at 1727. The same logic applies to other expression. Websites speak even when created for profit. And because websites speak, Colorado cannot compel Lorie to create websites or ban her from explaining which websites she creates.

This point also explains why Lorie's statement will not impose "a serious stigma on gay persons." *Id.* at 1729. Lorie's statement does not refuse to sell services based on someone's sexual orientation; it declines to create particular websites based on their content. The former is improper; the latter constitutionally protected. The former objects to someone's status; the latter objects to a particular message. It is therefore Lorie who suffers serious stigma, as her views are disparaged and her speech banned and compelled. *Janus* 138 S. Ct. at 2464 (explaining that compelling speech is "damag[ing]" and "always demeaning"). That violates the First Amendment.[4]

---

[4] While Lorie primarily challenges Colorado's banned-speech provision as-applied, she also challenges one part of that provision facially and as-applied—the part banning statements indicating someone is unwelcome, objectionable, unacceptable, or undesirable. As Lorie has explained already, this language is vague, overbroad, and allows unbridled discretion. Pls.' Mot. for Summ. J. and Mem. in Supp. 47-49, 62-65, ECF No. 48; *see Brush & Nib Studio, LLC v.*

## <u>CONCLUSION</u>

*Masterpiece*, *NIFLA*, and *Janus* instruct courts to balance the rights of both LGBT citizens and those who believe in traditional marriage while not banning or compelling speech in the process. Lorie's proposal does precisely this. It allows Colorado to ban statements enacting discriminatory conduct. But it forbids Colorado from censoring content or targeting religion. With Lorie, Colorado has done the latter. This Court should restore the constitutional balance.

---

*City of Phoenix*, 418 P.3d 426, 442-43 (Ariz. Ct. App. 2018) (invalidating the same language in Phoenix's public accommodation law).

Respectfully submitted this 6th day of August, 2018.

_s/ Jonathan A. Scruggs_

Jeremy D. Tedesco (Arizona Bar No. 023497)
Jonathan A. Scruggs (Arizona Bar No. 030505)
Samuel D. Green (Arizona Bar No. 032586)
Katherine L. Anderson (Arizona Bar No. 033104)
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 (facsimile)
jtedesco@ADFlegal.org
jscruggs@ADFlegal.org
sgreen@ADFlegal.org
kanderson@ADFlegal.org

David A. Cortman (Georgia Bar No. 188810)
Rory T. Gray (Georgia Bar No. 880715)
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Road, NE, Suite D-1100
Lawrenceville, GA 30043
(770) 339-0774
(770) 339-6744 (facsimile)
dcortman@ADFlegal.org
rgray@ADFlegal.org
Attorneys for Plaintiffs

Michael L. Francisco (Colorado Bar No. 39111)
Statecraft PLLC
620 N. Tejon Street, Suite 101
Colorado Springs, CO 80903
(719)399-0890
michael@statecraftlaw.com

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on August 6, 2018, the foregoing was filed with the Clerk of Court

using the CM/ECF system which will send notification of such filing to the following:

Jack D. Patten, III
Assistant Attorney General
Civil Litigation and Employment
Law Section
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: (720) 508-6592
Fax: (720) 508-6032
jack.patten@coag.gov

Vincent E. Morscher
Deputy Attorney General
Civil Litigation and Employment Law Section
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: (720) 508-6588
Fax: (720) 508-6032
vincent.morscher@coag.gov

Skippere Spear
Senior Assistant Attorney  General
Tort Litigation
Civil Litigation and Employment Law
Section 1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: (720) 508-6635
Fax: (720) 508-6032
Skip.spear@coag.gov

Billy Lee Seiber
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO 80203
Telephone: (720) 508-6435
Fax: (720) 508-6037
Billy.seiber@coag.gov

Attorneys for Defendants

*s/ Jonathan A. Scruggs*

Jonathan A. Scruggs (Arizona Bar No. 30505)
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 Fax
jscruggs@ADFlegal.org