IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 16-cv-02372-MSK

303 CREATIVE LLC, and
LORIE SMITH,

    Plaintiffs,

v.

AUBREY ELENIS,
CHARLES GARCIA,
AJAY MENON,
MIGUEL RENE ELIAS,
RICHARD LEWIS,
KENDRA ANDERSON,
SERGIO CORDOVA,
JESSICA POCOCK, and
PHIL WEISER,

    Defendants.[1]

## OPINION AND ORDER GRANTING SUMMARY JUDGMENT

**THIS MATTER** comes before the Court pursuant to the Court's May 17, 2019 Opinion and Order Denying Motion for Summary Judgment **(# 72)**, and the Plaintiffs' brief in response **(# 74)**.

The Court assumes the reader's familiar with the proceedings to date and the specific contents of the May 17, 2019 Order, which the Court deems incorporated herein by reference. In summary, Ms. Smith is the owner of 303 Creative, LLC ("303"),[2] and engaged in the business of

---

[1]     The caption of this action has been amended consistent with the Defendants' Notice of Substitution of Parties **(# 78)**.

[2]     For purposes of convenience, the Court will typically refer to both Plaintiffs jointly as either "Ms. Smith" or "303," except where it is necessary to specifically identify distinguish between them.

1

creating customized wedding websites for her clients. Ms. Smith is a devout Christian, believes in "biblical marriage," and opposes the extension of marriage rights to same-sex couples. Thus, she intends to decline any request that a same-sex couple might make to her to create a wedding website. That policy would appear to violate C.R.S. § 24-34-601(2), which prohibits discrimination in the provision of goods and services on various bases, including on the basis of sexual orientation ("the Accommodations Clause"). Ms. Smith also wishes to post a statement ("the Statement") on 303's website, advising of her policy and the reasons therefor. The posting of such a statement would appear to violate a separate provision of C.R.S. § 24-34-601(2), which prohibits the publication of any communication that advises that goods or services will be refused to patrons on the basis of, among other things, sexual orientation ("the Communications Clause").

Before she posted her Statement and before any enforcement action was taken (or even threatened) against her, Ms. Smith and 303 commenced this action seeking a declaratory judgment that both the Accommodations Clause and the Communications Clause of C.R.S. § 24-34-601(2) violated her rights under the Free Speech and Free Exercise clauses of the First Amendment to the U.S. Constitution and the Equal Protection and Due Process clauses of the Fourteenth Amendment. This Court subsequently found that Ms. Smith could not demonstrate standing sufficient to support her challenge to the Accommodation Clause. Thus, the Court dismissed the claims directed at that clause, leaving only Ms. Smith's challenge to the Communications Clause.

Ms. Smith moved for summary judgment in her favor on her claims. In the May 17, 2019 Order, this Court denied Ms. Smith's motion. The Court further noted that, on the undisputed facts, it appeared that the Defendants were entitled to judgment in their favor on all of Ms.

Smith's claims.  Pursuant to Fed. R. Civ. P. 56(f), the Court advised Ms. Smith of its intention to grant summary judgment to the Defendants and invited her to submit any further briefing and evidence that she desired on the issues in the motion.  Ms. Smith filed a brief **(# 74)** and certain additional factual material **(# 75)**, as well as two subsequent notices of supplemental authority **(# 76, 77)**.  The Court has considered those filings and, for the reasons set forth in May 17, 2019 Order, as supplemented herein, finds that judgment in favor of the Defendants is appropriate.

The Court deems its discussion in the May 17, 2019 Order to be incorporated herein and will neither repeat nor summarize that analysis.  The Court uses the instant order to address any new legal and factual arguments raised by Ms. Smith in her response brief.

Ms. Smith first argues that this Court should not assume the legality of the Accommodation Clause, and should instead analyze Ms. Smith's constitutional challenges to that statute as well when considering her Communication Clause challenges.  The cases Ms. Smith cites in support of this proposition are inapposite.  *Housing Opportunities Made Equal, Inc. v. Cincinnati Enquirer, Inc.*, 943 F.2d 644, 651 n. 9 (6th Cir. 1991), involved a statute that prohibited the publication of real estate advertisements that indicate the advertiser's intention to discriminate among prospective clients and purchasers on the basis of (among others) race.  A housing-oriented community group sued a newspaper under that law, arguing that the newspaper routinely published real estate advertisements that almost universally contained photos of white models (thus implicitly discouraging minorities from applying for housing).  Noting in *Housing Opportunities* stands for the proposition that the court, in assessing the ban on discriminatory advertising, should not have assumed the legality of any other statute.  Ms. Smith instead cites *Housing Opportunities* for a bit of dicta set forth in a footnote.  After noting that the advertisements in question did not "relate[ ] to an illegal activity," the court proceeded to

speculate about how its analysis might apply "if these advertisements were considered illegal." The court explained that "[w]hen analyzing the constitutional protections accorded a particular commercial message, a court starts with the content of the message and not the label given the message under the relevant statute." It goes on to state that "[s]tarting with the language of a statute would foreclose a court from ever considering the constitutionality of particular commercial speech because the statute would label such speech illegal and thus unprotected by the first amendment. Constitutional review by a court is not so easily circumvented." 942 F.2d at 651 n. 9. But this footnote is referring to the court overlooking statutes that declare the advertisement <u>itself</u> to be illegal, not statutes that prohibit the conduct the advertisement is promoting. In other words, this Court does not deem Ms. Smith's Statement to propose an unlawful act simply because the <u>Communications Clause</u> declares the Statement to be unlawful. Consistent with *Housing Opportunities*, this Court looks past the Communications Clause's label and considers the content of the speech. But the <u>content</u> of Ms. Smith's speech is unlawful because it proposes an action made unlawful by an entirely <u>different</u> statute – the Accommodation Clause. Nothing in *Housing Opportunities* suggests that this Court should ignore the effect of an entirely different statutory provision when assessing the legality of Ms. Smith's Statement.

That principle is illustrated more clearly by *Bigelow v. Virginia*, 421 U.S. 809 (1975), the case upon which *Housing Opportunities* relies. In *Bigelow*, Virginia law prohibited the publication of any communication encouraging the procuring of an abortion. A newspaper publisher in Virginia ran an ad from a business in New York State that informed readers that "abortions are now legal in New York. There are no residency requirements. . . We will make all arrangements for you." Virginia prosecuted the publisher under its statute and the publisher, and

the publisher appealed his conviction citing First Amendment protections. The Supreme Court reversed the conviction, finding that the advertisement was commercial speech that enjoyed First Amendment protection. Addressing the argument that the advertisement forfeited First Amendment protection because it proposed an illegal act, the Supreme Court noted that abortion services were legal in New York at the time. Thus, it explained, a state "may not, under the guise of exercising internal police powers, bar a citizen of another State from disseminating information about an activity that is legal in that State." 421 U.S. at 824-25. In other words, the Supreme Court ignored the superficial fact that Virginia law purported to declare the advertisement illegal, in the same way that this Court ignores the fact that the Communications Clause declares Ms. Smith's Statement illegal. Instead, the Supreme Court analyzed whether the <u>content</u> of the advertisement proposed an illegal act. In *Bigelow*, it did not because procuring an abortion was legal in New York. Here, however, Ms. Smith's Statement proposes to undertake an action that is made illegal by the Accommodation Clause, and thus, her statement forfeits First Amendment protection. More to the point however, nothing in *Bigelow* suggests that the court was required to separately assess the constitutionality of any law other than the law being enforced (the prohibition on advertising abortion services), and thus, *Bigelow* does not support Ms. Smith's contention that this Court must separately assess the constitutionality of the Accommodation Clause while it evaluates Ms. Smith's challenge to the Communications Clause.

Similarly, *BellSouth Telecommunications, Inc. v. Farris*, 542 F.3d 499, 506 (6th Cir, 2008), does not stand for the proposition Ms. Smith asserts. There, the state passed a tax on telecommunications services, but prohibited providers from "separately stating the tax on [customers'] bill[s]." Providers challenged, on First Amendment grounds, the prohibition against advising customers of the tax as a separate line item on bills. The state defended the

challenge in part by arguing that disclosing the tax on customer bills was not speech that enjoyed First Amendment protection because such speech was "illegal" – made so by the very statute the providers were challenging. "[T]hat contention simply chases the [state's] tail," the court explained, "[t]he lawfulness of the activity does not turn on the existence of the speech ban itself; otherwise, all commercial speech bans would all be constitutional." 542 F.3d at 506. Once again, *BellSouth* illustrates a principle distinct from the one that Ms. Smith is urging here. If this Court were to simply declare Ms. Smith's Statement to be devoid of First Amendment protection because the <u>Communication Clause</u> declared it unlawful, cases like *Bigelow* and *BellSouth* would expose that reasoning as error. But this Court has not done so. This Court finds that Ms. Smith's statement proposes an unlawful act because it proposes to do something – deny services to same-sex couples -- that a <u>different</u> statute, the Accommodations Clause, prohibits. Nothing in any of the cases Ms. Smith cites suggest that a party challenging an advertising ban can use that challenge to attack an entirely different statute as well (*e.g.* the providers in *BellSouth* using the advertising ban to challenge the telecommunications tax itself; the editor in *Bigelow* using the advertising ban to challenge Virginia's ban on abortions).

As this Court has already found, Ms. Smith lacks the standing to bring a direct challenge to the Accommodations Clause. Allowing her to use a claim challenging the Communications Clause as a Trojan Horse to challenge the Accommodations clause indirectly would undermine the Court's prior finding with regard to standing. Accordingly, the Court rejects Ms. Smith's argument that this Court cannot assume the constitutionality of the Accommodations Clause when evaluating her Communications Clause claim.[3]

---

3  Because the legality of the Accommodations Clause lies outside the scope of this Court's review in this matter, Ms. Smith's reliance on *Telescope Media Group v. Lucero,* \_\_\_ F.3d \_\_\_, 2019 WL 3979621 (8th Cir., Aug. 23, 2019), is misplaced. *Telescope* involved a challenge by a

Second, Ms. Smith argues that the Court's May 17, 2019 Order failed to fully consider her arguments in support of her Free Exercise claim. Specifically, she contends that the Court failed to consider "whether certain statements by members of the Colorado Civil Rights Commission . . . reveal hostility toward [Ms. Smith's] religious beliefs on marriage." (Ms. Smith is referring to the same comments that animated the Supreme Court's reasoning in *Masterpiece Cake Shop, Ltd. v. Colorado Civil Rights Commission*, 138 S.Ct. 1719, 129-30 (2018).) But such comments are irrelevant to a <u>pre-enforcement</u> challenge like the one Ms. Smith brings here (as compared to a challenge to the circumstances under which the Accommodations Clause was <u>actually</u> enforced against Masterpiece Cake Shop). Whether the members of the Colorado Civil Rights Commission would be biased against Ms. Smith's religious beliefs or not, if Ms. Smith were cited for violating the Communications Clause, has no

---

film-making business and its principals who offered to create wedding videos for opposite-sex couples but whose principals opposed, on religious grounds, extending those services to same-sex couples. The plaintiffs challenge Minnesota's version of the <u>Accommodations Clause</u> and the 8th Circuit, in a divided opinion, reversed the District Court's dismissal of the plaintiffs' challenges. The 8th Circuit held that the creation of videos constituted First Amendment speech and that the state's interest in eradicating discrimination was not sufficiently compelling to overcome the burdens that the law placed on that speech.
    Because *Telescope* dealt with a challenge to a version of the Accommodations Clause, not the Communications Clause, its analysis is not relevant here. If Ms. Smith had standing to pursue her Accommodations Clause claims, *Telescope* might be germane. But this Court has carefully limited itself to analyzing only the Communication Clause, and thus, *Telescope* provides no guidance. (In any event, to the extent that the 8th Circuit's analysis overlaps with certain portions of analysis in this Court's May 17, 2019 Order, this Court would simply disagree with the 8th Circuit's analysis, finding it unpersuasive.)
    The Court notes that Ms. Smith appears to cite *Telescope,* in part, because it found that the plaintiffs there had standing to bring a pre-enforcement challenge to the Accommodation Clause-type statute., contrary to the finding made by this Court in this case. To the extent Ms. Smith intends her Notice of Supplemental Authority to request that the Court reconsider its September 1, 2017 Opinion and Order addressing Ms. Smith's standing to bring her Accommodation Clause challenge, the Court finds that Ms. Smith's simple citation to another case is not sufficient to meaningfully present a motion for reconsideration.

bearing on the question the Court considers at this time: whether Ms. Smith's Statement violates the Communications Clause <u>as a matter of law</u>.

For the foregoing reasons, the Court finds that the Defendants are entitled to summary judgment on all of Ms. Smith's claims in this action. The Clerk of the Court shall enter judgment in favor of the Defendants on all claims and close this case.

Dated this 26th day of September, 2019.

**BY THE COURT:**

_____

Marcia S. Krieger
Senior United States District Judge