IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 16-cv-02372-PAB

303 CREATIVE LLC, a limited liability company, and
LORIE SMITH,

    Plaintiffs,

v.

AUBREY ELENIS, Director of the Colorado Civil Rights Division, in her official capacity,
SERGIO RAUDEL CORDOVA,
CHARLES GARCIA,
GETA ASFAW,
MAYUKO FIEWEGER, and
DANIEL S. WARD, as members of the Colorado Civil Rights Commission, in their official capacities, and
PHILIP J. WEISER, Colorado Attorney General, in his official capacity,

    Defendants.

---

# ORDER

---

    This matter comes before the Court on the Order and Judgment of the Tenth Circuit [Docket No. 100], which remanded the case to the Court for further proceedings consistent with the Supreme Court's decision in this case. Docket No. 100 at 4. On November 7, 2023, the Court held a status conference in this case. Docket No. 112. Pursuant to the Court's directive, *id.* at 2, plaintiffs have filed a brief in support of their position on the wording of the final judgment and as to whether plaintiffs are the prevailing party for purposes of an award of attorneys' fees and costs, Docket No. 119, and defendants have filed a brief on the same issues. Docket No. 120.

## I. BACKGROUND[1]

Plaintiff Lorie Smith, through her business, plaintiff 303 Creative LLC ("303 Creative"), offers a variety of creative services, including website design, to the public. Docket No. 49 at 8, ¶ 45.  Ms. Smith intends to expand the scope of 303 Creative's services to include the design, creation, and publication of wedding websites.  *Id.* at 12, ¶ 77.  However, plaintiffs will decline any request to design, create, or promote content that promotes any conception of marriage other than marriage between one man and one woman.  *Id.* at 11, ¶ 66.  Plaintiffs have designed an addition to 303 Creative's website that includes a statement that they will not create websites "celebrating same-sex marriages or any other marriage that contradicts God's design for marriage."  *Id.* at 13-14, ¶¶ 86, 90.

On September 20, 2016, plaintiffs filed a lawsuit seeking to prevent defendants from applying certain provisions of the Colorado Anti Discrimination Act ("CADA") to 303 Creative's business.  Docket No. 1 at 59-60, ¶¶ 1, 3.  CADA contains two provisions relevant to this action: the Accommodations Clause and the Communication Clause.  The Accommodations Clause prohibits all "public accommodation[s]" from denying "the full and equal enjoyment" of their goods and services to any customer on the basis of sexual orientation.  Colo. Rev. Stat. § 24-34-601(2)(a).  The Communication Clause prohibits all "public accommodation[s]" from communicating that an individual will be denied the "full and equal enjoyment" of their goods and services or that an individual's patronage is unwelcome on the basis of sexual orientation.  *Id.*  The complaint brings

---

[1] The following facts are drawn from the parties' Joint Statement of Stipulated Facts.  Docket No. 49.

five claims: (1) violation of the First Amendment's free speech and free press clauses; (2) violation of the First Amendment right to free exercise of religion; (3) violation of the Fourteenth Amendment right to equal protection; (4) violation of the Fourteenth Amendment right to due process; and (5) violation of the Fourteenth Amendment right to substantive due process and equal protection challenge to denial of religious identity, personal dignity, personal autonomy, and personal liberty.  Docket No. 1 at 29-59, ¶¶ 205-399.

The complaint seeks the following relief: (1) a preliminary and permanent injunction to stop defendants from enforcing the Communications Clause "facially, and as-applied to Plaintiffs' desired communications [ ] promoting marriage exclusively as an institution between one man and one woman, [ ] declining to create websites or graphics promoting events or ideas that violate their beliefs about marriage, such as websites for same-sex weddings, and [ ] explaining their religious beliefs about what they can and cannot create;" (2) a preliminary and permanent injunction to stop defendants from enforcing the Accommodations Clause by requiring plaintiffs to "create websites or graphics promoting events or ideas that violate their beliefs that marriage should only be an institution between one man and one woman, such as websites promoting same-sex weddings;" and (3) a declaratory judgment that the Communications Clause and Accommodations Clause violate the First and Fourteenth Amendments facially and as applied to plaintiffs.  *Id.* at 59-60, ¶¶ 1-4.

On September 1, 2017, Judge Marcia S. Krieger granted defendants' motion to dismiss in part, dismissing plaintiffs' claims for lack of standing insofar as they apply to the Accommodations Clause.  Docket No. 52 at 12-13.  On May 17, 2019, Judge

3

Kreiger denied a motion for summary judgment[2] by plaintiffs on the merits of plaintiffs' claims insofar as they apply to the Communications Clause.  Docket No. 72 at 26.  On September 26, 2019, Judge Krieger granted summary judgment in favor of defendants.  Docket No. 79 at 8.  On October 25, 2019, plaintiffs appealed these orders to the Tenth Circuit Court of Appeals.  Docket No. 81.

On July 26, 2021, the Tenth Circuit reversed the district court's finding that plaintiffs lacked standing to challenge the Accommodations Clause.  *303 Creative LLC v. Elenis*, 6 F.4th 1160, 1175 (10th Cir. 2021), *reversed on other grounds,* 600 U.S. 570 (2023).  The Tenth Circuit found that plaintiffs had demonstrated an injury in fact that was sufficient to sustain a pre-enforcement challenge of CADA because plaintiffs showed that they intended to discriminate in a manner that is arguably proscribed by CADA by "excluding customers who celebrate same-sex marriages" and that they had a credible fear that Colorado would enforce CADA against businesses that object to same-sex marriage.  *Id.* at 1171-75.  Nevertheless, after considering the merits of plaintiffs' claims, the court affirmed Judge Kreiger's grant of summary judgment in favor of defendants on all of plaintiffs' claims.  *Id.* at 1190.

Plaintiffs appealed the Tenth Circuit's decision to the Supreme Court, which granted certiorari limited to the following question: "Whether applying a public-accommodation law to compel an artist to speak or stay silent violates the Free Speech Clause of the First Amendment."  *303 Creative LLC v. Elenis*, 142 S. Ct. 1106 (2022) (memorandum).  The Supreme Court reversed the Tenth Circuit's judgment as to this

---

[2] This order also denied plaintiffs' motion for a preliminary injunction on the basis that plaintiffs had not demonstrated a likelihood of success on the merits.  Docket No. 72 at 5 n.4.

4

question.  *303 Creative*, 600 U.S. at 603.  It found that compelling plaintiffs to create custom websites celebrating same-sex marriages would violate the First Amendment.  *Id.* at 588, 602-03.

On August 14, 2023, plaintiffs filed a Motion for Attorneys' Fees and Costs and for an Extension of Filing Deadline.  Docket No. 96.  This motion asks the Court to issue an order (1) declaring plaintiffs the prevailing parties in this litigation; (2) declaring that plaintiffs are entitled to an award of attorneys' fees, expenses, and costs incurred during this litigation, and (3) granting an extension of time from the date of final judgment for plaintiffs to file a motion for attorney fees and bill of costs.  *Id.* at 1-2.  On August 31, 2023, the Tenth Circuit remanded the case to this Court for further proceedings consistent with the Supreme Court's decision.  Docket No. 100 at 4.  The Tenth Circuit's mandate issued on September 22, 2023.  Docket No. 103.

The Court held a status conference on November 7, 2023, at which the Court ordered the parties to submit a joint recommendation as to the proposed language for final judgment or, if the parties were unable to agree on proposed language, to submit a proposed schedule to brief each side's position on the final judgment language.  Docket No. 112 at 2.  On December 6, 2023, the parties filed a joint notice indicating that they were unable to agree on proposed language for the final judgment and suggesting a briefing schedule, Docket No. 116 at 1-2, which the Court adopted.  Docket No. 117.

## II.  ANALYSIS

The parties' proposed final judgment language differs in three respects: (1) the language granting permanent injunctions in favor of plaintiffs; (2) the language of the declaratory judgment; and (3) the language declaring plaintiffs the prevailing parties and

awarding plaintiffs attorney's fees.  *Compare* Docket No. 119-1 at 2-3, ¶¶ 1-4, *with* Docket No. 120-1 at 2-3, ¶¶ 1-4.

### A.  Permanent Injunction Language

The parties' proposed language for the permanent injunction differs with regard to both the Accommodation Clause and the Communication Clause.  *Compare* Docket No. 119-1 at 3, ¶ 3, *with* Docket No. 120-1 at 3, ¶ 3.  The Court will address the parties' arguments regarding each clause separately.

#### *1.  Accommodations Clause*

Plaintiffs propose the following language to enjoin Colorado from enforcing the Accommodations Clause against them:

> The Court permanently enjoins Defendants, their officers, agents, servants, employees, attorneys, and those acting in active concert or participation with them who receive actual notice of this order from enforcing:
>
> a. CADA's Accommodations Clause (C.R.S. § 24–34–601(2)(a)) to compel Smith[3] to create custom websites celebrating or depicting same-sex weddings **or otherwise expressing messages inconsistent with her beliefs**; . . .

Docket No. 119-1 at 3, ¶ 3.a. (footnote and emphasis added).  Defendants propose the following language:

> The Court permanently enjoins Defendants, their officers, agents, servants, employees, attorneys, and those acting in active concert or participation with them who receive actual notice of this order from enforcing:
>
> a. CADA's Accommodations Clause (C.R.S. § 24–34–601(1)) to compel Smith to create custom websites celebrating or depicting same-sex weddings or otherwise to create or depict original,

---

[3] The parties refer to Ms. Smith and 303 Creative collectively as "Smith."  Docket No. 119-1 at 2; Docket No. 120-1 at 2.

6

> expressive, graphic or website designs **inconsistent with her beliefs regarding same-sex marriage**; . . .

Docket No. 120-1 at 3, ¶ 3.a. (emphasis added).

Plaintiffs argue that defendants should be enjoined from compelling plaintiffs to create custom websites "otherwise expressing messages inconsistent with [Ms. Smith's] beliefs" because "the Supreme Court emphasized that the First Amendment isn't limited to wedding websites—it applies to all speech" and "[t]hat same logic extends to [plaintiffs'] other custom websites." Docket No. 119 at 2. Plaintiffs also argue that defendants' legal position throughout the proceedings, namely, that defendants "claimed the authority" to compel plaintiffs to provide custom websites for anyone regardless of the message "justifies relief beyond wedding websites." *Id.* at 3. Defendants respond that plaintiffs' "proposed language would greatly expand the Supreme Court's holding because [they have] not met the threshold requirements for an injunction for matters other than the subject of this lawsuit: same-sex wedding websites." Docket No. 120 at 2. Defendants argue that including the phrase "or otherwise expressing messages inconsistent with her beliefs" "extends beyond the stipulated facts and the credible threat that the Supreme Court relied on to establish jurisdiction." *Id.* at 5.

The Court will first take up the issue of whether the language "otherwise expressing messages inconsistent with her beliefs," *see* Docket No. 119-1 at 3, ¶ 3.a., is so broad that it would extend the judgment beyond the Supreme Court's standing analysis.[4] "Article III of the Constitution limits the jurisdiction of federal courts to 'Cases'

---

[4] Plaintiffs argue that "Federal Rule of Civil Procedure 54(c) authorizes this Court to grant Smith relief she 'has not demanded . . . in [her] pleadings' so long as she is

7

and "Controversies.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting U.S. Const., Art. III, § 2.) "The doctrine of standing gives meaning to these constitutional limits by identifying those disputes which are appropriately resolved through the judicial process." *Id.* (quotations, citation, and alteration omitted). To establish Article III standing, a plaintiff must allege "that (1) he or she has suffered an injury in fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision." *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003) (quoting *Phelps v. Hamilton*, 122 F.3d 1309, 1326 (10th Cir. 1997)). In order to show the first element of standing, a plaintiff must show she has "suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) ("Injury in fact is a constitutional requirement.").

Where, as here, a plaintiff seeks prospective relief such as an injunction, "the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004). "The threatened injury must be certainly impending and not merely speculative." *Id.* (quotations and citation omitted). In some narrow circumstances, a plaintiff may seek prospective relief for a law she fears may be enforced against her in the future.

---

'entitled' to it." Docket No. 121 at 2 (quoting Fed. R. Civ. P. 54(c)). Plaintiffs are only entitled to injunctive relief that they have established standing to pursue. *See* U.S. Const., Art. III, § 2. Therefore, in order to determine what relief the Court is authorized to grant plaintiffs under Rule 54(c), the Court must first analyze standing.

*See, e.g.*, *Bronson v. Swensen*, 500 F.3d 1099, 1108-09 (10th Cir. 2007).  Consistent with the usual standing requirements described above, courts have held that, for a threat of enforcement to be sufficient for Article III injury, a plaintiff must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder."  *Susan B. Anthony List*, 573 U.S. at 159 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

The Tenth Circuit found that plaintiffs had established standing to raise a pre-enforcement challenge to the Accommodations Clause.[5]  *303 Creative*, 6 F.4th at 1175.  The court also found that plaintiffs demonstrated a "credible fear of prosecution," and thus established an injury in fact, because "the manner they intend to operate— excluding customers who celebrate same-sex marriages" —would render them liable under CADA and defendants' prior conduct created "a credible fear that CADA will be enforced against businesses that object to same-sex marriage."  *Id.* at 1171-75.  This was the only grounds on which the Tenth Circuit found that plaintiffs had established standing.[6]  The Supreme Court noted that the Tenth Circuit had found that plaintiffs

---

[5] Judge Kreiger found that plaintiffs had standing to challenge the Communications Clause.  Docket No. 52 at 9.  The Tenth Circuit, however, discussed standing solely in regard to the Accommodations Clause because plaintiffs only challenged Judge Kreiger's ruling that they lacked standing with regard to that clause.  *303 Creative*, 6 F.4th at 1170-71.

[6] Moreover, the parties' joint statement of stipulated facts does not contain facts that would establish standing to raise a pre-enforcement challenge based on plaintiffs' intended course of action unrelated to same-sex wedding websites.  Although the joint statement states that "Plaintiffs will decline any request to design, create, or promote content that: contradicts biblical truth; demeans or disparages others; promotes sexual immorality; supports the destruction of unborn children; [or] incites violence," Docket No. 49 at 11, ¶ 66, it includes no facts indicating that defendants previously enforced CADA against businesses that refused to design, create, or promote content concerning these

"had established a credible threat that, if [Ms. Smith] follows through on her plans to offer wedding website services, Colorado will invoke CADA to force her to create speech she does not believe or endorse," but the Supreme Court did not take up the question of standing because no party challenged the Tenth Circuit's conclusion concerning standing. *303 Creative*, 600 U.S. at 583. Thus, although the Supreme Court's consideration of the First Amendment rights at issue discussed a state's ability to compel speech in broad terms, *see, e.g., id.* at 592 ("When a state public accommodations law and the Constitution collide, there can be no question which must prevail.") (citation omitted), the Tenth Circuit's finding on plaintiffs' standing remains undisturbed.

Under the Tenth Circuit's ruling, plaintiffs have established standing to challenge the constitutionality of the Accommodations Clause insofar as defendants would enforce it by compelling plaintiffs to create websites depicting or celebrating same-sex weddings. *303 Creative*, 6 F.4th at 1175. Therefore, the Court will enjoin defendants from enforcing Accommodation Clause to compel plaintiffs to create custom websites celebrating or depicting same-sex weddings or otherwise expressing messages inconsistent with Ms. Smith's beliefs concerning same-sex marriage.

### 2. Communication Clause

Plaintiffs propose the following language to enjoin defendants from enforcing the Communication Clause against them:

> The Court permanently enjoins Defendants, their officers, agents, servants, employees, attorneys, and those acting in active concert or

---

topics. Therefore, plaintiffs have not demonstrated a credible fear that CADA will be enforced against plaintiffs if they refuse to design, create, or promote content concerning such issues.

10

>   participation with them who receive actual notice of this order from enforcing: . . .
>
>   > b. CADA's Communication Clause (C.R.S. § 24–34–601(2)(a)) to prevent Smith from posting the [proposed statements][7] on her website and from making **materially similar statements** on her website and directly to prospective clients.

Docket No. 119-1 at 3, ¶ 3.b. (emphasis and footnote added).  Defendants propose the following language:

>   The Court permanently enjoins Defendants, their officers, agents, servants, employees, attorneys, and those acting in active concert or participation with them who receive actual notice of this order from enforcing: . . .
>
>   > b. CADA's Communication Clause (C.R.S. § 24–34–601(2)(a)) to prevent Smith from posting the [Proposed Statements] on her website and from making **materially similar statements regarding the effect of her beliefs on the expressive, graphic or website design services she offers** on her website and directly to prospective clients.

---

[7] The proposed statements state:

>   I firmly believe that God is calling me to this work.  Why?  I am personally convicted that He wants me – during these uncertain times for those who believe in biblical marriage – to shine His light and not stay silent.  He is calling me to stand up for my faith, to explain His true story about marriage, and to use the talents and business He gave me to publicly proclaim and celebrate His design for marriage as a life-long union between one man and one woman.
>
>   These same religious convictions that motivate me also prevent me from creating websites promoting and celebrating ideas or messages that violate my beliefs.  So I will not be able to create websites for same-sex marriages or any other marriage that is not between one man and one woman.  Doing that would compromise my Christian witness and tell a story about marriage that contradicts God's true story of marriage – the very story He is calling me to promote.

Docket No. 119-1 at 2, ¶ 2; *see also* Docket No. 120-1 at 2-3, ¶ 2.

11

Docket No. 120-1 at 3, ¶ 3.b. (emphasis added).

Because any materially similar statement to the Proposed Statements would discuss the effect of Ms. Smith's beliefs on the website design services she offers, the Court will not adopt the portion of defendants' proposed language referencing "the effect of [Ms. Smith]'s beliefs on the . . . website design services she offers" because it would be redundant.  *See* Docket No. 120-1 at 3, ¶ 3.b.

Furthermore, plaintiffs' standing to challenge the Communication Clause is based on the Proposed Statement that was included in the parties' joint statement of stipulated facts.  Judge Krieger found that plaintiffs had standing to challenge the Communication Clause because, once the plaintiffs posted the Proposed Statement to the 303 Creative website, "they arguably will have violated the Communication Clause" and defendants have no discretion not to enforce the statute.  Docket No. 52 at 9.  Judge Kreiger's finding was not challenged before the Tenth Circuit or the Supreme Court.  *See 303 Creative*, 6 F.4th at 1170-71; *303 Creative*, 600 U.S. at 583.  Because standing was based on the Proposed Statements and the Proposed Statements concern only the effect of Ms. Smith's beliefs on the website design services she offers, the Court will not include defendant's proposed language referencing expressive and graphic design services in its order.

The final judgment will adopt defendants' proposed language with regard to the Accommodation Clause and plaintiffs' proposed language with regard to the Communication Clause.

## B. Declaratory Judgment Language

The parties' disagreements concerning the declaratory judgment language in the final judgment mirror their disagreements concerning the permanent injunction language. Plaintiffs propose the following language:

> The Court declares that the First Amendment's Free Speech Clause prohibits Colorado from enforcing the Accommodation Clause (C.R.S. § 24–34–601(2)(a)) of Colorado's Anti-Discrimination Act ("CADA") to compel Smith to create custom websites celebrating or depicting same-sex weddings or **otherwise expressing messages inconsistent with her beliefs**.
>
> The Court declares that the First Amendment's Free Speech Clause prohibits Colorado from enforcing CADA's Communication Clause (C.R.S. § 24–34–601(2)(a)) to prevent Smith from posting the following statement on her website or from making **materially similar statements** on her website and directly to prospective clients:
>
>> I firmly believe that God is calling me to this work. Why? I am personally convicted that He wants me – during these uncertain times for those who believe in biblical marriage – to shine His light and not stay silent. He is calling me to stand up for my faith, to explain His true story about marriage, and to use the talents and business He gave me to publicly proclaim and celebrate His design for marriage as a life-long union between one man and one woman.
>>
>> These same religious convictions that motivate me also prevent me from creating websites promoting and celebrating ideas or messages that violate my beliefs. So I will not be able to create websites for same-sex marriages or any other marriage that is not between one man and one woman. Doing that would compromise my Christian witness and tell a story about marriage that contradicts God's true story of marriage – the very story He is calling me to promote.

Docket No. 119-1 at 2, ¶¶ 1-2 (emphasis added). Defendants propose the following language for the declaratory judgments:

> The Court declares that the First Amendment's Free Speech Clause prohibits Colorado from enforcing the Accommodation Clause (C.R.S. § 24–34– 601(2)(a)) of Colorado's Anti-Discrimination Act ("CADA") to

13

compel Smith to create custom websites celebrating or depicting same-sex weddings or **otherwise create or depict original, expressive, graphic or website designs inconsistent with her beliefs regarding same-sex marriage**.

The Court declares that the First Amendment's Free Speech Clause prohibits Colorado from enforcing CADA's Communication Clause (C.R.S. § 24–34– 601(2)(a)) to prevent Smith from posting the following statement on her website or from **making materially similar statements regarding the effect of her beliefs on the expressive, graphic or website design services she offers on her website** and directly to prospective clients:

> I firmly believe that God is calling me to this work.  Why?  I am personally convicted that He wants me – during these uncertain times for those who believe in biblical marriage – to shine His light and not stay silent.  He is calling me to stand up for my faith, to explain His true story about marriage, and to use the talents and business He gave me to publicly proclaim and celebrate His design for marriage as a life-long union between one man and one woman.
>
> These same religious convictions that motivate me also prevent me from creating websites promoting and celebrating ideas or messages that violate my beliefs.  So I will not be able to create websites for same-sex marriages or any other marriage that is not between one man and one woman.  Doing that would compromise my Christian witness and tell a story about marriage that contradicts God's true story of marriage – the very story He is calling me to promote.

Docket No. 120-1 at 2-3, ¶¶ 1-2 (emphasis added).

The final judgment will adopt defendants' proposed language with regard to the Accommodation Clause and plaintiffs' proposed language with regard to the Communication Clause.

### C.  Prevailing Party and Attorney's Fees Language

Plaintiffs propose the following language declaring plaintiffs the prevailing party and awarding attorney's fees:

14

> Smith is the prevailing party in this action under 42 U.S.C. § 1988(b). She and her counsel are entitled to recover their reasonable attorney's fees, costs, and expenses for work done at all stages of this litigation.

Docket No. 119-1 at 3, ¶ 4. Defendants propose the following language:

> Smith is the prevailing party in this action under 42 U.S.C. § 1988(b) **as to her as-applied First Amendment claim for which certiorari was granted**. She and her counsel are entitled to recover their reasonable attorney's fees, costs, and expenses **for work done pertaining to that claim** at all stages of this litigation.

Docket No. 120-1 at 3-4, ¶ 4 (emphasis added).

Section 1988(b) of Title 42 permits the "prevailing party, other than the United States" in a civil rights action to receive an award of reasonable attorney's fees. 42 U.S.C. § 1988(b). The Supreme Court has held that "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Nadueau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)). The Tenth Circuit has observed that "many civil rights suits involve multiple claims based on 'a common core of facts or related legal theories,'" holding that, in "such cases, it is inappropriate for a district court to evaluate the individual claims as though they were discrete and severable." *Robinson v. City of Edmond*, 160 F.3d 1275, 1283 (10th Cir. 1998) (quoting *Hensley*, 461 U.S. at 435) (alteration omitted). Accordingly, if the court's disposition on one of plaintiff's claims "achieved plaintiff['s] primary purpose in bringing . . . litigation," the plaintiff is entitled to attorneys fees related to the successful claim and to any unsuccessful claims that put forth alternative arguments to achieve the same end as the successful claim. *Jane L. v. Bangerter*, 61 F.3d 1505, 1512 (10th Cir. 1995) (holding that plaintiffs were entitled to

15

attorneys fees related to their unsuccessful claims because the "plaintiffs' successful due process claim was related to their unsuccessful alternative claims made in support of the argument against the same statutory provision"); *see also Robinson*, 160 F.3d at 1283 ("when a plaintiff achieves the principal goal of her lawsuit, lack of success on some of her interrelated claims may not be used as a basis for reducing the plaintiff's fee award"). Plaintiffs "can argue alternative legal theories without being penalized at the attorneys fees stage if the court only adopts one of the theories." *Jane L.*, 61 F.3d at 1512.

Here, each of plaintiffs' claims presents an alternative legal theory designed to challenge the constitutionality of CADA's Accommodation Clause and Communication Clause as applied to plaintiffs. See Docket No. 1 at 29-59, ¶¶ 205-399. Plaintiffs' complaint seeks injunctions preventing defendants from enforcing the Communications Clause and Accommodations Clause against them and declaratory judgments that these clauses are unconstitutional. *See id.* at 59-60, ¶¶ 1-4. Plaintiffs argue that, "[w]ith the entry of judgment, [plaintiffs] will obtain the relief [they] sought—to prevent Colorado from compelling [Ms. Smith to] speak views she disagrees with and from restricting her speech explaining her beliefs." Docket No. 119 at 5. The Court agrees. The Court finds that plaintiffs' success on their first cause of action precludes the reduction of attorneys fees because plaintiffs' other causes of action were dismissed. *See Robinson*, 160 F.3d at 1283; *Bangerter*, 61 F.3d at 1512. The Court's amended final judgment will state that plaintiffs are the prevailing parties in this action and are therefore entitled to attorney's fees and costs.

## III. CONCLUSION

Therefore, it is

**ORDERED** that the Opinion and Order Granting Summary Judgment [Docket No. 79] and the Final Judgment [Docket No. 80] are **VACATED** as to plaintiffs' first cause of action.  It is further

**ORDERED** that the Clerk of the Court shall amend the judgment entered on September 26, 2019 [Docket No. 80] in accordance with this order.  It is further

**ORDERED** that the amended final judgment shall include the following language:

> It is ORDERED that plaintiffs are the prevailing parties in this action under 42 U.S.C. § 1988(b).  Plaintiffs and their counsel are entitled to recover their reasonable attorney's fees, costs, and expenses for work related to litigation before the district court.  It is further
>
> ORDERED that the First Amendment's Free Speech Clause prohibits Colorado from enforcing the Accommodation Clause of Colorado's Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. § 24-34- 601(2)(a)), to compel plaintiffs to create custom websites celebrating or depicting same-sex weddings or otherwise create or depict original, expressive, graphic or website designs inconsistent with her beliefs regarding same-sex marriage.  It is further
>
> ORDERED that the First Amendment's Free Speech Clause prohibits Colorado from enforcing CADA's Communication Clause to prevent plaintiffs from posting the following statement on her website or from making materially similar statements on her website and directly to prospective clients:
>
>> I firmly believe that God is calling me to this work. Why? I am personally convicted that He wants me – during these uncertain times for those who believe in biblical marriage – to shine His light and not stay silent. He is calling me to stand up for my faith, to explain His true story about marriage, and to use the talents and business He gave me to publicly proclaim and celebrate His design for marriage as a life-long union between one man and one woman.
>>
>> These same religious convictions that motivate me also prevent me from creating websites promoting and

17

> celebrating ideas or messages that violate my beliefs. So I will not be able to create websites for same-sex marriages or any other marriage that is not between one man and one woman. Doing that would compromise my Christian witness and tell a story about marriage that contradicts God's true story of marriage – the very story He is calling me to promote.

It is further

ORDERED that defendants, their officers, agents, servants, employees, attorneys, and those acting in active concert or participation with them who receive actual notice of this order are permanently enjoined from enforcing:

> a. CADA's Accommodations Clause to compel plaintiffs to create custom websites celebrating or depicting same-sex weddings or otherwise to create or depict original, expressive, graphic or website designs inconsistent with her beliefs regarding same-sex marriage; and
> b. CADA's Communication Clause to prevent plaintiffs from posting the above statement on her website and from making materially similar statements on her website and directly to prospective clients.

It is further

**ORDERED** that plaintiffs may file a bill of costs and motion for attorney's fees in compliance with D.C.COLO.LCivR 54.3 within 90 days of the entry of final judgment.  It is further

**ORDERED** that the Court will retain jurisdiction over this action for purposes of determining and entering an award for attorney's fees and costs.  It is further

**ORDERED** that plaintiffs' Motion for Attorneys' Fees and Costs and for an Extension of Filing Deadline [Docket No. 96] is **DENIED** as moot.

DATED March 26, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

19