## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-02372-PAB

303 CREATIVE LLC, a limited liability company; and
LORIE SMITH,

     *Plaintiffs*,

vs.

AUBREY ELENIS, Director of the Colorado Civil Rights
Division, in her official capacity;
SERGIO RAUDEL CORDOVA,
CHARLES GARCIA,
GETA ASFAW,
MAYUKO FIEWEGER, and
DANIEL S. WARD, as members of the Colorado Civil Rights
Commission, in their official capacities, and
PHILIP J. WEISER, Colorado Attorney General,
in his official capacity,

     *Defendants*.

---

## DECLARATION OF JONATHAN A. SCRUGGS IN SUPPORT OF
## MOTION FOR ATTORNEYS' FEES AND COSTS

---

I, Jonathan A. Scruggs, under penalty of perjury, declare as follows:

1.     I am over the age of 18 and competent to testify to the matters discussed in this Declaration.

2.     I am co-counsel for Lorie Smith and 303 Creative, LLC (collectively, Smith). Before the U.S. District Court for the District of Colorado, the U.S. Court of Appeals for the Tenth Circuit, and the U.S. Supreme Court, I worked on almost all

matters of this case, such as researching the legal issues, reviewing and editing the complaint, examining and preparing briefs filed before this court and the Tenth Circuit, reviewing and drafting the petition for a writ of certiorari to the Supreme Court, reviewing and drafting briefs at the merit stage before the Supreme Court, preparing lead counsel Kristen Waggoner for oral arguments before the Tenth Circuit and the Supreme Court, and working on Plaintiffs' Motion for Attorneys' Fees and Costs.

3.      In support of this Motion for Attorneys' Fees and Costs, I have attached the following exhibits to this declaration:

- **Exhibit 1** contains individual declarations from every attorney and staff member from Alliance Defending Freedom (ADF) seeking fees and costs in this case.

- **Exhibit 2** contains contemporaneous time entries for which Smith seeks recovery of attorneys' and staff members' fees, including the time billed, the time reduced, and the time sought for each task. Smith does not waive an applicable attorney-client privilege or work product protection by disclosing these narratives.

- **Exhibit 3** lists out-of-pocket expenses of the type normally billed to clients.

- **Exhibit 4** contains demonstrative charts summarizing each attorneys' and staff members' hours, rates, and other information. These summaries were created based on the information contained in Exhibits 1–3 and 5 attached hereto, and the other declarations filed with this Motion for Attorneys' Fees and Costs.

- **Exhibit 5** contains a declaration filed by Eric R. Olson, Colorado's former Solicitor General, in another case in this district seeking attorneys' fees.

4.  In total, Smith seeks payment of $1,959,898 for fees for 2,174.4 hours of work reasonably expended by attorneys and staff ADF and Michael Francisco.

5.  Smith also seeks payment of $10,083.86 in costs reasonably incurred during this litigation.

### Biographical Background

6.  I graduated *summa cum laude* from Vanderbilt University with a Bachelor of Arts in 2003, and from Harvard Law School with a J.D. in 2006.

7.  Since graduating from law school, I have only worked for ADF, a non-profit public interest law firm that specializes in free-speech and religious-liberty litigation. Over the course of my legal career, I have learned from and litigated alongside experts in these constitutional issues.

8.  For my entire career, I have practiced almost exclusively in the areas of civil rights, specializing in free-speech and religious-liberty matters. I practice in state and federal courts across the country and have served as lead counsel or assisted in litigation in federal district and appellate courts, state courts and state supreme courts, and the U.S. Supreme Court.

9.  I am admitted to practice in the states of Arizona and Tennessee; the U.S. Supreme Court; and numerous federal courts of appeal and district courts. I have made several pro hac vice appearances in other federal district courts ranging from California to Florida. I am a member of good standing in the bars and courts in which I have been admitted.

10.     I have argued free-speech and religious-liberty cases before the Fifth, Sixth, Seventh, Ninth, and Tenth Circuit Courts of Appeal, the Arizona Supreme Court, and numerous federal district courts nationwide.

11.     For the last several years, I have served as the Director of the Center for Conscience Initiatives at ADF. In this role, I specialize in and am responsible for ADF's litigation with respect to conscience matters and oversee a team of attorneys and staff. As Director of the Center for Conscience Initiatives, I have been heavily involved in litigating cases like this one, where public-accommodations laws infringe on the constitutional freedoms of artists and other speakers.

12.     For example, in addition to this case, I have served as either lead counsel or co-counsel in the following cases involving the free-speech and religious-liberty rights of artists or other speakers. *See Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*, 584 U.S. 617 (2018); *Telescope Media Group v. Lucero*, 936 F.3d 740 (8th Cir. 2019); *Amy Lynn Photography Studio, LLC v. City of Madison*, No. 2017 CV 000555 (Dane Cnty. Ct. Aug. 23, 2017) (order granting declaratory judgment); *Knapp v. City of Coeur d'Alene*, 172 F. Supp. 3d 1118 (D. Idaho 2016); *ThinkRight Strategies, LLC v. City of Ann Arbor*, No. 2:19-cv-12233 (E.D. Mich. stipulated dismissal filed Sept. 5, 2019); *State v. Arlene's Flowers, Inc.*, No. 13-2-00871-5, 2015 WL 720213 (Wash. Super. Feb. 18, 2015); *Masterpiece Cakeshop Inc. v. Elenis*, No. 1:18-CV-02074 (D. Colo. 2019); *Brush & Nib Studio, LC v. City of Phoenix*, 448 P.3d 890 (Ariz. 2019); *Covenant Weddings LLC v. Cuyahoga Cnty.*, J. Entry, ECF Doc No. 23, PageID.628 (Oct. 27, 2020); *Emilee Carpenter, LLC v. James*, 575 F. Supp. 3d 353 (W.D.N.Y. 2021); *Emilee Carpenter, LLC v. James*, 2024 WL 3381841 (2d Cir. July 12, 2024); *Updegrove v. Herring*, No. 1:20-CV-1141, 2021 WL 1206805 (E.D. Va. Mar. 30, 2021); *Chelsey Nelson Photography, LLC v.*

*Louisville/Jefferson Cnty. Metro Gov't*, 624 F. Supp. 3d 761 (W.D. Ky. 2022); *Chelsey Nelson v. Louisville-Jefferson Cnty. Metro Gov't*, No. 22-5884, 2024 WL 1638860 (6th Cir. Apr. 16, 2024); *Green v. Miss United States of Am., LLC*, 52 F.4th 773 (9th Cir. 2022); *Scardina v. Masterpiece Cakeshop Inc.*, 2023 COA 8 (2023), *cert. granted in part*, No. 23SC116, 2023 WL 6542667 (Colo. Oct. 3, 2023).

13.     Ten of these cases have involved pre-enforcement challenges like this case. I have litigated many other pre-enforcement challenges raising free-speech and free-exercise claims and have developed expertise in these types of lawsuits.

14.     I have also appeared at speaking events and engaged in debates at bar conventions, colleges, and law schools across the country about these cases and the legal issues they raise. *See, e.g.*, Panelist, *Compelled Speech or Public Accommodation?*, Federalist Society, National Teleforum, October 2019; Panelist, 2019 Arizona State Bar Convention Seminar, *Masterpiece Cakeshop and Brush & Nib: Where Do We Go From Here*, June 28, 2019; Panelist, Federal Bar Association of the Western District of Washington Annual Dinner/CLE, *Public Accommodation Law and the Constitution*, December 6, 2017; Panelist, UC Hastings School of Law, Appellate Advocacy Community Panel, *Arlene's Flowers v. Washington*, September 19, 2018; Panelist, Glendale Community College Critical Dialogues, *Religious Freedom and Civil Rights: Balancing Competing Claims in the Courts and the Public Square*, February 26, 2019; Panelist, University of Washington School of Law, *Law and Religion Symposium*, October 13, 2017; Panelist, *A Celebration of Free Speech: Discussing Oral Arguments in 303 Creative v. Elenis*, Heritage Foundation, December 5, 2022. I have also spoken at law schools across the country about the significance of the *303 Creative* decision on free speech and religious liberty jurisprudence. I have spoken at Vanderbilt, Arizona State, and William and

Mary Law School's Federalist Society chapters. And given my expertise, I have also debated law professors who are also free speech and religious liberty experts. At a Federalist Society event, *303 Creative, Masterpiece Cakeshop, and the Fate of Free Exercise for Wedding Vendors*, I debated these professors about how the creative professional cases should be analyzed under the Free Speech and Free Exercise Clauses.

15.     In 2023, I became the Vice President of Litigation Strategies in addition to my role as Director of the Center for Conscience Initiatives. In this role, I work with the heads of ADF's other litigation teams to develop forward-thinking strategies to protect free speech and religious liberty and to advance ADF's different strategic goals across all the different litigation teams at ADF.

16.     I have worked on and tracked the legal issues involved in this case since 2014. To my knowledge, no other law firm or legal organization in America has worked on as many cases involving the precise legal issues at stake in this case—compelled speech and religious-liberty claims raised by of artists threatened by particular applications of public-accommodations laws.

17.     To my knowledge, no other law firm or legal organization in America has comparable experience, knowledge, specialization, or expertise in litigating the exact issue involved in this case.

18.     To my knowledge, no other practitioner in the country has worked on as many cases involving the precise legal issues at stake in this case as I have or as have most of ADF's attorneys and non-attorneys who are seeking fees in this case.

19.     In fact, to my knowledge, only three other firms have litigated cases involving artists raising free-speech defenses against applications of public-accommodations laws: First Liberty in *Klein v. Oregon Bureau of Lab. & Indus.*, 143

S. Ct. 2686, 2687 (2023) (remanding to the Court of Appeals of Oregon in light of *303 Creative*) and Freedom of Conscience Defense Fund in *Dep't of Fair Emp. & Hous. v. Superior Ct. of Kern Cnty.*, 269 Cal. Rptr. 3d 9, 43 (Cal. App. 5th 2020). Neither of these cases originated in the Denver market nor did they involve a pre-enforcement lawsuit raising difficult standing issues.

### Legal Background: *303 Creative* and Results Achieved

20.     For most attorneys, *303 Creative* would have been an undesirable case because it lacked a guaranteed fee, involved difficult legal issues where success was uncertain, and involved controversial social issues. The difficulty of this appeal, in light of the adverse rulings by the district court and the Tenth Circuit and the unfavorable precedent established by other courts in similar cases, would have deterred most—if not all—fee-dependent litigators from accepting it.

21.     In fact, when I began litigating this kind of case over a decade ago, there was little caselaw directly addressing the issue of whether public-accommodations laws could be used to coerce an artist operating a for-profit business to create expression that violated his or her beliefs.

22.     ADF started representing artists in the public-accommodations context in 2006 with *Elane Photography, LLC v. Willock*. There ADF represented Elane Photography—a photography studio that photographed weddings—and its owners, Jonathan and Elaine Huguenin. In 2008, the Human Rights Commission of the State of New Mexico ruled that the photography studio violated New Mexico's public-accommodations law after declining to create photographs celebrating a view of marriage that violated its owners' religious beliefs. The Commission ordered the photographers to pay more than $6,000 in fines and imposed other penalties. *See Willock v. Elane Photography, LLC*, HRD No. 06-12-20-0685 (Apr. 9, 2008),

https://dm1l19z832j5m.cloudfront.net/2024-02/Willock-v-Elane-Photography-2008-04-09-NMHRC-Decision.pdf.

23.     After seven years of litigation, the New Mexico Supreme Court ruled that New Mexico's public-accommodations law did not violate Elane Photography's First Amendment freedoms when the law applied in such a way as to compel Elane Photography to create photographs celebrating a view of marriage that violated its owners' beliefs. *Elane Photography, LLC v. Willock*, 309 P.3d 53 (N.M. 2013).

24.     ADF filed a petition for certiorari with the U.S. Supreme Court in 2014, but that petition was denied. *Elane Photography, LLC v. Willock*, 572 U.S. 1046 (2014).

25.     From 2008 onwards, most administrative agencies and courts ruled that public-accommodations laws could compel artists who operated public accommodations to create custom expression that violated the artists' beliefs. *See id.*; *Lexington-Fayette Cnty. Hum. Rts. Comm'n v. Hands on Originals, Inc.*, HRC No. 03-12-3135 (Oct. 6, 2014); *State v. Arlene's Flowers, Inc.*, No. 13-2-00871-5, 2015 WL 720213 (Wash. Super. Feb. 18, 2015); *State v. Arlene's Flowers, Inc.*, 389 P.3d 543, 548 (Wash. 2017), *vacated and remanded*, 138 S. Ct. 2671, 2671–72 (2018); *State v. Arlene's Flowers, Inc.*, 441 P.3d 1203 (Wash. 2019); *Arlene's Flowers, Inc. v. Washington*, 141 S. Ct. 2884, *reh'g dismissed*, 142 S. Ct. 521 (2021); *Telescope Media Grp. v. Lindsey*, 271 F. Supp. 3d 1090, 1097 (D. Minn. 2017), *rev'd in part and remanded sub nom.*, *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 747 (8th Cir. 2019); *Klein v. Or. Bureau of Labor & Indus.*, 410 P.3d 1051, 1056 (Or. Ct. App. 2017), *review denied*, 434 P.3d 25 (Or. 2018), and *cert. granted*, *judgment vacated*, 139 S. Ct. 2713 (2019); *Craig v. Masterpiece Cakeshop, Inc.*, CR 2013-0008 (Colo. Civil Rights Comm'n Dec. 6, 2013); *Craig v. Masterpiece Cakeshop, Inc.*, 370 P.3d

272, 276 (Colo. App. 2015); *Masterpiece Cakeshop, Inc. v. Colorado C.R. Comm'n*, No. 15SC738, 2016 WL 1645027 (Colo. Apr. 25, 2016) (denying petition for certiorari); *Scardina v. Masterpiece Cakeshop Inc.*, No. 19CV32214, 2020 WL 13654660 (Colo. Dist. Ct. Apr. 29, 2020); *Scardina v. Masterpiece Cakeshop Inc.*, No. 19CV32214, 2020 WL 13654661 (Colo. Dist. Ct. July 08, 2020); *Scardina v. Masterpiece Cakeshop Inc*, No. 19CV32214, 2020 WL 13654659 (Colo. Dist. Ct. Dec. 14, 2020); *Scardina v. Masterpiece Cakeshop Inc*, No. 19CV32214, 2021 WL 10312171 (Colo. Dist. Ct. Mar. 04, 2021); *Scardina v. Masterpiece Cakeshop Inc.*, 528 P.3d 926 (Colo. App. 2023); *Emilee Carpenter, LLC v. James*, 575 F. Supp. 3d 353 (W.D.N.Y. 2021).

26. Based on these cases and other precedent, when Smith filed this case in 2016, the likelihood of success was far from certain. Colorado itself argued that Smith's case lacked precedent and was almost certain to fail:

   a. "The past couple of years, several plaintiffs have filed near identical lawsuits around the country, in an effort to create an issue where none exists. In each instance, they have failed." Defs'. Resp. to Pls.' Mot. for Prelim. Inj. at 6–8, ECF No. 6, *303 Creative v. Elenis*, 405 F. Supp. 3d 907 (D. Colo. 2019) (No. 16-cv-02372-MSK-CBS).

   b. "In a line of cases, the United States Supreme Court has ruled that public accommodation laws are generally constitutional." Appellees' Br. at 16, *303 Creative v. Elenis*, 746 F. App'x 709 (10th Cir. 2018) (No. 17-1344).

   c. "This case is but one of many that the Alliance Defending Freedom has filed across the country seeking to challenge public accommodation laws as unconstitutional because they require

businesses to provide equal treatment to homosexuals. Time and

again, these challenges have been rejected." *Id.* at 17–18.

d.   "Appellants are not likely to succeed on the merits because a

number of courts have rejected near identical First Amendment

challenges finding that public accommodation laws trump business

owner's right to refuse wedding services to same-sex couples." *Id.* at

50.

e.   "Indeed, the Supreme Court has never held that the First

Amendment requires the exemption of commercial actors from anti-

discrimination laws … [a]nd in contexts very similar to the case at

hand, the New Mexico and Washington Supreme Courts, among

other courts, have rightly held that the First Amendment poses no

bar to the government's application of anti-discrimination laws to

merchants offering wedding-related services to the public.

Appellees' Answer Br. at 48, *303 Creative LLC v. Elenis*, 6 F.4th

1160, 1168, 1190 (10th Cir. 2021) (No. 19-1413).

f.   "When the Washington Supreme Court considered this very same

argument—there in relation to florists—it 'emphatically' rejected it,

holding that public accommodations laws "serve a broader societal

purpose: eradicating barriers to the equal treatment of all citizens

in the commercial marketplace." *Id.* at 67.

g.   "As an unbroken line of this Court's decisions makes clear, public

accommodations laws permissibly regulate conduct when they

require equal access to goods and services, even where the

businesses engage in activities protected by the First Amendment."

Br. on the Merits for Resp'ts at 13, *303 Creative v. Elenis*, 600 U.S. 570 (2023) (No. 21-476).

h. "Finding that laws preventing sales discrimination are targeted at the suppression of ideas would be a profound departure from this Court's precedents." *Id.* at 25.

i. "[T]his Court has consistently upheld the application of public accommodations laws to companies that provide commercial goods and services." Br. in Opp'n for Resp't's at 28, *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023) (No. 21-476), https://bit.ly/3zHsQ2B.

j. "As this Court has made clear, antidiscrimination laws appropriately apply to prohibit commercial actors from discriminating in commercial transactions, even though those commercial actors remain free to express their view on such laws in public discourse." *Id.*

k. "The Act regulates ordinary commercial conduct—sales discrimination—which this Court has never found the First Amendment to embrace." Br. on the Merits for Resp't's at 1, *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023) (No. 21-476), https://bit.ly/4cZvY8q

27. The United States Office of the Solicitor General made similar statements when that office became involved in the litigation at the Supreme Court. For example, that office argued:

a. "Public accommodations laws thus sometimes incidentally require owners of expressive businesses to act in a manner inconsistent with their deeply held beliefs. But under this Court's precedents,

those incidental burdens are a permissible—indeed,
uncontroversial—result of a decision to offer expressive goods or
services to the public." Br. for the United States as Amicus Curiae
Supp. Respt's at 12–13, *303 Creative LLC v. Elenis*, 600 U.S. 570
(2023) (No. 21-476), https://bit.ly/4fhkQG6.

    b.   "This Court's precedents do not support petitioners' broad pre-
enforcement challenge to the Accommodation Clause." *Id.* at 6.

28.    When Smith filed her case in 2016, Colorado courts had already ruled
that Colorado's Anti-Discrimination Act (CADA)—the same law Smith challenged—
could be applied to compel the creation of custom expression. In 2012, the Colorado
Civil Rights Commission found that Jack Phillips and Masterpiece Cakeshop
(Phillips) violated CADA when Phillips, a cake artist in Colorado, declined to create
a custom wedding cake celebrating a same-sex wedding. ADF represented Phillips
and Masterpiece Cakeshop.

29.    The Commission held that under Colorado's law "preparing a cake is
not speech." *Craig v. Masterpiece Cakeshop, Inc.*, CR 2013-0008 (Colo. Civil Rights
Comm'n Dec. 6, 2013). Phillips appealed his case to the Colorado Court of Appeals,
which held that the Commission's order compelling Phillips to create cakes
celebrating same-sex weddings "does not force [him] to engage in compelled
expressive conduct." *Craig v. Masterpiece Cakeshop, Inc.*, 370 P.3d 272, 287–88
(Colo. App. 2015). The Colorado Supreme Court declined to hear the case.
*Masterpiece Cakeshop, Inc. v. Colo. C.R. Comm'n*, No. 15SC738, 2016 WL 1645027
(Colo. Apr. 25, 2016).

30.    In July 2016, ADF appealed Phillips' case to the Supreme Court. Smith
filed her case in September 2016. So at the time she commenced this action, the

prevailing rule in Colorado required artists to create messages reflecting a view of marriage that violates their beliefs. *See Craig*, 370 P.3d at 283.

31.     In June 2018—nearly two years after Smith filed her case—the Supreme Court ruled in Phillips' favor and vacated the lower court's judgment. The Supreme Court held that Colorado demonstrated "a clear and impermissible hostility" toward Phillips' "sincere religious beliefs that motivated his objection." *Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 584 U.S. 617, 634 (2018). But the Supreme Court did not specifically resolve the free-speech question of whether CADA can apply to compel artists to create custom expression that violates their beliefs. *Id.* at 624.

32.     But by then, the Honorable Marcia Krieger—who was then presiding over this case—had dismissed Smith's challenge to CADA's Accommodation Clause for lack of standing and denied Smith's request for a preliminary injunction. *See 303 Creative LLC v. Elenis*, No. 16-cv-02372-MSK-CBS, 2017 WL 4331065 (D. Colo. Sept. 1, 2017).

33.     Smith appealed that decision to the Tenth Circuit. That court remanded the case to the district court. *303 Creative LLC v. Elenis*, 746 F. App'x 709 (10th Cir. 2018). In May 2019, Judge Krieger denied Smith's summary-judgment motion as to CADA's Publication Clause after "assum[ing] the constitutionality" of the Accommodations Clause. *303 Creative LLC v. Elenis*, 385 F. Supp. 3d 1147, 1153 (D. Colo. 2019). The court also issued a show-cause order for Smith to explain why Colorado should not be entitled to summary judgment. *Id.* at 1164.

34.     Finally, in September 2019, Judge Krieger dismissed Smith's case after holding that Colorado was entitled to summary judgment. *303 Creative LLC v. Elenis*, 405 F. Supp. 3d 907, 909 (D. Colo. 2019).

35.     Around this same time, though, the legal landscape began to change. Courts began to hold that public-accommodations laws could not be applied to artists to compel them to create custom expression that violates their beliefs. *See Telescope Media Group v. Lucero*, 936 F.3d 740 (8th Cir. 2019); *Brush & Nib Studio, LC v. City of Phoenix*, 448 P.3d 890 (Ariz. 2019); *Chelsey Nelson Photography LLC v. Louisville/Jefferson Cnty. Metro Gov't*, 556 F. Supp. 3d 657 (W.D. Ky. 2021); *Chelsey Nelson Photography, LLC v. Louisville/Jefferson Cnty. Metro Gov't*, 624 F. Supp. 3d 761 (W.D. Ky. 2022).

36.     I was lead counsel or co-counsel in each of these cases.

37.     In October 2019, Smith appealed her case to the Tenth Circuit for a second time. When she appealed, courts across the country disagreed about the proper application of public-accommodations laws to artists' custom expression.

38.     The Tenth Circuit overturned Judge Krieger's decision holding that Smith lacked standing. The Tenth Circuit held that Smith had standing to bring her case because Colorado's enforcement of CADA against her was "sufficiently imminent." *303 Creative LLC v. Elenis*, 6 F.4th 1160, 1168, 1173 (10th Cir. 2021); *see id.* at 1175 ("[W]e conclude that [Smith has] established Article III standing.").

39.     The Tenth Circuit also held that CADA compelled Smith's speech. *Id.* at 1176–78.

40.     But the Tenth Circuit held that CADA could nonetheless be applied to compel Smith's speech under strict scrutiny. *Id.* at 1178–83.

14

41.     Because the Tenth Circuit ruled against Smith, the only way for her to obtain relief was to file a petition for a writ of certiorari with the U.S. Supreme Court.

42.     By the time Smith's case reached the Supreme Court, the caselaw on creative professional cases like this one continued to be hotly contested across the country.

43.     Many scholars and commentators noted that cases like this one involved difficult, hotly contested, and unresolved issues of constitutional law.[1] Scholars have repeatedly written on these issues and arrived at different conclusions about how these cases should be resolved.[2] Scholars had also commented about how—in their views—Smith's arguments were unprecedented.

   a.  David Cole, the national legal director of the ACLU, wrote an article in the New York Times on why he thought Smith would lose at the Supreme Court. He wrote that Colorado's public-accommodations law does not "trigger serious First Amendment concerns because [it] treat[s] all businesses equally." David Cole, *The Supreme Court Is About to Ask the Wrong Question About the First Amendment*, The New York Times (Dec. 5, 2022), bit.ly/3ESB0EX.

---

[1] For example, the U.S. Supreme Court fielded nearly 100 amicus briefs on these issues in *Masterpiece Cakeshop. See generally* docket for *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, https://www.supremecourt.gov/docket/docketfiles/html/public/16-111.html.

[2] *Compare* Eugene Volokh, The Law of Compelled Speech, 97 Tex. L. Rev. 355, 382–83 (2018) (supporting Smith's position), *with* Br. of Am. Unity Fund, et al. as Amici Curiae Supp. Resp'ts, *Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 584 U.S. 617 (2018) (No. 16-111), 2017 WL 4918194 (arguing against a baker's claims).

b. University of Pennsylvania law professor Tobias Wolff expressed his opinion that Smith's case was a losing proposition. He said, "The only thing that the government is doing is establishing a neutral set of rules that everybody has to play by" and the compelled speech doctrine has not been applied in those circumstances. Nina Totenberg, *Supreme Court hears clash between LGBTQ and business owners' rights*, npr (Dec. 5. 2022), https://bit.ly/3t7NANP.

c. Andrew Koppelman, Northwestern Law School Professor and author, predicted that the Supreme Court would find for Smith which "would be a significant innovation in the law." Andrew Koppelman, *The Dangerous 303 Creative Case*, Canopy Forum (June 15, 2022), https://bit.ly/49dheBX. He cited to the New Mexico Supreme Court in *Elane Photography* where the court said, "We decline to draw the line between 'creative' or 'expressive' professions and all others. . . . Courts cannot be in the business of deciding which businesses are sufficiently artistic to warrant exemptions from antidiscrimination laws." *Id*.

44.    These conflicts led many organizations, individuals, 137 members of Congress, and about 80 First Amendment scholars to submit *amicus curiae* briefs opposing Smith's legal position. In total, 27 amicus briefs were filed to oppose Smith's legal position at the Supreme Court.[3] Some of these briefs were signed by prominent scholars such as Dean Erwin Chemerinsky and Jesse J. Choper at the

---

[3] There were 11 amicus briefs filed at the 10th Circuit discussing the parties' arguments, both in support and opposing Smith's arguments.

University of California,  Berkeley School of Law; Robert Post, Sterling Professor of Law and former Dean of Yale Law School; Geoffrey R. Stone, Edward H. Levi Distinguished Service Professor and former Provost of the University of Chicago Law School; Professor Burt Neuborne, Norman Dorsen Professor of Civil Liberties Emeritus at New York University Law School;[4] Dr. Ilan H. Meyer, Distinguished Senior Scholar for Public Policy at the Williams Institute, UCLA School of Law, and Professor Emeritus of Sociomedical Sciences at Columbia University;[5] and Professor Joseph William Singer, Bussey Professor of Law at Harvard Law School.[6] Other large organizations filed amicus briefs opposing Smith, including the ACLU,[7] Lambda Legal,[8] and the American Bar Association.[9] Many of these briefs were drafted and filed by major law firms and prominent attorneys throughout the country, such as Covington & Burling LLP,[10] Hogan Lovells US, LLP,[11] McDermott

---

[4] Br. of First Amend. Scholars as Amici Curiae Supp. Resp'ts, *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023) (No. 21-476), 2022 WL 3648198.

[5] Br. for Ilan H. Meyer, PhD, et al. as Amici Curiae Supp. Resp'ts, 2022 WL 3757343.

[6] Br. of Pub. Accommodations Law Scholars as Amici Curiae Supp. Resp'ts, 2022 WL 3648218.

[7] Br. for Amici Curiae Am. Civil Liberties Union, et al. Supp. Resp'ts, 2022 WL 3648201.

[8] Br. for Amici Curiae GLBTQ Legal Advoc. & Defs., et al. Supp. Resp'ts, 2022 WL 3648217.

[9] Br. of Amicus Curiae Am. Bar Ass'n Supp. Resp't, 2022 WL 3648205.

[10] Br. of Nat'l Women's Law Ctr., et al. as Amici Curiae Supp. Resp'ts, 2022 WL 3598262.

[11] Br. of 30 Religious, Civil Rights, & Grassroots Orgs. as Amici Curiae Supp. Resp'ts, 2022 WL 3718522.

Will & Emery LLP,[12] Latham & Watkins LLP,[13] White & Case LLP,[14] Cravath, Swaine & Moore,[15] and Donald B. Verrilli, Jr., a former Solicitor General of the United States.[16]

45.     These 27 amicus briefs raised a variety of different legal issues. The Freedom from Religion Foundation contested Smith's standing.[17] The New York State Bar Association raised the history and common law of public accommodations laws in various states.[18] Tanenbaum Center for Interreligious Understanding researched the history of public-accommodations laws.[19] Ilan H. Meyer and other social scientists wrote an amicus brief discussing minority stress theory and its impact on the health and relationship quality of LGB people.[20] Other briefs addressed a wide variety of additional issues.

46.     In addition, the United States Office of the Solicitor General filed an amicus brief in opposition to Smith[21] and moved to participate in oral arguments

---

[12] Br. of Lawyers' Comm. for Civil Rights Under Law, et al. as Amici Curiae Supp. Resp'ts, 2022 WL 3648179.
[13] Br. of the Modern Military Ass'n of Am., et al.as Amici Curiae Supp. Resp'ts., 2022 WL 3648376.
[14] Br. for Amici Curiae GLBTQ Legal Advocs. & Defs., et al. Supp. Resp'ts., s*upra* note 8.
[15] Br. of 137 Members of Congress as Amici Curiae Supp. Resp'ts, 2022 WL 3648230.
[16] Br. of Amicus Curiae Am. Bar Ass'n Supp. Resp'ts, *supra* note 9.
[17] Br. of Freedom From Religion Found., et al. as Amici Curiae Supp. Resp'ts, 2022 WL 3597180.
[18] Br. of N. Y. State Bar Ass'n as Amicus Curiae Supp. Resp'ts, 2022 WL 3598250.
[19] Br. for Amicus Curiae Tanenbaum Ctr. for Interreligious Understanding Supp. Resp'ts, 2022 WL 3691321.
[20] Br. for Ilan H. Meyer, PhD, et al. as Amici Curiae Supp. Resp'ts, *supra* note 5.
[21] Br. for U.S. as Amicus Curiae Supp. Resp'ts, 2022 WL 3648194.

before the Supreme Court. The Supreme Court granted her motion and her office
argued in support of Colorado.

47.     The presence of the Office of the Solicitor General significantly
increased the difficulty of this case. The office is often referred to as the "Tenth
Justice" because of its influence, prestige, and frequent appearance at the High
Court. *See* Seth P. Waxman, Office of the Solicitor General, *Presenting the Case of
the United States As It Should Be*,"https://www.justice.gov/osg/solicitor-general-
historical-context#N_6_ (June 1, 1998).

48.     After surveying Supreme Court cases from 1979 to 2007 in which the
Office of the Solicitor General participated in oral arguments, scholars found that
the office "enjoys a significant built-in advantage" in terms of their likelihood of
success as compared to attorneys who are not in that office. Ryan Black & Ryan
Owens, *A Built-In Advantage: The Office of the Solicitor General and the U.S.
Supreme Court*, 66 Pol. R. Quarterly 454, 455 (2012). That office is "tremendously
successful" before the Supreme Court, winning 62% of the time as a party and 66%
of the time as an amicus curiae during the Rehnquist Court era, 67% of the time
during the Burger Court era, and 59% of the time during the Warren Court era. *Id.*
at 455. Their findings showed "that attorneys who square off against the SG
[solicitor general]—even when they are nearly identical in all relevant aspects—
must work extra hard to achieve parity with the OSG [Office of the Solicitor
General] in the eyes of the Court." *Id.* These scholars compared "OSG lawyers
against otherwise identical lawyers in otherwise identical cases but who never
served in the OSG." *Id.* at 461. Controlling for other factors, these scholars found
that "attorneys from the OSG can expect a 0.13 increase in the probability that
their side will win the case. This 13% increase is attributable exclusively to the

OSG's participation in the case. That is, this probability boost occurs *even after* we have eliminated a host of competing explanations for why the OSG is so successful. That we recover any effect while accounting for these other plausible drivers of success speaks to the OSG's unique advantage." *Id.*

49.     This significant opposition required Smith to respond to Colorado's, the United States', and the amici arguments in her merits reply brief at the Supreme Court and be prepared to respond to these arguments at oral argument. In particular, the amicus briefs raised for the first time or expanded upon arguments made by Colorado and the United States. Those issues included the history of common-law public accommodations, religious freedom, minority-stress theory, other forms of psychological harm, other state's arguments as to their interests, standing questions, the unique interests of military servicemembers, law and economics theories, and many studies, reports, statistics, and other information raised in these briefs that were not addressed by Colorado or the United States.

50.     Numerous parties also filed amicus briefs supporting Smith's case. Although these briefs supported Smith's legal position, Smith nonetheless had to be prepared to address each of these briefs in her merits brief or during oral argument.

51.     In total, between the petition for review and the briefing on the merits, this case drew over 70 amicus briefs at the Supreme Court.

52.     Overcoming the lack of caselaw for over a decade and litigating these novel issues required expending more time than a case with fewer or simpler issues. The United States Supreme Court has recognized that difficult cases require more attorney time and effort to craft winning arguments. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

53.    Beyond the doctrinal problems related to free speech and religious liberty, this case also involved disputed and complex issues about standing, ripeness, the scope of relief, the distinction between facial and as-applied challenges, and the historical meaning of the First Amendment and public-accommodations laws. What's more, Smith's success required looking at the textual arguments related to the scope of the First Amendment, the legal arguments on the proper way to interpret the Constitution and analyze constitutional claims, and the various arguments, reports, statistics, and other information cited in the amicus briefs.

54.    Despite all these complexities and the listed difficulties, Smith won a resounding victory at the United States Supreme Court.

55.    ADF's high-quality advocacy was critical to this victory. The Supreme Court adopted many of Smith's legal arguments. To list just a few examples, the Supreme Court agreed with Smith's legal team that:

- her custom websites are protected as "pure speech," *303 Creative LLC v. Elenis*, 600 U.S. 570, 587 (2023); Br. for the Pet'rs at 19;

- the compelled speech doctrine applied to this case, *303 Creative LLC v. Elenis*, 600 U.S. 570, 588–89 (2023); Br. for the Pet'rs at 20;

- Smith objects to creating certain messages about marriage, but does not object to serving people because of their status—including those who identify as LGBT, *303 Creative LLC v. Elenis*, 600 U.S. 570, 594–95 (2023); Br. for the Pet'rs at 22;

- because the websites are pure speech, this case is distinguishable from cases applying the expressive conduct doctrine, *303 Creative LLC v. Elenis*, 600 U.S. 570, 587–590 (2023); Br. for the Pet'rs at 27;

- the government has no interest in compelling speech, *303 Creative LLC v. Elenis*, 600 U.S. 570, 592 (2023); Br. for the Pet'rs at 35.

### Reasonableness of Rate

56.     ADF is one of the leading public advocacy firms on religious-liberty and free-speech issues.[22] It has one of the most successful advocacy records at the United States Supreme Court with fifteen victories since 2011 (including the present case).[23]

57.     Without ADF's representation, our clients would likely not have had the means or recourse to vindicate their constitutional rights. As a non-profit organization, ADF represents its clients on a pro bono basis. Our clients do not pay for our services in court or the costs of litigation. But ADF executes a contingency agreement with its clients that allows ADF to recover any attorneys' fees awarded following a successful conclusion of the case.

---

[22] *See, e.g.* Adam Feldman, *Supreme Court All-Stars 2013–2017*, EMPIRICAL SCOTUS (Sept. 13, 2018), https://empiricalscotus.com/2018/09/13/supreme-courtall-stars-2013-2017/.

[23] *See 303 Creative LLC v. Elenis*, 600 U.S. 570 (2023); *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022); *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021) (representing Thomas More Law Center); *Uzuegbunam v. Preczewski*, 1592 U.S. 279 (2021); *March for Life Educ. and Def. Fund v. Cal.*, 141 S. Ct. 192 (2020); *Thompson v. Hebdon*, 589 U.S. 1 (2019); *Nat'l Inst. of Family & Life Advocates v. Becerra*, 585 U.S. 755 (2018); *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 584 U.S. 617 (2018); *Trinity Lutheran Church of Columbia v. Comer*, 582 U.S. 449 (2017); *Zubik v. Burwell*, 578 U.S. 403 (2016) (representing Geneva College and Southern Nazarene University in consolidated cases); *Reed v. Town of Gilbert*, 576 U.S. 155 (2015); *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014) (representing Conestoga Wood Specialties Corporation); *Town of Greece, N.Y. v. Galloway*, 572 U.S. 565 (2014); *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125 (2011).

58.     The pro bono representation of our clients and the national scope of our practice mean that ADF does not currently have internal billing rates. ADF determines its rates for attorney's fees by examining local billing practices in the legal market where a case is pending.

59.     Because of the unique skill set of the ADF attorneys and non-attorneys seeking fees in this case, and because a portion of their occurred for litigation before the U.S. Supreme Court, we used two different comparators. For work performed at the district court and the Tenth Circuit, the proper comparator is a Denver-based attorney with equivalent legal skill and experience. But for work performed at the U.S. Supreme Court, the proper comparator is to a Washington, D.C.-based attorney with equivalent legal skill and experience before the U.S. Supreme Court.

60.     I have investigated and obtained information to familiarize myself with the hourly billing rates of attorneys with various degrees of skill and experience who practice in the Denver, Colorado and Washington, D.C. areas.

61.     I have done so by speaking with attorneys in Denver and Washington, D.C. about their rates, reading articles about the rates attorneys in Washington, D.C. charge, and surveying caselaw in both Denver and Washington, D.C. addressing attorneys' fees in those jurisdictions.

62.     I also reviewed the declarations filed by Scott Browning, Andrew Nussbaum, and David Thompson discussing the rates in Denver or Washington, D.C.

63.     I also reviewed the declaration of Eric Olson filed in another federal case pending in this district. I note that he is requesting a fee of $1,300/per hour based on his experience. I also note that he is requesting a fee of $850/hour for Isabel Broer, an attorney at his firm. I believe Mr. Olson's proposed fees are

especially relevant because Mr. Olson argued on behalf of Colorado against Smith in this case. And he and Ms. Broer signed the merits briefing at the Supreme Court. Mr. Olson also filed his petition less than a year after the Supreme Court ruled in Smith's favor. In other words, Mr. Olson was the opposing counsel in this case and only recently filed his petition. So his rates are an especially useful comparator. *See, e.g.*, *Roe v. Cheyenne Mountain Conf. Resort, Inc.*, 172 F.3d 879, at *3 (10th Cir. 1999) (noting that "the rate charged by the losing counsel" is "a factor we have held may be relevant in determining a reasonable hourly rate"). His declaration is attached hereto as Exhibit 5.

64.     I have also relied on my practical experience. In my practice, with almost 20 years of experience litigating cases involving constitutional rights and based on the other declarations filed in support of our motion for fees here, I have become familiar with billing rates, billing practices, the cost and recovery of litigation support services and other expenses of litigation, the setting and collection of legal fees in a variety of circumstances, including cases presenting professional demands and factual and legal complexity. I am also familiar with the manner in which ADF maintains its business records and generates its billing records. I have personal experience negotiating and recovering contingency fees. This personal experience includes working with clients who wish to challenge state laws and regulations that are contrary to the First Amendment.

65.     From the inception of this case, I have personally supervised or been involved with the work of ADF's attorneys and non-attorneys. I am also personally familiar with the ADF attorneys and non-attorneys seeking fees in this case.

66.     Based on my experience and individualized research, I agree with the conclusions reached by Mr. Browning regarding the reasonableness of rates charged

by ADF's attorneys and staff in the Denver market for work performed at the district court and the Tenth Circuit.

67.    I likewise agree with the conclusions reached by Mr. Thompson regarding the reasonableness of rates charged by ADF's attorneys and staff in the Washington, D.C. market for its Supreme Court litigation.

68.    The rates established by Mr. Browning and Mr. Thompson for work performed in Denver and Washington, D.C., respectively, are reasonable given the prevailing market rates in those jurisdictions for attorneys with comparable skill and experience who litigate complex appellate matters.

69.    A summary of those rates is attached hereto as Exhibit 4.

70.    The concurrently filed declarations of Colorado practitioners Mr. Browning and Mr. Nussbaum attest to the reasonableness of these rates for the Denver market.

71.    The concurrently filed declaration of Washington, D.C. practitioner Mr. Thompson attests to the reasonableness of these rates for the Washington, D.C. market.

72.     In reaching these conclusions, I have also reviewed each of ADF's attorneys' and staff's declarations filed in this case, and familiarized myself with each of their unique and substantial experience. Their individual declarations are attached hereto as Exhibit 1.

73.    The requested billing rates are especially reasonable given ADF's attorneys and non-attorneys experience litigating religious-freedom and free-speech claims as described in their individual declarations. This litigation required counsel with First Amendment expertise who practice before the Supreme Court.

74.     There are very few attorneys who specialize in free-speech litigation, and even fewer who have experience litigating these issues before the Supreme Court. In fact, ADF's attorneys and non-attorneys are among the few attorneys who practice First Amendment litigation almost exclusively and are some of the few attorneys in the country who have litigated multiple cases like this one.

75.     The concurrently filed declarations of Denver-based practitioners Mr. Browning, Theresa Sidebotham, Mr. Nussbaum, and Jeremy Moseley as well as the affidavit filed by Krystian Gajdzis attest to the fact that there were not likely any attorneys in Colorado who had a combination of ADF's experience, skillset, resources, and willingness to represent Smith on a pro-bono basis and who could have successfully litigated her case to the U.S. Supreme Court.

76.     For these reasons, the two-tiered rate structure (Denver rates for the Colorado litigation and Washington, D.C. rates for the Supreme Court litigation) is justified and reasonable.

77.     Work performed between July 27, 2021 and June 30, 2023 is attributable to the Supreme Court litigation. July 27 is the day after the Tenth Circuit ruled in this case, and June 30, 2023 is the day the Supreme Court issued its opinion. Washington, D.C. rates are sought for the work performed during this timeframe.

78.     Work performed between November 20, 2015 and July 26, 2021 and July 1, 2023 and July 15, 2024 is attributable to the Colorado litigation. Denver rates are sought for the work performed during these timeframes.

## Reasonableness of Time

79.     I personally supervised and managed the work of ADF's attorneys and non-attorneys for almost all of the work performed at the district court and the

Tenth Circuit. I communicated often with the legal team litigating this case. I have a deep understanding of the history of this case. And I am familiar with all of the staffing decisions of this case at the district court and the Tenth Circuit. I endeavored to keep the number of personnel assigned to this case to the minimum reasonably necessary to serve Smith's needs. Likewise, I endeavored to make work assignments appropriate to each attorney's or non-attorney's level of experience and expertise. For that reason, I typically assigned tasks like research and brief-writing to more junior level attorneys.

80.     I was also involved with managing tasks, making staffing decisions, and assigning work related to litigation before the Supreme Court. Based on my experience at the Supreme Court, work assignments were appropriate to each attorney's or non-attorney's level of experience and expertise. Because of many of ADF's attorneys' personal and significant experience at the Supreme Court, ADF relied heavily on their experience. That decision was also necessitated by the intervention of the Office of the Solicitor General, the experience at the office, and the general nature of Supreme Court litigation and the high stakes involved.

81.     In support of this petition for attorneys' fees, ADF personnel submitted time entries for the time they spent working on this case. Exhibit 2 lists the time spent by ADF personnel representing Smith in this action based on records made contemporaneously by attorney and staff. In reviewing this time, a very small minority of time entries were recreated to reconcile time with time entries by others. For example, if an attorney had billed time based on a response to an email from someone else, or had recorded time spent on a telephone conference or meeting with someone else, but that someone else had not contemporaneously included that

time, I added the unaccounted-for time for consistency. After doing so, the time entries were sent to each individual attorney and staff to review for accuracy.

82.    I have reviewed the hours submitted by all attorneys and non-attorneys who worked on this case. I have exercised billing judgment to remove hours I deemed excessive, redundant, or otherwise unnecessary. The requested billed hours requested are the result of three categories of billing discretion.

83.    *First*, I entirely removed—and therefore the submitted petition does not even list—over a thousand hours of time related to billable as well as non-billable tasks. Those tasks included things like legal research, drafting memoranda of law on peripheral issues that were considered important and necessary at the time of the related research and drafting, brief writing that I deemed redundant or excessive, internal strategy meetings, media presentations and publications, oral argument preparation, and other work.

84.    I also removed all time associated with activities that were billed for the first appeal to the U.S. Court of Appeals for the Tenth Circuit. Consistent with the Tenth Circuit's order, ADF has not requested any time associated with that first appeal.

85.    *Second*, I exercised billing discretion by not requesting any billed time for the following ADF or former ADF attorneys and staff who worked only minimally on the case and therefore billed relatively few hours. This includes wholesale cuts to both junior and senior attorneys. For example, I cut all the hours for several attorneys with 1–5 years of experience (Kelly Howard, Hailey Sexton, Jacob Reed); 5–10 years of experience (Erica Steinmiller-Perdomo and Logan Spena); over 10 years of experience (Caleb Dalton, Christiana Kiefer, Chris Schandevel, Johannes Widmalm-Delphonse, Travis Barham, Michael Ross,

Jeremiah Galus, Hal Frampton, and Paul Schmitt); and others with 20 years of experience (Gregg Walters, Phil Sechler, and Roger Brooks). I also cut the time for Amanda Duffy, a non-attorney with over fifteen years of experience.

86.    These cuts total 338.3 hours of time. Those cuts are reflected in a separate spreadsheet in Exhibit 2 attached hereto.

87.    In addition, I eliminated all travel time for attorneys and staff.

88.    *Finally*, for the time that has been submitted, I exercised billing judgment by reducing hours that I deemed to be excessive, redundant, or otherwise unnecessary. I did this for tasks that included time spent on research, drafting briefs, preparing for oral argument, participating in moot courts, participating in internal communications, amicus coordination, and many others. I also reduced the time for several entries that I deemed to have been block-billed. To account for the staffing decision to staff the Supreme Court litigation with attorneys with Supreme Court experience, I also reduced the billed hours for more junior attorneys that participated in that litigation.

89.    For the sake of convenience, Exhibit 2 contains three columns reflecting time. The column designated as "Original Time" was the contemporaneous time billed. "Time Cut" reflects the exercise of my billing judgment. And "Revised Time" is the Original Time minus the Time Cut.

90.    This approach led to a reduction of 1,200.5 hours of time in total, reflected in Exhibit 2. That accounts for approximately 36% of the 3,374.9 hours originally billed. In other words, the requested bill time is only 2,174.4 hours of a total of 3,374.9 billed. Chart 2 in Exhibit 4 summarizes these numbers.

91.    The total time ADF personnel and Michael Francisco incurred on this for case for which they are seeking fees is 2,174.4 hours, including 848.8 hours at

the Denver market rate and 1,325.6 hours at the Washington, D.C. market rate. Chart 1 in Exhibit 4 summarizes these numbers.

92.     The hours expended are especially reasonable in light of the complexity of this case, the high degree of success obtained, the unlikelihood of success when the case was filed, and other factors adding to the difficulty of this case.

93.     Because this case imposed significant time constraints on the schedules of the ADF attorneys and non-attorneys who worked on it, I am aware, based on my current professional capacities that, by agreeing to take on this case, the ADF attorneys and non-attorneys who are seeking fees in this case had to forego matters for other potential clients when some of those matters may have had better prospects for an award of attorney's fees.

## Expenses

94.     ADF also incurred a number of costs in this case for which it is entitled to receive compensation. A list of the costs for which ADF is seeking reimbursement is attached hereto as Exhibit 3. Exhibit 3 contains an itemized list of those incurred costs. The total recoverable are $10,083.86.

95.     I have reviewed the itemized statement of expenses and affirm the accuracy of the expenses attributed to me and attest the expenses were reasonably necessary in light of all the facts and circumstances surrounding Smith's successful constitutional challenge.

96.     I have also reviewed the costs submitted by other ADF attorneys and staff. These expenses were reasonably incurred for travel, lodging, and meals for attorneys and staff to attend hearings or oral arguments in Denver, Colorado or Washington, D.C. and other matters necessary for this litigation.

97.     Based on the concurrently filed declaration of Jeremy Moseley, travel costs are typically billed to private clients in Colorado.

## Declaration Under Penalty of Perjury

I, Jonathan A. Scruggs, a citizen of the United States and a resident of the State of Arizona, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Signed this 22nd day of July, 2024 at Marion, Arkansas.

Jonathan A. Scruggs